**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ROCA LABS, INC.,                                    Case No:  8:14-cv-2096-T-33EAJ

      Plaintiff,

   v.

CONSUMER OPINION CORP. and
OPINION CORP.,

      Defendants.

_____/

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**MOTION FOR ENTRY OF A TEMPORARY INJUNCTION**

     DEFENDANTS, OPINION CORP & CONSUMER OPINION CORP., hereby

oppose Plaintiff's Motion for Entry of a Temporary Injunction.[1]

**I.      Introduction**

     Roca Labs ("Roca") is a company that *really* wants to avoid criticism.  However, instead

of doing so by delivering a quality product and quality service, it seeks to suppress all criticism

through underhanded (if not illegal) means.  No matter what kind of hyperbole or unsupported

assertions the Plaintiff tries to throw into the docket, *that* is why we are before this Honorable

Court, nothing more, nothing less.

---

[1] Plaintiff improperly conflates these two entities, but for the purposes of this opposition, the Defendants will forgive this, as it is largely irrelevant to the outcome of the motion.  The Motion is doomed for far less technical reasons than claims against the wrong party.

Roca sells a diet product, as an alternative to gastric bypass surgery.  Roca claims that its "components are Guar Gum, Konjac, Inulin, Beta Glucan, Xanthan Gum, Maltodextrin, Vitamins B-6, B-12, C," and flavoring.  ECF 2 at 51.[2]  Roca claims "these fibers are activated by large amounts of water and occupy most of the stomach, leaving only 20% available for food intake."[3]  In other words, Roca Labs' product primarily consists of industrial-food thickening agents that expands and increases the viscosity of water.  Declaration of Dr. Thomas Parisi, attached hereto as Exhibit 1 (hereinafter "Parisi Decl.") ¶8.  The theory is simple:  If you fill your stomach with it, you don't have room, or hopefully desire, to fill it with anything else.[4]  A layperson might readily presume that such a scheme would result in weight loss.  However, this low-tech, low-research formula is of specious value to many people – as such an approach can lead to health problems and even weight *gain* in some users.  Parisi Decl. ¶¶9-10.

Even legitimate, FDA-approved medicines, foods, and medical treatments, will have varying results and physical reactions.  Part of how our body of knowledge grows, in the absence of FDA trials, is through consumers sharing their experiences.  Parisi Decl. ¶¶15-17. This is almost imperative in the often shady underworld of "nutraceuticals," which are neither FDA approved, nor seemingly regulated by anyone except their producers' own ethics, such as they are.[5]  Therefore, consumers need feedback from prior users, so that they can at least have some

---

[2] In a promotional video, a spokes model vacantly reads from a teleprompter and misleadingly states that the ingredients are "approved by the World Health Organization," as if that United Nations institute took some time off from fighting ebola in order to stamp its imprimatur on Roca's concoction.
<youtube.com/watch?v=0wNYozD1XEM> (last visited 15 Sept. 2014).

[3] <youtube.com/watch?v=0wNYozD1XEM>

[4] <youtube.com/watch?v=gJ9UeimqSqs&list=UUl7sVLkpP6ivf1P8BIyPW_g>

ability to predict side effects or efficacy issues.  Parisi Decl. ¶18. Without this feedback, the public is put at risk.  Parisi Decl. ¶19. But, Roca shows little concern for what happens to its users – if its product works for them, then Roca wants that information out there, but woe unto the user who gets sick or finds it ineffective.  If they don't keep their traps shut, Roca threatens to sue them.  See Exhibit 2 (Example of Roca's threats issued to dissatisfied customers); see also Exhibit 3, Declaration of Jennifer Schaive ("Schaive Decl.") ¶11).[6]

The Defendants provide a consumer review site upon which users share their experiences with any number of consumer goods and services.  See Exhibit 4 (declaration of Michael Podolsky (hereinafter Podolsky Decl.")).  Roca Labs is only one of thousands of businesses reviewed on Defendants' site.  Podolsky Decl. ¶8. Some reviews are negative.  Some are gushingly positive.  The Defendants do not author any of the reviews, which are all provided by third parties.  Podolsky Decl. ¶9. With respect to content, the Defendants are agnostic, hoping that the power of the marketplace of ideas will give consumers the ability to make an informed decision about whether they wish to put Roca Labs' concoction into their bodies, and whether they trust their health to this "nutraceutical" manufacturer.  Podolsky Decl. ¶10.

---

[5] Roca Labs discloses a number of possible side effects, in a YouTube video starring "Dr. Ross Finesmith."
<youtube.com/watch?v=sfZpZ-0zTus&list=UUl7sVLkpP6ivf1P8BIyPW_g>
<youtube.com/watch?v=F7HQx2oZxY8&list=UUl7sVLkpP6ivf1P8BIyPW_g>
However, "Dr." Finesmith does not appear to be a physician licensed in any state.

[6] Some of these threats are signed by a "paralegal" who purports to "represent" Roca Labs.  See Exhibit A to Schaive Decl.  Among other concerns, this is the unauthorized practice of law.  Activity that involves an important legal right of another is the practice of law. See *Florida Bar v. Sperry*, 140 So. 2d 587, 591 (Fla. 1962), vacated on other grounds, 373 U.S. 379 (1963); *Florida Bar v. Warren*, 655 So.2d 1131 (Fla. 1995) (corresponding with parties relative to a legal matter constitutes the practice of law).

A critical reader would likely presume that something is amiss upon reading the key clause in Roca Labs' purchase terms.[7]  ECF 2 at 46.  "*In exchange for a significant discount… customers contractually agree that, regardless of their outcome, they will not speak, publish, print, blog or write negatively about ROCA or its products in any forum.*"  ECF 2 at ¶ 24, ¶144.  However, these same terms fail to disclose the amount of this "discount" or "subsidy."   ECF 2 at 46; *see* Walsh Decl. ¶4.   Roca then requires its customers to agree *inter alia* that they "*consent to and agree to entry of an injunction… in enforcement of your violation of this term and condition,*" and that the customer will then pay an elevated price for the product.  ECF 2 at ¶ 130-131, 136.  This is alongside the company's "no refunds" and "no returns" policies, and a waiver of any chargeback rights even if the product never arrives.  ECF 2 at 48-49.  See Exhibit 6 (declaration of Tameka Anderson, describing the inequity of Roca Labs' "no refunds" policy); *see also* Schaive Decl. ¶¶13-19.  Roca Labs tries to scare its customers with clauses that provide it with a unilateral right to recoup not only an elevated price for the product, but "*any expenses we incur in resolving the issue*", and that if any of them make a negative comment, it will (apparently even if true) "*constitute defamation per se, entitling [Roca Labs] to injunctive relief and damages.*"[8]  ECF 2 at 53.  The *coup de grace* is a section providing for a one-sided attorneys' fees provision, if a user dares to utter a negative word in public.

> Your breach of the Agreement as it relates to your obligation to refrain from making, posting, or otherwise commenting negatively about the Formula, Website, or The Company, is deemed a material breach of the Agreement, and

---

[7] That is, if they read them.  They do not appear to be something the average consumer would read or could understand.  *See* Exhibit 5, Declaration of Margaret Walsh ("Walsh Decl.") ¶4.

[8] While Roca may claim that this provision amounts to a stipulation of irreparable harm justifying injunctive relief, the Court is not bound by such a purported stipulation between the parties.  *Clark v. Merrill Lynch*, 1995 U.S. Dist. LEXIS 11541 (M.D. Fla. June 15, 1995).

you agree to pay all costs and attorney's fees related to The Company's subsequent efforts to enforce this term of the Agreement.[9]

ECF 2 at 58-59.

Does that sound like an upstanding company that stands behind its safe and reliable product? Or does that sound like a disreputable company, producing tubs of snake oil (or snake goop, as it were), and which knows that too much truth will hurt its fly-by-night bottom line? Roca Labs is desperately trying to force a cone of silence over each and every customer that discovers that Roca Labs' product is not only a specious remedy for their weight issues, but a potential cause of additional health problems.[10]  Plaintiff, desperate to sell as many of its tubs of goo to the public as it can before regulatory agencies come knocking does its best to bully its former customers into silence.  Schaive Decl. ¶11; Exhibit A to Schaive Decl.

Roca Labs now seeks this Court's assistance to scrub consumer review sites of negative reviews, or seemingly any reviews at all, by filing this lawsuit. Roca wishes to deprive the public of these reviews, even if they might alert a consumer to a possible health crisis.  In this spirit, Roca comes to this Court seeking a prior restraint, unethically trying to cast a sanctionable defamation claim as something else, in the hope that this Court will not notice.

//

//

//

---

[9] Presumably, Roca Labs' demand for attorneys' fees in the prayer for relief is based upon its position that the Agreement is enforceable against the Defendants, and thus Roca Labs believes that this clause binds the Defendants as well.

[10] Noting that the Defendant is a New York company, it sounds to the Defendants like Roca is a company that wants to be called to task for violating New York law.  This kind of agreement was held to be not only unenforceable, but subject to fines and injunctive relief prohibiting any further use of such language in New York. See *People v. Network Assocs.*, 758 N.Y.S.2d 466; 195 Misc. 2d 384 (N.Y. Sup. Ct. 2003).

## II.     Legal Analysis

### A.     Entry of a preliminary injunction is impermissible in this case

Temporary injunctive relief is not available to plaintiffs seeking to suppress allegedly defamatory speech. *Concerned Citizens for Judicial Fairness v. Yacucci*, 2014 Fla. App. LEXIS 13670 (Fla. 4th DCA Sept. 3, 2014); *Vrasic v. Leibel*, 106 So. 3d 485, 486 (Fla. 4th DCA 2013); *Chevaldina v. R.K./FL Mgmt., Inc.,* 133 So. 3d 1086, 1091 (Fla. 3d DCA 2014).[11]  Presumably for that reason, Roca Labs has attempted to disguise this defamation claim as a Florida Deceptive and Unfair Trade Practices Act (FDUTPA) and tortious interference claim in order to try to side-step the clear case law that cuts against it in defamation actions.  But, no matter many times you call a "dog" a "duck," it will neither lay eggs nor quack.[12]  Styling a baseless defamation claim as something else does not shield it from First Amendment scrutiny and render palatable the most odiferous and despised remedy known to our courts – the prior restraint. This exceptional relief is impermissible under Florida law and the First Amendment.

A prior restraint is an advance limitation on First Amendment activity. *Fantasy Book Shop, Inc. v. City of Boston*, 652 F.2d 1115, 1120 (1st Cir. 1981).  This includes an injunction that prohibits speech prior to a determination that the speech is unprotected. See *Near v. Minnesota*, 283 U.S. 697, 75 L. Ed. 1357, 51 S. Ct. 625 (1931).  There is a "heavy presumption" against their validity.  *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558, 43 L. Ed. 2d 448, 95 S. Ct. 1239 (1975); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 9 L. Ed. 2d 584, 83 S. Ct. 631 (1963); *New*

---

[11] This is even the case when the speech is *false*.  *Town of Lantana v. Pelczynski*, 290 So. 2d 566, 569 (Fla. 4th DCA 1974) ("Freedom from prior restraint upon speech and press extends to false, as well as true statements.")
[12] *See Fla. Bar v. Neiman*, 816 So. 2d 587, 599 (Fla. 2002) (Describing the "duck test").  This case involves the "inverse duck test."

*York Times Co. v. United States*, 403 U.S. 713, 714, 29 L. Ed. 2d 822, 91 S. Ct. 2140 (1971);

*Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 29 L. Ed. 2d 1, 91 S. Ct. 1575 (1971).

Nevertheless, the Plaintiff comes to this Court, with clearly inapplicable claims, attempting to engage in misdirection – by asking the court to avert its gaze from the fact that what the Plaintiff truly wants is a prior restraint removing consumer reviews from publication before a trial. That is a textbook example of a prior restraint, and as explained above, the Supreme Court has *roundly rejected* prior restraints. See *Kinney v. Barnes*, 57 Tex. Sup. J. 1428 at n.7, 2014 Tex. LEXIS 764 (Tex. 2014) (citing SOBCHAK, W., THE BIG LEBOWSKI, 1998).

Perhaps after a trial, if the proper defendants (the authors of the comments) appeared in the case, *and* their speech was found to be unlawful, a narrow injunction *might* issue, but even *that* would be a challenging exercise, for even injunctions against speech that come *after* a trial are usually impermissible prior restraints. See Erwin Chemerinsky, *Injunctions in Defamation Cases*, 57 SYRACUSE L. REV. 157, 165 (2007); see also *Oakley, Inc. v. McWilliams*, 879 F. Supp. 2d 1087, 1089 (C.D. Cal. 2012) ("Injunctions against any speech, even libel, constitute prior restraints: they prevent[] speech before it occurs, by requiring court permission before that speech can be repeated." (citation and internal quotation marks omitted)).

Nevertheless, Roca Labs asks this Court to invite a prime specimen of the precise genus and species of the most despised of all constitutional vermin. *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) (holding that prior restraints are "the most serious and least tolerable infringement on First Amendment rights"). This particular prior restraint would, quite likely, be the most offensive one that we could consider – as it seeks to suppress warnings about products

that have *actually made people ill.*  Walsh Decl. ¶¶6-8.[13]  Roca Labs wants this Court to help it hide the truth -- that its products make some people sick.  Parisi Decl. ¶11-13; Walsh Decl. ¶¶6-8.  This is information that needs to be disseminated to allow consumers to make an informed decision about Roca's product -- not censored.

Defamation plaintiffs seeking prior restraints are hardly rare.  After all, if a company can enlist the power of the courts to stop criticism of its business practices, it scores a coup.  But, as the Supreme Court said in *Organization for a Better Austin v. Keefe*, in overturning one, "[n]o prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices . . . warrants use of the injunctive power of a court."  402 U.S. 415, 419-20 (1971).   There are no modern cases in which a court has granted a preliminary injunction in a defamation claim that withstood appellate scrutiny. Armed with this knowledge, the Plaintiff attempted to dress up its defamation claim as a one of tortious interference and FDUTPA. This clumsy and unsuccessful sleight of hand[14] was an attempt to try to side-step the clear case law that cuts against prior restraints in defamation actions, and it is not a new page in the would-be censor's playbook.  In *Chevaldina v. R.K./FL Mgmt.*, 133 So. 3d 1086 (Fla. 3d DCA 2013), the

---

[13] The complained-of statements are about evenly split between warnings about Roca Labs' product causing health problems, it simply not working, and complaints about Roca Labs' business practices, including the very "gag clause" that they seek to invoke in this case.  Even in the absence of the Constitutional presumption against such an injunction, the negative policy implications of such an injunction are staggering.

[14] Despite claiming a right to injunctive relief under specious tortious interference and FDUTPA claims in the Motion ECF 5, the Plaintiff simply uses such claims as point headings, while still speaking in defamation terms.  For example, in arguing that there is irreparable injury, the Plaintiff does not claim that existing contracts will be tortiously interfered with, nor that it will be deceived by an unfair business practice.  Instead, the alleged harm is reputational.  "Roca has already suffered harm to its reputation … Each week approximately one thousand people see the false and malicious negative reviews… Once a posting is made… damage to Roca's reputation is done…" ECF 5 at 15.  Despite sprinkling the words FDUTPA and "tortious interference" in where we have placed ellipses, the Plaintiffs fail to turn this into anything but a garden variety defamation claim, where the Plaintiff should join countless others who have failed to convince a court to grant a prior restraint.

plaintiff tried to dress up its defamation claims as tortious interference claims for the purposes of seeking a preliminary injunction.  The trial court erroneously granted the motion, but the 3d DCA did not let it stand.  *Id.*[15]

Even if we were to suspend the First Amendment for the purposes of this case, the motion would still fail. Roca cannot possibly prevail on the claims raised in the motion, and thus, cannot show a *possibility*, much less a *likelihood* of success on the merits.  The Defendants are immune under 47 U.S.C. § 230, and therefore, is not liable for the content of any statements made by third parties, and thus none of the claims should survive even cursory review.  Further, the public interest would be grossly disserved by the requested censorship. To boot, there is no urgency supporting a finding of irreparable harm.[16]  Roca Labs failed to offer any evidence or a suggested security amount, violating Fed. R. Civ. P. 65 / Fla. R. Civ. P. 1.610.

**B.      Plaintiff has no likelihood of success on the merits**

**1.   Tortious Interference**

To prevail in a tortious interference claim, a plaintiff must show "(1) the existence of a business relationship under which the plaintiff has legal rights; (2) knowledge of the relationship on the part of the defendant; (3) an **intentional and unjustified interference** with that relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the

---

[15] Florida *state* court judges seem less careful when it comes to prior restraints, despite the fact that **every** time they do, they get slapped down by their appellate courts.  See, e.g., *Concerned Citizens for Judicial Fairness v. Yacucci*, 2014 Fla. App. LEXIS 13670 (Fla. 4th DCA Sept. 3, 2014) (overturning unconstitutional prior restraint by Judge Shahood); *Chevaldina v. R.K./FL Mgmt.,*133 So. 3d 1086 (Fla. 3d DCA 2013) (Reversing Judge Leesfield's entry of an unconstitutional prior restraint when plaintiff claimed that the defamatory statements were made in furtherance of tortious interference); *Vrasic v. Leibel*, 106 So. 3d 485 (Fla. 4th DCA 2013) (overturning Judge Ross).

[16] Plaintiff has waited well in excess of two years to seek injunctive relief.  The Tweets Plaintiff complains of date back to at least June 2012.  ECF 2, Exhibit E.  The first comment on <pissedconsumer.com> was posted March 9, 2012.  ECF 2, Exhibit F.  This negates any claim of urgency warranting preliminary relief.

business relationship." *Bortell v. White Mountains Ins. Group, Ltd.*, 2 So. 3d 1041, 1048 (Fla. 4th DCA 2009) (emphasis added), see also *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985).  Even if Defendants had knowledge of Roca Labs' customers beforehand, they would have been entirely justified warn them about the questionable product and unethical business practices, (as evidenced by the gag clause of the terms and conditions).  "This cause of action requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994).

Plaintiff's tortious interference claim swings on the notion that the Defendants "tortiously interfere[d] with Roca Lab's customers by encouraging them to breach their customer agreement with Roca" by posting reviews on the Defendants' website.  ECF 5 at 2. While Defendants assert, *infra*, that this does not constitute tortious interference, neither Defendant denies that the Pissed Consumer website wishes for consumers to review products or services they have tried. But, this does not support liability, as there is no tort in allowing consumers to review products.

"[A]n action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen*, 647 So. 2d at 815.  Roca Labs provides no evidence of an agreement which *would have been completed*. It simply speculates that everyone who reads the reviews is someone who was about to purchase Roca's questionable product, but after the would-be-buyer saw a warning that it might make them ill (or that the company requires purchasers to enter into an unconscionable contract) they

RANDAZZA | LEGAL GROUP

thought better of it.  That is not called "tortious interference," that is called "an informed consumer making an intelligent choice."

Further, the basis for Roca's claims is that anyone who purchased the product *must* have agreed to the "gag clause" limiting the customer's right to speak negatively (even truthfully so) about the product or the company.  ECF 5 at 2.  Anyone who did *not* buy the product would have no basis to agree to the gag-provision, and it would be inapplicable.  But, the "Agreement" that these would-be buyers would have entered into is itself unlawful, as discussed *infra*.

Even if these facts could support a tortious interference claim, a relationship with a *past customer* does not provide a basis for the claim.  *Ethan Allen,* 647 So. 2d at 815.  While Roca Labs has burdensome terms and conditions, we can find nowhere among those burdens any obligation to be a repeat customer.[17]  "The mere hope that some of its past customers may choose to buy again cannot be the basis for a tortious interference claim."  *Id.*  Therefore, Roca has no substantial likelihood of prevailing on the merits of its tortious interference claim, because the claim fails as a matter of law.

Finally, the tortious interference claim is barred as duplicative.  In cases addressing this scenario – a plaintiff claiming defamation and basing a claim of tortious interference with business relations upon that supposed defamation – the tortious interference claim is precluded.  *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607, 609 (Fla. 4th DCA 1975); *see Easton v. Weir*, 167 So.2d 245 (Fla. 2d DCA 1964) (holding that a single wrongful act gives rise to only a single cause of action).  The single action rule applies to tortious interference claims like the one

---

[17] In fact, repeat business does not seem to be Roca's business plan, and discovery will likely show very few repeat customers.

in this case. "In Florida, a single publication gives rise to a single cause of action." *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002).

In *Orlando Sports Stadium*, the plaintiff filed suit against a newspaper for defamation and tortious interference, alleging that the articles concerning the plaintiff were defamatory. 316 So. 2d at 608. The appellate court found that the defamation and tortious interference claims overlapped because they were based on the same articles and because the "thrust" of the complaint was that these articles were injurious to the plaintiff. *Id.* at 609. The extraneous tortious interference claim was "nothing more than elements of damage flowing from the alleged wrongful publications." *Id.* Roca Labs must establish an additional, distinct action that is not embodied within the defamation causes of action to bring a tortious interference claim. Therefore, without an independent basis, this claim itself cannot be sustained, much less serve as the basis for injunctive relief.

### a.   Roca Labs' Agreement is Unenforceable

Roca Labs uses the "Agreement" with their customers as the basis for much of its complaint. *"In exchange for a significant discount… customers contractually agree that, regardless of their outcome, they will not speak, publish, print, blog or write negatively about Roca or its products in any forum."* ECF 6 at 5 (emphasis added). Preliminarily, no Defendant is a party to, or bound by, this contract, and neither has an obligation to respect it. "[A] contract does not bind one who is not a party to the contract, or who has not agreed to accept its terms.'" *Marlite, Inc. v. Eckenrod*, 2012 U.S. Dist. LEXIS 118140, 2012 WL 3620024 (S.D. Fla. July 13, 2012), *citing Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1074-75 (11th Cir. 2003).

Even if the Defendants were so bound, the "gag clauses" in the Agreement are unconscionable and unenforceable, as to *anyone*. An unconscionable contract is one "'such as no

man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Hume v. United States*, 132 U.S. 406, 411 (1889) (quoting *Earl of Chesterfield v. Janssen*, 28 Eng. Rep. 82, 100 (Ch. 1750)).[18]  "In general, an unconscionable contract has been defined as one which is so grossly unreasonable as to be unenforceable because of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *King v Fox*, 7 NY 3d 181, 191 (2006); *see also McCollum v. Xcare.net, Inc.*, 212 F. Supp. 2d 1142, 1148 (N.D. Cal. 2002) (noting that "the California Supreme Court defined an unconscionable contract as one that considered in its context, is unduly oppressive").  Roca Labs complains that it put the Defendants on notice of the unconscionable contract, and on that basis claims that it compelled them to respect its outrageous (and unlawful) terms.

> The standard for injunctive relief with respect to restrictive covenants requires plaintiff to plead and prove: (1) the existence of an enforceable contract, including a statutorily-defined legitimate business reason supporting each restrictive covenant; (2) defendants' intentional breach of the restrictive covenants; and (3) that plaintiff has no adequate remedy other than injunctive relief.

*Milner Voice & Data, Inc. v. Tassy*, 377 F. Supp. 2d 1209, 1214 (S.D. Fla. 2005).  Roca Labs cannot use the gag clauses as the basis for seeking injunctive relief, even as it applies to its customers who wrote the reviews on the Defendants' website, because Roca Labs has presented no legitimate business reason to support the gag clause.

> Legitimate business interest may include trade secrets; valuable confidential business or professional information that otherwise does not qualify as trade secrets; substantial relationships with specific prospective or existing customers; or customer goodwill

---

[18] Roca's contract is procedurally unenforceable as well as substantively so.  Nowhere in their "Agreement" do they so much as discuss how much the "discounted" price is.  This two-tiered pricing is an illusion.  See *In re Zappos, Inc.*, 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012).

associated with: an ongoing business by way of trade name, trademark, service mark, or 'trade dress,' or a specific geographic location, or a specific marketing or trade area.

*United Subcontractors, Inc. v. Godwin*, 2012 U.S. Dist. LEXIS 67061, 18, 2012 WL 1593173 (S.D. Fla. Feb. 3, 2012).  Preventing customers from providing their opinion of Roca Labs' product is not a legitimate business interest, but instead is itself a deceptive trade practice.  Any act "which unfairly takes advantage of the lack of knowledge, ability, experience or capacity of a consumer; or results in a gross disparity between the value received by a consumer and the price paid, to the consumer's detriment" constitutes an unconscionable trade practice.  See *People v. Network Assocs.*, 758 N.Y.S.2d 466; 195 Misc. 2d 384 (N.Y. Sup. Ct. 2003).  Deceiving customers about their ability to post factual reviews about the product online is itself unlawful in the Defendants' home district.  *Id.*  Of course, the end result of this unconscionable agreement is that the only information about this product that can be readily obtained is the fluff disseminated by the Plaintiff.  Therefore, consumers buying this product are deprived of the ability to make an informed decision about something that could negatively affect their physical well-being.  Parisi Decl. ¶15-19; Schaive Decl. ¶8, 18  And then, once they purchase it, based on information skewed by Roca's bullying of anyone who might share inconvenient truths, Roca refuses to give the consumers refunds if they are dissatisfied or even if they get ill from it.  Schaive Decl. ¶¶6-7, 13, 16; Walsh Decl. ¶¶9, 14.

Suppressing consumer reviews is unconscionable and unenforceable – no matter what the product.  New York law (the law that governs the Defendants' conduct) prohibits user agreements that restrict a customer's right to discuss the services.  See *People v. Network Assocs.*, 758 N.Y.S.2d at 469.  This is even more so when we consider the context.  While Plaintiff calls its product a "food additive" (presumably to avoid FDA regulation), is the concoction a drug, a

food, or something else?  Whatever it is, this is a product that has made some consumers sick. Walsh Decl. ¶¶6-8.  Forcing them to remain silent, thus depriving other victims of the ability to make an informed decision, is unconscionable.

### 2.    FDUTPA

It is most ironic that Roca Labs seeks to invoke FDUTPA in this case, given its own practices.  The purpose of FDUTPA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. §501.202(2); see also *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325 (11th Cir. 2008).  A proper analogy here might involve a pot and a kettle.

FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *City First Mortg. Corp. v. Barton*, 988 So.2d 82, 86 (Fla. 4th DCA 2008) (quoting *Rollins*, 951 So.2d at 869, *rev. den.*, 962 So.2d 335 (Fla. 2007)).  But, the *sine qua non* of a FDUTPA claim is that the plaintiff must be a consumer or a competitor wronged by the defendant's conduct.  *See Kertesz v. Net Transactions, Ltd.*,635 F. Supp. 2d 1339, 1349 (S.D. Fla. 2009) (holding that the original version of FDUTPA applied only to "consumers."  Legislative change of this term to "person" encompassed businesses, but did not broaden the degree of factual standing to bring a FDUTPA claim); *Dobbins v. Scriptfleet, Inc.*, 2012 U.S. Dist. LEXIS 23131, 2012 WL 601145 (M.D. Fla. Feb. 23, 2012) (same).  FDUTPA requires a consumer transaction.  *Monsanto Co. v. Campuzano*, 206 F. Supp. 2d 1239, 1251 (S.D. Fla. 2002).

Florida courts clarified that while the language of the FDUTPA was amended with the 2001 revision, and substituted the word "person" for "consumer," there still must be a consumer relationship between the parties, to provide for FDUTPA standing.

> [T]he legislative intent of the 2001 amendment was to clarify that 'remedies available to individuals are also available to businesses,' as opposed to creating a cause of action for non-consumers.  Accordingly, the Court is not convinced that the 2001 amendment to FDUTPA creates a cause of action for [two parties], when there is no consumer relationship between them.

*Dobbins v. Scriptfleet, Inc.*, citing *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1349 (S.D. Fla. 2009) (quoting Senate Staff Analysis and Economic Impact Statement, Florida Staff Analysis, SB 208, March 22, 2001, at p. 7).  Roca is not a consumer of Defendants' services, and has not provided any evidence to suggest that it is.  Roca Labs lacks FDUTPA standing.

Even if Roca had standing, it could not sustain a FDUTPA claim.  Under the Act, an "unfair practice" is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  *PNR, Inc. v. Beacon Prop. Mgmt.*, 842 So. 2d 773, 777 (Fla. 2003) (quoting *Samuels v. King Motor Co.*, 782 So.2d 489, 499 (Fla. 4th DCA 2001)).  A "deceptive act" occurs when there is a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."  *PNR, Inc.*, 842 So.2d at 777 (quoting *Millennium Communs. & Fulfillment, Inc. v. Office of the AG, Dep't of Legal Affairs*, 761 So.2d 1256, 1263 (Fla. 3d DCA 2000)).

In this case, any affected consumer would be one who received an honest review from the Pissed Consumer website, and thus made an informed decision to purchase or not purchase the product.  This is precisely the opposite of a FDUTPA claim.

Plaintiff says that a "practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious."  ECF 5 at 12.  Defendants agree.  The suppression of consumer reviews, some of which warn consumers of negative health consequences, fits that description.  Meanwhile, no reasonable person could

contort that definition into "allowing consumers to share their experiences to the benefit of other consumers."

Let us presume, *arguendo*, that Defendants are the evil conspiracy that Roca paints them to be; even reprehensible conduct is not actionable under FDUTPA absent loss or damage to a consumer. *Hetrick v. Ideal Image Dev. Corp.*, 758 F. Supp. 2d 1220, 1229-30 (M.D. Fla. 2010), citing *General Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276, 277 (Fla. 4th DCA 1998).  There is no identifiable loss or damage to a consumer here, and unless Roca is a consumer of the Defendants' services or products, it lacks standing to bring such a claim on behalf of other consumers who have no quarrel with the Defendants. Roca Labs calling this business "immoral," is not enough to give it standing under FDUTPA[19] (although it is ironic).

Furthermore, FDUTPA has no extraterritorial effect over these New York defendants. See *Carnival Corp. v. Rolls-Royce PLC*, 2009 U.S. Dist. LEXIS 107261 (S.D. Fla. Nov. 17, 2009) (holding "Plaintiffs' claim that Defendants violated FDUTPA must be based entirely on actions that occurred within Florida"); *Millennium Communications & Fulfillment, Inc. v. Office of Attorney General*, 761 So.2d 1256, 1262 (Fla. 3d DCA 2000) (affirming that the purpose of FDUTPA is to prohibit unfair and deceptive practices which transpire within Florida).  Defendants are New York corporations, and consumers that post reviews on the Pissed Consumer website hail from

---

[19] Even if its practices are "unethical," which they are not, as a § 230 protected business, it still has immunity: Claims against another, far more maligned, consumer review business famously failed in Florida. "The business practices of Xcentric, as presented by the evidence before this Court, are appalling. Xcentric appears to pride itself on having created a forum for defamation.  No checks are in place to ensure that only reliable information is publicized… However much as this Court may disapprove of business practices like those embraced by Xcentric, the law on this issue is clear. Xcentric enjoys complete immunity from any action brought against it as a result of the postings of third party users of its website."  *Giordano v. Romeo*, 76 So. 3d 1100, 1102 (Fla. 3d DCA 2011).

all over the world.  The only thing that seems to have occurred in Florida is that Roca Labs itself engaged in questionable business practices here.

As if we need more, Plaintiff has no evidence of damages.  "Proof of actual damages is necessary to sustain a FDUTPA claim." *Dorestin v. Hollywood Imps., Inc.*, 45 So. 3d 819, 824 (Fla. 4th DCA 2010); *see Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984). Instead, Plaintiff makes generic, broad sweeping statements that it suffered damage.  ECF 6 at 14.  This is insufficient.  Further, it is not "damages" if a potential customer thinks better of the transaction after receiving truthful information about a product or a company's questionable business practices.  That is the marketplace of ideas at work.

Despite Roca's claims of Defendants' morality lapses, the only thing that is unethical in this case is that Roca Labs wishes to keep negative data out of the public eye – presumably so that any health problems it causes will never be reported in the light of day.  Parisi Decl. ¶¶20-22. The only thing that Roca Labs bases its claims of "immorality" upon is the fact that it does not want the truth out there – that its product does not work for everyone, and it makes some people sick.  Parisi Decl. ¶¶12-13, 24; Walsh Decl. ¶¶6-8.  Roca now wants this Honorable Court to be its censor, ordering these shared experiences wiped from publication, before a trial on the merits.  If this Court does so, then the next victim is on this Court's conscience.

### 3.    Defamation

Plaintiff only cites to tortious interference and FDUTPA as the basis for its request for a prior restraint, presumably because a preliminary injunction is not available in defamation cases. Nevertheless, they base the request on the foundation that the contents of the third party posts published on <pissedconsumer.com> are false and defamatory.  ECF 2 at 33.  Even if they are, the Pissed Consumer website is subject to immunity under 47 U.S.C. § 230, and cannot be held

liable for the content of statements made by third parties, not even for equitable remedies.  See

*Giordano v. Romeo*, 76 So. 3d 1100 (Fla. 3d DCA 2011).

      a.        **Section 230**

      The Pissed Consumer website only hosts third-party produced content appearing on

<pissedconsumer.com> and is neither the author nor the editor of the reviews.  Podolsky Decl.

¶9.  Because it is a service provider, and not a publisher, Defendants are immune from liability

under 47 U.S.C. § 230 (the "Communications Decency Act" or "CDA").  "The purpose of the

CDA is to establish 'federal immunity to any cause of action that would make service providers

liable for information originating with a third-party user of the service.'" *Alvi Armani Med., Inc. v.*

*Hennessey*, 629 F. Supp. 2d 1302, 1306 (S.D. Fla. 2008), quoting *Almeida v. Amazon.com, Inc.*, 456

F.3d 1316, 1321-1322 (11th Cir. 2006).  In order to qualify as a service provider under Section

230, (1) the defendant must be a provider or user of an interactive computer service; (2) the

cause of action must treat the defendant as a publisher or speaker of information; and (3) the

subject information must be provided by another information content provider.  *Whitney Info.*

*Network, Inc. v. Xcentric Ventures, LLC*, 2008 U.S. Dist. LEXIS 11632, 26, 2008 WL 450095 (M.D.

Fla. Feb. 15, 2008).  While Plaintiff wants to hold Defendants liable as the "publisher" of the

Tweets that are generated from reviews posted on <pissedconsumer.com>, the Tweets are

automatically broadcast third party statements, and are not written by the Defense.  Podolsky

Decl. ¶11.  Accordingly, even this creative argument fails as a matter of law.

      "[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's

traditional editorial functions-such as deciding whether to publish, withdraw, postpone or alter

content-are barred by the CDA."  *Hopkins v. Doe*, 2011 U.S. Dist. LEXIS 136038, 4, 2011 WL

5921446 (N.D. Ga. Nov. 28, 2011), citing *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir.

1997).  Reviews posted on Pissed Consumer are automatically disseminated on Twitter, but that does not make Defendants "publishers" under the CDA, but instead falls within the purview of immunity.  Defendants' users authored the statements.  Dissemination of them does not trigger a § 230 exception. Disseminating the content to the public is not enough.  "A 'provider' of an interactive computer service includes websites that host third-party generated content." *Regions Bank v. Kaplan*, 2013 U.S. Dist. LEXIS 40805, 47, 2013 WL 1193831 (M.D. Fla. Mar. 22, 2013); citing *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 293 (D.N.H. 2008).

Furthermore, Plaintiff is attempting to confer liability on Defendants as "co-authoring" the posts on the website because there is a set form that third-party users must use to submit reviews.  However, providing a form for third parties to submit information to the website is also not sufficient to give rise to liability.

> The website's content submission form simply instructs users to '[t]ell us what's happening.  Remember to tell us who, what, when, where, why.'  The form additionally provides labels by which to categorize the submission.  These tools, neutral (both in orientation and design) as to what third parties submit, do not constitute a material contribution to any defamatory speech that is uploaded.[20]

The submission form in this case is also neutral, and does not amount to "material contribution" such that could give rise to liability as the publisher of the third-party statements.[21]

Since Section 230 bars its claims against the Defendants, Plaintiff cannot show by clear and convincing evidence that it has a strong likelihood of success on the merits to warrant granting an injunction on any claims in this case at all.

---

[20] *Jones v. Dirty World Entm't Recordings, et al.*, 755 F.3d 398, 416 (6th Cir. 2014).

[21] The Plaintiff tries to rely upon the Ninth Circuit's decision in *Fair Hous. Council v. Roommates.com, LLC* for this argument, but in *Roommates*, the users had no choice but to render unlawful statements by using a drop down menu. 521 F.3d 1157, 1166 (9th Cir. 2008).  This is why Roommates.com was held liable, and this is a most narrow ruling that does not constitute the wide gap in section 230 claimed by the Plaintiff.  *Id.*

**C.     The Harm of an Injunction Outweighs its Benefit**

The Plaintiff must prove that the alleged threatened injury to it would not disserve the public interest.   Silencing consumers, who share presumptively First Amendment protected opinions, because Roca Labs wants to sell more unverified product to make more people sick, harms the public interest because of the censorship inherent in the relief.   Furthermore, there are likely hundreds of other individuals who may be bilked just as prior customers were, by a product that not only does not guarantee weight loss, but may actually cause substantial medical harm.  Parisi Decl. ¶11-13. The public has a right to know about side effects and health hazards, and the Pissed Consumer website. provides a service that allows individuals to provide their experiences and opinions, both positive and negative, in order to create a better-informed public.  "Consumer reporting plays a vital role in ensuring that a company's desire to maximize profit, if abused, will not go unnoticed; and online fora for the exchange of those ideas play an increasingly large role in informing consumers about the choices that make sense for them." *Neumont Univ., LLC v. Little Bizzy, LLC*, 2014 U.S. Dist. LEXIS 69168 (D. Nev. May 20, 2014).

If the Court issues a prior restraint in this case, it will silence consumer warnings about a dangerous product.  Further, it would violate core First Amendment principles, and impinge on the public right to receive this information.  Plaintiff does not attempt to balance the equities to determine the relative harms.  Instead, Plaintiff simply states "Defendants will suffer little or no harm by ceasing to interfere with our contractual relationships and removing the interfering postings about Roca."  ECF 5 at 16.  Meanwhile, Plaintiff says nothing of the damage to free expression, nor of the damage to the public's right to know.

The standard is not whether suppressing free speech rights of Defendant would harm the Defendant (which it would), but instead, it is a balancing test of whether the harm to the

defendant and the public interest, if the injunction were granted, would outweigh the harm to the plaintiff if the injunction were not granted.  Consumer protection and review sites are of the utmost constitutional importance.  See, e.g., *Neumont Univ., LLC v. Little Bizzy*, LLC, 2014 U.S. Dist. LEXIS 69168; *Carver v. Bonds*, 135 Cal. App. 4th 328, 343 (2005).  Postings intended to aid consumers in choosing among service providers, are "directly connected to an issue of public concern." See *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 897 (2004).  Plaintiff cannot articulate any compelling interest sufficient to outweigh the harm to Defendant's rights of free speech, nor the public's right to know.

**D.     Plaintiff Shows No Irreparable Harm**

Plaintiff simply, and generically states that "[i]f the injunction is not granted, Roca will face a substantial threat of irreparable injury."  ECF 5 at 15.  However, it offers up no evidence in support of this request for highly extraordinary relief.[22]

**1.     Delay is fatal to Plaintiff's claim of irreparable harm**

Plaintiff claims irreparable harm, yet waited more than two years to bring a claim. "Delay, or too much of it, indicates that a suit or request for injunctive relief is more about gaining an advantage (either a commercial or litigation advantage) than protecting a party from irreparable harm." *Pippin v. Playboy Entm't Group, Inc.*, 2003 U.S. Dist. LEXIS 25415, 5-6, 16 Fla. L. Weekly Fed. D 506 (M.D. Fla. July 1, 2003) (internal citations omitted).  *See Love v. Blue Cross & Blue Shield of Ariz., Inc.*, 2010 U.S. Dist. LEXIS 39988, 38-39, 2010 WL 1249120 (S.D. Fla. Mar. 25, 2010) (delay is sufficient to deny a request for preliminary injunction), *Citibank, N.A. v.*

---

[22] Defendants agree that the more dissemination of the truth, the less Roca will likely sell.  But, this is not a legal harm.  It is as if a mugger were to sue for an injunction preventing someone from warning passer-by that the criminal is waiting in a dark alley, and that they should take an alternate route.

*Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (finding that a ten week delay was sufficient to negate a plaintiff's claim of irreparable harm); *Badillo v. Playboy Entm't Group, Inc.*, 2004 U.S. Dist. LEXIS 8236, 8, 17 Fla. L. Weekly Fed. D 529 (M.D. Fla. Apr. 16, 2004) (finding that "a nine month delay is fatal in this case to Plaintiffs claims of irreparable harm").

    2.        **Plaintiff Has An Adequate Remedy at Law**

       The second requirement of demonstrating irreparable harm is that there must exist no adequate remedy at law.  The burden of irreparable injury cannot be met by mere economic injury.  "An injury is irreparable only if it cannot be undone through monetary remedies." *Taylor v. Florida State Fair Auth.*, 1995 U.S. Dist. LEXIS 17786, 17-18 (M.D. Fla. Aug. 15, 1995) *citing Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 937, 953 (1974).  Courts that have analyzed this issue have found that defamation is a claim arising under law, not equity, and for which claimants are entitled only to legal relief (i.e., monetary damages). *See In re King World Productions*, 898 F.2d 56, 60 (6th Cir. 1990) (holding that fact that a physician may be embarrassed by publication of video allegedly showing him engaging in medical malpractice did not justify temporary restraining order).  Moreover, economic loss, even if difficult to quantify, is no basis for the entry of a preliminary injunction restricting speech." *Bollea v. Gawker Media, LLC*, 2012 U.S. Dist. LEXIS 162711, 13, 105 U.S.P.Q.2D (BNA) 1496, 40 Media L. Rep. 2601 (M.D. Fla. Nov. 13, 2012). Finally, Roca seems to have no trouble calculating its damages.  Roca says that every person who views the reviews is a *certain* customer, and thus Roca loses one sale.  If their claims are true, then the calculation is simple – count the views and multiply by the purchase price.[23]

    *//*

---

[23] Defendants do not agree that this claim has any basis in fact or logic, but if it was good enough for the Plaintiffs to demand payment, they should be estopped from arguing that they now can't possibly do the math.

### E.    Plaintiff Fails to Pledge Security

Federal Rule of Civil Procedure 65(c) provides that a district court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). A preliminary injunction is improper where a plaintiff "did not provide any such security, and the district court was unable to discern what amount was proper under Rule 65(c) because [the plaintiff] failed to adequately set forth facts on which the Court [could] make a reasoned determination as to the amount of security which must be posted." *Jones v. Brown*, 518 F. App'x 643, 644 (11th Cir. 2013). That is where we are now.

Additionally, in the alternative, as this Motion was initially filed in state court, Florida Rule of Civil Procedure 1.610 requires a movant to give bond in an amount the court deems proper before issuing a preliminary injunction. Fla. R. Civ. P. 1.610(b). "The purpose of an injunction bond is to provide sufficient funds to over the adverse party's costs and damages in the event the injunction is later deemed to have been improvidently entered." *Bieda v. Bieda*, 42 So.3d 859, 862 (Fla.3d DCA 2010). A trial court may not enter a preliminary injunction without complying with the bond requirement. Roca Labs' Motion includes no discussion of the bond requirement, as required under the Florida Rules of Civil Procedure.

In the event that this Honorable Court decides that it wishes to be the first court to ever sustain a prior restraint under the claims brought before it, the Court should note that Roca has brought at least one claim, FDUTPA, where the Defendant should have an opportunity to seek prevailing party attorneys' fees. Given the shotgun pleading in this case, it is clear that this plaintiff will seek to multiply these proceedings out of any proportion that might be reasonable under the law. Accordingly, it is foreseeable that the prevailing party fees in this case will be

above $200,000. Therefore, any bond should be in excess of $200,000 for this alone, unless the Court wishes to make it clear that this case should end early, given its frivolous nature. Furthermore, if the statements are taken offline, the Defendant will lose months and months of viewers, and the suppression of such content will likely lead to at least a handful of victims with health problems from the concoction – which could have been avoided had the truth remained published. Therefore, Roca Labs should be compelled to place at least $2.5 million in a "potential victims fund" bond.

## III.   CONCLUSION

Based on the foregoing, this Court must not issue an injunction. Plaintiff has failed to prove any of the elements necessary to obtain a preliminary injunction, as they have not demonstrated likelihood of success on the merits, they have not demonstrated irreparable harm, and they have not adequately balanced the relative harms to Defendants and the public, to demonstrate that a preliminary injunction is warranted. The public's interest in free speech and debate would be seriously, and negatively, impacted by an injunction against Defendant in this case. The injunction Roca Labs wants would constitute an impermissible restraint on speech, one that the Florida courts, and courts around the country, have roundly rejected.


Respectfully Submitted,

*Marc J. Randazza*
_____
Marc J. Randazza, Esq.
Florida Bar No. 625566
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele:  702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

CASE NO.: 8:14-cv-2096-T-33EAJ

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 18, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a true and correct copy of the foregoing document is being served upon: Paul Berger, Esq. and Nicole Freedlander, Esq., counsel for Plaintiff, via transmission of Notices of Electronic Filing generated by CM/ECF and courtesy copies have been emailed to the following attorneys.

Paul Berger
P.O. Box 7898
Delray Beach, Florida 33482-7898
legal5@rocalabs.com

Nicole Freedlander
P.O. Box 402653
Miami Beach, Florida 33140
nicole@freedlanderlaw.com

Respectfully Submitted,

*Marc J. Randazza*

_____
Marc J. Randazza, Esq.
Florida Bar No. 625566
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele:  702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

Defendant's Opposition to Motion for Preliminary Injunction