UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROCA LABS, INC.,            Case No:  8:14-cv-2096-T-33EAJ

      Plaintiff,

  v.

CONSUMER OPINION CORP. and
OPINION CORP.,

      Defendants.
_____/

**MOTION FOR AN EMERGENCY TEMPORARY RESTRAINING ORDER
AND FOR AN ORDER TO SHOW CAUSE AS TO WHY ROCA LABS SHOULD
NOT BE SANCTIONED FOR WITNESS INTIMIDATION**

DEFENDANTS, OPINION CORP & CONSUMER OPINION CORP., hereby seek a temporary restraining order enjoining the Plaintiff from taking acts to intimidate and harass defense witnesses in this case, and seek sanctions against Plaintiff for already doing so.

**I.     Introduction**

Roca Labs (hereinafter, "Roca") sells a product, which it describes as a "nutraceutical." This product has questionable results, and has resulted in at least 78 complaints to the Better Business Bureau, and 34 complaints on the PisssedConsumer.com website. Not only are the results questionable, but Roca's product threatens the health and welfare of at least a portion (if not all) of its users.  ECF 13-5.

To try and suppress consumers from sharing their experiences, including experiences that include negative health consequences, (ECF 13-5 at ¶7) Roca filed the instant action, hoping to put an end to any consumer sharing negative information about their product. ECF 2 at 46.

In large part, the fulcrum upon which Roca's lever rests is its "Agreement." ECF 2 at 46. No matter how negative of an experience consumers have with the Roca product, the Agreement purports to bar them from making any negative statements about Roca's product or its business practices. ECF 2 at 53-54. Of course, this Agreement is unconscionable and unenforceable. See ECF 13 at 12. But, that does not stop Roca from trying to scare consumers nationwide with threats of litigation, in the hope that the only information that will make it to the marketplace is information that Roca approves.

The Defense managed to contact a handful of Roca's prior customers to serve as fact witnesses in this case. Most whom the Defense reached out to declined to respond, presumably due to the fact that Roca had already threatened them, or our of fear that Roca would retaliate against them for testifying. Those concerns have proven to be well founded, as Roca has now threatened at least one of the witnesses in this case, Jennifer Schaive. ECF 13-3. Attached hereto as Exhibit 1 is the e-mail from Roca Labs to Ms. Schaive, threatening suit against her. Attached hereto as Exhibit 2 is the declaration of Marc Randazza, Esq. attesting to the authenticity of the e-mail from Ms. Schaive. Although Roca will likely claim that it simply seeks to enforce its "Agreement," the timing of its aggression against Ms. Schaive makes its intentions transparent – Roca wants to intimidate Ms. Schaive. Further, its goals are likely broader than that. Roca Labs knows that if it follows through on its threats to file suit against Ms. Schaive, other witnesses will be far more reluctant to come forward.

In order to prevent Roca Labs from unlawfully interfering with witness statements in this lawsuit, the Defense seeks an immediate restraining order preventing Roca from threatening or otherwise harassing Ms. Schaive,[1] Ms. Anderson,[2] and Ms. Walsh,[3] by filing suit against witnesses in this case.  Furthermore, Roca should be compelled to immediately disclose any and all communications it has engaged in with potential witnesses in this case, and should be enjoined from engaging in further threatening or harassing communications with any consumers who have negatively reviewed the product, at least until the enforceability of its Agreement has been adjudicated.  That should be achieved at the October 8 hearing, and thus the relief sought should only impact Roca for 17 days.

## II.     Legal Analysis

### A.     Standard for a TRO

"A temporary restraining order protects against irreparable harm and preserves the status quo until a meaningful decision on the merits can be made." *Schiavo ex rel. Schindler v. Schiavo*, 358 F. Supp. 2d 1161, 1163 (M.D. Fla. 2005). In order to obtain a temporary restraining order, Plaintiff must demonstrate (1) a substantial likelihood that Plaintiff will eventually prevail on the merits; (2) a showing of irreparable injury to the Plaintiff unless the injunction issues; (3) proof that the threatened injury to Plaintiff outweighs whatever damage the proposed injunction may cause Defendant; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. *Johnson v. U.S. Dept. of Agriculture*, 734 F.2d 774, 781 (11th Cir. 1984).

---

[1] ECF 13-3
[2] ECF 13-6
[3] ECF 13-5

No particular quantum of proof is required as to each of the four criteria. *Louis v. Meissner*, 530 F. Supp. 924, 925 (S.D. Fla. 1981) the trial court should use a balancing-type approach. *State of Texas v. Seatrain International, S. A.*, 518 F.2d 175, 180 (5th Cir. 1975) ("none of the four prerequisites has a fixed quantitative value. Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus."). Even if the movant has little chance of success on the merits, "the importance of this requirement varies with the relative balance of threatened hardships facing each of the parties." *Louis v. Meissner*, 530 F. Supp. 924, 925 (S.D. Fla. 1981) (citing *Canal Authority v. Callaway* at 576). "Moreover, a showing that plaintiffs will be more severely prejudiced by a denial of the temporary restraining order or injunction then will defendants should it be granted, lessens the standard likelihood of success that must be met." *Id.*

**B.    The Factors**

**1.    There is a Substantial Likelihood that the Plaintiff will Prevail on the Merits of the Gag Clause's Enforceability**

The merits in this context are limited. The only merits that the Court need consider for the purposes of this Motion are the merits of the argument that the Roca "Gag Clause" is unenforceable. If it is not, then the threats against these witnesses (and most of the claims against the Defendants) will immediately evaporate.

The Agreement that Roca threatens these witnesses with is unconscionable. An unconscionable contract is one "'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Hume v. United States*, 132 U.S. 406, 411 (1889) (quoting *Earl of Chesterfield v. Janssen*, 28 Eng. Rep. 82, 100

(Ch. 1750)).[4]  "In general, an unconscionable contract has been defined as one which is so grossly unreasonable as to be unenforceable because of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *King v Fox*, 7 NY 3d 181, 191 (2006); *see also McCollum v. Xcare.net, Inc.*, 212 F. Supp. 2d 1142, 1148 (N.D. Cal. 2002) (noting that "the California Supreme Court defined an unconscionable contract as one that considered in its context, is unduly oppressive").  Roca Labs complains that it put the Defendants on notice of the unconscionable contract, and on that basis claims that it compelled them to respect its outrageous (and unlawful) terms.  Roca Labs has presented no legitimate business reason to support the gag clause.

> Legitimate business interest may include trade secrets; valuable confidential business or professional information that otherwise does not qualify as trade secrets; substantial relationships with specific prospective or existing customers; or customer goodwill associated with: an ongoing business by way of trade name, trademark, service mark, or 'trade dress,' or a specific geographic location, or a specific marketing or trade area.

*United Subcontractors, Inc. v. Godwin*, 2012 U.S. Dist. LEXIS 67061, 18, 2012 WL 1593173 (S.D. Fla. Feb. 3, 2012).  Preventing customers from providing their opinion of Roca Labs' product is not a legitimate business interest, but instead is itself a deceptive trade practice.  Any act "which unfairly takes advantage of the lack of knowledge, ability, experience or capacity of a consumer; or results in a gross disparity between the value received by a consumer and the price paid, to the consumer's detriment" constitutes an unconscionable trade practice.  See *People v. Network Assocs.*, 758 N.Y.S.2d 466; 195 Misc. 2d 384 (N.Y. Sup. Ct. 2003).  Deceiving customers about their ability to post factual reviews about the product online is itself unlawful in the Defendants'

---

[4] Roca's contract is procedurally unenforceable as well as substantively so.  Nowhere in their "Agreement" do they so much as discuss how much the "discounted" price is.  This two-tiered pricing is an illusion. See *In re Zappos, Inc.*, 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012).

home district. *Id.* Of course, the end result of this unconscionable agreement is that the only information about this product that can be readily obtained is the fluff disseminated by the Plaintiff. Therefore, consumers buying this product are deprived of the ability to make an informed decision about something that could negatively affect their physical well-being. ECF 13-1 at ¶15-19; ECF 13-3 at ¶¶8, 18. And then, once they purchase it, based on information skewed by Roca's bullying of anyone who might share inconvenient truths, Roca refuses to give the consumers refunds if they are dissatisfied or even if they get ill from it. ECF 13-3 at ¶¶6-7, 13, 16; ECF 13-5 at ¶¶9, 14.

Suppressing consumer reviews is unconscionable and unenforceable – no matter what the product. See *People v. Network Assocs.*, 758 N.Y.S.2d at 469. This is even more so when we consider the context. While Plaintiff calls its product a "food additive" (presumably to avoid FDA regulation), is the concoction a drug, a food, or something else? Whatever it is, this is a product that has made some consumers sick. ECF 13-5 at ¶¶6-8. Forcing them to remain silent, thus depriving other victims of the ability to make an informed decision, is unconscionable.

Accordingly, the defendants have a substantial likelihood of success on the merits of the issue that the Roca "Agreement" is unenforceable.

### 2. There Will Be Irreparable Injury Unless the Injunction Issues

This case is in a precarious state. Roca has tried to intimidate the Better Business Bureau, as well as any consumer who might dare to share his constitutionally-protected opinions of Roca's product. In this case, much of the defense may turn on testimony by former Roca Labs customers. If this Court tolerates Roca's intimidation tactics, it will place more of Roca's consumers in fear that they too will be the victims of retaliatory legal action if they testify or discuss their negative experiences with Roca's product in any forum. Once so frightened, it will

likely be difficult to pry them from their defensive postures.  This Court must show these people that they need not fear that the Court will turn a blind eye to violations of 18 U.S.C. § 1512.

3. **The Threatened Injury Outweighs Whatever Damage the Proposed Injunction may cause to Roca**

The injunctive relief sought is limited.  The defendants presume that at the October 8, 2014 hearing, the unenforceability of the Agreement's "gag clause" will be resolved.  Accordingly, the TRO can be as limited as a 17-day delay, if the court resolves the enforceability issue at the October 8 hearing.  If the court does not, the defendants will address extending the TRO into a preliminary injunction at that time.  "Fundamentally, temporary restraining orders are designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction."  *Wells v. Daugherty Sys.*, 2014 U.S. Dist. LEXIS 127762 (N.D. Ga. Sept. 12, 2014), see M.D. Fla. Local Rule 4.05 (temporary restraining orders will be entered in emergency cases to maintain the status quo).

4. **The Injunction Would Serve the Public Interest**

The public interest is best served by the federal witness intimidation statute being upheld.  In the absence of our mutual respect for Section 1512, defendants will be subject to the whims and threats of abusive plaintiffs, who may wish to silence witnesses for the other side.  There is no possible way that a 17-day delay in any witness intimidation could adversely affect the public interest.

5. **There should be no need for a bond**

There can be no damages to the Plaintiff in the issuance of a 17-day injunction, forcing the Plaintiff to simply stop committing felonies.  Nevertheless, the Defendants offer a bond of $10 in the interest of formality.

C.  **Witness Intimidation**

1.  **18 U.S.C. § 1512**

Witness intimidation is a crime. See 18 U.S.C. §1512(b)(1) (Knowingly using intimidation or threats, to "influence, delay, or prevent the testimony of any person in an official proceeding" or attempting to do so, constitutes witness intimidation). See 18 U.S.C. §1512(d)(1) (Witness tampering includes any action that "intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from attending or testifying in an official proceeding" or attempts to do so).

2.  **Roca's Acts Are Prohibited by 18 U.S.C. § 1512**

While the statute is normally considered in the context of violent threats, "[t]he section was written broadly to encompass non-coercive efforts to tamper with a witness." *United States v. Amato*, 86 F. App'x 447, 450 (2d Cir. 2004) (finding evidence sufficient to support conviction for witness tampering where the defendant, "[c]oncerned [the witness] would testify against him… directed intermediaries… to reach out to [the witness] and deliver a message." A party offends Section 1512 if it is "motivated by an improper purpose." *United States v. Thompson*, 76 F.3d 442, 452 (2d Cir. 1996). It is an improper purpose to cause a witness to withhold relevant facts about a defendant's wrongful acts. See *United States v. Price*, 443 F. App'x 576, 582 (2d Cir. 2011). Even when there is an absence of evident of intent behind the message, or an absence of evidence concerning the effect thereof, 18 U.S.C. § 1512 acts to prohibit a party from engaging in acts that may negatively influence testimony. See *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 594-595 (S.D.N.Y.2014).

In this case, there can be no other conclusion, except that Roca's actions violate Section 1512. The timing of its imminent threats against Ms. Schaive make it clear that the intent is to

intimidate her and any other parties who might be inclined to serve as witnesses in this case. This seems even more clear given that Roca seems to have selectively targeted Ms. Schiave, but did not send similar updated threats to other complaining parties, who have not appeared as witnesses in this case. See *Randazza decl.*  Even if Roca's behavior is a coincidence, there can be no question that it has had the *effect* of intimidating Ms. Schaive. Further, it is clear that once Roca files its suit against Schaive, it will use that information to try and intimidate other witnesses. One need look no further than the email sent to Ms. Schiave today, in which Roca brags about having already sued one unfortunate victim. See Exhibit A. The next round of letters will likely cite that Roca sued *two or more* witnesses. Once this happens, this Court will be deprived of a key source of facts that will allow it to evaluate this case.

**C.     Remedies Sought**

The Defense seeks an immediate restraining order preventing Roca from threatening or otherwise harassing Ms. Schaive, Ms. Anderson, or Ms. Walsh, by filing suit against them or threatening to do so until at least October 8, 2014. The Order should also prohibit taking these actions against any other witnesses in this case until at least October 8, 2014.

Furthermore, Roca should be compelled to immediately disclose any and all communications it has engaged in with witnesses or potential witnesses in this case, and should be enjoined from engaging in further threatening or harassing communications with any consumers who have negatively reviewed the product, at least until the enforceability of its Agreement has been adjudicated on or after October 8, 2014.

Furthermore, should Roca Labs file suit or otherwise threaten suit against any witness in this case, prior to the Court's determination of Roca's Motion for Preliminary Injunction, sanctions ought to be imposed against Roca.

### D. Immediate Sanctions Are Appropriate

"A court may impose sanctions for litigation misconduct under its inherent power." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009). Furthermore, "[t]he key to unlocking a court's inherent power is a finding of bad faith… A party demonstrates bad faith by, inter alia, delaying or disrupting the litigation or hampering enforcement of a court order." *Id.*, citing *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). By intimidating witnesses in this case, Roca Labs is disrupting the litigation, and is threatening the very sanctity of this Court's procedure.

Roca knew precisely what it was doing, when it did it. This coercive and unlawful conduct cannot be given this Honorable Court's imprimatur by the administration of a soft touch. If a party engages in felonious activity, with the intent (or the foreseeable effect), of intimidating witnesses and thus placing an unwelcome finger on the scales of justice, that party should not be permitted to escape from such conduct with a mere admonishment that it should not commit any more felonies. At the very least, Roca should be compelled to pay the costs and fees incurred in the bringing of this Motion and any subsequent fees and costs incurred in prosecuting the Motion.

### III. CONCLUSION

Based on the foregoing, Defendant respectfully requests this Court grant the Motion for Emergency Temporary Restraining Order against Roca Labs, preventing them from continuing

RANDAZZA | LEGAL GROUP

to intimidate and threaten witnesses and potential witnesses in this case, at least until the Motion for Preliminary Injunction has been adjudicated; and, Roca should be sanctioned for its conduct leading to the necessity of filing this motion.

Respectfully Submitted,

*Marc J. Randazza*
_____
Marc J. Randazza, Esq.
Florida Bar No. 625566
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele: 702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

CASE NO.: 8:14-cv-2096-T-33EAJ

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on September 22, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will transmit the motion to all counsel of record. I also certify that a true and correct copy of the foregoing document is being served upon: Paul Berger, Esq. and Nicole Freedlander, Esq., via email.

Paul Berger
P.O. Box 7898
Delray Beach, Florida 33482-7898
legal5@rocalabs.com

Nicole Freedlander
P.O. Box 402653
Miami Beach, Florida 33140
nicole@freedlanderlaw.com

                                                   /s/ Theresa M. Haar\_\_\_\_\_
                                                   An employee / agent of
                                                   RANDAZZA LEGAL GROUP

RANDAZZA | LEGAL GROUP