**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ROCA LABS, INC.,                                  Case No: 8:14-cv-2096-T-33EAJ

         Plaintiff,

    v.

CONSUMER OPINION CORP. and
OPINION CORP.,

         Defendants.

_____/

## MOTION FOR A TEMPORARY RESTRAINING ORDER

DEFENDANTS, OPINION CORP & CONSUMER OPINION CORP., hereby seek a temporary restraining order enjoining the Plaintiff from taking acts to intimidate and harass defense witnesses in this case.

**I.    Introduction**

The Defendants initially sought a Temporary Restraining Order on September 22, 2014. ECF 15.  The Court denied it without prejudice, and invited a renewed motion to be filed today. ECF 17.  Since the Order, new facts and additional authority have come to light, which should satisfy the court that a short and limited TRO is necessary and proper.

Rather than trouble the Court with this Motion, the Defense sought a stipulation from Roca requesting that they refrain from threatening any witnesses or potential witnesses until

October 8. Roca was unwilling to make even these minor assurances, thus requiring the filing of the instant motion.[1]

Roca's product threatens the health and welfare of at least a portion (if not all) of its users. ECF 13-5. Further, many consumers had negative experiences with Roca, and sought resolution or at least to help other consumers make informed decisions about the product. To try and suppress consumers from sharing their experiences, including reports of negative health consequences, (ECF 13-5 at ¶7) Roca filed the instant action, hoping to put an end to any consumer sharing negative information about their product. ECF 2 at 46.

So far, three of Roca's prior customers have agreed to serve as witnesses. Most others declined to respond, wishing to not get involved, out of fear that Roca would retaliate against them for testifying. Those concerns proved to be well-founded, as Roca threatened **all three of the witnesses Opinion Corp. identified**.[2] The timing of its aggression against these three women makes its intentions transparent – Roca wants to intimidate them and any other potential witnesses in this case.[3]

As for Ms. Walsh and Ms. Anderson, it has been in excess of three years since they lodged their complaints with the Better Business Bureau. Roca threatened litigation at the outset, demanding they retract their complaints. Roca then went **completely silent for more than three years**. However, after such a long period of dormancy Roca *now* seeks to threaten imminent legal action against these witnesses. Nothing could have motivated Roca to reach out

---

[1] Attached hereto as Exhibit 1 is the e-mail exchange between Mr. Randazza and Mr. Berger. Exhibit 2 is the declaration of Marc Randazza, attesting to the authenticity of the e-mail exchange.
[2] Attached hereto as Exhibit 3 is the e-mail from Roca Labs to Ms. Schaive, threatening suit against her. Exhibit 4 is the e-mail threatening suit against Ms. Walsh. Exhibit 5 is the e-mail threatening suit against Ms. Anderson.
[3] "The issues boil down to whether the timing of a lawsuit can deprive it of a legitimate purpose, even though in the long run it could serve such a purpose if delayed." *United States v. Tison*, 780 F.2d 1569, 1572 (11th Cir. 1986) (11th Circuit determined the timing of the threat of civil litigation deprived the lawsuit of a legitimate purpose).

to these women after such a long period other than to try and intimidate witnesses in this case. In a prior case, this Circuit recognized almost the same behavior as a violation of 18 U.S.C. §1512 and §1514.  See *United States v. Tison*, 780 F.2d 1569, 1572 (11th Cir. 1986) (the timing of the threat of civil litigation deprived the lawsuit of a legitimate purpose, and thus constituted witness intimidation).

In order to prevent Roca from continuing to intimidate witnesses in this lawsuit, the Defense seeks a brief restraining order to prevent Roca from threatening or otherwise harassing Ms. Schaive,[4] Ms. Anderson,[5] and Ms. Walsh,[6] or filing suit against any other witnesses in this case.[7]  Furthermore, Roca should be compelled to immediately disclose any and all communications it has engaged in with potential witnesses in this case, and should be enjoined from engaging in further threatening or harassing communications with any consumers who express a wish to testify, or whom the Defense identifies as potential witnesses.[8]  At the October 8 hearing, the enforceability of Roca's "Agreement" should be resolved, and thus the relief sought should impact Roca for a mere 13 days.[9]

---

[4] ECF 13-3
[5] ECF 13-6
[6] ECF 13-5
[7] If Roca can demonstrate to the court that this 13-day delay will result in the running of a statute of limitations, the Defense is prepared to limit its request in order to spare Roca the complete inability to prosecute a case, no matter how frivolous it may seem.
[8] At this time, that list only includes people who complained to the Better Business Bureau or on PissedConsumer.com about the Roca Labs product, and the expert witness disclosed in the Opposition to Roca's Motion for a Preliminary Injunction.  ECF 13.
[9] In the event that it is not, the Defense will address that at a later time.

**II.     Legal Analysis**

**A.     Witness Intimidation**

    **1.     18 U.S.C. § 1512**

Witness intimidation is a crime.  See 18 U.S.C. §1512(b)(1) (Knowingly using intimidation or threats, to "influence, delay, or prevent the testimony of any person in an official proceeding" or attempting to do so, constitutes witness intimidation).  See 18 U.S.C. §1512(d)(1) (Witness tampering includes any action that "intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from attending or testifying in an official proceeding" or attempts to do so).  Under some factual scenarios, a threat of suit will not qualify in order to attach criminal liability, but those scenarios are limited to when a defendant threatens a RICO counterclaim.[10]

    **2.     Roca's Acts Are Prohibited by 18 U.S.C. § 1512**

Section 1512 "was written broadly to encompass non-coercive efforts to tamper with a witness." *United States v. Amato*, 86 F. App'x 447, 450 (2d Cir. 2004) (finding evidence sufficient to support conviction for witness tampering where the defendant, "[c]oncerned [the witness] would testify against him… directed intermediaries… to reach out to [the witness] and deliver a message."  A party offends Section 1512 if it is "motivated by an improper purpose." *United States v. Thompson*, 76 F.3d 442, 452 (2d Cir. 1996).  It is an improper purpose to cause a witness

---

[10] The 11th Circuit clarified that *G-I Holdings* arose "in the civil RICO context where litigants have included a threat to file a lawsuit as the predicate act of extortion. By rejecting such threats as predicate acts, these courts have implicitly held that threats to sue cannot constitute criminal extortion. Most of these courts have recharacterized the extortion charges as actions for malicious prosecution and have held that malicious prosecution is not a RICO predicate act." *United States v. Pendergraft*, 297 F.3d 1198, 1205 (11th Cir. 2002).  However, the case at hand is not one of criminal extortion or RICO, but is instead one of witness intimidation.

to withhold relevant facts about a defendant's wrongful acts. See *United States v. Price*, 443 F. App'x 576, 582 (2d Cir. 2011). Even when there is an absence of evident of intent behind the message, or an absence of evidence concerning the effect thereof, 18 U.S.C. §1512 acts to prohibit a party from engaging in acts that may negatively influence testimony. *See Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 594-595 (S.D.N.Y.2014).

There are out-of-circuit cases addressing different factual contexts that say that merely threatening litigation is not witness intimidation.[11] However, in a factual scenario very similar to the one at hand, the 11th Circuit took a contrary approach, which the Defendants believe is controlling. See *United States v. Tison*, 780 F.2d 1569 (11th Cir. 1986). In *Tison*, the 11th Circuit evaluated the question of whether a civil suit against a witness could constitute obstruction or harassment of a witness in violation of 18 U.S.C. §1512 and §1514. In *Tison*, a federal grand jury handed down an indictment, which charged Scan Realty Services, Inc. with RICO and RICO conspiracy violations. One week after the indictment was handed down, Tison, the attorney representing Scan Realty, threatened to sue the witness in that case, Bean, for not providing information regarding his grand jury testimony to the attorney. Ultimately, the 11th Circuit determined that the party was "enjoined from commencing the civil action or undertaking any other 'course of conduct' to harass the witness… until completing of the [current case] or three years, whichever is earlier. This time limitation does not prejudice them because they will be

---

[11] See *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 266 (S.D.N.Y. 2001); *Philadelphia Reserve Supply Company v. Nowalk & Associates, Inc.*, 1992 U.S. Dist. LEXIS 12745, Civ. A. No. 91-0449, 1992 WL 210590 (E.D. Pa. Aug. 25, 1992). (Explaining that the logic in this case is that *countersuits* are not witness intimidation. "One cannot threaten to sue someone and expect there to be no reaction or response. In sum, waging a counterattack to civil litigation, without factual allegations of unlawful means, does not amount to witness intimidation.") Furthermore, as described in greater detail below, those cases are notably different than the case at hand.

able to file their defamation suit in state court within the four-year statute of limitations." *Id.* at 1573. That is precisely the type of injunction sought here.

While *Tison* was largely predicated on §1514, and not §1512, the holding still applies. Threatening or filing a civil suit against a witness during the course of the case they are testifying in, gives rise to harassment of that witness, and must be prohibited. Here, in the long run, even if Roca has a legitimate purpose for filing suit against these three witnesses, it has no such legitimate purpose in pressing these cases over the next 13 days.[12] The timing of the threatened litigation deprives those actions of all indicia of a legitimate purpose, giving rise to a course of conduct amounting to harassment of the witnesses.

In the Court's order on September 23, 2014 it cited to *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 266 (S.D.N.Y. 2001), which relied on *Philadelphia Reserve Supply Company v. Nowalk & Associates, Inc.*, 1992 U.S. Dist. LEXIS 12745, Civ. A. No. 91-0449, 1992 WL 210590 (E.D. Pa. Aug. 25, 1992) as a basis for finding that threats of litigation itself cannot give rise to a finding of witness intimidation. However, the Defendants had (in their haste to beat Roca's 4:00 PM deadline in its threats against the witnesses) overlooked *Tison* in their briefing. Now that the Court has the benefit of briefing on that case, it will likely see that the requested relief is warranted.

Nevertheless, even in the absence of the *Tison* authority, the facts of *Nowalk* are markedly different, and thus the case is readily distinguishable. In *Nowalk*, the court determined that a defendant threatening to countersue a plaintiff is not engaging in witness intimidation. The situation here is markedly different. Ms. Walsh, Ms. Anderson, and Ms. Schaive are not

---

[12] The "legitimate purpose" may be determined at the October 8 hearing.

suing Roca Labs. They are third party witnesses who are under newly-revived threats of baseless litigation. This is not a counterattack, as *Nowalk* and *G-I Holdings* examined. This is aggression toward witnesses in order to intimidate them. If Roca is permitted to continue threatening witnesses and potential witnesses with litigation, Opinion Corp. will be hamstrung from defending itself, frustrating justice and depriving it of due process – to say nothing for the damage to the judicial process itself.

The timing of Roca Labs' imminent threats against Ms. Schaive, Ms. Walsh, and Ms. Anderson make it clear that the intent is to intimidate her and any other parties who might be inclined to serve as witnesses in this case. Even if Roca's behavior is an unfortunate coincidence, there can be no question that it has had the *effect* of intimidating Ms. Schaive, Ms. Walsh, and Ms. Anderson. See Exhibit 3 at ¶13-15; Exhibit 4 at ¶12-17; Exhibit 5 at ¶12-17. Section 1512 not only makes it a crime to attempt to deter testimony by force, intimidation, or threat, but it is also a crime to try to deter such testimony through sheer persuasion without the use of physical or economic threat, so long as one has a corrupt purpose. *United States v. Shotts*, 145 F.3d 1289, 1301 (11th Cir.1998) (sustaining a conviction under §1512(b) where an employer told an employee not to talk to investigators so that she would not be bothered, finding that a jury could reasonably have inferred that the employer was attempting with improper motive to persuade the employee not to talk to investigators); see also *United States v. Tocco*, 135 F.3d 116, 126-27 (2d Cir.1998) (sustaining defendant's conviction of witness tampering based on evidence showing defendant had substantial influence over witness because he was her landlord and her employer, and had paid for an attorney to help her prepare her testimony). While economic threat is not necessary to sustain a conviction under Section 1512, the threat of litigation is certainly an economic threat. Further, it is clear that once Roca files its suit against these three

witnesses, it will use that information to try and intimidate other witnesses. One need look no further than the e-mails sent to these three women this week, in which Roca brags about having already sued one unfortunate victim. See Exhibits 3, 4, and 5.

It is important to note that the question here is not whether Roca Labs should be prosecuted and incarcerated for their actions, as in *G-I Holdings*, and in *Tison*. The Defendants seek no such drastic remedy. The Defendants seek a mere 13-day injunction, prohibiting further witness intimidation. And, the court should use its inherent power to order such a limited injunction, as clearly its warning in the Order was insufficient to deter Roca from its conduct, as it has continued, and Roca has refused to agree to abate it. ECF 17. See Exhibit 1.

**B.   Standard for a TRO**

The Local Rules provide that to prevail on an application for a Temporary Restraining Order, the movant must demonstrate: "(i) the likelihood that the moving party will ultimately prevail on the merits; (ii) the irreparable nature of the threatened injury and the reason that notice cannot be given; (iii) the potential harm that might be caused to the opposing parties or others if the order is issued; and (iv) the public interest." M.D. Fla. Local Rule 4.05.

**C.   The Factors**

    **1.   Defendants will Prevail on the Gag Clause's Unenforceability**

The merits in this context are limited. The only merits that the Court need consider for the purposes of this Motion are the merits of the argument that the Roca "Gag Clause" is unenforceable. If the gag clause is determined unenforceable, then the threats against these witnesses, and most of the claims against the Defendants, will immediately evaporate.

The Agreement that Roca threatens these witnesses with is unconscionable. An unconscionable contract is one "'such as no man in his senses and not under delusion would

make on the one hand, and as no honest and fair man would accept on the other.'" *Hume v. United States*, 132 U.S. 406, 411 (1889) (quoting *Earl of Chesterfield v. Janssen*, 28 Eng. Rep. 82, 100 (Ch. 1750)).[13] "In general, an unconscionable contract has been defined as one which is so grossly unreasonable as to be unenforceable because of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *King v Fox*, 7 NY 3d 181, 191 (2006); *see also McCollum v. Xcare.net, Inc.*, 212 F. Supp. 2d 1142, 1148 (N.D. Cal. 2002) (noting that "the California Supreme Court defined an unconscionable contract as one that considered in its context, is unduly oppressive"). Roca Labs complains that it put the Defendants on notice of the unconscionable contract, and on that basis claims that it compelled them to respect its outrageous (and unlawful) terms. Roca Labs has presented no legitimate business reason to support the gag clause.

> Legitimate business interest may include trade secrets; valuable confidential business or professional information that otherwise does not qualify as trade secrets; substantial relationships with specific prospective or existing customers; or customer goodwill associated with: an ongoing business by way of trade name, trademark, service mark, or 'trade dress,' or a specific geographic location, or a specific marketing or trade area.

*United Subcontractors, Inc. v. Godwin*, 2012 U.S. Dist. LEXIS 67061, 18, 2012 WL 1593173 (S.D. Fla. Feb. 3, 2012). Preventing customers from providing their opinion of Roca Labs' product is not a legitimate business interest, but instead is itself a deceptive trade practice. Any act "which unfairly takes advantage of the lack of knowledge, ability, experience or capacity of a consumer; or results in a gross disparity between the value received by a consumer and the price paid, to the consumer's detriment" constitutes an unconscionable trade practice. See *People v. Network*

---

[13] Roca's contract is procedurally unenforceable as well as substantively so. Nowhere in their "Agreement" do they so much as discuss how much the "discounted" price is. This two-tiered pricing is an illusion. See *In re Zappos, Inc.*, 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012).

*Assocs.*, 758 N.Y.S.2d 466; 195 Misc. 2d 384 (N.Y. Sup. Ct. 2003). Deceiving customers about their ability to post factual reviews about the product online is itself unlawful in the Defendants' home district. *Id.* Of course, the end result of this unconscionable agreement is that the only information about this product that can be readily obtained is the fluff disseminated by the Plaintiff. Therefore, consumers buying this product are deprived of the ability to make an informed decision about something that could negatively affect their physical well-being. ECF 13-1 at ¶15-19; ECF 13-3 at ¶¶8, 18. And then, once they purchase it, based on information skewed by Roca's bullying of anyone who might share inconvenient truths, Roca refuses to give the consumers refunds if they are dissatisfied or even if they get ill from it. ECF 13-3 at ¶¶6-7, 13, 16; ECF 13-5 at ¶¶9, 14.

Suppressing consumer reviews is unconscionable and unenforceable – no matter what the product. See *People v. Network Assocs.*, 758 N.Y.S.2d at 469. This is even more so when we consider the context. While Plaintiff calls its product a "food additive" (presumably to avoid FDA regulation), is the concoction a drug, a food, or something else? Whatever it is, this is a product that has made some consumers sick. ECF 13-5 at ¶¶6-8. Forcing them to remain silent, thus depriving other victims of the ability to make an informed decision, is unconscionable.

Accordingly, the defendants have a substantial likelihood of success on the merits of the issue that the Roca "Agreement" is unenforceable. No particular quantum of proof is required as to each of the four criteria. *Louis v. Meissner*, 530 F. Supp. 924, 925 (S.D. Fla. 1981) the trial court should use a balancing-type approach. *State of Texas v. Seatrain International, S. A.*, 518 F.2d 175, 180 (5th Cir. 1975) ("none of the four prerequisites has a fixed quantitative value. Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus."). Even if the movant has little chance of success on the merits, "the importance of this requirement

varies with the relative balance of threatened hardships facing each of the parties." *Louis v. Meissner*, 530 F. Supp. 924, 925 (S.D. Fla. 1981) (citing *Canal Auth. of Fla. v. Callaway,* 489 F.2d 567 (5th Cir. 1974)). "Moreover, a showing that plaintiffs will be more severely prejudiced by a denial of the temporary restraining order or injunction then will defendants should it be granted, lessens the standard likelihood of success that must be met." *Id.*

2. **There Will Be Irreparable Injury Unless the Injunction Issues**

There is a meaningful risk of irreparable harm in the absence of a TRO. The injuries Opinion Corp. faces are: loss of access to evidence, loss of access to witnesses, and an inability to fully defend itself. Indeed, the Defendants will suffer significant due process deprivations if Roca is permitted to unlawfully intimidate witnesses in this case.

This case is in a precarious state. Roca has tried to intimidate the Better Business Bureau, as well as any consumer who might dare to share their constitutionally-protected opinions of its product. In this case, much of the defense will turn on testimony by former Roca Labs customers and former employees. If Roca is permitted to threaten or file lawsuits against witnesses in an attempt to silence them, it will place more of Roca's consumers in fear that they too will be the victims of retaliatory legal action if they testify. Once so frightened, it will likely be difficult to pry them from their defensive postures. Opinion Corp. will be put in a severely compromised position if Roca is permitted to file suit against any witness who dares to come forward as identifying themselves as Roca victims.

The purpose of the temporary restraining order "is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 357 F. Supp. 2d 1378, 1383 (M.D. Fla. 2005). On October 8, the court is expected to render a meaningful decision on the merits, by evaluating Roca's Motion for

Preliminary Injunction and Opinion Corp.'s Opposition. Until then, it is imperative we maintain the *status quo*, lest Opinion Corp.'s witness be intimidated into not participating.

### 3. The Threatened Injury Outweighs Whatever Damage the Proposed Injunction may cause to Roca

The injunctive relief sought is limited. The defendants presume that at the October 8, 2014 hearing, the unenforceability of the Agreement's "gag clause" will be resolved. Accordingly, the negative impact upon Roca is that there will be 13-day delay, if the Court resolves the enforceability issue at the October 8 hearing. M.D. Fla. Local Rule 4.05; Fed. R. Civ. P. 65. If the court does not, the defendants will address extending the TRO into a preliminary injunction at that time.

### 4. The Injunction Will Serve the Public Interest

The public interest would be served by issuing the TRO. Specifically, the TRO would maintain the status quo by preserving the faith of the witnesses in the sanctity of the legal system, and helping the witnesses to feel secure that their participation in the judicial process will not result in further threats and intimidation. This benefit will extend beyond the witnesses in this case – if this Court condones Roca's actions, other similarly-situated litigants will recognize that there is an exception to 18 U.S.C. §1512 in the Middle District of Florida, and that *Tison* is no longer good law, which would then provide a safe-haven for witness intimidation, to ensure that there will be no possible witnesses against them in pursuing baseless litigation. The integrity of the judicial process will suffer for all except those with the ethical flexibility to engage in such conduct.

### 5. There should be no need for a bond

There can be no damages to the Plaintiff in the issuance of a 13-day injunction, forcing the Plaintiff to simply stop committing felonies. *See Johnston v. Tampa Sports Authority*, 8:05-cv-2191, 2006 U.S. Dist. LEXIS 77614 (M.D. Fla. Oct. 16, 2006) ("[T]he bond requirement of Rule 65(c) is appropriately waived in certain circumstances"). Nevertheless, the Defendants offer a bond of $10 in the interest of formality.

### D. Remedies Sought

Roca should be enjoined as follows: The Defense seeks an immediate restraining order preventing Roca from threatening or otherwise harassing Ms. Schaive, Ms. Anderson, and Ms. Walsh, by filing suit against them or any other witnesses in this case until at least October 8, 2014.

Furthermore, Roca should be compelled to immediately disclose any and all communications it has engaged in with witnesses in this case, and should be enjoined from engaging in further threatening or harassing communications with any consumers who have negatively reviewed the product, at least until the enforceability of its Agreement has been adjudicated on or after October 8, 2014.

Furthermore, should Roca Labs file suit against any witness in this case, prior to the Court's determination of Roca's Motion for Preliminary Injunction, sanctions ought to be imposed against Roca.

### III. CONCLUSION

Based on the foregoing, Defendant respectfully requests this Court grant the Motion for Emergency Temporary Restraining Order against Roca Labs, preventing them from continuing to intimidate and threaten Opinion Corp.'s witnesses in this case, at least until the Motion for

Preliminary Injunction has been adjudicated. The Defendants do not seek to bring a civil claim against the Plaintiff. The Defendants are not seeking to bar Plaintiff from pursuing litigation that it may rightfully bring, and as such, are willing to waive this TRO for any individual that Roca may seek to bring suit against, whose statute of limitations will expire within the next 13 days. Opinion Corp. is simply seeking that the Court enjoin Roca from engaging in further acts of witness intimidation by filing suit against those who dare to support Opinion Corp.'s defense of itself.

    Respectfully Submitted,

    *Marc J. Randazza*
    _____
    Marc J. Randazza, Esq.
    Florida Bar No. 625566
    RANDAZZA LEGAL GROUP
    3625 S. Town Center Drive
    Las Vegas, Nevada 89135
    Tele: 702-420-2001
    Fax: 305-437-7662
    Email: ecf@randazza.com

CASE NO.: 8:14-cv-2096-T-33EAJ

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 26, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document is being served upon counsel for Plaintiff, via transmission of Notices of Electronic Filing generated by CM/ECF.

*T. Waar*
_____
An employee / agent of
RANDAZZA LEGAL GROUP

RANDAZZA | LEGAL GROUP