**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ROCA LABS, INC.,**

    **Plaintiff,**

vs.                                              Case No.: 8:14-CV-2096-T-33EAJ

**CONSUMER OPINION CORP., et al.,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff Roca Labs, Inc.'s ("Plaintiff's") **Plaintiff's Verified Motion for Entry of a Temporary Injunction and Supporting Memorandum of Law** (Dkt. 5)[1] and Defendant Consumer Opinion Corporation, et al.'s ("Defendants'") **Defendants' Opposition to Plaintiff's Motion for Entry of Temporary Injunction** (Dkt. 13).[2] On September 5, 2014, the Court construed Plaintiff's motion as a motion for preliminary injunction and referred the motion to the undersigned for issuance of a report and recommendation. (Dkt. 7)  A hearing has been held. For the following reasons, it is recommended that the motion for preliminary injunction be denied.

---

[1] Plaintiff's motion was verified by Don Juravin.  At the hearing, Plaintiff also offered one exhibit, thirty-seven (37) pages in length, containing color printouts of posts about Plaintiff on Defendants' website and on Twitter.

[2] Defendants attached to their response six exhibits containing Better Business Bureau complaints and affidavits by Michael Podolsky, and three former customers of Plaintiff: Jennifer Schiave, Maragaret Walsh, and Tameka Anderson.  While the efficacy of Plaintiff's products is not a requirement for either of the causes of action relied on by Plaintiff, Defendants have also submitted an affidavit by Thomas Parisi, M.D., stating use of Plaintiff's products could lead to health problems and unintended side effects.

**Background**

Plaintiff is a company that manufactures, markets, and sells dietary supplements for use as an alternative to gastric bypass surgery. Defendants Consumer Opinion Corporation and Opinion Corporation operate a website, PissedConsumer.com, that allows users of the website to review consumer goods and services.

On August 26, 2014, Plaintiff's state court action was removed to federal court. Plaintiff alleges against Defendants deceptive and unfair trade practices (pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Section 501.204(1), Fla. Stat.), tortious interference with Plaintiff's contractual and prospective economic relationships, and defamation. Plaintiff's complaint also seeks declaratory relief that Defendants' conduct constitutes false and misleading advertising and that Defendants tortiously interfered with Plaintiff's contractual agreements with their customers or prospective economic relationships with potential customers, and defamed Plaintiff per se. At the hearing, Plaintiff clarified that it seeks a preliminary injunction requiring Defendants to: 1) refrain from making statements on Defendants' website, pissedconsumer.com, that Defendants are a consumer advocacy group and can resolve customers' problems; 2) remove Tweets posted by Defendants on Twitter that interfere with Plaintiff's contractual relationships with its customers; and 3) give notice to Plaintiff's customers who use Defendants' website that if the customer has entered into an agreement with Plaintiff containing a non-disparagement provision, the customer could be sued for posting negative comments about Plaintiff.

**Findings of Fact**[3]

---

[3] The findings of fact are based on the undisputed facts or, where disputed, the preponderance of credible evidence submitted by the parties in connection with the pending motion, including the statements in the Verified Motion (Dkt. 5).

2

1. Plaintiff, Roca Labs, Inc., is small business based in Sarasota, Florida.

2. Plaintiff manufactures, markets, and sells dietary supplements, including weight loss products for use as an alternative to gastric bypass surgery.

3. Plaintiff's products are available for purchase only from Plaintiff; they are not available for purchase from retail outlets. Plaintiff does not offer refunds on its products.

4. When customers purchase products from Plaintiff, the customers enter into a purchase agreement, called the Personal Terms, Conditions & Disclaimers Agreement ("Purchase Agreement"), with Plaintiff.

5. The Purchase Agreement requires customers to agree that, unless they pay the full purchase price without conditions, they "WILL NOT speak, publish, print, blog or write negatively about The Product or The Company in any way."

6. Plaintiff threatens to sue those customers who breach the non-disparagement provision in the Purchase Agreement.

7. Plaintiff rewards customers for their weight loss by offering rewards and financial incentives for sharing their success stories.

8. Defendants, Consumer Opinion Corporation and Opinion Corporation, are New York corporations.

9. Defendants operate the website pissedconsumer.com.

10. Defendants' website allows users to share their experiences with consumer goods and services by posting anonymous comments. Some comments are negative; some are positive.[4]

---

[4] The name of Defendants' website - pissedconsumer.com - suggests, however, that negative reviews predominate.

11. Defendants post links ("Tweets") on Twitter to the reviews featured on Defendants' website.

12. Businesses can respond for free to any review by using the comments section beneath the review on Defendants' website. However, Defendants' policy is not to remove negative reviews absent a court order or notarized declaration from the author of the review.

13. Defendants offer monthly subscription monitoring for those businesses that desire to be notified when reviews are posted about the business; the monitoring service alerts the business when reviews are posted and allows the business to post an official response. Defendants do not sell the option to remove reviews from their website.

14. Some users of Defendants' website posted the terms and conditions of their Purchase Agreement with Plaintiff on Defendants' website.

15. Purchasers of Plaintiff's products have posted negative reviews about Plaintiff Roca Labs, Inc.'s products on Defendants' website.[5]

16. Six individuals (Roger Mealey, Jr., Shellie Brady, Angela Harnage, LaTanya Barreno, Roswitha Stone, and Kim Tarmann) cancelled their orders or refused to purchase products from Plaintiff as a result of reviews or statements about Plaintiff's products on Defendants' website.

## Conclusions of Law

To obtain a preliminary injunction, the moving party must demonstrate "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an

---

[5] The record does not indicate whether the purchasers who posted reviews bought the product at a discount or full price. Only those buying at a discount agree to what Defendants term the "gag clause" in the Purchase Agreement.

injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." Grizzle v. Kemp, 634 F.3d 1314, 1320 (11th Cir. 2011) (citation and internal quotation marks omitted).  Given the "extraordinary and drastic" nature of preliminary injunctions, relief may be granted only where the plaintiff clearly satisfies the burden of persuasion as to each of these requirements. All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989).

**I.  Likelihood of Success on the Merits**

Plaintiff alleges causes of action against Defendants for deceptive and unfair trade practices, tortious interference with Plaintiff's contractual and prospective economic relationships, defamation (via pissedconsumer.com and Twitter), and declaratory relief.  Recognizing that injunctive relief in defamation cases is problematic, Plaintiff seeks preliminary injunctive relief on the tortious interference and FDUTPA claims only.

**A.  Communications Decency Act**

As a threshold issue, the parties disagree about the application of the Communications Decency Act which provides, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."[6] 47 U.S.C. § 230(c)(1).

Plaintiff concedes that if Defendants act only as an interactive computer service, not as an information content provider, that Plaintiff's claims cannot stand.  However, Plaintiff contends that

---

[6] An "interactive computer service" is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server[.]"  47 U.S.C. § 230(f)(2).  An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." Id. § 230(f)(3).

Defendants co-author the posts and publish additional content, post Tweets about Plaintiff on Twitter, and calculate and publish total and average customer losses. Plaintiff asserts these actions show Defendants act as an information content provider, rather than as a provider of interactive computer services.

Defendants respond that they are entitled to section 230 immunity as they do not author reviews but merely provide a neutral form for third party users to submit information. Further, Defendants argue the immunity applies regardless of whether its practices are deemed ethical or not. See Giordano v. Romeo, 76 So. 3d 1100, 1102 (Fla. 3d DCA 2011) ("However much as this Court may disapprove of business practices like those embraced by [the plaintiff], the law on this issue is clear. [The plaintiff] enjoys complete immunity from any action brought against it as a result of the postings of third party users of its website.") Defendants also assert that the Tweets are automatically generated from reviews posted by users on pissedconsumer.com.

The record is equivocal regarding the parties' respective factual assertions relevant to the section 230 defense. However, even if Plaintiff is correct that Defendants provide information content on their website, rather than merely providing an interactive computer service, Plaintiffs have failed to show a likelihood of success on its FDUTPA and tortious interference claims.[7]

**B. FDUTPA**

To succeed on a claim for damages under FDUTPA, Plaintiff must satisfy three elements: a deceptive act or unfair practice; causation; and actual damages. Virgilio v. Ryland Group, Inc., 680

---

[7] Although Defendants contend that New York law, rather than Florida law, applies to Plaintiff's claims, this dispute need not be resolved at this stage. As Defendants do not contest personal jurisdiction, and Plaintiff asserts it was harmed by Defendants in Florida, it is likely that Florida law applies. Even so, Plaintiff has not met its burden of proof on the first prong of the preliminary injunction test.

F.3d 1329, 1338 n.25 (11th Cir. 2012) (quoting Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). Plaintiff alleges that Defendants knowingly engage in publishing false statements about Plaintiff and other companies and use the false statements to sell reputation management services to those same companies, that Defendants mislead consumers into believing Defendants will contact companies to resolve disputes, and that Defendants publish false, defamatory, and inaccurate statements in violation of their website's own terms and conditions.

However, Plaintiff has not shown a substantial likelihood that it has standing to bring claims under FDUTPA. FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). "[A] person who has suffered a loss as a result of a [violation of FDUTPA] . . . may recover actual damages, plus attorney's fees and court costs[.]" Id. § 501.211(2). Additionally, "anyone aggrieved by a violation of [FDUTPA] may bring an action to . . . enjoin a person who has violated, is violating, or is otherwise likely to violate this part." Id. § 501.211(1).

Defendants insist Plaintiff must be a consumer to bring a claim under FDUTPA. However, that proposition has not been firmly established in Florida. FDUTPA was amended in 2001 to replace the word "consumer" with "person" in the text of section 501.211(2). The statute currently provides, "[i]n any action brought by a *person* who has suffered a loss as a result of a violation of this part, such *person* may recover actual damages, plus attorney's fees and court costs[.]" Id. § 501.211(2) (emphasis added).

The legislative history related to the amendment explained that

> '[b]ecause the remedies under the FDUTPA were intended by the Legislature to be available to all persons, including businesses, the Legislature has several times amended the definition of "consumer" in the FDUTPA to clarify the intent to include businesses. Notwithstanding these amendments, courts have been inconsistent in

7

their interpretations of the statute and its protections of businesses.'

Kertesz v. Net Transactions, Ltd., 635 F. Supp. 2d 1339, 1349 (S.D. Fla. 2009) (quoting Senate Staff Analysis, CS/SB 208, Mar. 22, 2001, at p. 3.)  Relying on the legislative history, some courts hold that the legislative change from "consumer" to "person" simply reinforced that both businesses and individuals may sue for relief (rather than creating a cause of action for non-consumers). Kertesz, 635 F. Supp. at 1349-50; see also Dobbins v. Scriptfleet, Inc., No. 8:11-cv-1923-T-24-AEP, 2012 WL 601145, at *4 (M.D. Fla. Feb. 23, 2012).

Other courts have held that the 2001 statutory amendment served to broaden the reach of FDUTPA, allowing more than just consumers to seek relief under the statute.  See, e.g., Kelly v. Palmer, Reifler, and Associates, P.A., 681 F. Supp. 2d 1356, 1372-74 (S.D. Fla. 2010) (defendant was not entitled to summary judgment merely because the plaintiffs, who were sent allegedly deceptive demand letters from the defendant, were not consumers); Furmanite America, Inc. v. T.D. Williamson, Inc., 506 F. Supp. 2d 1134, 1145-47 (M.D. Fla. 2007) (plaintiff had standing to bring claim against the defendant, a competitor, for violation of FDUTPA where the plaintiff alleged the defendant hired away its employees, took its property, and engaged in trade slander); James D. Hinson Elec. Contracting Co., Inc. v. Bellsouth Telecommunications, Inc., No. 3:07-cv-598-J-32MCR, 2008 WL 360803, at *2-3 (M.D. Fla. Feb. 8, 2003) (plaintiff, a commercial entity billed by the defendant for damaging the defendant's underground utility lines, had standing to bring claim for damages and injunctive relief under FDUTPA where the plaintiff alleged the defendant marked up the bill in excess of the sum of its losses); Niles Audio Corp. v. OEM Systems Co., Inc., 174 F. sup. 2d 1315, 1319-20 (S.D. Fla. 2001) (finding the plaintiff was a competitor of the defendants with standing to seek damages under FDUTPA).

Still, there must be some relationship sufficient to trigger the FDUTPA protection between

the parties. Here, Plaintiff does not allege a consumer relationship between Plaintiff and Defendants, or even an employment, business, or competitor relationship. Instead, Plaintiff alleges that Defendants mislead the users of its website, including some of Plaintiff's prospective or current customers, into believing Defendants will contact companies, like Plaintiff, to resolve disputes. (Dkt. 2 at 8, 13-14, 18-19) Plaintiff also contends that Defendants allow users to post false, defamatory, and inaccurate statements in violation of the website's own terms and conditions. (Id. at 14-15,19-20) As proof of harm, Plaintiff states it has lost and continues to lose prospective clients and identifies six individuals who cancelled their orders or refused to purchase products from Plaintiff. (Dkt. 5 at 8, 14) But, Plaintiff asserts that those prospective customers cancelled their orders or failed to order as a result of the reviews or statements posted by consumers on Defendants' website, not due to any deceptive conduct on the part of Defendants. (Id. at 8)

Plaintiff also claims under FDUTPA that Defendants deceptively entice users to post negative reviews so that Defendants can offer reputation management services and profit by charging businesses to remove those negative reviews from the website. Citing Ascentive, LLC v. Opinion Corp., 842 F. Supp. 2d 450, 478 (E.D.N.Y. 2011), Plaintiff asserts Defendants' alleged actions have been found "troubling and perhaps unethical" and will be injurious to Plaintiff if not enjoined.[8] However, Plaintiff has not offered any evidence that Defendants offered to remove the postings for a price. Further, the record indicates that businesses can respond for free to any review by using the comments section beneath the review on the website and that Defendants do not sell the option to remove reviews, although Defendants do offer monthly subscription monitoring for

---

[8] Ascentive actually supports Defendants' position that it is entitled to section 230 immunity as the court found that "a website such as PissedConsumer constitutes an 'interactive computer service'" under section 230(c). 842 F. Supp. 2d at 474.

9

those businesses that desire to be notified when reviews are posted about the business.

For these reasons, in addition to standing being problematic, Plaintiff has failed to prove a sufficient causal nexus between the deceptive actions alleged and any harm it has suffered, as the loss of business and reputation suffered by Plaintiff stems from the content of the reviews rather than any deceptive actions alleged by Plaintiff.

### C. Tortious Interference With a Business Relationship

Plaintiff alleges claims for tortious interference with contractual relationships, based on the Purchase Agreement entered by some of its customers, and tortious interference with a prospective economic relationship. (Dkt. 2 at 23-32)

To succeed on a claim of tortious interference with a business relationship, Plaintiff must establish "(1) the existence of a business relationship ... (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994) (citation and internal quotation marks omitted). A claim for tortious interference with a contract is essentially the same cause of action as a claim for tortious interference with a business relationship. The only practical difference is that one requires the existence of a contract, while the other requires only a business relationship. Pilkington v. United Airlines, Inc., 921 F. Supp. 740, 749 (M.D. Fla. 1996). "An actionable business relationship requires, if not a contract, at least an understanding between the parties [that] would have been completed had the defendant not interfered." Burge v. Ferguson, 619 F. Supp. 2d 1225, 1238 (M.D. Fla. 2008) (alteration in original) (citation and internal quotation marks omitted).

As Defendants point out, it is not clear that the claims for tortious interference may co-exist with Plaintiff's claims for defamation. The state of Florida adheres to the rule that a single

publication may give rise to only a single cause of action, Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp., 831 So. 2d 204, 208 (Fla. 4th DCA 2002), and "[p]laintiffs may not proceed on multiple claims for the same challenged defamatory actions." Kamau v. Slate, No. 4:11cv522-RH/CAS, 2012 WL 5390001, at * 7 (N.D. Fla. Oct. 1, 2012). This rule applies to tortious interference claims based on allegedly defamatory statements. Orlando Sports Stadium, Inc. v. Sentinel Star Co., 316 So. 2d 607, 609 (Fla. 4th DCA 1975) (finding counts for libel and intentional interference were not separate causes of action where the counts were based upon the same publications and the "thrust" of the complaint in both counts was that the news articles injured the plaintiffs' reputation).

Here, Plaintiff alleges claims for defamation against Defendants based on statements about Plaintiff posted on Defendants' website and Twitter account; Plaintiff asserts these statements caused harm to Plaintiff's reputation and loss of business opportunities. As Plaintiff's claims for tortious interference appear to be based on the same allegedly defamatory statements, it is not likely that Plaintiff's tortious interference claims can be sustained.

Apart from the single publication rule, there are causation issues with Plaintiff's theory under its tortious interference claims, as with the FDUTPA claims.[9] Plaintiff explains that it offers discounts on the price of products in exchange for its customers' agreement to refrain from speaking, publishing, printing, blogging, or writing negatively about Plaintiff or its products. Additionally, Plaintiff rewards customers for their weight loss by offering rewards and financial incentives for sharing their success stories. Plaintiff asserts that this establishes the existence of business

---

[9] Defendants also contend the agreement executed by Plaintiff's customers prohibiting the customers from speaking, publishing, printing, blogging, or writing negatively about Plaintiff is unenforceable. However, as explained above, a contract is not required to satisfy the elements of a tortious interference claim. Burge, 619 F. Supp. 2d at 1238.

11

relationships with its customers; Defendants are aware of the business relationships as Plaintiff sent a notification letter to Defendants and some users of Defendants' website posted the terms and conditions of their Purchase Agreement with Plaintiff on Defendants' website. Plaintiff argues that Defendants interfere with Plaintiff's business relationships by encouraging Plaintiff's customers to post or co-author negative comments on Defendants' website and Twitter in contravention of their Purchase Agreements.

As evidence, Plaintiff states that, notwithstanding that Defendants' website offers the option for users to be contacted by the company about which they are complaining, Plaintiff has not been contacted by Defendants to attempt to resolve complaints. Plaintiff also identifies six prospective customers who refused to purchase products from Plaintiff as a result of reading reviews or statements about Plaintiff's products on Defendants' website. Asserting that Defendants' actions have damaged its reputation and ability to transact business, Plaintiff argues that if the Court does not enjoin Defendant, "the damage to [Plaintiff] will be severe[,] as its reputation will be irreparably harmed, customers will continue to breach their contract with [Plaintiff] and new customers will not purchase from [Plaintiff.]" (Id. at 11-12)

Although Plaintiff contends its customers are encouraged to post negative comments in exchange for Defendants' representation that Defendants will resolve the customers' problems with Plaintiff, Plaintiff has not offered any evidence to show that its customers actually posted negative comments in reliance on Defendants' representations of problem resolution. As with the FDUTPA claims, Plaintiff's evidence shows only that any harm suffered by Plaintiff stems from the content of the reviews rather than from misrepresentations made by Defendants about their services. Without more, Plaintiff has failed to satisfy its burden of proof on the issue of causation and is not likely to succeed on the merits of its claims for tortious interference.

**Conclusion**

As Plaintiff has not demonstrated a likelihood of success on the merits of any one of its claims, it is unnecessary to address the other requirements for injunctive relief. Horton v. City of St. Augustine, 272 F.3d 1318, 1326 (11th Cir. 2001)("[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to all four elements."(citation and internal quotations marks omitted)).

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)   Plaintiff's Verified Motion for Entry of a Temporary Injunction and Supporting Memorandum of Law (Dkt. 5) be **DENIED**.

**Date:  October 28, 2014**

ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).