UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROCA LABS, INC.,

    Plaintiff,                                         Case No: 8:14-cv-2096-T-33EAJ

Vs.

CONSUMER OPINION CORP. and
OPINION CORP. d/b/a
PISSEDCONSUMER.COM

    Defendants.
_____/

**PLAINTIFF'S RESPONSE AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, ROCA LABS, INC. files this Response and Incorporated Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment.

**RESPONSE AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITY**

**I.    MOTION FOR SUMMARY JUDGMENT STANDARD**

Motion for Summary Judgment Standards Rule 56(c), Fed. R.Civ. P., mandates that a moving party is only entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." "The substantive law applicable to the case determines which facts are material." *Fitzpatrick v. City of Atlanta*, 3 F.3d 1113, 1115 (11th Cir. 1993)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A party seeking summary judgment bears the burden of

demonstrating that no genuine dispute as to any material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247-248; *Pritchard v. Southern Company Services*, 92 F.3d 1130, 1132 (11th Cir. 1996). In Pritchard, the Eleventh Circuit reiterated that "the evidence must be viewed in the light most favorable to the non-moving party." 92 F.3d at 1132.

Elaborating on this often-cited standard, the Eleventh Circuit has held that not only must a court resolve all reasonable doubts as to the facts in favor of the party opposing summary judgment, but the court must also "draw all justifiable inferences in his favor." *Fitzpatrick*, 3 F.3d at 1115.

## II.   DEFENDANTS' MOTION FOR SUMMARY FINAL JUDGMENT SHOULD BE DENIED BECAUSE DISCOVERY HAS NOT BEEN COMPLETED.

In this action, discovery has just commenced.  Plaintiff's First Set of Interrogatories to Defendants and its First Request for Production of Documents were served to Defendants' counsel on December 5, 2014.  The deadline for parties to amend their pleadings has not yet passed.  It is disingenuous for the Defendant to argue that there are no genuine issues of material fact when the facts are actually still being gathered in discovery proceedings, depositions of the parties, witnesses, or experts have even yet been conducted, and when the parties may still amend their pleadings.  It is well settled that a Motion for Summary Judgment should be continued and not heard if the moving party has not had an opportunity to conduct full discovery. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 719 (4th Cir. 1991), cert. denied, 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992), *In re Bilzerian* (S.E.C. v. Bilzerian), 190 B.R. 964 (Bank. M.D. Fla. 1995).  Many courts will not grant the motion until the opposing party has an adequate chance to conduct discovery necessary to develop its claims. *Redmond v. Burlington N. R. Co. Pension Plan*, 821

F.2d 461, 469 (8th Cir. 1987).

In the instant case, as no discovery has been conducted by the moving party or nonmoving party, requiring Defendant's Motion for Summary Judgment to be continued at this juncture. Furthermore, Fed.R. Civ. P. 56(f) permits a court to deny summary judgment if the nonmoving party shows that it could not properly oppose a motion for summary judgment without a sufficient opportunity to conduct discovery. In the case at bar, the Defendant has not provided any discovery whatsoever and the Plaintiff must be afforded the opportunity to conduct discovery in order to even address the allegations of and defenses related to Defendant's Answer and Affirmative Defenses and Motion For Summary Judgment, thus, making it premature at this time. Instead, the Motion for Summary Judgment should be denied and/or continued by this Court pending the close of discovery.

### III. DEFENDANT'S MOTION FOR SUMMARY FINAL JUDGMENT SHOULD BE DENIED BECAUSE THERE ARE OUTSTANDING ISSUES OF MATERIAL FACT

In reviewing a motion for summary judgment, the Court must be guided by the standard set forth in Federal Rule of Civil Procedure 56(c), states, in relevant part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

(Emphasis added). Fed. R. Civ. P. 56(c).

At this point since discovery has just started to commence, the Plaintiff will not receive any interrogatories responses and responses to production requests until early next year. No depositions have even been conducted. The deadline for Amendment of Pleadings has not

passed. As discussed with the Court during the November 4, 2014 Scheduling Conference, Plaintiff intends to amend its Complaint. Additionally, without the opportunity for such discovery, Plaintiff is unable to fully rebut most, if not all of the claims made by Defendants in their Motion for Summary Judgment. Therefore, this matter is not ripe for summary judgment at this time as there are obvious and yet to be determined material disputes of fact.

### IV.   ISSUES RAISED IN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**A. FDUPTA**

Defendants argue that Summary Judgment is appropriate for Plaintiff's FDUTPA claims. Plaintiff, through its anticipated amendment to its Complaint will address and correct any perceived pleading deficiencies or lack of genuine issues of material fact as argued by Defendants in their Motion for Summary Judgment. Moreover, discovery will allow Plaintiff the opportunity to address any alleged lack of genuine issue of facts.

This notwithstanding, Defendants argue in their Motion for Summary Judgment that Plaintiff is not and that discovery will not reveal that Plaintiff is a consumer of Defendants' services and alternatively, Plaintiff has been subjected to unfair and deceptive acts and practices at the hands of the Defendants. Although discovery has just started and Plaintiff has yet to retain its experts, Plaintiff has recently uncovered the following additional evidence regarding Defendants' business practices.

FDUTPA prohibits:

> "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

Fla. Stat. § 501.204(1) (2014).   Florida courts have adopted the definition of "unfair" used

under the federal scheme, which provides that an unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So.2d 489, 499 (Fla. 4th DCA 2001) (citing *Spiegel, Inc. v. Fed. Trade Comm'n*, 540 F.2d 287, 293 (7th Cir.1976)). Additionally, in construing whether a practice is unfair or deceptive under FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, as of July 1, 2006." Fla. Stat. § 501.204(2) (2014).

Defendants appear to have used certain unscrupulous online search engine optimization, often referred to as "Blackhat SEO"[1] and applied it to Defendants PissedConsumer.com subdomain created by Defendants for complaints related to Plaintiff, Roca Labs. This was done for the purpose of having Defendants' PissedConsumer.com Roca Labs subdomain appear on the first page of an organic Google search result using the search terms "Roca Labs".[2] Additionally, with only 47 short anonymous comments/posts related to Roca Labs, Defendants, through PissedConsumer.com have created 5,900+ pages that mention Roca Labs, in effect, tricking Google's search engine into believing that Roca Labs is associated with Roca-Labs.PissedConsumer.com.[3]

It also appears that Defendants, via PissedConsumer.com have created a network of more than 12,000 subdomains and 800+ pages about Roca Labs, which are twenty times the number of

---

[1] Such allegations will be added to the amended complaint Plaintiff will expand upon this theory via discovery and through retaining of an expert.

[2] *Id.*

[3] According to Google's established guidelines, "publishers are not allowed to create multiple pages, sub-domains, or domains with substantially duplicate content." *See Google Webmaster Quality Guidelines*, https://support.google.com/adsense/answer/1348737?hl=en. Defendants via PissedConsumer.com have done just that.

pages that exist on Plaintiff's RocaLabs.com. These pages are solely created by the Defendants.[4]

The clear implication is that Defendants have committed such deception to create a false market and need for its Premium Business Services and its Reputation Management Services.

Defendants also admit that Plaintiff attempted to register for Defendants' "Premium Business Services". ECF 57, p. 4. Additionally, Defendants also offer business reputation management services through a separate website at http://opinion-corp.com/. See Complaint, ECF 2, p. 26. Plaintiff is clearly a consumer of both Defendants' Premium Business Services and its Reputation Management Services.

Even absent this, Plaintiff does not need to be a "consumer" or even to have entered into a transaction with Defendants to have a claim under FDUTPA. *See Furmanite America, Inc. v. T.D. Williamson, Inc.,* 506 F.Supp.2d 1134 (M.D. Fla. 2007); *True Title, Inc. v. Blanchard*, No. 6:06-cv-1871-Orl-19D, 2007 WL 430659, *3 (M.D. Fla. Feb. 5, 2007); *Advanced Protection Technologies, Inc. v. Square D Co.*, 390 F.Supp.2d 1155, 1164 (M.D. Fla. 2005)(the replacement "consumer" for "person" in the 2001 amendment demonstrates a clear legislative intent to allow a broader base of complainants who have been injured by violations of FDUTPA to seek damages).

From Defendants' Blackhat SEO" practices in relation to Plaintiff as well as Defendants' business reputation management services and Premium Business Services, it is clear that Defendants' Motion for Summary Judgment should be denied and Plaintiff should be allowed to conduct discovery.[5]

---

[4] Such allegations will be added to the amended complaint. Plaintiff will also expand upon this theory via discovery and through retaining of an expert.

[5] Defendants also claim hereinafter that Plaintiff's FDUTPA claim is duplicative of its defamation claim. As clearly pointed out, the FDUTPA claim is not based upon its defamation claim as the FDUTPA claims are based upon Defendants extensive BlackHat SEO actions and the defamation claims revolve around Defendants as information content providers. Defendants also hereinafter argue that Plaintiff's Interference with Contract Claims are duplicative of its FDUTPA claim. However, it is also apparent that those claims are also based upon distinct and

**B. Defamation Against Consumer Opinion Corp and Opinion Corp**

Plaintiff in its original Complaint, has alleged defamation against defendants Consumer Opinion Corp ("Consumer") and Opinion Corp. (Opinion) via two separate counts, one based on posts and re-posts on their website PissedConsumer.com, respectively, and two separate counts based on re-posts via Twitter, respectively.

Plaintiff plans to conduct part of its discovery on the material fact that Opinion and Consumer, individually, or collectively, acted as publishers and alternatively "information content providers" with respect to the defamatory content posted and re-posted on Defendants' website, Defendants' Twitter account and the thousands of separate URL's created by Defendants.

**C. Defamation Against Consumer Opinion Corp and Opinion Corp**

**<u>Losing Immunity under the CDA</u>**

With recognition of broad immunity, courts have typically narrowly construed the type of §203(f)(3) "creation or development" activities a provider must engage in for the content to be deemed its own and thereby capable of destroying its immunity. Numerous state and federal courts have ultimately found immunity not available. Two federal circuit courts of appeal decisions have held how far immunity should extend to actions against websites that are involved in illegal content. Plaintiff believes that decisions such as these are at least partially driven by reaction to the exponentially growing community of Internet publication that proliferate Wild West like Web sites (like PissedConsumer.com) hosting and disseminating libelous, illicit, or embarrassing invasion of privacy postings without adequate or proper recourse for those

---

separate contracts and/or business relationships and/or trade practices. However, if the Court at any point determines that claims are duplicative, Plaintiff reserves the right to choose which claims to proceed on.

harmed.[6]

In *Fair Housing Council of San Fernando Valley v. Roommates.com,* 521 F.3d 1157, 1164 (9th Cir. 2008) the federal circuit court observed that the CDA was not meant to create "a lawless no-man's-land on the Internet". Neither is it a "general prohibition of civil liability for website operators and other online content hosts." *Chi. Lawyers' Comm. for Civ. Rights Under Law, Inc. v. Craigslist, Inc.,* 519 F. 3d 666, 669 (7th Cir. 2008).

The potential loss of CDA immunity (i.e., becoming a publisher or "information content provider") can occur when a website, liked PissedConsumer.com materially changes objectionable third-party postings (namely the defamatory statements alleged in Plaintiff's Complaint) or perhaps mixes them with their own content, it may itself become a "content provider" and lose immunity. To do this, the Web site or provider must make significant edits that go "beyond the traditional publisher's role" as when the provider "takes an active role in creating or developing the content at issue." *MCW, Inc. v. Badbusinessbureau.com*, LLC, 2004 U.S. Dist. LEXIS 6678, No. 3:02-CV-2727-G at *26 (N.D. Tex. April 19, 2004). For example, if a service provider creates its own comments and other defamatory content to accompany third-party profiles on its Web site, immunity can be lost. *Anthony v. Yahoo!, Inc.*, 421 F. Supp. 2d 1262-63 (N.D. Cal. 2006).

As alleged, initially, it appears that Defendants have re-posted the defamatory content

---

[6] For example, in *Taming the Gossipmongers: Websites that Dish Dirt May Soon Get Their Publishers' Hands Muddy*, ABA J. (July 2008), David L. Hudson, Jr. argued that controversial Web sites that provide a stage for the posting of anonymous gossip, cyber-bullying, and defamation may arguably contain information protected by the First Amendment, but they also allow for free, easy and almost instantaneous posting of damaging personal or business reputation information that may in fact not be true. In *Comment: The New Journalism? Why Traditional Defamation Laws Should Apply to Internet Blogs*, 55 Am. U. L. Rev. 1447 (June 2006), Melissa A. Troiano argues that with the proliferation of social media and anonymous commentators on the Internet, there is an increased likelihood for abuse, thus, CDA immunity is not necessary to provide blanket protection to ISP's. She suggests that in certain circumstances, it can lead to harm, and, therefore, should be replaced with the traditional libel framework.

regarding Plaintiff in various forms. The first of which includes two forms of re-posts committed by Defendants. Defendants re-posted defamatory content in various forms via Twitter. Plaintiff has made several allegations that such Twitter posts are in fact content created by Defendants. *See* ECF 2, para. 52-59. Defendants have submitted an affidavit that alleges such posting is done automatically.[7] Plaintiff must be given the opportunity to conduct discovery regarding the Twitter re-posts to support its claim that Defendants are publishers and to properly rebut Defendants affidavit.

Defendants have also re-posted defamatory content through the thousands of pages via the BlackHat SEO techniques described earlier. Plaintiff must have the opportunity to explore the thousands of pages of content developed and created by Defendants to support its claim that Defendants are publishers and to properly rebut Defendants affidavit.

The potential loss of CDA immunity can also occur when a website, like PissedConsumer.com, creates disparaging titles or headings to posted information. For example, in *MCW, Inc. v. Badbusinessbureau.com, LLC*, 2004 U.S. Dist. LEXIS 6678, No. 3:02-CV-2727-G at *26 (N.D. Tex. April 19, 2004), the operators of a website included defamatory content about the plaintiff in the form of titles, headings, and editorial messages personally written by the website operators. Because claims were based on the content created by the website in the form of titles and headings, immunity did not protect the operator. *MCW, Inc.*, No. 3:02-CV-2727-G at *33; *see also Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*, 418 F. Supp. 2d 1142, 1149 (D. Ariz. 2005).

Defendants, presently and during all times relevant to the Complaint on PissedConsumer.com at http://roca-labs.pissedconsumer.com/ have created the prominent headline ("Headline") that includes the information clearly created by Defendants about

---

[7] It is unclear as to how re-posting of defamatory content on a third party site absolves Defendants of liability.

Plaintiff:

- **0 resolved issues**
- **43 complaints**
- **6 from mobile**
- **$11.5K claimed losses**
- **$235 average**
- **130K views since Mar 09, 2012**
- **Weight Loss Programs**

As likewise alleged in its Complaint, with respect to the defamatory Headline, Plaintiff needs the opportunity to conduct discovery surrounding Defendants creation of said content, as well as the extent of its dissemination to support its defamation claims and overcome any §230 CDA defense.  See ECF 2, para. 186, 198,

In *The New England Patriots, L.P. v. StubHub, Inc.*, 2009 WL 995483 (Mass. Super. Ct. Jan. 26, 2009), the New England Patriots ("Patriots" ) football organization sued a website called StubHub, which allowed the Patriots ticket holders to post their tickets for sale on the StubHub website.  This was in direct violation of the Patriots ticket holder agreement and a violation of anti-scalping laws.  In its opposition to the Patriots Motion for Summary Judgment, StubHub alleged they were immune under §230 CDA.  Citing *Roommates*, the court rejected the §230 CDA defense, stating it:

> "**applies only if the interactive computer service provider is not also an 'information content provider,' which is defined as someone who is 'responsible, in whole or in part,' for the creation or development of the offending content**." *Roommates*, 521 F.3d at 1162; 47 U.S.C. § 230(f)(3).  The Ninth Circuit has interpreted the term "development" as "referring not merely to augmenting the content generally, but to **materially contributing to its alleged unlawfulness. In other words, a website helps to develop unlawful content, and thus falls within the exception to section 230, if it contributes materially to the alleged illegality of the conduct**." *Roommates*, 521 F.3d at 1167-1168.

*Id*. at 13 (emphasis added).

Plaintiff contacted Defendants about the defamatory posts and informed Defendants that

the authors of the posts were contractually obligated to Plaintiff to not comment negatively about Plaintiff or its products. Defendants refused to remove the posts. *See* ECF 2, para. 24-25, 61-62. Such actions are in contravention of the contractual obligations. This action makes Defendants a material contributor to the unlawfulness of the defamation and negative comments and likewise should strip them of their §230 immunity per *Stubhub*. Plaintiff should be allowed to conduct discovery to uncover the evidence it believes will show that Defendants have, through their actions, have become "information content providers".

Defendants also argue that Plaintiff's defamation claims should be dismissed because Plaintiff is a "public figure," citing marketing material from Plaintiff's website. Plaintiff would move to strike this argument and any analysis falling thereunder as Defendants have not asserted this as an affirmative defense. *See Miami Herald Pub. Co. v. Ane*, 423 So.2d 376 (Fla. App. 3 Dist., 1982)(*citing Gibson v. Maloney*, 231 So.2d 823 (Fla.1970) and *Abram v. Odham*, 89 So.2d 334 (Fla.1956)). Alternatively, Plaintiff should be allowed to conduct discovery on this issue.

Defendants also argue that the alleged defamatory statements are opinion. Because Defendants are not the originator of the statements this argument must fail. Further, the defamatory statements impute to Plaintiff conduct, characteristics or a condition incompatible with the proper exercise of his lawful business, trade, profession, or office" and certain criminal offense amounting to a felony. *See Wolfson v. Kirk*, 273 So. 2d 774, 777 (Fla. 4th DCA 1973). Additionally, without the opportunity to conduct discovery of the facts and circumstances surrounding the original posts and their creators, Defendants' separate defamatory statements (like those embodied in the Headline and Twitter), and finally the re-posts of defamatory content by Defendants, Plaintiff is unable to rebut Defendants' argument in this regard.

**D. Tortious Interference with Business Relationship**

With respect to the Tortious Interference with Business Relationship claims, Defendant argues that Fla. Stat. § 542.18 and § 542.335(l)(g)(4) requires that the contractual agreement between Plaintiff and its customers who posted on Defendants website be found unenforceable, thus absolving Defendants of liability. However, in the Magistrate's Report and Recommendation on Plaintiff's Motion for Preliminary Injunction, "a contract is not required to satisfy the elements of a tortious interference claim." (*citing Burge v. Ferguson*, 619 F. Supp. 2d 1225, 1238 (M.D. Fla. 2008)). ECF 23 at p. 11, fn. 9.

In *McCurdy v. Collis*, 508 So.2d 380, 383 (Fla. 1st DCA 1987), *rev. denied*, 518 So.2d 1274 (Fla. 1987), the court noted:

> The factors to consider in evaluating the propriety of interference with contractual relations are stated in Restatement (Second) of Torts s.767 (1977), as:
>
> In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:
>
> (a) the nature of the actor's conduct,
> (b) the actor's motive,
> (c) the interests of the other with which the actor's conduct interferes,
> (d) the interests sought to be advanced by the actor,
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
> (f) the proximity or remoteness of the actor's conduct to the interference and
> (g) the relations between the parties.

Furthermore, Plaintiff needs an opportunity to conduct discovery to determine whether after Defendants were notified of the contractual relationship between Plaintiff and the PissedConsumer.com posters, Defendants still refused to remove postings after request by the individual poster to remove them, per their contractual obligation. Additionally, after Defendants were notified of the contractual relationship, what damages resulted thereafter. Next,

whether after Defendants were notified of the contractual relationship Plaintiff had with its customers, Defendants subsequently allowed additional customers of Plaintiff's to post on PissedConsumer.com.

Unless and until discovery is conducted, Plaintiff is unable to meet its burden with respect to the factor (a) through (g) and the elements of the tortious interference claim as a whole.

## V. CONCLUSION

At a minimum the case is at the start of the discovery stage, thus, as further described above, genuine issues of material fact exist. Plaintiff notified this Court during the Scheduling Conference that it would be amending its complaint to incorporate new evidence, which in turn raise new legal issues and invariably will further show that genuine issues of material fact exist on all counts of Plaintiff's complaint. Under these circumstances, Defendants are incapable of establishing an entitlement to a judgment in their favor as a matter of law. Consequently, the Summary Judgment Motion must be denied.

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendants' Motion for Summary Judgment.

Dated: December 12, 2014

By: /s/ *James T. Hetz*
James T. Hetz
Florida Bar No. 116051
ROCA LABS, INC.
Independent General Counsel
P.O. Box 5309
Sarasota, FL, 34277
(407) 210-6588 (Office)
1(877) 539-6507 (Fax)
Legal2@rocalabs.com
Attorney for Plaintiff