# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ROCA LABS, INC.,                          Case No: 8:14-cv-2096-T-33EAJ

       Plaintiff,

v.

CONSUMER OPINION CORP. and
OPINION CORP.,

       Defendants.
_____/

## REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**1.0**     **Introduction**

Nothing in Roca Labs' Opposition demonstrates that there is any genuine issue of material fact in this case. In fact, the Opposition makes it clear that Summary Judgment is appropriate at this time. Instead of refuting the record evidence and arguments, Roca says that with "additional discovery," Roca will be able to concoct new causes of action, and eventually amend its Complaint.[1] However, **"new claims cannot be raised in response to summary judgment."** *Washington v. Sch. Bd.*, 731 F. Supp. 2d 1309, 1322 (M.D. Fla. 2010), *citing Al-Amin v. Donald*, 165 F. App'x 733, 740 (11th Cir. 2006). Clearly, Roca is attempting to manufacture baseless claims of factual disputes, and trying to "raise new claims" in order to stave off Summary Judgment. It cannot. "A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment." *Washington*, 731 F. Supp. 2d at 1316, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

As demonstrated below, Roca Labs makes only conclusory statements in lieu of evidentiary or legal argument. Therefore, Roca has effectively conceded judgment. "[I]f the non-movant's

---

[1] Despite not even meeting and conferring on such an action in the four months since this case was filed, nor doing so in the two months since Mr. Hetz said he had found new "smoking gun evidence" mandating amendment. ECF 68 at 4. The fact is, there is nothing to amend to.

1

response consists of nothing 'more than a repetition of his conclusional allegations,' summary judgment is not only proper, but required." *Washington*, 731 F. Supp. 2d at 1317, *citing Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981). That is the case here. Summary judgment is not only appropriate, but *required*.

## 2.0 Analysis

### 2.1 Improper Discovery Requests

A court may chose to delay ruling on summary judgment where additional discovery is *necessary*, but the party requesting it must make clear *exactly* what discovery they require in order to rebut *specific* claims. See Fed. R. Civ. P. 56(d), formerly 56(f). Without this specificity and necessity, delay for discovery is not proper. *Indus. Eng'g & Dev. v. Static Control Components, Inc.*, 2014 U.S. Dist. LEXIS 73327 (M.D. Fla. May 29, 2014), citing *Wallace v. Brownell Pontiac-GMC Co., Inc.*, 703 F.2d 525, 527 (11th Cir. 1983) ("The party seeking a Rule 56(d) continuance may not 'rest on vague assertions that additional discovery will produce needed, but unspecified facts' but 'must specifically demonstrate how postponement of a ruling on the [summary judgment] motion will enable them, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact'"). Roca Labs failed to meet this standard in its Opposition.

Despite *ad nauseum* repetition that they need discovery, Roca declined to engage in any discovery. In its opposition, Roca failed to inform the Court that the Defendants made their executives available for deposition.[2] Roca also declined to inform the Court that the Defendants unilaterally offered Roca an extension of time in which to oppose, if they needed it for depositions. Not coincidentally, this also would have given Roca time to move to compel for responses to its written discovery requests, should it have failed to persuade Defendants to provide responses.

Despite the main thrust of the opposition being "we need discovery," Roca actively *avoided* engaging in discovery, and fully *declined* to take any. In fact, Counsel for Roca refused to so much as *acknowledge* the Defendants' offer for depositions until 11 days later, and three days *after* filing the

---

[2] Attached as Exhibit 1 is an email from Marc J. Randazza, Esq. to James Hetz, Esq. offering Opinion Corp. and Consumer Opinion Corp. executives for depositions.

2

Opposition. Further Counsel for Roca served its first set of interrogatories on Opinion Corp. and Consumer Opinion Corp. on 5 December. See Exhibit 2. However, none of the information requested is relevant to any of Roca's actual legal positions – it seems like nothing more than use of process to seek discovery relevant to Roca's other related cases.[3]

Despite this discovery posture, Roca opted to file its Opposition 24 days before the discovery responses (such as they are) were due and four days before the Opposition deadline even came due. If Roca was genuinely interested in collecting discovery in order to respond to the Motion, it had ample opportunity to do so, but chose not to. Having chosen to decline to depose the defendants' executives, and having chosen to serve irrelevant discovery without even waiting for responses, Roca cannot now complain that it has not had an opportunity for discovery. A Plaintiff may not fail to seek a continuance (much less decline one that is offered) in order to conduct discovery, and then resist summary judgment on the ground that it has not had an opportunity for ample discovery. *See Shuler v. Ingram & Assocs.*, 441 Fed. Appx. 712 (11th Cir. 2011) ("[Plaintiffs] never sought a continuance pursuant to Fed. R. Civ. P. 56[d], the absence of which renders the [Plaintiffs'] argument meritless").

Regarding the discovery actually served: The only seemingly relevant interrogatory served by Roca Labs concerned the true identity of each of the authors of the posts written on Opinion Corp.'s website. However, this will only further demonstrate that Opinion Corp. and Consumer Opinion Corp. are subject to immunity under 47 U.S.C. §230, because the mere question makes it clear that neither Defendant authored the statements. Roca *admits* in its Opposition that the statements were authored by third parties. ECF 68 at 11 ("Defendants are not the originator of the statements"). Therefore, the only thing we need to know in *this case* is that **someone other than the Defendants** authored the statements. Roca already has that knowledge. This case is over.

Even if no discovery took place, or was offered, or it actually was necessary, Roca consciously chose to ignore Fed. Rule 56(d).

---

[3] Regardless, all responses to interrogatories have since been provided to Mr. Hetz, and Defendants have stipulated to a three page supplement, should Roca find some miraculous reason that the answers to its largely irrelevant discovery requests will change the outcome of the Motion for Summary Judgment.

3

> Rule [56(d)] specifically addresses the question of summary judgment before discovery has taken place. The party opposing summary judgment may move the court to permit the discovery necessary to oppose the motion. The party seeking to use rule [56(d)] may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but rather he must specifically demonstrate how the postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.

*Reflectone, Inc. v. Farrand Optical Co., Inc.*, 862 F.2d 841, 843 (11th Cir. 1989).[4] Roca declined to file a motion. "[W]e cannot go so far as to require courts to make such a motion on behalf of a party that deliberately chooses not to do so itself." *Reflectone*, 862 F.2d at 844.

"A Rule [56(d)] motion must be supported by an affidavit which sets forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment." *Harbert International v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998). Roca made no such motion, and made no such showing. Instead, Roca suggests that it intends to go on a fishing expedition to unearth new *possible* (but unarticulated) claims, without making any showing of what discovery it needs in order to counter specifically which claims. Roca could have sought discovery. Roca won't articulate what it needs, or why, and thus all but admitted that summary judgment is required. *Washington*, 731 F. Supp. 2d at 1317.

### 2.2  Defamation

#### 2.2.1  Merits of Roca Labs' Defamation Claims

Roca Labs' opposition to the Defendants' arguments about the statements being non-defamatory as a matter of law are so thin that they may as well have not been made.

Roca attempts to retreat from statements contained on its own website, and in its own Complaint that establish that it is a public figure (See ECF 2 at ¶15, 17, 19, 23) by claiming that it needs discovery as to whether it is a public figure. ECF 68 at 11. Roca needs only read its own

---

[4] *See also Washington v. Sch. Bd.*, 731 F. Supp. 2d 1309, 1322-23 (M.D. Fla. 2010) (The Court granted the defendant's Motion for Summary Judgment where "Plaintiff's vague and unsupported allegation that Defendant has somehow been involved in a discovery abuse does not carry the day, especially in light of the absence of a supporting affidavit by Plaintiff. At this time, there are no pending discovery motions before the Court").

4

pleadings and its own website, not discovery, to prove its own status. Regardless of whether Roca Labs is a public figure, the statements are still not actionable as defamatory.

Roca also claims that Defendants lack standing to assert that the allegedly defamatory statements are opinion, because Defendants did not author them. ECF 68 at 11. Aside from being simply bizarre, this demonstrates that Defendants are protected by 47 U.S.C. §230.

Roca Labs does nothing to counter the arguments as to why the defamation claims are ripe for judgment. Whether a statement is opinion is a matter of law. *Town of Sewall's Point v. Rhodes*, 852 So. 2d 949, 951 (Fla. DCA 4th 2003) (defamation claim fails as a matter of law, when statement is one of opinion). Discovery will not change the meanings of the words, so no matter who wrote them, *nobody* could be held liable for defamation for writing them. Defendants explained how each statement was incapable of a defamatory interpretation. Roca provided no rebuttal. ECF 68 at 7-11. Roca was fully capable of providing a rebuttal as to whether these statements are protectable opinion or statements of fact, whether the statements are false statements of material fact, whether they were published with actual malice or at least negligence, and whether it has been damaged. Yet Roca chose to respond to none of these issues. Since Roca offered up nothing more than conclusory allegations, summary judgment must be granted. *Washington*, 731 F. Supp. 2d at 1317.

### 2.2.2   Section 230

In order to qualify for immunity under 47 U.S.C. §230, (1) the defendant must be a provider or user of an interactive computer service; (2) the cause of action must treat the defendant as a publisher or speaker of information; and (3) the subject information must be provided by another information content provider. *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 2008 U.S. Dist. LEXIS 11632, 26, 2008 WL 450095 (M.D. Fla. Feb. 15, 2008). Opinion Corp. has this immunity. Roca makes no assertion to counter this fact, other than by making bald claims that somehow by allowing these third-party statements to be published on pissedconsumer.com and Twitter, Opinion Corp. lost its immunity. Because Roca Labs made only conclusory allegations, with nothing more, summary judgment is required. *Washington*, 731 F. Supp. 2d at 1317. Further, even without immunity, the whole case is ripe for summary judgment, but that is beside the point of this section.

5

Roca makes a strange statement that Defendants lose §230 immunity because there is a headline on the top of the pissedconsumer.com page. Numerous courts have determined that the CDA applies even where a website edits third-party content or manipulates such content to make it more prominent. *See, e.g., Dowbenko v. Google Inc.*, No. 14-10195, 2014 WL 4378742, at *3 (11th Cir. Sept. 5, 2014) (finding that the plaintiff's defamation claim was preempted by the CDA despite his allegation that Google "manipulated its search results to prominently feature the article at issue"); *Fair Hous. Council v. Roommates.com*, LLC, 521 F.3d 1157, 1169 (9th Cir. 2008) ("A website operator who edits user-created content—such as by correcting spelling, removing obscenity or trimming for length—retains his [CDA] immunity…"); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) ("[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish… or alter content—are barred [by the CDA]"). Where the information, such as that contained in the Tweets, and in the aggregation of "customer losses," is generated by third party input, 47 U.S.C. §230 immunity still applies. *Levitt v. Yelp! Inc.*, 2011 U.S. Dist. LEXIS 124082, 2011 WL 5079526 (N.D. Cal. Oct. 26, 2011). See also *Doe v. Am. Online, Inc.*, 783 So. 2d 1010 (Fla. 2001) (adopting *Zeran* as controlling authority in Florida). Thus, this new allegation does not affect its § 230 immunity, and no discovery could change that.

Roca hangs its hat on a Massachusetts county court decision, *NPS, LLC v. StubHub, Inc.*, 25 Mass. L. Rep. 478 (2009). This case is binding precisely *nowhere* – not even in Massachusetts. This case is remarkable only for the stunning degree to which it has been rejected. The only case to cite it approvingly is J*effrey A. v. StubHub, Inc.*, 2011 NCBC 7 (N.C. Super. Ct. 2011). That case was reversed by *Hill v. StubHub, Inc.*, 219 N.C. App. 227, 247 (N.C. Ct. App. 2012) ("Aside from the fact that the evidentiary and procedural context present in *NPS* is substantially different from that before the Court in this case, we simply do not find the reasoning employed by *NPS* persuasive, believe that it is inconsistent with the decisions concluding that knowledge of unlawful content does not strip a website of the immunity from liability granted under 47 U.S.C. §230, and decline to follow it in deciding the present case").

Roca continues that in order to lose immunity under Section 230, a website would have to engage in making significant edits and take an active role in creating the content at issue. ECF 68 at 9. This is generally correct. Roca then goes on to say that simply reposting the third-party content to Twitter from its website gives rise to "creating content" such that Opinion Corp. loses its immunity. This is incorrect. Opinion Corp. did not author or materially contribute to the statements written by third parties. Simply allowing for the heading of the individual reviews to be automatically reposted to Twitter does not give rise to material contribution such that the content of the statements could be attributed to Opinion Corp. See ECF 57-1 at ¶10-14.

Roca acknowledges that Defendants did not author the allegedly defamatory statements. ECF 68 at 11 ("Defendants are not the originator of the statements"). Furthermore, Roca Labs is so aware of the fact that the statements in question were not authored by Defendants that they filed suit against 11 individuals in *Roca Labs v. Does 1-11* for the exact same statements. See ECF 61-1. Meanwhile, Roca conducted no discovery in *that* case, and has not issued any subpoenas in that case (as it could have upon filing the case) to uncover the true identities of the authors.

Since 47 U.S.C. §230 bars Roca Labs' claims against Opinion Corp. for statements made on its website by third parties, and the entirety of Roca's claims are premised on statements by third parties, the claims fail. Summary judgment is appropriate as to all of Roca Labs' state law claims.

### 2.3  FDUTPA

Even if FDUTPA applied, numerous courts have held that § 230 immunity bars state consumer protection claims against service providers. *See e.g., Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102 (9th Cir. 2007), *Green v. Am. Online (AOL)*, 318 F.3d 465 (3d Cir. 2003), *Am. Income Life Ins. Co. v. Google, Inc.*, 2014 U.S. Dist. LEXIS 124870 (N.D. Ala. Sept. 8, 2014).

Nevertheless, even without 230 protection, Roca's claims fail. Roca acknowledges that it is not a consumer of Defendants' services. Roca attempted to register for Opinion Corp.'s services during the course of this litigation. Opinion Corp. refused Roca's patronage. ECF 68 at 6.[5] Yet,

---

[5] See ECF 20, where Roca Labs' director swore under penalty of perjury that he tried to post a false testimonial from Alfonso Ribeiro.

7

Roca conclusorily claims that it is "clearly a consumer of both Defendants' Premium Business Services and its Reputation Management Services." ECF 68 at 6. Roca somehow attempts to equate this to a consumer relationship that therefore gives rise to a FDUTPA claim. Roca then goes on to say that regardless, FDUTPA does not require any relationship at all, even though the statute requires it. ECF 68 at 6. "[T]he Court is not convinced that the 2001 amendment to FDUTPA creates a cause of action for [two parties], when there is no consumer relationship between them." *Dobbins v. Scriptfleet, Inc.*, 2012 U.S. Dist. LEXIS 23131, 2012 WL 601145 (M.D. Fla. Feb. 23, 2012), *citing Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1349 (S.D. Fla. 2009). Furthermore, the Magistrate determined, and this Court adopted, that "there must be some relationship sufficient to trigger the FDUTPA protection between the parties." ECF 43 at 8-9. "Plaintiff has failed to prove a sufficient causal nexus between the deceptive actions alleged and any harm it has suffered." ECF 43 at 10. No amount of discovery can change this fact.

Roca attempts to create a new basis for its FDUTPA claim, by stating (through argument of counsel, not through any evidentiary means) that Opinion Corp. created in excess of 12,000 distinct subdomains containing Roca Labs' name, and that this will give rise to a new FDUTPA claim. ECF 68 at 5. Yet Roca provides not a single example of these 12,000 subdomains. Furthermore, it goes on to say that creating subdomains is tantamount to deception, and therefore, FDUTPA. ECF 68 at 6. But this is without logic, reasoning, or any sort of factual or legal basis. One plaintiff tried this argument in an oft-cited-by-Roca case, *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 462 (E.D.N.Y. 2011). It failed there too. This does not give rise to any relationship between Roca Labs and Defendants, and therefore does not give rise to any claim for FDUTPA.

Roca then attempts to rely on the notion that if they make up words to describe the Defendants, like "Black Hat," it will scare the Court into believing that since Defendants "wear black hats" and thus they must be "the bad guys." According to Roca Labs' attorney, and no other authority, Opinion Corp. uses "black hat" SEO techniques, and therefore, Opinion Corp. is

8

automatically stripped of its immunity.[6] Meanwhile, looking back at *Ascentive,* 842 F. Supp. 2d at 462, the court roundly rejected that theory. Despite Roca Labs' invocation of SEO sorcery, the court in *Ascentive* already considered Opinion Corp.'s SEO practices, and while the court there did not approve of Opinion Corp.'s SEO, the court also determined that Opinion Corp. is immune from all liability under 47 U.S.C. §230. *See Ascentive* 842 F. Supp. 2d at 462. Regardless of what Roca may say about Opinion Corp.'s SEO practices, Opinion Corp. is fully entitled to Section 230's immunity. *See also Giordano v. Romeo*, 76 So. 3d 1100, 1102 (Fla. 3d DCA 2011) ("However much as this Court may disapprove of business practices like those embraced by [the defendant], the law on this issue is clear. [The defendant] enjoys complete immunity from any action brought against it as a result of the postings of third party users of its website").

Opinion Corp.'s SEO techniques, whatever they may be, impact only its searchability and rankings on search engines like Google. Google's results are Google's First Amendment protected expression. See *Zhang v. Baidu.Com, Inc.*, 10 F. Supp. 3d 433, 435 (S.D.N.Y. 2014) ("the First Amendment protects as speech the results produced by an Internet search engine"). Thus a search's engine's decision as to ranking of search results is fully protected First Amendment expression. *See also Langdon v. Google, Inc.*, 474 F. Supp. 2d 622 (D. Del. 2007) (Google's First Amendment rights allow it the editorial decision to place search results and ad placement as it decides). If Google has chosen to select Defendants' website for high rankings, that is Google's right. *Zhang*, 10 F. Supp. 3d at 435. Google does not need Roca to represent its interests.

### 2.4   Tortious Interference

Roca attempts to claim that because one third-party review on Opinion Corp.'s website mentioned the terms of service on Roca Labs' website, that that somehow binds Opinion Corp. and Consumer Opinion Corp. to those terms as well. ECF 68 at 12-13. Rubbish. Opinion Corp. cannot be bound to a contract that it is not a party to, simply because one unrelated party may have

---

[6] In recent history, search engine optimization ("SEO") has been characterized as either "black hat" or "white hat." This distinction means that "black hat SEO" utilized more concerted strategy that focuses its efforts on promoting its results in search engines. See *Wikipedia* "Search Engine Optimization" http://en.wikipedia.org/wiki/Search_engine_optimization

9

acknowledged the alleged existence of what appears to be an unenforceable and unconscionable contract. "[A] contract does not bind one who is not a party to the contract, or who has not agreed to accept its terms.'" *Marlite, Inc. v. Eckenrod*, 2012 U.S. Dist. LEXIS 118140, 2012 WL 3620024 (S.D. Fla. July 13, 2012), citing *Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1074-75 (11th Cir. 2003). Furthermore, the Magistrate previously determined that "Plaintiff has not offered any evidence to show that its customers actually posted negative comments in reliance on Defendants' representations of problem resolution… Plaintiff has failed to satisfy its burden of proof on the issue of causation and is not likely to succeed on the merits of its claim for tortious interference." ECF 43 at 12. Instead of trying to find evidence thereof, all of which would be in Roca Labs' possession, Roca Labs instead spent its time filing more frivolous claims. See ECFs 45, 52, 61, 65.

## 3.0　Conclusion

Defendants request that this Court enter Summary Judgment. Free speech cases mandate early resolution in order to minimize the damage caused by the intent to chill protected speech. *See Karp v. Miami Herald Pub. Co.*, 359 So. 2d 580, 581 (Fla. 3d DCA 1978) ("In defamation cases pretrial dispositions are 'especially appropriate' because of the chilling effect these cases have on freedom of speech"). Roca's pleas for discovery should not be heeded, as Roca has failed to do anything to suggest that the fruits of such efforts will be digestible. *Wallace*, 703 F.2d at 527.

Respectfully Submitted,

*Marc J. Randazza*

Marc J. Randazza, Esq.
Florida Bar No. 625566
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele: 702-420-2001
Fax: 702-420-2003
Email: ecf@randazza.com

CASE NO.: 8:14-cv-2096-T-33EAJ

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 19 December 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document is being served upon counsel for Plaintiff, via transmission of Notices of Electronic Filing generated by CM/ECF.

*T. Waan*

_____
An employee / agent of
RANDAZZA LEGAL GROUP

**RANDAZZA | LEGAL GROUP**