UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROCA LABS, INC.,                                                 Case No:  8:14-cv-2096-T-33EAJ

        Plaintiff,

v.

CONSUMER OPINION CORP. and
OPINION CORP.,

        Defendants.
_____/

**OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND**

DEFENDANTS, OPINION CORP & CONSUMER OPINION CORP., hereby Oppose Plaintiff, Roca Labs' Motion to Extend.

**1.0  Introduction**

Defendants oppose Plaintiff Roca Labs, Inc.'s ("Roca's") Motion to Extend.  "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  There is no good cause to modify any deadline in this case, in which Plaintiff was the sole master of its Complaint and the timing of its filing.  Concomitantly, it cannot show and has not shown good cause to modify the Court's scheduling order which tracked the dates requested by the parties after extensive negotiation.

**2.0  Procedural History**

In this action, Roca filed a baseless lawsuit in order to lash out at Defendants for statements made by third parties on a forum created for third-party consumer reviews.  Opinion Corp.'s alleged transgressions were its hosting of a litany of non-defamatory statements left on

its website by third parties, which are detailed extensively in the Complaint (ECF 2), Motion for Summary Judgment (ECF 57) and Reply (ECF 74). Roca filed suit despite knowing that all of these statements were made by third parties and that therefore Defendants were immune from liability under 47 U.S.C. § 230 as a matter of law. Roca also knew that these statements were non-defamatory as a matter of law (no matter who wrote them) but filed the suit as a SLAPP action in order to prevent the further publication of criticism concerning its dubious business practices and questionable weight-loss product.[1]

Just as with its commercial practices, so too has Roca's conduct of litigation been highly "unusual" – and this is arguably an understatement of vast proportions. Roca initially threatened a frivolous claim against Defendants in August of 2014. During pre-suit discussions, it became apparent that Roca Labs was not represented by counsel with whom a rational professional conversation could take place. This is not meant as opprobrium; it is literally meant to express the fact that Defendants' counsel simply experienced a phenomenon by which attempts at resolution, compromise, accommodation, or even basic professional acknowledgment of standard courtesies were responded to with what could most politely be described as non-sequiturs. Accordingly, despite the fact that Defendants' legal threats scaled the heights of absurdity, the evident irrationality of Roca's representation and its well-documented appetite for litigation, regardless of the merits, caused Opinion Corp. to file a declaratory judgment action in the Southern District of New York (SDNY Case No.: 1:14-cv-06396-LGS) on August 12, 2014 to seek judicial resolution concerning these legal threats.

Roca Labs was served with that Complaint on August 15, 2014. Yet despite having been served the Southern District of New York action, Roca ignored the first to file rule and proceeded with its own essentially mirror-image, but in its case frivolous filing in Sarasota, just as Roca's attorney had threatened. Thereafter, Roca's Attorney (attorney Paul Berger) scheduled a

---

[1] Unrebutted expert testimony in this case shows that the product is a potential health hazard. ECF 13-1.

hearing where he intended to argue his client's entitlement to a temporary restraining order. ECF 1-1. Mr. Berger, however, did not see it necessary to notify Opinion Corp. and Consumer Opinion Corp.'s counsel or even to notify Defendants' counsel of that hearing, much less coordinate its timing with his adversary. Before it took place, however, the action was properly removed to this Court. ECF 1.

Roca, unsurprisingly, was denied preliminary relief sought. ECF 43. It then launched an extra-judicial, and entirely improper campaign, to improperly influence this litigation. First, Roca filed a complaint with the Nevada Attorney General, falsely accusing Defendant's counsel – who is admitted to the Nevada bar and maintains an office in that state – of "bribing a politician." See ECF 52-4. This exercise in professional assassination was promptly given the place on the trash heap it deserved. Far from being discouraged, much less chastised or ashamed, however, Roca proceeded to file a complaint against Defendant's counsel *personally* for defamation arising from allegedly defamatory statements being "published" in the Opposition to the Motion for Preliminary Injunction in this case. See ECF 52-3.

Roca continued its campaign of irrational, vexatious, and unethical behavior by recruiting another plaintiff to file essentially an identical action in Broward County, Florida. *Gerling v. Opinion Corp. and Consumer Opinion Corp.*, Broward County, Florida Case No.: CACE 14-022341.[2] In fact this turned out to be the first of what would be a series of filings by Roca in the names of an assortment of plaintiffs in Broward and Dade Counties that have essentially been the same exact case as was previously filed in *Roca Labs, Inc v. Alice King*, 8:14-cv-02811, all of which have been generated and procured by Roca in a patently unethical – indeed, unlawful – effort to abuse

---

[2] Query why a St. Petersburg-based Plaintiff would file suit in Broward County against Opinion Corp., using the same attorneys as Roca Labs, using Roca Labs' internal legal email address, and utilizing the same Complaint (replete with the same typos), as Roca Labs, without being recruited to do so?

legal process and intimidate Defendants and their counsel from proceeding with the claims in this action.[3]

Against this busy backdrop of vexatious litigation, Roca Labs has been thoroughly maintaining *this* case, with a plethora of attorneys named on its docket. On November 16, 2014 Defendants filed their Motion for Summary Judgment. ECF 57. On December 5, 2014, Roca served discovery requests on Defendants. On December 12, 2014, eight days before it was due, and without waiting for discovery responses, Roca filed its opposition. ECF 68.[4] On December 18, 2014, Defendants served responses to discovery requests, and on December 19, 2014, Defendants filed their reply brief. ECF 74. This case has been fully briefed for summary judgment for a month. Discovery was conducted to the fullest extent requested by the Plaintiff – with the Plaintiff declining to take depositions when offered. As demonstrated in the Motion for Summary Judgment, there is no reasonable legal or factual rationale for this case to continue. Nevertheless, here we are, a month after summary judgment was fully briefed, with Roca presenting nothing but whimsy as its rationale for unnecessarily prolonging this case.[5]

It is obvious, not only from the pleadings and the papers but from its conduct of reckless guerilla litigation both in and outside the confines of the docket of this litigation that Roca never filed this case with any realistic hope of prevailing. Indeed, if it were merely following the rules of how to resolve legal disputes, it would have joined issue with Defendants' previously-filed action in New York. No: Roca filed this action solely to inflict punitive attorneys' fees against the Defendants, in the hope that by such efforts this Court would allow it

---

[3] See also *Roca Labs, Inc. v. Schaive et al.*, Broward County, Florida (Case No.: CACE 14-020786); *Roca Labs, Inc. v. Does 1-11*, Broward County, Florida (Case No.: CACE 14-021978); *Roca Labs Inc. v. Lina Scibelli*, Miami-Dade County, Florida (Case No: 14-CA-025302).

[4] It is worth noting that the Defendants offered Roca Labs an extension on their Opposition in the event that they felt that they needed to take depositions before they could oppose summary judgment. Roca declined to respond for 11 days, and even then, declined to take anyone's deposition. See ECF 74 at 2.

[5] If Attorney Tanner insists upon such activity beyond this motion, Defendants intend to seek sanctions under 28 U.S.C. §1927 against him personally, as it appears clear that he has not exercised independent judgment in making such a ludicrous motion, but rather is allowing Roca Labs' principal to manage the litigation.

to get through the back (financial) door what Roca knows it can never get through the front (legal) door: a prior restraint on Defendants' right of expression (and that of the third-party commenters not party to this action) a waiver of Defendants' rights under 47 U.S.C. § 230.

At this point, Roca Labs seeks an extension of the deadlines in this case for what reason? The motion is unclear, but it appears that Roca claims that it needs to have an extension in this case because Opinion Corp. and Consumer Opinion Corp. filed a declaratory judgment action based on *new* statements, allegedly authored by Opinion Corp. and Consumer Opinion Corp. (thus there is no apparent §230 issue in that case) and for Roca's violation of the 17 U.S.C. §512(f) – the DMCA Notice statute. None of the issues or facts are even closely-related in this case, which was brought over *eleven precise statements made by third parties* on Opinion Corp.'s website, and which include *no copyright issues*.

Roca cannot make yet another frivolous – but concrete and explicit – threat of litigation over new allegedly defamatory statements and deem itself insulated from declaratory judgment actions by its targets at the same time. While frivolous threats are made every day, Roca Labs is quite consistent in making them, and then following through, no matter how vexatious or foolish the threatened case may be. In fact, had the declaratory action not been filed, it is clear that Roca Labs would have filed a new case on its own, likely in Broward County, which seems to be its new favorite venue.[6] At least one of those cases was filed against a witness in this case, as a clear punitive measure designed to intimidate the witness from providing further testimony. See *Roca Labs, Inc. v. Schaive*, Broward County, Florida (Case No.: CACE 14-020786) and see ECFs 15 and 19. Another was filed against the parties who made the relevant statements in *this*

---

[6] A partial list of cases Roca recently filed against individuals for leaving consumer reviews includes: *Roca Labs, Inc. v. Schaive*, Broward County, Florida (Case No.: CACE 14-020786) (**filed against a witness in this case**); *Roca Labs, Inc. v. Does 1-11*, Broward County, Florida (Case No.: CACE 14-021978) (**filed against the authors of the statements in this case**); *Roca Labs Inc. v. Lina Scibelli*, Miami-Dade County, Florida (Case No: 14-CA-025302). Defendants are unaware of any others, but have not performed a diligent search for all of Roca Labs' current litigation.

case. *Roca Labs, Inc. v. Does 1-11*, Broward County, Florida (Case No.: CACE 14-021978) (Defamation suit filed against the authors of the statements in this very case).

**3.0     Analysis**

### 3.1     Plaintiff's Motion To Remand Should Be Stricken, As Plaintiff Did Not Comply With M.D. Local Rule 3.01(g)

M.D. Local Rule 3.01(g) requires a party filing a motion to certify that it conferred with opposing counsel prior to filing the motion and state whether opposing counsel agreed on resolution of the motion.  Providing a certification that opposing counsel was "unavailable" to confer prior to filing the motion is not sufficient. M.D. Local Rule 3.01(g).  The purpose of this rule is "to force counsel to try to achieve a resolution of a motion without judicial intervention and use of judicial resources." *Kaplan v. Burrows*, 2011 U.S. Dist LEXIS 125653 at *31 (M.D. Fla. Sept. 6, 2011).  Courts should strike motions that fail to comply with this rule. *See Davis v. Three Record(s) of Lien*, 2001 U.S. Dist. LEXIS 14665 at *2 (M.D. Fla. Aug. 24, 2001) (upholding denial without prejudice of motion filed without complying with L.R. 3.01(g)); *see also Euro Wall Sys., LLC v. Reflection Window Co.*, LLC, 2014 U.S. Dist. LEXIS 141806 at *3 fn. 2 (M.D. Fla. Oct. 6, 2014) (stating that a motion not in compliance with Local Rule 3.01(g) may be struck "for this reason alone").  The term "communicate," as used in the Rule, means "'to speak to each other **in person or by telephone**, in a good faith attempt to resolve disputed issues.'" *Unlimited Res. Inc. v. Deployed Res., LLC*, 2009 U.S. Dist. LEXIS 44671 at *2 (M.D. Fla. May 14, 2009) (citing *Davis v. Apfel*, 93 F. Supp. 2d 1313, 2000 WL 1658575 (M.D. Fla. 2000)) (emphasis added).

Plaintiff's Motion contains a 3.01(g) certification and asserts that Attorney Tanner attempted to contact Mr. Randazza on January 15, 2015.  Attorney Tanner then claims that he called Mr. Randazza at 2:33 PM Pacific Time (which would be 5:33 Eastern Time) on Friday, January 16.  Attorney Tanner truthfully states that he spoke to a member of Randazza's staff,

and that this member of the staff informed Tanner that the undersigned was "driving back to the office." However, his candor seems to taper off at that point.

Tanner omits the glaring detail that he was fully informed that Randazza was not merely driving back from a local errand, but was driving across the Mojave Desert, an area of very limited cell phone reception. Attached as Exhibit 1 is the declaration of Theresa M. Haar. See Haar Decl. ¶3. In fact, Tanner acknowledged full familiarity with the drive, and the communication difficulties in the vast empty expanses between Los Angeles and Las Vegas. Haar Decl. ¶8.

Despite the fact that Randazza was clearly, and knowingly, careening through "bat country"[7] at the time, the Defendants were represented by at least two other attorneys of record – Ronald Coleman and Jason Fischer – and at the time, both of them were squarely in civilization, with full communication ability. Tanner never so much as attempted to meet and confer with either. Ronald Coleman received neither message, call, nor email from Attorney Tanner. Attached as Exhibit 2 is the declaration of Ronald D. Coleman. Similarly, Attorney Tanner made no effort to communicate with Attorney Fischer, who is in Randazza's Miami office. Attached as Exhibit 3 is the declaration of Jason A. Fischer. Accordingly, despite having three attorneys to choose from, Tanner chose only one, made only one call, and disingenuously attempts to make it seem that he did not receive a call back simply because that silence was to indicate concurrence with the motion. In fact, Tanner completely fabricates at least one material issue – that he communicated to Haar that Randazza's silence should indicate concurrence. Haar Decl. ¶10. Not only did Tanner say no such thing, doing so would certainly not be adequate for a meet and confer.

---

[7] See Thompson, Hunter S. (1971, Nov. 11). Fear and Loathing in Las Vegas. *Rolling Stone Magazine*, volume 95, pp 38. ("My attorney was slumped over the wheel. 'What's wrong?' I yelled. 'We can't stop *here*. This is bat country!'" – referring to the Mojave desert outside Baker, California).

Thereafter, did Tanner make a call on Monday? He did not. Did he send a fax or an email to any of the three attorneys of record at any point? No. Tanner filed the instant motion before business hours in either the Eastern or Pacific time zones, at 8:48 AM Eastern Time, which is 5:48 AM Las Vegas time. And, he filed it on a holiday. In short, Attorney Tanner made no real effort at all to meet and confer. He certainly made no *good faith* effort to meet and confer. Rather, he played games to create a pretense of conferring and, indeed, must have come to the conclusion that if attorney Randazza had not managed to get himself in the middle of the Mojave Desert at exactly the moment Tanner "tried to contact him" he would have had to make up a story that he had done just that do negotiate such an exquisite moment of "opportunity" – as long as he made no attempt to contact any other attorney of record, of course, nor to leave any of the three of them a substantive message concerning the topic he wished to discuss so that one might contact him and have that personal discussion required by Rule 3.01(g).

This exercise neither complies with the letter of Rule 3.01(g) nor fulfills its spirit. The purpose of the rule is to *communicate* with the adverse party before filing a motion and, if possible, to narrow the issues for the court. Instead, Roca completely disregarded the requirements of M.D. Local Rule 3.01(g), doing just enough to make a record of "plausible denial" of non-compliance. Its denial, however, is entirely implausible, and for this reason its Motion should be stricken or denied.

However, even if the Court chooses to excuse the violation of 3.10(g), the Motion fails on its merits, for the reasons set out below.

**4.0      The Motion Must Fail on its Merits**

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Here Plaintiff was the master of its Complaint and the timing of the filing – indeed, it wrested that mastery from the very force of a previously-filed action by its adversary in another District. Given all that, its burden to overcome the presumptive validity of the

scheduling order is considerable, but Roca has failed utterly to establish good cause to modify the Court's scheduling order, which tracked the dates requested by the parties after ample discussion. "The schedule set forth by the court may only be modified for good cause and with the court's consent. Fed. R. Civ. P. 16(b)(4). Additionally, under Rule 6(b), when an act must be done within a specified time, the court may extend that time period for good cause. Fed. R. Civ. P. 6(b)(1)(A). To establish good cause, the party seeking the extension must establish that the schedule could not be met despite the party's diligence." *Ashmore v. Sec'y, DOT*, 503 F. App'x 683, 685 (11th Cir. 2013).

### 4.1 There is no good cause

Good cause requires a showing of best efforts on the part of all counsel to comply with the Court's scheduling orders. "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa v. Airprint Sys.*, 133 F.3d 1417, 1418 (11th Cir. 1998). That criterion is woefully absent here, especially considering that Roca has promised to amend its Complaint for months. But while Roca has yet to file any such amendment, it has found the time to initiate multiple lawsuits against former customers, a lawsuit to intimidate witnesses in this case, and even one against the undersigned counsel arising out of this action; it has sought discovery, largely a fishing expedition that pertains to its *other separate lawsuits* against its former customers;[8] it has fully briefed its opposition to Defendants' Motion for Summary Judgment; it has filed meritless claims with officials in distant states against counsel for Defendants – everything and anything to "win" this case except to make good on its promise to amend its Complaint. Now, however, Roca Labs comes to the Court without notice to its adversary and asks to be rewarded for its gamesmanship with yet

---

[8] The discovery sought in this case was largely irrelevant to this case, but was clearly designed to further its cases in *Roca Labs, Inc. v. Schaive*, Broward County, Florida (Case No.: CACE 14-020786) and *Roca Labs, Inc. v. Does 1-11*, Broward County, Florida (Case No.: CACE 14-021978).

another 30 days on top of the schedule it helped negotiate, to amend its own Complaint. "[T]he court may, for good cause, extend the time period for filing a motion after the deadline has expired as long as the party failed to act because of excusable neglect. To determine if there was excusable neglect, the court considers the following factors: (1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *Ashmore*, 503 F. App'x at 685.

Roca has made no showing of good cause as to why it has not yet amended its Complaint, why it cannot comply with the Court's scheduling order, or why it is entitled to amend its Complaint. Furthermore, if Roca believes that it has additional claims or amendments, it has the opportunity to raise them (as it should have instead of filing this case) as counterclaims in *Opinion Corp. and Consumer Opinion Corp. v. Roca Labs, Inc.*, SDNY Case No.: 1:14-cv-06396-LGS or in SDFL Case No.: 9:15-cv-80051-WJZ. If that does not suit them, then most certainly Roca could amend one of its multiple other cases, pertaining to Opinion Corp.'s individual customers, which it filed in Broward County, Florida. Roca does not want an extension in this case because it needs it for any valid reason. It wants it to drive up costs unnecessarily in this case, while maintaining a handful of other cases based on the precise same issues of operative fact. Its motion should be denied.

### 4.2 Danger of Prejudice

Defendants would incur great prejudice should the Court grant Roca Labs' Motion to Extend the deadlines, allowing Roca to amend its Complaint. At this point, Defendants' Motion for Summary Judgment has been fully briefed, discovery has been conducted, and resolution to this case is near. At this point, this case is not just on the eve of trial, but given its summary judgment posture, trial is over, and the jury is in deliberations. Yet now, at the eleventh hour, Roca Labs comes to the Court seeking to frustrate Defendants' attempt to obtain rightful

redress. This is a hallmark example of a dilatory tactic. *See Romero v. Drummond Co.*, 552 F.3d 1303, 1318 (11th Cir. 2008) (denying extension on "the eve of trial"); *Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1276 (M.D. Fla. 2002) (denying motion to amend when final trail preparations should have been underway). Here, as the Motion for Summary Judgment has been fully briefed and argued, and is ripe for the Court's determination, Roca Labs cannot now seek to amend its Complaint, much less to do so out of time and in the irregular, improper fashion it asks the Court for leave to do by the pending motion.

### 4.3 Undue Delay

Roca's motion should also be denied because of its unreasonable delay in seeking an extension of time. It is easy, perhaps, to lost sight of the fact – considering all the antics described above – to forget the fact that Roca is seeking to amend its Complaint after Defendants have already filed a Motion for Summary Judgment and Plaintiff has already indulged in serving discovery notwithstanding the pendency of that motion. Yet now, after having ample opportunity to seek amendment of the instant action, as Roca Labs has been threatening to amend its pleading since the TRO hearing in October 2014, Roca waits until the very last day that amendment would be possible to files a request, in violation of the Local Rules, for an extension of the deadline simply stall resolution of its frivolous case, drive up litigation costs, and impose undue delay and needless expense on Defendants – meanwhile having multiple other open cases in which to do what it alludes to wanting to do. *And* it would be certainly more procedurally proper to do so in one of those multiple other cases. This proposed amendment, the substantive content of which has to date not even been revealed, could not possibly contribute to promote factual accuracy or encourage clarity of the record. Instead, all it could ever do is increase the cost of litigation and unnecessarily prolong these proceedings, in violation of Fed. R. Civ. P. 11 and 28 U.S.C. §1927.

### 4.4 Roca's Request is Made in Bad Faith

While Roca Labs has been threatening to amend its Complaint since October (but never providing any details as to this "amendment"), it is now claiming that as a result of the new complaint filed in the Southern District of Florida by Opinion Corp. and Consumer Opinion Corp., it will need to amend this Complaint. Roca Labs is claiming it *may* seek leave to amend *this* Complaint here as a result of a separate action, already pending in a separate court, for entirely separate issues.

Let there be no mistake about it: The declaratory judgment action in the Southern District of Florida is no surprise to Roca. Prior to Opinion Corp. and Consumer Opinion Corp. filing the action seeking declaratory relief in the Southern district, Paul Berger, counsel for Roca Labs, sent a Florida Statute §770 Notice directly to Opinion Corp. and Consumer Opinion Corp. – and, notably, *not* to counsel in this action. This means one of two things. The first hypothesis is that this Notice was understood by Roca as being predicated on an entirely separate action and based on entirely separate issues. Opinion Corp. and Consumer Opinion Corp. also acted on this basis; hence the initiation of a new action. The issues raised in the latest §770 Notice are wholly separate from the issues in the case at hand, as the action seeking declaratory relief is premised on alleged statements made by Opinion Corp. and not by third parties, as is the case here. The action seeking declaratory relief also seeks a determination regarding Roca's violation of the Copyright Act by knowingly serving a false notice under the DMCA. Neither of those claims are issues in this litigation.

In the alternative, if Roca's position is that the matter regarding which it sent a Florida Statute §770 Notice to be of and relating to this case and intends to use those allegations to amend its pleadings in the additional 30 days sought by the pending motion, Roca and its counsel have flagrantly violated Florida Rule of Professional Conduct 4-4.2, by directly

contacting Opinion Corp. and Consumer Opinion Corp., which of course are represented by the undersigned counsel. Either alternative only further demonstrates bad faith on the part of Roca Labs.[9]

Any issue pertaining to anything relating to the case currently pending in the Southern District of Florida matter must be taken up there, not in an amendment to this case. In the alternative, another action seeking declaratory relief is currently pending in the Southern District of New York. While Roca Labs opposes jurisdiction there, either of those two cases better serve the needs of Roca Labs to argue about those issues. Any issue raised by Roca Labs pertaining to this new §770 Notice is more properly raised in the case currently pending in the Southern District. But, indeed, if this court finds that the § 770 notice was, indeed, part of the same case or controversy here, then Defendants insist that this court sanction Attorney Berger for communicating directly with Defendants, without so much as providing a copy to their attorneys.

### 4.5 Any Amendment Would Be Futile

Roca Labs is seeking additional time in which it can amend its complaint, yet even if permitted, amendment would be futile. The issues in this case are clear-cut. Roca Labs is attempting to impose liability on Opinion Corp. and Consumer Opinion Corp. for statements made on Opinion Corp.'s website by third parties – and for statements that are non-defamatory as a matter of law. Any amendment to this Complaint would be premised on unrelated allegations. Roca Labs has already filed suit against a number of its former customers, who wrote some of those third-party reviews on Opinion Corp.'s website. See *Roca Labs, Inc. v. Does 1-11*, Broward County, Florida (Case No.: CACE 14-021978). Presumably, if there were

---

[9] Indeed, attorney Berger previously sent the fraudulent DMCA Notice directly to Defendants as well, electing to not provide notice to counsel, and instead communicating directly with a represented party. This further demonstrates that Mr. Berger has no respect for the Rules of Professional Conduct, or is demonstrative that these are unrelated matters, to be resolved in separate litigation.

additional statements that it wanted to add to its collection of lawsuits, they would have left some trace of them in one of these many other cases. It has not done so.

Roca Labs also sent a DMCA takedown notice relating to alleged copyright infringement on the part of Opinion Corp. and Consumer Opinion Corp., which forms the basis for the action in the Southern District of Florida, seeking declaratory relief. Roca Labs has also sent a §770 Notice to Opinion Corp. and Consumer Opinion Corp. for their statement that Roca Labs had sued the two companies in this case. That matter is also addressed in the Southern District declaratory action. And lastly, Roca Labs has personally sued the undersigned for statements made during this litigation. See *Roca Labs Inc. v. Marc Randazza*, Hillsborough County, Florida (Case No.: 14-CA-011251). There is no possible amendment remaining that is not already currently being litigated. Any amendment here would be futile and a waste of judicial resources.

**5.0    Conclusion**

Based on the foregoing, Defendants Opinion Corp. and Consumer Opinion Corp. respectfully request that this Court deny Plaintiff's Motion to Enlarge Time, as it is without good cause, will result in undue delay, serves an improper purpose, is a dilatory tactic, and the amendment would be futile.

Respectfully Submitted,

*Marc J. Randazza*
_____
Marc J. Randazza, Esq.
Florida Bar No. 625566
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele: 702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

                    Ronald D. Coleman, Esq.
*Pro Hac Vice*
GOETZ FITZPATRICK LLP
One Penn Plaza, Suite 3100
New York, New York 10119
Tele: 212-695-8100
Fax: 212-629-4013
Email: rcoleman@goetzfitz.com

CASE NO.: 8:14-cv-2096-T-33EAJ

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on the 20th day of January 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a true and correct copy of the foregoing document is being served upon: Paul Berger, Esq., James Hetz, Esq., and James Tanner, Esq.., counsel for Plaintiff, via transmission of Notices of Electronic Filing generated by CM/ECF.

*T. Waan*
_____
An employee / agent of
RANDAZZA LEGAL GROUP

RANDAZZA | LEGAL GROUP