UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROCA LABS, INC.,

       Plaintiff,                          Case No: 8:14-cv-2096-T-33EAJ

Vs.

CONSUMER OPINION CORP. and
OPINION CORP. d/b/a
PISSEDCONSUMER.COM

       Defendants.
_____/

**FIRST AMENDED COMPLAINT** [1]

The Plaintiff, ROCA LABS, INC. ("Roca"), a Florida Corporation, by and through its undersigned counsel, files this First Amended Complaint against Defendants, CONSUMER OPINION CORP., a New York Corporation ('Opinion") and OPINION CORP. d/b/a PissedConsumer.com a New York Corporation ("Pissed") (Collectively herein known as "Defendants").

**JURISDICTION & VENUE**

1.     This is an action for declaratory relief and for damages in excess of $15,000, exclusive of interest, costs and attorneys' fees.

2.     Venue is proper in this Honorable Court as this is an action under the Florida Deceptive and Unfair Trade Practices Act, seeking permanent injunctive relief and an award of money damages, including actual damages and reasonable attorneys' fees

---

[1] In its present form, this document is Exhibit "A" to Plaintiff's *Motion for Leave to Amend the Complaint*. Should the Court grant said Motion, Plaintiff will file and serve a dated Amended Complaint without this footnote.

and costs; an award of compensatory damages under common law claim of tortious interference with a contractual relationship; an award of compensatory damages under common law claim of tortious interference with a prospective relationship, an award of compensatory damages under common law claim of defamation all stemming from conduct that occurred in Sarasota, Florida.

3.      ROCA is a Florida for-profit corporation with its principal place of business at 7261A Tamiami Trail S, Sarasota, FL 34231.

4.      Defendant CONSUMER OPINION CORP. is a New York for profit corporation with it's principal place of business at 1204 Avenue U, Suite 1080, Brooklyn, NY 11229. Upon information and belief CONSUMER OPINION CORP. is the owner of the trademark Pissed Consumer (U.S. Reg. No. 3679454) and owns and/or operates the website "PissedConsumer.com."

5.      Defendant OPINION CORP. is a New York for profit corporation with its principal place of business at Gravesend Neck Rd., Brooklyn, NY 11223. Upon information and belief OPINION CORP. owns and/or operates the website "PissedConsumer.com."

6.      Pursuant to Florida Statutes Section 48.193 Florida Statutes, the Defendants are subject to personal jurisdiction in Florida because Defendants by and through their website PissedConsumer.com operate and engage in a business in Florida by selling services to Florida residents and corporations.

7.      Pursuant to Florida Statutes Section 48.193 Florida Statutes, the Defendants are subject to personal jurisdiction in Florida because Defendants by and through their

website PissedConsumer.com violated Florida Deceptive and Unfair Trade Practices Act in the State of Florida.

8.      Pursuant to Florida Statutes Section 48.193 Florida Statutes, the Defendants are subject to personal jurisdiction in Florida because Defendants by and through their website PissedConsumer.com are accessed and used in Florida and have committed tortious acts against Plaintiff.

9.      Pursuant to Florida Statutes Section 48.193 Florida Statutes, the Defendants are subject to personal jurisdiction in Florida because Defendant allows users to geo-target a Florida company by location and to post complaints via location and search via location.

10.     Pursuant to Florida Statutes Section 48.193 Florida Statutes, the Defendants are subject to personal jurisdiction in Florida because Defendants offer a service to contact Plaintiff and other Florida Companies in Florida to resolve alleged disputes.

11.     Pursuant to Florida Statutes Section 48.193 Florida Statutes, the Defendants are subject to personal jurisdiction in Florida because Defendants offer a manner for companies to respond to Complaints.

12.     Pursuant to Florida Statutes Section 48.193 Florida Statutes, the Defendants are subject to personal jurisdiction in Florida because Defendants market and sells reputation management services to Florida companies.

13.     Pursuant to Florida Statutes Section 48.193 Florida Statutes, Defendants are subject to personal jurisdiction in Florida because Defendants market and sells portions of its PissedConsumer.com homepage via its premium reviews service to Florida residents.

## GENERAL ALLEGATIONS

14.  ROCA is a Florida for profit corporation that was formed in 2006 as Appealing Ventures, Inc.  It changed its name to ROCA LABS, INC. in 2009.

15.  ROCA manufactures dietary supplements (sometimes referred to a nutraceuticals) and is the inventor of our proprietary Gastric Bypass Alternative® that is an effective weight loss option for people who are trying to lose more than fifty (50) pounds.

16.  ROCA markets and sells its products through its website www.rocalabs.com, where information on its products are available and consumers can purchase the product directly.

17.  ROCA's products have been safely and successfully used by tens of thousands of people as a surgery free alternative to gastric bypass.

18.  ROCA has made significant investments in product development and in its intellectual property rights.

19.  ROCA owns the registered trademark Roca Labs®.

20.  ROCA's trademark are inherently distinctive.

21.  ROCA has invested heavily, monetarily and otherwise, in an online marketing and advertising program that has run in Florida and across the United States.

22.  ROCA competes with Defendants for consumers when individuals conduct online searches on Google, Bing, Yahoo! and other search engines.

23.  ROCA relies upon its reputation in the community, which includes the internet, and the weight loss success of its customers to generate new business and attract new customers.

24.     In exchange for a significant discount (discounts average $800), customers contractually agree that, regardless of their outcome, they will not speak, publish, print, blog or write negatively about ROCA or its products in any forum (*See* **ROCA purchase terms attached as Exhibit "A"**).

25.     This contractual agreement would restrict ROCA's customers from posting complaints on Defendants' website:  PissedConsumer.com.

26.     Defendants OPINION and PISSED are owners of a multifaceted Internet and service business "PissedConsumer.com" ("Pissed Consumer").

27.     Defendant, OPINION owns the registered trademark Pissed Consumer®.

28.     Defendants collectively own, operate and maintain the website "PissedConsumer.com" ("subject website"), which according to its marketing materials is a "consumer advocacy and customer complaint" website. (***See* Marketing Materials attached as Composite Exhibit "B"**). This is Defendants' primary website and revenue generating website.

29.     PissedConsumer.com, by and through Defendants, functions in part as a platform for individuals to complain about people, products and/or businesses. Essentially PissedConsumer.com operates as a "gripe" site where anonymous individuals can post malicious, false, defamatory and salacious content about individuals or businesses.

30.     Complaints have been made on PissedConsumer.com by individuals residing in Florida and about Florida residents and businesses and accessed by Florida residents or individuals in the State of Florida.

31. Upon information and belief the website PissedConsumer.com has been accessed thousands of times by Floridians.

32. PissedConsumer.com operates in a manner similar to revenge porn websites, where anonymous postings are made with the specific intent of harming an individual or business. These postings are made under the guise of a consumer review.

33. While claiming to be a consumer advocacy website, PissedConsumer.com has received an "F" rating from the Better Business Bureau and there are hundreds of complaints about PissedConsumer.com with the Better Business Bureau.

34. In truth, Defendants operate a sophisticated business designed to use the subject website to maximize profits from small businesses whom are targeted on PissedConsumer.com and then victimized/monetized by Defendants. Plaintiff is one of many victims.

35. For example, upon initiation of the first online complaint about ROCA, Defendants created the subdomain www.roca-labs.PissedConsumer.com. In essence, this maneuver is to fool search engines into believing that Defendants are somehow related to ROCA, and that ROCA wishes to be found at this internet location.

36. Defendants try to then sell "business services" to its victims in order to protect their online business reputation. As described in greater detail below, Defendants essentially co-author complaints and then sell "online reputation management services" to the target of those same complaints they initially co-authored and placed on the internet to be viewed.







37.   Complaints have been made on PissedConsumer.com about ROCA, and Defendants have used these complaints to try to sell ROCA business services. As described below in greater detail, Defendants will remove false, negative and defamatory postings and change how information is presented to the public if Plaintiff pays them only if the company subscribes to Defendants' business services. This is akin to blackmail, *i.e.* pay Defendants a fee and they will remove negative content that they created; don't pay and Defendants will make the content worse and disseminate it throughout the internet until you submit.

38.   Defendants have engaged in a public battle or war against ROCA. It appears that their primary objective is to put Plaintiff out of business while simultaneously maximizing their own revenues and profits.

39.   Defendants have created and published false, malicious and defamatory content about ROCA, employed a network of sophisticated agents to make false and malicious statements to interfere with Plaintiff's prospective customers, solicited ROCA customers in an attempt to have them sue and or disparage ROCA, sued ROCA, publicly solicited funds to raise a litigation war chest to fight ROCA and have engaged in "black hat" Search Engine Optimization ("SEO") and other nefarious online tactics to harm the reputation of ROCA.

40.   The more harm and public humiliation Defendants cause ROCA, the more Defendants profit.

41.   Defendants generate revenues from multiple avenues including, but not limited to: (1) developing, creating, publishing and marketing online content; (2) advertising; (3)

8

maintaining a web platform for third party users/subscribers to post content; (4) transmitting and disseminating said content throughout the internet; (5) selling/leasing a portion of its internet sites to third parties; (6) operating a service to resolve complaints for consumers; and (7) selling online reputation management services to individuals and business.

42.  PissedConsumer.com, by and through Defendants, co-develop complaints with users and then assumes exclusive rights to the content.

43.  PissedConsumer.com's Terms and Conditions provide the following: "By posting information or content to any public area of www.PissedConsumer.com, you automatically grant, and you represent and warrant that you have the right to grant, to PC an irrevocable, perpetual, fully-paid, worldwide exclusive license to use, copy, perform, display and distribute such information and content and to prepare derivative works of, or incorporate into other works, such information and content, and to grant and authorize sublicenses of the foregoing. You also expressly authorize PC to share any posted information with third parties at PC's own discretion."

44.  In order for an individual to post a complaint on PissedConsumer.com, s/he must go through a multiple step process over several website pages, where numerous items must be completed and a poster is required to select from a series of drop down items, radial buttons, category selections, etc. Users must complete mandatory pre-defined fields and must complete a minimum one-hundred (100) word complaint description.

45.    Thus, Defendants have created a system whereby they co-create content that is published on PissedConsumer.com by individuals and Defendants acquire **exclusive** rights to the content upon publishing.

46.    Step one of the content creation process is to access the page PissedConsumer.com.

47.    Step two is selecting the "Submit Complaint" button at the top of PissedConsumer.com or the submit review button after the question, "*Did you get scammed?*" (screen capture below).



48.    The next step in the process is the post complaint page (http://www.PissedConsumer.com/post-complaint.html). Here, users are given the option of posting a standard review or paying for a review in order to guarantee additional exposure, which would appear to set forth that PissedConsumer.com and Defendants do in fact have control over the posted content.

49.    Users are required to create a title and a complaint that is a minimum of one-hundred (100) words. Users next identify the company and select from a drop down menu for the Category that is defined by Pissed Consumer. At the end of this page users agree

to Pissed Consumer's terms and conditions and must also agree that "You will not be able to edit your review." This last agreement is in small, light gray text to be less apparent to users (screen capture below).  Users can also post photos or videos at this step.



50.    Step four is completing an additional page of information about the complaint. A user must enter their name, email and telephone number. Users have radial buttons to identify the complaint and are asked to identify the value of the loss.  Users can then select the type of resolution that is desired (screen capture below).



51. Step five is completing another page of information. Pissed Consumer has three boxes of information that are designed to geo-locate the complained about item or company, specify the product or service, and then create meta-tags to enhance search engine optimization.



52.     Step six is completing another page of information that includes providing star ratings about specific items, and adding more information.



53.    Step seven is becoming a member of their website and receiving "additional benefits."



54.    In essence, PissedConsumer.com, by and through Defendants, functions as a complaint generator as it instructs or co-authors the post on its website by ensuring that users write content in a certain manner, select from a list of business categories, fill in pre-defined information and select radial buttons. The pre-defined categories and questions act to control and manage the content received from users. Users are not able to access the website and freely state a complaint; rather, they must follow protocols strictly set forth by PissedConsumer.com. PissedConsumer.com, therefore, is not simply a platform that allows an internet user to comment without interference.

55.    As illustrated in the image below, Defendants ask specific questions about ROCA and present this information in a manner designed to inflict as much harm as possible on ROCA.





56.   Defendants make users review "nutrition description," "safety" and "cost per month" for ROCA products. These are atypical categories and were designed by Defendants to give the impression that ROCA products are not safe, are expensive and misleading.

57.   Defendants created the categories that are unique to Roca Labs on the subject website.

58.   Defendants created the content generating system which includes star ratings.

59.   Worse yet, Defendants have no safeguards or filters to ensure that the information the users provided is truthful or accurate, or that the users have any actual relationship, directly or indirectly, to the business. Indeed, there are no safeguards to ensure that the users are not competitors or fake posters with an agenda.

60.   In other words, any one of us could be a victim of this process; a process which seemingly requires mere access to PissedConsumer.com, and not a relationship to the product or business.

15

61.     Upon information and belief, Defendants have created false negative reviews about Plaintiff in order to induce Plaintiff into paying towards Defendants' financial gain.

62.     Upon information and belief, Defendants are aware that much of the content that it co-creates, co-authors, licenses and publishes is false and/or defamatory and/or malicious.

63.     Creating content in a specified format allows Defendants to maximize content distribution, which translates directly to increasing revenues.

64.     On select occasions as dictated and decided by PissedConsumer.com, Defendants develop a new and distinct version of the user's posting for dissemination on Twitter via its Twitter account "handle" @PissedConsumer (a "handle" is akin to a user's screen-name and is unique to the user). This manipulation from a complaint to a tweet does not, by any stretch of the imagination, happen automatically and without direct initiation, participation, and management from the Defendants.

65.     Defendants do not post every complaint from their website onto Twitter; rather, they hand-select certain companies and certain complaints to exploit on Twitter.

66.     Twitter is a unique social media platform, with established user guidelines, character limits, and best practices that are separate and distinct from other social media platforms and consumer review sites.

67.     Twitter (NYSE: TWTR) is a public company and according to public records it is not affiliated with Defendants. Therefore, just like every other independant Twitter subscriber, Defendants must perform an overt act to take a users post from PissedConsumer.com and place it onto Twitter. It is unequivocal that Twitter does not

on its on accord take postings from PissedConsumer.com and "tweet" them without

any initiation, participation, or management by PissedConsumer.com.

68.  Each Twitter post by Defendants is a unique statement authored and made directly by

Defendants and can be accessed by any one of Twitter's 271 million subscribers.

69.  Pissed Consumer's Tweets are separate and distinct from user postings on

PissedConsumer.com. Indeed, PissedConsumer.com must control, modify, vary  and

manage the user's posting to fit the one-hundred and forty (140) charachter limit that

is strictly enforced by Twitter. This too cannot be automatically manipulated without

direct initiation, particpation, and modification by PissedConsumer.com and the

manager of PissedConsumer.com's Twitter handle.

70.  Indeed, as set forth above, PissedConsumer.com requires a *minimum* one-hundred

(100) *word* complaint. Therefore, it is impossible for PissedConsumer.com to

"automatically" condense a one-hundred (100) *word* complaint into one-hundred and

forty (140) *charachters* and place it onto Twitter without manipulation, modification,

and managment by PissedConsumer.com.

71.  Tweets are sent as if they were written by Defendants from Defendant's unique

Twitter handle @PissedConsumer.

72.  Defendants' Tweets about ROCA include but are not limited to:

        A.  "@RocaLabs Don't buy anything from Roca Labs they just sell a regular

            shake"



B. "Doesn't Work!!! I can't believe I really thought this would work! Save your money"



C. WILL NOT PROCESS PROMISED REFUND, LIED TO BY CUSTOMER SERVICE AGENTS REGARDING PROMISED REFUND" (*See* **Exhibit "E" Twitter Postings**).



73.   Defendants' Tweets about ROCA were created and developed by Defendants. Without Defendants' involvement (whether manual or automated), the subject tweets do not exist.

74.   Defendant's Tweets come directly from @PissedConsumer without any third party attribution; however, if there is a third-party managing the foregoing Twitter handle, it is done at the direction of PissedConsumer.com, and is thus managed and controlled by PissedConsumer.com.

75.   In making a Tweet, Defendants will add ROCA's Twitter handle "@RocaLabs" to further exploit ROCA. Adding another "handle" such as @RocaLabs is not something Twitter automatically does and is unequivocally done by PissedConsumer.com. This is further manipulation of the original content by PissedConsumer.com.

76.   In making a Tweet, Defendants add a "tinyurl.com" link. This action is to conform with the character limit of Twitter, and thus changes, modifies, controls, and manages the original content obtained from the user on PissedConsumer.com. This is further manipulation of the original content by PissedConsumer.com.

77.   Defendants are the author/creator/developer, publisher and marketer of its Tweets. Twitter does not control or manage PissedConsumer.com's Twitter account.

78.   Defendants, wrote, Tweeted, and published false and defamatory statements about ROCA for their own financial gain.

79.   Defendants use Twitter as a marketing tool to promote PissedConsumer.com.

80.   Defendants have more than 3,400 followers on Twitter and follow more than 3,700 people. Defendants have selected more than 190 Tweets as favorites.



81.    Further, Defendants also employ a network of agents who tweet false, negative and malicious information about ROCA. For example Marc Randazza, Defendants' retained counsel, posted the following tweet about Roca Labs: "Some fucker put Roca Labs' shit in my kids candy bag!"

