# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ROCA LABS, INC.,                                    Case No:  8:14-cv-02096-VMC-EAJ

     Plaintiff,                              **DISPOSITIVE MOTION**

   v.

CONSUMER OPINION CORP. and
OPINION CORP.,

     Defendants.

_____/

## MOTION FOR SUMMARY JUDGMENT

**1.0     Introduction**

    Defendant Consumer Opinion Corp. ("Opinion")[1] moves for summary judgment on all claims against it in this action by Roca Labs, Inc. ("Roca"). As set forth below, The First Amendment element to this case makes summary judgment even more appropriate at this stage in the proceedings, considering that Roca's entire purpose in bringing this litigation was to impose an unconstitutional chill on defendants' speech.  The appropriateness of summary judgment is even more obvious regarding Opinion, one of two defendants in this case, because the facts or record show that Opinion is nothing but a holding company that owns the PISSEDCONSUMER.COM trademark and engages no activities – tortious or otherwise.

**2.0     Summary Judgment Standards**

    In a case where, as here, discovery is essentially completed and the record indicates the existence of no genuine issue of material fact, all questions are now simply matters of law and

---

[1] In the First Amended Complaint, Plaintiff refers to Defendant Consumer Opinion Corp. as "Opinion."  To avoid confusion, Plaintiff will do the same in this motion.

ripe for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Summary judgment is not a disfavored procedural shortcut, but is integral to the efficient resolution of disputes. *See Bush v. Barnett Bank*, 916 F. Supp. 1244, 1251 (M.D. Fla. 1996).

In particular, dispensing with defamation claims at this stage of the case is consistent with a long tradition in Florida law, 11th Circuit decisions, and U.S. Supreme Court precedent. "In defamation cases pretrial dispositions are 'especially appropriate' because of the chilling effect these cases have on freedom of speech." *Karp v. Miami Herald Pub. Co.*, 359 So. 2d 580, 581 (Fla. 3d DCA 1978); *see Trapp v. Southeastern Newspapers Corp.*, 1984 U.S. Dist. LEXIS 24906, (S.D. Ga. June 7, 1984) ("in the First Amendment area, summary procedures are not only applicable, but even more essential than in other areas of civil litigation"); *Gilles v. Alley*, 591 F. Supp. 181, 189 (M.D. Ala. 1984) ("summary judgment is proper and indeed essential where a trial is likely to stifle the defendant's speech"); *Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 363 (Fla. 4th DCA 1997). This Court should follow that worthy tradition.

As argued by Defendants in their first Motion for Summary Judgment[2] [Doc. # 50], and confirmed by Plaintiff's subsequent litigation tactics and irrationally broad discovery demands, Roca has filed nothing so much as a SLAPP designed to burden the defense with litigation costs and to force it to submit to Roca's will to avoid penury. This Court should not indulge Plaintiff's cynical strategy, because as a matter of law, all Roca's claims are ripe for judgment.

**3.0    Claims Against Consumer Opinion Corp.**

Opinion should never have been part of this case for the simple reason that it has nothing to do with the operation of the pissedconsumer.com website (the "Website") at issue in

---

[2] The previous Motion for Summary Judgment was rendered moot by the filing of Plaintiff's First Amended Complaint, which was due to be filed on January 30, 2015, and then on February 24, 2015 [*See* Order granting leave to amend, Doc. # 96; *see also* Order denying Motion for Leave to File Second Amended Complaint, Doc. # 108], but was not actually filed until March 20, 2015. [Doc. # 114]. For this reason alone, the Amended Complaint should be thrown out, but rather than do so on a mere technicality, the Court should end this case on its merits – as those merits are, and have always been, frivolous.

this litigation.   It exists only for the purpose of holding the registered trademark PISSED CONSUMER®.[3]  This undisputed fact is itself all the Court needs to grant summary judgment, but Roca's claims are ripe for summary judgment as a matter of law on other grounds as well.

**4.0 Summary judgment is appropriate on all of Roca's claims.**

### 4.1    Summary judgment is *necessary* on Roca's defamation claims

While, as discussed above, summary judgment is the judiciary's tool of choice in defamation claims, it is particularly well suited as a way to dispose of claims involving consumer reviews about health care choices.  *See Spelson v. CBS, Inc.*, 581 F. Supp. 1195 (N.D. Ill. 1984) (stating that "[t]here may be no more serious or critical issue extant today than the health of human beings. Given the frailty of human existence, any controversy on the subject must be afforded wide open discussion and criticism so that individuals may make well educated health care choices.").  In this case, summary judgment is also appropriate because, as set out below, federal law bars defamation claims against non-editorial online publishers, and because none of the statements alleged to be defamatory is capable of supporting Roca's claims as a matter of law.

### 4.2    If Consumer Opinion Corp. were involved in the operation of the Website it would enjoy 47 U.S.C. § 230 immunity, making summary judgment appropriate on Roca's other claims

As a threshold matter, the Communications Decency Act ("CDA"), 47 U.S.C. § 230, immunizes Internet service providers such as Opinion from liability based on the actions of third parties, such as the authors of the comments at issue here. "The purpose of the CDA is to establish 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Alvi Armani Med., Inc. v. Hennessey*,

---

[3] Plaintiff seems to acknowledge the difference between the two companies and acknowledges at ¶4 of the First Amended Complaint ("FAC") that Consumer Opinion Corp. owns the trademark and also recognizes that the two companies have different addresses.  [FAC, Doc. # 114 ¶¶4-5].  Plaintiff also correctly modifies Defendant Opinion Corp.'s name with "d/b/a pissedconsumer.com" and correctly does not apply that modifier to Defendant Consumer Opinion Corp.

629 F. Supp. 2d 1302, 1306 (S.D. Fla. 2008), *quoting Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321-22 (11th Cir. 2006).

"Section 230 immunity, like other forms of immunity, is generally accorded effect at the first logical point in the litigation process." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009). "Dismissal of a case on this basis is appropriate unless the complaint pleads non-conclusory facts that plausibly indicate that 'any alleged drafting or revision by [the defendant] was something more than a website operator performs as part of its traditional editorial function,' thereby rendering it an information content provider." *Westlake Legal Group v. Yelp, Inc.*, 43 Media L. Rep. 1417 (4th Cir. 2015) (citing *Nemet Chevrolet*). In *Westlake* the Fourth Circuit found that Yelp's use of automated systems to filter reviews constituted traditional editorial functions and therefore did not render Yelp an information content provider. *See also, Green v. Am. Online* (AOL), 318 F.3d 465, 470-71 (3d Cir. N.J. 2003) (finding that § 230 proscribes liability in situations where an interactive service provider makes decisions "relating to the monitoring, screening, and deletion of content from its network -- actions quintessentially related to a publisher's role"). Pissedconsumer.com's automated functionality for publication of third-party commentary serves those same purposes, affording the operators of the Website – much less Opinion, which has no role at all in its functioning – the full immunities of § 230, mandating dismissal of Roca's defamation claims.

### 4.2.1   Pissedconsumer.com is an interactive computer service

The Website is undeniably an "interactive computer service" provider as the term has been defined under 47 U.S.C. § 230. "An 'interactive computer service' is defined as 'any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server.'" *Batzel v. Smith*, 333 F. 3d 1018, 1030 (9th Cir. 2003). Here, because multiple users access the website and post reviews and comment on other reviews, the Website's operator falls within the definition of "interactive computer service."

Attached as **Exhibit 2** is the declaration of Michael Podolsky ("Podolsky Decl."). (*See* Podolsky Decl. ¶8.) Dismissal of defamation claims against online service providers is mandated by 47 U.S.C. § 230 where, as here, (1) the defendant is a provider of an interactive computer service; (2) the cause of action treats the defendant as a publisher or speaker of information; and (3) the subject information is in fact provided by another information content provider. *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 2008 U.S. Dist. LEXIS 11632, *26 (M.D. Fla. Feb. 15, 2008).

These elements are all met here. While Roca wants to hold Opinion liable as the "publisher" of the Tweets that are generated from reviews posted on the Website, there is no basis to contradict the testimony that Tweets are automatically-broadcasted third-party statements, not written by Opinion (or any defendant) as a factual matter or as a matter of law. (Podolsky Decl. ¶¶11-14.) Where, as here, such information, and any resulting alleged "customer losses," are generated by third party input, 47 U.S.C. § 230 immunity applies. *Levitt v. Yelp! Inc.*, 2011 U.S. Dist. LEXIS 124082 (N.D. Cal. Oct. 26, 2011), as the court determined in regarding the Website at issue here in *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 474 (E.D.N.Y. 2011) ("PissedConsumer constitutes an 'interactive computer service'").

### 4.2.2   Roca seeks to treat Consumer Opinion Corp. as the speaker or publisher of information provided by third parties

Roca seeks to impose liability on Opinion for the third party reviews posted on its website by asking the Court to treat Opinion as the speaker of the statements, either entirely or as a "co-author." As set forth above, as a matter of law the Website's status as an interactive entity protected by § 230 is well settled. Roca cannot, on the record or otherwise, provide any evidentiary basis to rebut this settled fact, much less to overcome the first-hand testimony set forth in the submissions filed in support of this motion, discussed more fully below.

### 4.2.3   Consumer Opinion Corp. did not author any of the reviews

First, and fundamentally, there is no bona fide dispute as to whether Opinion authors the reviews featured on the Website – it does not. (*See* Podolsky Decl. at ¶10.) Roca can hardly take issue with this assertion that Opinion did not author the statements because it is suing the actual authors for doing so. (*See* Request for Judicial Notice, attached as **Exhibit 1** at Exhibit B; *see also* Doc. #s 052-1, 052-2.)   And certainly Opinion – a trademark holding company – has nothing to do with the operation of the Website, as stated above.

The facts are these:  The Website provides a form for users to fill out describing their experiences with a particular company, product, or service.  (*See* Podolsky Decl. at ¶9.)   The review is then automatically posted – without review, fact-checking or emendation – without the involvement of any Website personnel.  (*Id.* at ¶10.)  Randomly selected reviews are posted to a related Twitter account, the heading of the review serving as the body of the Tweet.  (*Id.* at ¶11; *compare* Doc. # 114 at ¶72(a) (statement made on Twitter) and ¶147(g) (statement made on Opinion Corp.'s website) ("Don't buy anything from Roca Lab they just sell a regular shake they are stealing your m[oney]") (the Tweet omitted the last four letters of "money" due to character count constraints imposed by Twitter)).  The Tweet links back to that review on the website. (Podolsky Decl. at ¶13.)  The Website's operators do not substantively alter or write the contents of the Tweets.  (*Id.* at ¶14.)  Defendant Opinion, a trademark holding company, has no role in this process whatsoever.

Dissemination of reviews posted on the Website via Twitter does not make the Website's operators "publishers" under the CDA or otherwise compromise defendants' Section 230 immunity because third parties (consumers) authored them and an entirely content-blind process publishes them both on the Website and via Twitter.  While the Website's operators may add the Twitter handle of the review's subject to a Tweet (e.g., "@RocaLabs"), this merely acts as an index or identifier of the subject matter (and, in fact, puts that person or company on

notice so it can respond, which any subject of a review is free to do on the Website at no cost (Doc. # 13-4 at ¶5.))  It is established law that Section 230 immunity includes services used by an exempt entity to disseminate its content. "A 'provider' of an interactive computer service includes websites that host third-party generated content." *Regions Bank v. Kaplan*, 2013 U.S. Dist. LEXIS 40805, *47 (M.D. Fla. Mar. 22, 2013); citing *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 293 (D.N.H. 2008).

Roca's attempted workaround of this legal bar to its claims – its characterization of defendants as "co-authors" of the posts – is of no persuasive value, because users post their comments using a set, automated form.  This is a common argument in 47 U.S.C. § 230 cases, and it never works, as demonstrated by a recent Sixth Circuit ruling that is exactly on point:

> The website's content submission form simply instructs users to '[t]ell us what's happening. Remember to tell us who, what, when, where, why.' The form additionally provides labels by which to categorize the submission. These tools, neutral (both in orientation and design) as to what third parties submit, do not constitute a material contribution to any defamatory speech that is uploaded.

*Jones v. Dirty World Entm't Recordings, et al.*, 755 F.3d 398, 416 (6th Cir. 2014).  Here, too, there is no material disputed fact but that the Website's submission form is also clearly neutral, not remotely approaching the sort of "material contribution" that could vitiate Section 230.  *See Xcentric Ventures, LLC*, 2008 U.S. Dist. LEXIS 11632 (M.D. Fla. Feb. 15, 2008) (merely "provid[ing] categories from which a poster must make a selection in order to submit a report on the ROR website is not sufficient to treat Defendants as information content providers").

Plaintiff's next tack is another common red herring: it claims that Opinion is not entitled to the protection of Section 230 because it utilizes search engine optimization techniques (one of which would be the use of Tweets containing relevant content and links to the Website) to increase traffic to the Website.  [Doc. # 114 at ¶35].  This theory was most recently disposed of in *Obado v. Magedson,* 2015 U.S. App. LEXIS 7721, *6 (3d Cir. N.J. May 11, 2015) ("manipulate[ing] search engines to maximize search results relating to the alleged defamatory

RANDAZZA | LEGAL GROUP

content does not affect . . . immunity from suit.").  Given that Roca knows that the statements were not authored by *either* Defendant, it would seem proper to resolve the case on § 230 grounds as to both Defendants.  However, the connection to the Trademark Holding Company in this case is even more tenuous, and immediately dismissible.

#### 4.2.4   Drop down menus do not dissolve 47 U.S.C. § 230 immunity

Roca, trying to reformulate the above arguments in different words, also claims that because the Website utilizes an <u>interactive</u> form for users to fill out, this makes Defendants co-authors. The illogic of this argument was in *Ascentive, supra,* in which the Eastern District of New York found that Opinion Corp., the other defendant in this action and the operator of the Website, does not developed or create the reviews it publishes regardless of how its methodology of facilitating user posts is characterized.  Merely "[a]sserting or implying the mere possibility that PissedConsumer did so is insufficient to overcome the immunity granted by the CDA." *Id.*; *see*, e.g., *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 259 (4th Cir. 2009) (upholding CDA immunity where "nothing but [plaintiff's] speculation" offered as proof of consumer review website being involved in authorship).  *See also, Levitt v. Yelp! Inc.,* 2011 U.S. Dist. LEXIS 124082, at *9 (N.D. Cal. Oct. 26, 2011) (motion to dismiss claims against consumer review site granted where claim that site "created negative reviews" was not supported in the complaint and claim that site "manipulated third party reviews to pressure businesses to advertise" was barred by 47 U.S.C. § 230).

Because 47 U.S.C. § 230 bars Roca's claims against Opinion for statements distributed by and through the website by third parties, and the entirety of Roca's claims are premised on statements distributed by and through the Website by third parties, the entirety of Roca's claims must fail.  This dissolves Plaintiff's claims under counts I, IV, V, VII, IX, and XII.[4]  As

---

[4] Counts II, IV, VI, VII, and X apply only to Defendant Opinion Corp.  The FAC contains a numbering error and there is no Count XI.

demonstrated below, however, even in the absence of the immunity provided by 47 U.S.C. § 230, the claims cannot stand as a matter of law.

### 4.3    Roca Cannot Meet the Standard for a Defamation Claim

Besides the fact that Section 230 entirely bars Roca's claims, it could not make out a claim of defamation on this record against any Defendant at all.  To prove defamation, a plaintiff must show (1) defendant's publication of the allegedly defamatory statement; (2) its falsity; (3) that the defendant acted with knowledge or reckless disregard as to the falsity on a matter concerning a public figure or at least negligently on a matter of solely private concern; (4) actual damages.  *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1214 n.8 (Fla. 2010), citing *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).  Public figures seeking to prove defamation are held to a higher burden than private individuals under both federal and state law.  *See New York Times v. Sullivan*, 376 U.S. 254, 280-82 (1964); *Silvester v. Am. Broad. Cos.*, 650 F. Supp. 766, 770 (S.D. Fla. 1986). A public figure must prove that a statement was made with "actual malice," i.e., with <u>knowledge</u> of its falsity or with <u>reckless</u> *disregard* for the truth. *New York Times v. Sullivan*, 376 U.S. 280.  The facts of record readily demonstrate that Roca is a public figure, so to prevail on its defamation claim it must prove that Opinion itself authored the allegedly defamatory statements; that the statements are materially false statements of purported fact about Roca; that Opinion made the statements with a reckless disregard for the truth or veracity of the statements; and that Roca has suffered cognizable damages as a result.  As explained above, Opinion, a holding company, did not author any of the statements at issue. Nor can Roca possibly prove any of the remaining elements, and it is a question of law, not of fact, as to whether the statements are capable of a defamatory meaning.

### 4.3.1   Roca is a public figure

"Public figures must prove by clear and convincing evidence that allegedly defamatory statements were made with actual malice." *Tobinick v. Novella*, 2015 U.S. Dist. LEXIS 72467, *20

(S.D. Fla. Jun 4, 2015).  This is "a requirement that presents a heavy burden, far in excess of the preponderance sufficient for most civil litigation" *Id.* According to Roca's own statements, it is a world-renowned company pioneering the diet product market for gastric bypass alternatives; indeed, it describes itself as "the inventor of [the] Gastric Bypass Alternative®" [Doc. # 114 at ¶15] which it describes as "the world's strongest, most effective weight loss regimen" (*see* <rocalabs.com/gastric-bypass-no-surgery>) which has been "used by tens of thousands of people." [Doc. # 114 at ¶17].  Roca "relies upon its reputation in the community which includes the Internet, and the weight loss success of its customers to generate new business and attract new customers." [*Id.* at ¶23].  It is a public figure, and "it is no answer to the assertion that one is a public figure to say, truthfully, that one doesn't choose to be. It is sufficient, . . . that [the defendant] voluntarily engaged in a course that was bound to invite attention and comment.'" *Silvester v. Am. Broad. Cos.*, 839 F.2d 1491, 1496 (11th Cir. 1988), citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974).  Moreover, the controversy over Roca's weight-loss snake oil itself renders it a public figure, for "a public controversy is one that touches upon serious issues relating to … public safety."  Roca has, in fact, been the subject of at least seventy-three complaints to the Better Business Bureau and 118 complaints to the Federal Trade Commission. (*See* **Exhibit 3** at Exhibits A and B; *see also* Doc. #s 131-1, 131-2; *and see* Declaration of Trey Rothell ("Rothell Decl."), attached as **Exhibit 4**, at Exhibit A.)  Public discussion of Roca's wares is obviously a matter of public safety – one that should not, and under the Constitution cannot, be compromised by Roca's campaign of censorship-by-litigation.

As a public-figure plaintiff, then, Roca must demonstrate that the statements were made with knowing falsity or reckless disregard for the truth.  *Sullivan*, *supra*, 376 U.S. 281. This requires proof that the defendant had a "high degree of awareness of . . . probable falsity" of its statement. *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).  "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his

publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). "[The plaintiff] must prove actual malice with clear and convincing evidence." *Dockery v. Fla. Democratic Party*, 799 So. 2d 291, 294 (Fla. 2d DCA 2001).

Roca, however, cannot point to a single fact in the record that could possibly raise a bona fide issue of material fact as to whether Opinion, a trademark-holding Defendant, had any view at all regarding the truth of the publications published on its co-defendant's website. Given that Roca, to sustain its claim past summary judgment, has an affirmative duty to prove that Opinion did have such a view; that Opinion's view was that the statements are false; and that Opinion acted to publish them despite such knowledge, its claims must fail as a matter of law.

### 4.3.2   The defamation claims fail as a matter of law

Roca must also show that the statements at issue are false statements of purported fact – a legal determination, not a factual one. *Town of Sewall's Point v. Rhodes*, 852 So. 2d 949, 951 (Fla. DCA 4th 2003). No additional discovery is necessary to make this determination, which is why defamation claims against public figures such as Roca are appropriately disposed of on summary judgment. *See Anderson v. Liberty Lobby*, 477 U.S. 242 (1986); *Dockery v. Florida Democratic Party*, 799 So.2d 291 (Fla. 2nd DCA 2001). Courts are equipped to make this determination as a matter of law because under the First Amendment, there "is no such thing as a false idea." *Gertz*, 418 U.S. at 339. And, indeed, there is no bona fide basis on which to dispute the fact that individual reviews posted on the Website are the personal opinions of individuals who have had experience with Roca's product or interacted with its customer service dep't. As such, they constitute the opinions of the authors and are protected speech. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (statements of opinion are protected); *Gertz*, 418 U.S. at 339-40 (same).

Both the Supreme Court and the 11th Circuit have a long tradition of protecting opinion, even when delivered in a caustic tone. "This provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally

added much to the discourse of our Nation." *Milkovich*, 497 U.S. at 20; *see Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002). "Although rhetorically hyperbolic statements may at first blush appear to be factual, they cannot reasonably be interpreted as stating actual facts about their target." *Fortson v. Colangelo*, 434 F. Supp.2d 1369, 1378-79 (S.D. Fla. 2006). *See also*, *Partington v. Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995) (noting that readers of a lawyer's book about his own accomplishments would expect to find "the highly subjective opinions of the author rather than assertions of verifiable, objective facts"); *Tobinick v. Novella*, 2015 U.S. Dist. LEXIS 72467, *25 (minor misstatements or rhetorical hyperbole remains protected speech).

In fact, regarding the Website at issue, New York's Appellate Division recently affirmed the dismissal of a defamation claim based on posts uploaded on the Website in *Matter of Woodbridge Structured Funding, LLC v. Pissed Consumer & PissedConsumer.com*, 125 A.D.3d 508, 509 (N.Y. App. Div. 1st Dep't 2015). The court there established definitively that the Website is essentially a defamation-free zone because of its obvious context of heated, subjective and colorful opinion:

> [W]hen the statements complained of [on PissedConsumer.com] are viewed in context, they suggest to a reasonable reader that the writer was a dissatisfied customer who utilized respondent's consumers' grievance website to express an opinion. Although some of the statements are based on undisclosed, unfavorable facts known to the writer, the disgruntled tone, anonymous posting, and predominant use of statements that cannot be definitively proven true or false, supports the finding that the challenged statements are only susceptible of a non-defamatory meaning, grounded in opinion.

This Court should adopt the New York court's reasoning and dismiss Roca's claims.

### 4.3.2.1  No reasonable person would see any of the statements as a statement of fact.

Because the question of how a reasonable person views consumer complaints on the Website is so critical to Defendants' business, Opinion went beyond the established legal standards set above and retained an expert, Dr. Ed Nagelhout, a professor of rhetoric and writing at the University of Nevada, Las Vegas, to analyze the rhetorical and linguistic meaning

12

conveyed by each of the sentences upon which Plaintiff has based its defamation claims.  He found that, "[n]o reasonable reader would see any of the sentences as statements of fact."  The Declaration of Dr. Nagelhout is attached to this Motion as **Exhibit 5** ("Naglehout Decl.").  *See* Nagelhout Decl. at Exhibit A Expert Witness Report ("Nagelhout Report").

But the fact that the statements Roca complains about – "This product sucks."  [Doc. # 114 at ¶147(a)] . . . "This business is a total fraud.  BEWARE!"  [*Id.* at ¶147(b)] . . . "Run don't walk away from this one! SCAM!"  [*Id.* at ¶147(d)] . . . "You have a better chance of feeling full if you swallowed a glass of liquid cement and let it harden in your stomach."  [*Id.* at ¶147(k)] – are obviously expressions of opinion is obvious to anyone who can read.   "Pathos is the appeal to the emotions of the readers, designed to evoke an emotional response" and reflects opinion rather than setting forth a factual argument." (Nagelhout Report at p. 3.)  It is well established law that terms such as "rip off," "fraud" and "snake-oil" are hyperbolic, not read as objective descriptions of fact.  *See,* e.g., *Phantom Touring v. Affiliated Publ'ns*, 953 F.2d 724, 728, 730–31 (1st Cir. 1992) (holding that description of theatre production as "a rip-off, a fraud, a scandal, a snake-oil job" was no more than "rhetorical hyperbole"); *Tobinick v. Novella*, 2015 U.S. Dist. LEXIS 72467, *25 (referring to doctor as a "quack" protected).  Expressions of strong views "'may well include vehement, caustic, and sometimes unpleasantly sharp attacks' … such attacks are constitutionally protected and those who make them are exempt from liability for defamation if the attacks are simply 'rhetorical hyperbole.'" *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002), citing *Sullivan*, 376 U.S. at 270.  These sorts of "vigorous epithets" made in the expression of the individual consumer's opinion do not give rise to defamation. *Greenbelt Coop. Pub. Ass'n v. Bresler*, 398 U.S. 6, 7 (1970).  Indeed, the more dramatic the language used, the less likely the statements will be considered defamatory by readers – or the law. *Id.* at 14.  Florida courts follow the *Greenbelt* doctrine of "rhetorical hyperbole." *See*, e.g., *Seropian v. Forman*, 652 So. 2d 490, 492 (Fla. 4th DCA 1995) (dismissing defamation claim based on statement that plaintiff

was an "influence peddler" as "hyperbole:").

While Roca may not appreciate the sentiments expressed, it has no right to legal relief to assuage its hurt feelings. Roca must demonstrate that the statements are false statements of fact and would be so perceived in the context of their publication. It cannot do so.

### 4.3.2.2 "Sucks" "expensive" "horrible to drink" "doesn't do nothing"

The specific statements complained of by Roca are nonetheless worth analyzing, for doing so demonstrates the wisdom of the general holdings set forth above.  Thus the first statement that Roca complains of is:  "This product sucks. It's expensive, horrible to drink & doesn't do nothing."  [Doc. # 114 at ¶147(a)].  This statement is obviously a protected statement of opinion indicating simply that the reviewer apparently tried the product and did not like it. No legal citations are necessary to posit that whether something "sucks" or "rocks" is a matter of opinion.

"Expensive," too, is a matter of perspective.  Unless something is "free," anyone may describe it as "expensive."  "Horrible to drink" suffers the same fate; it is entirely subjective. "Doesn't do nothing," which presumably means "does not do <u>anything</u>," is obviously meant as hyperbole, since even the posting commenter acknowledges that it does several things – it costs too much money and it tastes awful, in his or her view.  Roca cannot, as a matter of law, demonstrate that any portion of this statement was made with knowing falsity or a reckless disregard for the truth as required under *Sullivan*.

### 4.3.2.3 "Total fraud. BEWARE!"

The next statement that Roca compels us to confront as capable (or not) of having a defamatory meaning is: "This business is a total fraud.  BEWARE!"  [Doc. # 114 at ¶147(b)]. Opinion's expert found this statement to be hyperbolic opinion that no reasonable person would see as factual. (See Nagelhout Report *in passim*.)  Moreover, Roca cannot demonstrate, on

RANDAZZA | LEGAL GROUP

the facts of record, that this comment was published with any doubt as to the truth of the statement – especially in light of the fact that the statement has <u>proved to be true</u> in the brief lifetime of this litigation.

For example, the record is clear that Roca advertised that each person who bought its product had their file reviewed by a medical doctor. Attached as **<u>Exhibit 3</u>** at Exhibit D is a copy of the plans Roca previously offered, the "Premium" and "Personal" plans including phone support with the doctor and "around the clock" support from the "Medical Team." Furthermore, for $35, a prospective customer could consult the doctor before purchasing, or consult a nurse for free. (*Id.* at Exhibit E.) Roca's website even featured a "Letter from the Doctor," written by "Doctor" Ross Finesmith, meant to "illustrate" a letter that prospective customers could present to their own physicians to address their understandable skepticism concerning Roca's merchandise. [*See* Doc. # 9-6]. Soon after this litigation was initiated, it became public that "Doctor" Ross Finesmith actually lost his medical license after being charged with possession of child pornography. (*See* **<u>Exhibit 1</u>**, Req. for Judicial Notice at Exhibit C, (NJ Medical Board Order of Revocation, outlining basis for the revocation Dr. Finesmith's medical license)). Since this litigation began Roca has sought to distance itself from "Dr." Finesmith, removing the "Letter from the Doctor" and deleting the online videos that featured his medical "expertise," but the fraud[5] was very real.

There is more as well, such as testimony by former Roca employee Jodie Barnes, which establishes that Roca officers requested that she wear a fat suit and pose for "before" photos so that she could later offer a false testimonial that she had lost weight. A copy of the complete deposition testimony of Ms. Barnes is attached as Exhibits F and G to **<u>Exhibit 3</u>** ("Barnes

---

[5] See http://www.merriam-webster.com/dictionary/fraud. Fraud includes "one that is not what it seems or is represented to be" and "a person who pretends to be what he or she is not in order to trick people."

Depo."). (*See* Barnes Depo. at pp. 27:20-25, 28:1-9, 34:22-25, 35:1-18, 36:1-23, 37:8-25, 38:1-20, 39:10-22, 41:6-19; 42:14-25, 43:1-6; 51:2-20, and 181:19-25.)

### 4.3.2.4  "Got scammed and sick from this JUNK"

The next statement is no more defamatory than those preceding it, stating, "Roca Labs – Got scammed and sick from this JUNK." [Doc. # 114 at ¶147(c)]. If "scam" were capable of a defamatory meaning, could a reasonable person not subjectively – even objectively – believe, and rightfully say, he or she was "scammed" by a company such as Roca? This statement is one individual's personal opinion after their experience with the product, and this language is not capable of a defamatory meaning. *See Phantom Touring*, 953 F.2d at 728, 730–31. Indeed, the non-standard use of ALLCAPS (for "JUNK") is a signal that the writer was appealing to pathos. (Nagelhous Report at p.4.) Furthermore, this statement is subject to a qualified privilege as a statement made in the public interest, as a matter of public health. "[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1356 (11th Cir. 2014). Roca is promoting a product that may be harmful to those who consume it. [*See* Doc. # 13-1, Declaration of Dr. Parisi]. This needs to be discussed in the public, and the First Amendment does not abide preventing such discussion under the dubious label of defamation.

### 4.3.2.5  "Run don't walk away from this one! SCAM!!"

The next, similar statement is "Roca Labs – Run don't walk away from this one! SCAM!!" [Doc. # 114 at ¶147(d)]. The Court should be confident, based on the argument above, that "SCAM!!" is never, as a matter of law, an expression of purported objective fact. If it were, though, given the facts set out above about Roca's marketing practices, "SCAM!!" is at least arguably a valid description of the company, and, again, "SCAM!!" in all capital letters with multiple exclamation points is a clear indicator of hyperbole directed to the pathos. (Nagelhous Report at p.4.) As a matter of law, this statement is incapable of providing the basis for a

defamation claim.  However, given the fake doctor and the fat suit, discussed above, "scam" seems like a fair characterization of this company.

### 4.3.2.6 **"Full of lies and deceit"**

"The Company is full of lies and deceit."  [Doc. # 114 at ¶147(e)].  This statement is protected opinion, as a result of one individual's personal experience with Roca.  Furthermore, the facts set forth above support the statement's truth, for "Dr. Ross" was not a doctor during the time Roca held him out to the public as one to induce prospective customers to buy. Consistent with its fraudulent approach, Don Juravin, Roca's vice president, signed a sworn affidavit on September 25, 2014 averring that celebrity Alfonso Ribeiro endorsed its product – testimony swiftly shown to be perjury.  [*See* Doc. #s 20, 26].  Jodie Barnes' testimony that she was required to dress in a fat suit in order to provide fraudulent testimonials offers additional support. (*See* Barnes Depo. at at pp. 27:20-25, 28:1-9, 34:22-25, 35:1-18, 36:1-23, 37:8-25, 38:1-20, 39:10-22, 41:6-19; 42:14-25, 43:1-6; 51:2-20, and 181:19-25).  At the very least this is a statement of opinion – one that is fairly supported based on the record.

### 4.3.2.7 **"DO NOT TRUST THESE PEOPLE.   They are CROOKS."**

The next "defamatory statement" is:  "DO NOT TRUST THESE PEOPLE.   They are CROOKS."  [Doc. # 114 at ¶147(f)].  Even if the over use of ALL CAPS did not signal hyperbole, the words themselves would. A "crook" is defined as a "dishonest person."  As explained above, this is not defamatory.  It is rare that a case can be so new to the world, yet already have a record that has factually developed to the extent that dishonesty on the Plaintiff's part can be so conclusively established. If it is not conclusively established, it is certainly a fair comment to call Roca "CROOKS."  Furthermore, given the use of stylistic flourish, it is apparent on its face that this statement is rhetorical hyperbole.  And yet again, would any reasonable juror "TRUST THESE PEOPLE?"  "THESE PEOPLE" are the people who require

17

users to agree to the "gag clause," and who hold out as their "medical director" an individual who has been barred from the practice of medicine.  No more factual development is required to demonstrate conclusively that nobody should trust Roca; certainly no trial is necessary to answer the question. At worst this statement is protected fair commentary, and not actionable.

### 4.3.2.8  "Liquid cement"

We now arrive at the final allegedly defamatory statement:  "You have a better chance of feeling full if you swallowed a glass of liquid cement and let it harden in your stomach.  Do not waste your time, energy or money on them."  [Doc. # 114 at ¶147(k)].  This statement is obviously rhetorical hyperbole.  (Nagelhout Report at pp 5-6.)  A reasonable reader would not reasonably believe that a suggestion to swallow cement in lieu of the Roca product is a statement of fact. There is nothing that could transform this statement into one that would support a claim for defamation.

### 4.4    Summary judgment is appropriate on Roca's FDUTPA Claims

It comes as no surprise that Roca would bring a deceptive trade practices claim in an attempt to cut through the robust immunity granted by 47 U.S.C. § 230.  It has been tried before, and roundly rejected.  Most recently, sex trafficking victims tried to hold an online forum responsible for sexual abuse they suffered. The federal court denied the claim, writing:

> Congress has made the determination that the balance between suppression of trafficking and freedom of expression should be struck in favor of the latter in so far as the Internet is concerned. Putting aside the moral judgment that one might pass on Backpage's business practices, this court has no choice but to adhere to the law that Congress has seen fit to enact.

*Doe v. Backpage.com, LLC*, 2015 U.S. Dist. LEXIS 63889, *41 (D. Mass. May 15, 2015).

Courts have routinely and roundly rejected creative attempts to get around § 230. S*ee Universal Comm'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007); *StubHub, Inc., Hill v. StubHub, Inc.*, 219 N.C. App. 227, 245 (N.C. Ct. App. 2012) (rejecting claim that a § 230 protected website could be responsible for scalpers' unfair or deceptive trade practices); *Nemet Chevrolet, Ltd. v.*

*Consumeraffairs.com, Inc.*, 591 F.3d 250, 257 (4th Cir. 2009) (upholding immunity when design of website did not "require[] users to input illegal content as a necessary condition of use").

No amount of further discovery could change the fact that Roca's FDUTPA claim should be disposed of immediately. To prevail in a FDUTPA action, a plaintiff must demonstrate that the defendant committed a deceptive act or unfair practice and that that act or practice was the cause of actual and identifiable damages suffered by the plaintiff. *See Virgilio v. Ryland Group, Inc.*, 680 F. 3d 1329, 1338 n. 25 (11th Cir. 2012) (quoting *Rollins Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). The Complaint alleges that the Website advertises that it can help foster a resolution between companies and their customers and that it offers various specific services to help achieve such resolution. [Doc. # 114 at ¶¶136-38, 140, 142]. Roca itself does not believe that Opinion does in fact provide these services, however. [*Id.* at ¶¶139, 141, and 143]. The Complaint goes on to say that Opinion has engaged in violations of FDUTPA by publishing false statements about Roca on the Website [*Id.* at ¶¶146-53] and by forwarding those statements to Twitter. [*Id.* at ¶¶154-55]. Finally, Roca claims that Opinion misrepresents statements regarding its esteem and presents itself as a consumer advocacy site when it is actually a gripe site. [*Id.* at ¶¶156-170].

These allegations are irrelevant to liability under FDUTPA, which prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). The statute previously provided that only a "consumer" had standing to pursue a FDUTPA claim. The statute was amended to replace "consumer" with "person." *See* Fla. Stat. § 501.211(2). Florida courts clarified that despite this change in language, there still must be a consumer relationship between the parties to provide FDUTPA standing.

> [T]he legislative intent of the 2001 amendment was to clarify that 'remedies available to individuals are also available to businesses,' as opposed to creating a cause of action for non-consumers. Accordingly, the Court is not convinced that the 2001 amendment to FDUTPA creates a cause of action for [two parties], when there is no consumer relationship between them.

*Dobbins v. Scriptfleet, Inc.*, 2012 U.S. Dist. LEXIS 23131 (M.D. Fla. Feb. 23, 2012), citing *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1349 (S.D. Fla. 2009) (quoting Sen. Staff Analysis and Economic Impact Stmt., Florida Staff Anal., SB 208, March 22, 2001, at p. 7).

It is beyond dispute that Roca is neither a consumer of Opinion's services (as it is only a holding company), nor is it a consumer of co-defendant Opinion Corp.'s services. (*See* Podolsky Decl. at ¶3.)   In fact, after this litigation commenced, Roca <u>attempted to create</u> a business relationship between Roca and Opinion Corp. – Don Juravin, Roca's principal, tried to register for Opinion Corp.'s premium business service and posted a paid review on Opinion Corp.'s website.   (*Id.* at ¶4; *see also* Doc. # 20.[6])   Opinion Corp. saw through this ruse and refunded Juravin's money but let his expression stand.   (Podolsky Decl. at ¶5.)   It did this because the "review" was a fake celebrity endorsement by Alfonso Ribeiro.[7]   [*See* Doc. # 20].   Presumably, this was an attempt to draw legal fire from Ribeiro's lawyers, which it did.   Opinion Corp. almost immediately received a legal threat from Ribeiro's attorney, indicating that Ribeiro did not endorse the product, and that the review was an unauthorized use of his name and likeness. [Doc. # 26-1].   Per Opinion Corp.'s policy, it removed the contents of this review.   (Podolsky Decl. at ¶¶6-7.)

Florida law is clear: There must be some relationship between the parties sufficient to trigger FDUTPA.   Here, there is no relationship except the one they are currently engaged in – this litigation.   Magistrate Judge Jenkins already found a lack of such a relationship: "Plaintiff does not allege a consumer relationship between Plaintiff and Defendants, or even an employment, business, or competitor relationship."   [Doc. # 43 at 9, Magistrate's Report and

---

[6] It is worth noting that Doc. # 20 contains undeniable perjury.  See Doc. # 26.
[7] Ribeiro is best known as "Carlton" in *The Fresh Prince of Bel Air*.

Recommendations].  Magistrate Judge Jenkins found "Plaintiff has failed to prove a sufficient causal nexus between the deceptive actions alleged and any harm it has suffered, as the loss of business and reputation suffered by Plaintiff stems from the *content of the reviews* rather than any deceptive actions alleged by Plaintiff." [*Id.* at 10].  Despite amending the complaint, this has not changed – nothing in the Amended Complaint remedies this, so no discovery could change it. As a matter of law, the FDUTPA claim dissolves; Roca has no standing to bring it.  *Id.* at 7.

Even if Roca had standing, it could not sustain a FDUTPA claim. Under the Act, an "unfair practice" is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *PNR, Inc. v. Beacon Prop. Mgmt.*, 842 So. 2d 773, 777 (Fla. 2003) (quoting *Samuels v. King Motor Co.*, 782 So.2d 489, 499 (Fla. 4th DCA 2001)). A "deceptive act" occurs when there is a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc.*, 842 So.2d at 777 (quoting *Millennium Communs. & Fulfillment, Inc. v. Office of the AG, Dep't of Legal Affairs*, 761 So.2d 1256, 1263 (Fla. 3d DCA 2000)) (emphasis added).  In this case, the record reflects that all the Website's operator did was provide a platform for consumers to share their experiences – certainly nothing to consumers' detriment. To the contrary, the website provides a valuable tool for consumers to share their experiences in order to protect them from unscrupulous businesses.

Roca's FDUTPA claim also fails, and should be dismissed, because it has no proof of cognizable damages.  Roca contends that it has incurred damages because the Website allows "false and defamatory" statements to be posted by third parties.  [Doc. # 5 at ¶172].  While the First Amended Complaint no longer specifies the type of damages Roca claims to have suffered, the closest Roca has come to enunciating a theory of damages is by describing the supposed loss of prospective customers because of reviews on the Website.  But these reviews are not "deceptive" or "unfair" behavior on the part of any defendant here – they are written by third

parties. [Doc. # 43 at ¶9]. Plaintiff has no proof of, or even a coherent theory of, a causal relationship between Opinion's alleged acts and any harm it claims to have suffered.

### 4.5 The tortious interference with a business relationship claims are ripe for summary judgment in Consumer Opinion Corp.'s favor

To prevail on a claim of tortious interference, a plaintiff must demonstrate "(1) the existence of a business relationship ... (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994). Roca claims, again, that allegedly defamatory posts on the pissedconsumer.com website caused it to lose unspecified business opportunities. [Doc. # 114 at ¶230]. Not one such opportunity has been documented, or even identified, in discovery, however. "Plaintiff has failed to satisfy its burden of proof on the issue of causation and is not likely to succeed on the merits of its claims for tortious interference." [Doc. # 43 at 12].

This is unsurprising, because there is no set of facts that could support Roca's claim that Opinion acted in a manner that a fact finder could determine to be intentional and unjustified interference with Roca's business. Even if Opinion were involved in the operation of the Website – which it is undisputed it does not – simply providing a platform for consumers to review a company, product, or service is not an unjustified interference; there is no <u>tort</u> in allowing consumers to review products. Allowing consumer reviews on public health issues could certainly never be deemed "unjustified." In fact, the only relevant extant "business relationship" implicated here is Roca's oppressive "contract" with its customers, which Roca claims bars them from commenting negatively about Roca or its products – even though the

negative health consequences of its merchandise have been documented in this case [*see* Doc. #s 13-1, 13-5].[8]

To the extent, however, that Roca claims Opinion tortiously interfered with these "contracts" by facilitating its customers' ability to post reviews [Doc. # 114 at ¶¶219-229], it is manifestly obvious that this "contract" is not only unable to govern the conduct of Opinion,[9] but that this pact with the dietary devil is unenforceable as to <u>anyone</u>.  [*See* Doc. # 13 at 12-15]. One reason it is unenforceable is Fla. Stat. § 542.18, prohibiting such restrictive covenants ("every contract, combination, or conspiracy in restraint of trade or commerce in this state is unlawful").  Because under Fla. Stat. § 542.335(l)(g)(4) the enforceability of a restrictive covenant mandates that a court "consider the effect of enforcement upon the public health, safety, and welfare," Roca's attempt to use this "contract" to prohibit consumers from sharing their negative health experiences about its weight-loss product is legally void – for clearly its sole purpose is to deprive prospective purchasers of information that would allow them to make an informed decision about a product that makes health-related claims, is digested internally and, it is documented, makes people sick. [*See* Doc. # 13-1, Declaration of Dr. Thomas Parisi ¶¶15-19; Doc. # 13-5, Declaration of Margaret Walsh; Doc. # 13-3, Schaive Decl. ¶¶8, 18].  The contract is also void under this standard because Roca refuses to refund consumers' money if they are dissatisfied – or even if they get ill.  [Doc. # 13-3, Schaive Decl. ¶¶6-7, 13, 16; Doc. # 13-5, Walsh Decl. ¶¶9, 14].

---

[8] As established by the unrebutted testimony of Dr. Parisi, Roca's product appears to be unsafe.  [*See* Doc. # 13-5]. This is further backed up by independent sources.  For example, the second ingredient listed on Roca's product is guar gum.  Attached as **<u>Exhibit 3</u>** at Exhibit C are the ingredients as provided on Roca's website.  Meanwhile, the Food and Drug Administration has strict limits upon the amount of guar gum that can be in a food product.  *See* 21 C.F.R. § 184.1339.  Further, prior specious weight loss products based on guar gum have attracted the disapproving eye of federal regulators.  *See United States v. Undetermined Quantities of "Cal-Ban 3000* * *"*, 776 F. Supp. 249 (E.D.N.C.1991).

[9] "[A] contract does not bind one who is not a party to the contract, or who has not agreed to accept its terms." *Marlite, Inc. v. Eckenrod*, 2012 U.S. Dist. LEXIS 118140 (S.D. Fla. July 13, 2012), *citing Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1074-75 (11th Cir. 2003).

Ultimately, to prevail on a claim of tortious interference, Roca must demonstrate a <u>causal relationship</u> between Opinion's alleged "intentional and unjustified interference with the relationship" and any harm it claims to have suffered. Roca has no proof of such a relationship.

**5.0    Conclusion**

"There may be no more serious or critical issue extant today than the health of human beings. Given the frailty of human existence, any controversy on the subject must be afforded wide open discussion and criticism so that individuals may make well educated health care choices." *Spelson v. CBS, Inc.*, 581 F. Supp. at 1206. The entire purpose of Roca's case is to silence criticism of a questionable (at best) substance marketed (deceptively) as a medical product. Roca wants to silence all criticism through the use of SLAPP suits such as this one. This Court's indulgence of that strategy is, to Roca, a necessary component in ripping off customers, putting their health in danger, and laughing all the way to the bank. This should end now, lest this case be a sign that in Florida, people should fear those who would seek to shut down debate through punishing litigation.

Based on the foregoing, Defendant Consumer Opinion Corp. respectfully requests the Court grant its Motion for Summary Judgment. Free speech cases such as this one cry out for resolution at the earliest possible time, lest protracted litigation chill Opinion's, and others', willingness to exercise their First Amendment rights. Summary judgment is appropriate, and it is appropriate now.

Respectfully Submitted,

*Marc J. Randazza*

_____

Marc J. Randazza, Esq.
Florida Bar No. 625566
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele: 702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

Ronald D. Coleman, Esq.
*Pro Hac Vice*
ARCHER & GREINER, P.C.
Court Plaza South
21 Main Street – Suite 353
Hackensack, New Jersey 07601
Tele:  201-342-6000
Fax: 201-342-6611
Email: rcoleman@archerlaw.com

RANDAZZA | LEGAL GROUP

CASE NO.: 8:14-cv-02096-VMC-EAJ

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 8, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a true and correct copy of the foregoing document is being served upon counsel for Plaintiff, via transmission of Notices of Electronic Filing generated by CM/ECF.

_____
An employee / agent of
RANDAZZA LEGAL GROUP