# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ROCA LABS, INC.,  Case No:  8:14-cv-02096-VMC-EAJ

          Plaintiff,

v.

CONSUMER OPINION CORP. and
OPINION CORP. d/b/a
PISSEDCONSUMER.COM,

          Defendants.                                    /

---

## OPPOSITION TO AMENDED PLAINTIFF'S MOTION
## TO DETERMINE REASONABLE DEPOSITION FEE

DEFENDANTS, OPINION CORP and CONSUMER OPINION CORP., hereby respectfully submit this Opposition to Amended Plaintiff's Motion to Determine Reasonable Deposition Fee.

## 1.0    INTRODUCTION

Roca Labs, Inc. ("Roca") is attempting to coerce Defendants' expert, Dr. Thomas Parisi, to withdraw from the case by both threatening unwarranted and improper criminal sanctions against him (*see* Dkt. 131), and now through this unsupported motion. The motion raises two issues regarding Dr. Parisi's anticipated testimony:  1) Roca does not wish to pay his fee, and 2) Roca has an issue with Dr. Parisi's retainer agreement.  Neither are proper grounds for a motion.

## 2.0    ARGUMENT

### 2.1    Dr. Parisi Is a Medical Expert Witness

Roca seeks to capitalize on a scrivener's error in Dr. Parisi's engagement agreement – somehow attempting to exploit the fact that they "discovered" that it came from a template

1

Opposition to Amended Plaintiff's Motion to Determine Reasonable Deposition Fee.

provided by the undersigned. It did.  Nobody has sought to, nor would seek to, deny that fact, nor does it so much as suggest impropriety.

The undersigned sought out a doctor to be an expert witness, and one that was willing to be involved in this case.  With time running short to oppose Plaintiff's Motion for Entry of a Temporary Injunction (Dkt. 5), counsel for the Defense approached Dr. Parisi.[1]  Fortunately, Dr. Parisi was willing to provide the service.

Dr. Parisi had never served as an expert before, but was generally familiar with the litigation process. The undersigned discussed the function of an expert witness with Dr. Parisi. He explained that Dr. Parisi would need to provide reports, prepare for depositions and trial, and attend a deposition and trial. In discussing terms, Dr. Parisi and the undersigned telephonically came to terms as follows: Dr. Parisi would charge $300 per hour for work that he could conduct on his own time – preparation for deposition, preparing reports, and preparing for trial. For in-person testimony, Dr. Parisi explained that he would require $3,000 per half day. This was consistent with the undersigned's experience with other experts, and is in fact consistent with his own billing policies when serving as an expert witness. (*See* Dkt. 131-3 (Declaration of Marc J. Randazza In Support of Motion for Sanctions) at ¶7).  There was a willing buyer of services and a willing seller.  Their bargain is not unreasonable.

---

[1] Roca's counsel makes the unsupported statement that "Upon information and belief, Dr. Parisi and Marc Randazza are related by blood or marriage" and that this relationship has allowed the undersigned "to control the fees set by the witness." (Dkt. 146 at 7, ¶30). This bald assertion is unsupported.  In fact, upon reading this accusation, the undersigned called Dr. Parisi and asked if the two were, indeed, related.  Neither Randazza nor Parisi are aware of being related.  They did discover in this conversation that both of their families originated in Terrasini, Sicily, where the two men's surnames are extremely common.  There is some possibility that they share a common ancestor, but neither are aware of that ancestor, nor his/her identity.  The men have never so much as met, much less attended a family dinner together. Should Roca actually wish to do the genealogical research to show Parisi and Randazza how they are "related," both men would be delighted to see it.  However, the interest would be personal and not legal, for even if they were twin brothers, what relevance would that bear to Dr. Parisi's rates?  His rates are based upon his skills and the market – not upon his potential placement in the undersigned's family tree.

2

Opposition to Amended Plaintiff's Motion to Determine Reasonable Deposition Fee.

Dr. Parisi asked for a sample of an engagement agreement, and the undersigned provided him with a recent one of his own. There were many blanks in it, as well as a statement of what the expert retention was for – as Roca points out, this states (erroneously) that it is for testimony "concerning trademark issues and branding in the adult entertainment market." Therefore, Roca makes the leap that this is Dr. Parisi's claimed area of expertise. (*See* Dkt. 146 at 3, ¶11). This pedantry is not well taken. Clearly this is not what Dr. Parisi was retained for, and it is not what Dr. Parisi was disclosed as an expert for. Yes, Dr. Parisi appears to have been lackadaisical with respect to reviewing and filling out the contract – in fact, the contract between Dr. Parisi and the Defendants is rife with errors and omissions. Again, so what? This does not change the intent of the parties in forming the contract. Dr. Parisi is testifying as a medical expert.

Roca admits that Dr. Parisi is "adequately trained as a physician" (Dkt. 146 at 9), and stated in its original motion that "[t]here is no doubt that Dr. Parisi is a well-trained physician." (Dkt. 145 at 8). That should be the end of it.

While there exists an express contract with a minor error, the real terms of the agreement are implied by manifested language and other circumstances. As Roca's email correspondence reflects, Dr. Parisi and the undersigned both assented to a deposition schedule for Dr. Parisi (*as a medical expert*) on May 6, 2015. (*See* Dkt. 146-1 at 2). In addition, Roca's counsel admits that on May 19, 2015 he reviewed Dr. Parisi's contract. (*See* Dkt. 146 at 3, ¶8). He did not object to the contract's language or point out any error, but continued to move forward with a deposition of Dr. Parisi as a medical expert. After having reviewed Dr. Parisi's contract, opposing counsel then served Dr. Parisi with a subpoena on May 27, 2015, assenting to his status as a medical expert in this case. (*See* Dkt. 146-1 at 5-10).

### 2.2 Dr. Parisi is Entitled to His Expert Witness Fees, Which are Reasonable

Where testimony of an expert witness comes from a *treating* physician, courts in the Eleventh Circuit have recognized that the doctor assumed "an obligation borne by all citizens to give relevant testimony." *See Cartrette v. T & J Transp., Inc.,* 2011 WL 899523 at *1 (M.D. Fla. Mar. 15, 2011) (quoting *Fraser,* 2008 WL 312670, at *1 (quoting *Pierce v. Nelson,* 509 N.W.2d 471, 474 (IA 1993)). A treating physician is one with preexisting knowledge about a party gained through the course of a doctor-patient relationship that bears on the issue in controversy. While the Eleventh Circuit has still awarded treating physicians their reasonable expert witness fees, this factor has sometimes caused the amount paid to be reduced. While Dr. Parisi is requesting fees that this court has awarded to treating physicians, this policy regarding treating physicians does not apply here. Dr. Parisi is a specially retained expert brought in strictly for professional consultation with no obligation to lend his opinion or services.

What constitutes a reasonable fee "must be decided on a case by case basis." *Harvey v. Shultz,* 2000 U.S. Dist. LEXIS 19815, *4 (D. Kan. Nov. 16, 2000). "The rationale behind [rule 26(b)(4)(C)] is that it would be unfair to require one party to provide discovery for another party's benefit without reimbursement." *Cabana v. Forcier*, 200 F.R.D. 9, 15 (D. Mass. 2001). "[The] factors . . . merely serve to guide the court and [t]he ultimate goal must be to calibrate the balance so that a plaintiff will not be unduly hampered in his/her efforts to attract competent experts, while at the same time, an inquiring defendant will not be unfairly burdened by excessive ransoms which produce windfalls for the plaintiff's experts." (Internal quotation marks omitted.) *Id.*, at 15-16.

Here, Dr. Parisi was not Defendants' first choice of expert – mostly by virtue of the fact that Defendants were seeking experts geographically closer to the Court, so as to reduce travel expenses for trial.  But, finding a Florida doctor on such short notice proved elusive, and thus the free market led Defendants to Dr. Parisi, who upon being informed of Roca's litigious

4

Opposition to Amended Plaintiff's Motion to Determine Reasonable Deposition Fee.

nature, was understandably seeking a fair wage for his services.  The Defendants are none too pleased that, should this matter reach trial, they will be required to pay $3,000 per half day of testimony *plus* travel expenses.  But, given the fact that a temporary restraining order was facing them, they had little choice but to retain someone in a rush.

In situations where *treating physicians* have been retained as expert witnesses, this Court has awarded reasonable fees of $750 per hour for deposition testimony or $1000 an hour for a video deposition. *See Cruz v. Home Depot, U.S.A., Inc.,* 2011 WL 4836239, *2; 2011 U.S. Dist. LEXIS 117801, *4 (M.D. Fla. Oct. 12, 2011) (approving differential fee structure of $1,000 per hour for video depositions and $750 per hour for non video depositions).

Dr. Parisi has no obligation to testify in this matter.  He is doing so because he is being paid the rate he requested.  His rate is consistent with other *treating physicians* who have an obligation, and thus less right to command their chosen rates.  His resume more than illustrates his qualifications. Dr. Parisi is the CEO of a medical clinic, chief surgeon, and an adjunct professor of medicine. (*See* Dkt. 146-1 (CV of Dr. Parisi)).  He is also double board certified with one of those certifications in internal medicine, which is directly relevant to the present case. (*See id.*). If a comparable expert witness could even be located, his rates would likely surpass those that Dr. Parisi respectfully requests. However because a doctor with qualifications similar to Dr. Parisi could not be found to testify in this matter, the rates that Roca suggests should be put aside. Roca's present motion asserts that Dr. Parisi should be paid less than doctors who are under a duty to their patients. It seems illogical that a doctor who has a duty to testify could command less than one without such an obligation.

In other cases involving the expert testimony of *treating physicians*, courts in the Eleventh Circuit have deemed hourly fees of $500 and $400 an hour as reasonable. *See Coley v. Wal-Mart Stores E., LP, 2008 WL 879294, at *1 (M.D. Fla. Mar. 28, 2008)*; *see also Cartrette*, 2011 WL 899523 at *3. It is worth mentioning that the *treating physician* in *Cartrette* provided no CV for the court to

5

Opposition to Amended Plaintiff's Motion to Determine Reasonable Deposition Fee.

review, yet the Court still awarded fees more than double the hourly rate Roca proposes. Moreover, while Roca's counsel admits that he has reviewed Dr. Parisi's CV and concludes that Dr. Parisi is "adequately trained as a physician" (Dkt. 146 at 9) and that there is "no doubt (he) is a well-trained physician" (Dkt. 145 at 8), Roca wishes to pay him less than half of the $400 hourly rate the Middle District of Florida awarded a *treating physician*.

Roca objects to Dr. Parisi's expert witness fees on the basis that it thinks his rates are too high. Roca simply "submits that his fees are grossly excessive and cannot be compared to any physician who has expertise in providing medical testimony." (Dkt. 146 at 9).  Roca provides no basis for this. Roca also attacks the sufficiency of Dr. Parisi's expert declaration in support of Defendants' Opposition to Motion for Entry of a Temporary Injunction (Dkt. 13-1), declining to explain how an expert report drafted nearly nine months ago in response to a time-sensitive motion makes Dr. Parisi's expert witness fees "excessive and grossly unreasonable." (Dkt. 146 at 10). Additionally, Roca asserts that Dr. Parisi's fees are excessive because his clinic would not actually have been closed when it wanted to depose him. (*See* Dkt. 146 at 2, ¶4; 5, ¶19; 10). Regardless, that is how much Dr. Parisi values a half day of his life.  Furthermore, even if he is not actually at his clinic on Friday (which is not in evidence) Parisi presumably is (like most doctors) available to be on call at a hospital, or in some other way able to earn far in excess of $175 per hour.  Nevertheless, what difference does it make what Dr. Parisi would have been doing on that date anyway?  The afternoon of the 12th of June is Parisi's to sell for whatever price he wants.  The Defendants would be delighted to spend less on him for trial, but understand that this is not a used car – professionals cost what they cost.

### 2.3    Roca Has No Objection to a "Differential Fee" Structure

Ed Nagelhout is the defense's other expert witness. This defense expert is a professor of English at the University of Nevada, and he is charging $100 per hour for report testimony and $200 per hour for deposition testimony. Counsel for Plaintiff is reported to have spoken to

Nagelhout about *his* rates, and raised no objection to paying $200 per hour for deposition testimony and $100 per hour for non-in-person testimony. (*See* Declaration of Ed Nagelhout ("Nagelhout Decl."), attached as Exhibit 1, at ¶¶1-3). While the undersigned makes no judgment call regarding the relative value of an English professor vs. a board certified doctor, it seems illogical that Roca has no objection to him doubling *his* rate for in-person testimony, and Roca has no objection to paying him *more* than Dr. Parisi.

**3.0**     **CONCLUSION**

This motion was brought, presumably, because Roca labs wishes to spend $700 on Dr. Parisi's testimony, and not the $3,000 he agreed to charge.  In other words, this motion is about (at best) $2,300.  It cost more than that to draft the motion, and presumably Roca will spend more than that in travel costs to depose Dr. Parisi.  Of course, if this court determines that Dr. Parisi's rate should be a mere $175 per hour, then Dr. Parisi will most likely decline to continue to participate in the case – which is really what Roca wants.  (*See* Dkt. 131).  Having failed to intimidate Dr. Parisi from testifying by threatening him, Roca now simply seeks to deprive the Defense of its witness through artificially attempting to change his rates.

Defendants respectfully request that the court deny the instant motion and sanction Roca Labs for its conduct in bringing this motion.

Respectfully Submitted,

*Marc J. Randazza*
_____
Marc J. Randazza, Esq.
Florida Bar No. 625566
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele:  702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

CASE NO.: 8:14-cv-02096-VMC-EAJ

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 10 June 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a true and correct copy of the foregoing document is being served upon: Paul Berger, Esq. and Cynthia Koroll, counsel for Plaintiff, via transmission of Notices of Electronic Filing generated by CM/ECF.

_____
An employee / agent of
RANDAZZA LEGAL GROUP

**RANDAZZA** | LEGAL GROUP

Opposition to Amended Plaintiff's Motion to Determine Reasonable Deposition Fee.