# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ROCA LABS, INC.,                                  Case No:  8:14-cv-02096-VMC-EAJ

    Plaintiff,

v.

CONSUMER OPINION CORP. and
OPINION CORP.,

    Defendants.
_____/

## DECLARATION OF RONALD D. COLEMAN IN
## OPPOSITION TO MOTIONS TO COMPEL

I, RONALD D. COLEMAN, being over 18 years of age and competent to testify about the matters contained in this declaration, hereby state as follows:

1. I am a partner of Archer & Greiner, P.C. and a member of the bars of the states of New Jersey and New York, and am admitted *pro hac vice* in this matter.

2. The narrow assertion by Plaintiff in its Second Motion to Compel, etc. ("Second Motion to Compel") that the parties had agreed to the deposition dates referred to in its motion is correct, and this was acknowledged by Defendants in their opposition to a previous motion to compel (Doc. # 132).  But beyond this fact, Plaintiff's representation is incomplete.

1

3. Plaintiff's suggestion, moreover, that this Court "relied" on this schedule (Doc. 143 at ¶ 2) is not well taken. At most the Court took notice of the fact that there appeared to be agreement among the parties as to the scheduling of depositions, and appropriately deemed the previous motion to compel moot.

4. This agreement as to scheduling was not, as Plaintiff suggests, an unconditional commitment by Defendants to participate in the depositions as scheduled regardless of what conditions Plaintiff might threaten to create.

5. As set forth further below, in fact, Plaintiff subsequently created, and refused all efforts to mitigate, conditions which made it reasonable for Defendants to postpone the deposition. This was done two days prior to the date of the first scheduled deposition and in anticipation of a prompt ruling by this Court on the matters in controversy, as set out in my letter of June 4, 2015 (Exh. 1 to Plaintiff's Doc. 143).

**Plaintiff's motion, the failure to meet and confer and the question of a protective order**

6. Regarding the relationship of the June 4th letter to the postponement of the depositions, it should be noted that it stated in its first paragraph, in recognition of the general rule that a protective order is the appropriate approach for a party aggrieved by an anticipated discovery abuse, as follows:

> We will take the matter up with the Court promptly, but in light of the unavailability of the Magistrate Judge today (as [Plaintiff's counsel] Cynthia [Koroll] knows, we attempted to reach him to secure a ruling during the Schiavo deposition) we cannot put our clients at risk of abuse

2

and harassment given Plaintiff's refusal to address Defendants' legitimate concerns.

7. Before Defendants could seek relief by way of a protective order, however, Plaintiff filed its own motion to compel laying out the exact issues in dispute early the following morning, i.e., on June 5, 2015.

**The videotaping, and use of media outside the litigation, dispute**

8. The first reason for postponement of the depositions was the "concerns" referred to in the letter of June 4th concerning Plaintiff's insistence on unfettered use of videotapes made of depositions in this case. These concerns should be obvious to the Court given the record already before it.

9. Specifically, Defendant's reservations arise in the context of the scorched-earth approach Plaintiff has taken to this dispute. This includes a seemingly endless series of threats and a raft of litigation filings against parties, non-parties and even counsel.

10. Defendants' witnesses were nonetheless prepared to testify, as is their obligation. But as the date for the depositions came closer, it appeared increasingly likely that Plaintiff's intentions were to use the videos taken at the deposition and to have them published on the Internet based on Plaintiff's continued refusal to either foreswear doing this or to identify what non-litigation purpose it had in mind for these materials.

11. Any such publication would violate the privacy and threaten the safety of the personal Defendants and principals of the corporate Defendants in these actions, who are frequently threatened, pursued and

3

sued by aggrieved subjects of reviews posted by third parties on Pissedconsumer.com.

12. No litigation purpose would be served by such action.

13. Once taken, however, such action would, in the Internet era, lead to irreparable harm to these individuals. No sanction or remedy would be able to undo the damage of the publication of images or videos of these witnesses, who have made an effort to maintain their privacy.

14. Plaintiff, however, refused to stipulate that it would not take such action or otherwise limit its use of media from the depositions to this litigation or even other litigation involving the same parties.

15. Nor would Plaintiff, despite repeated requests – written and oral – specify any reason for its refusal to limit the use of videotaped depositions. It certainly never made any attempt to explain why it needed video depositions in the first place.

16. Contrary to the suggestion that the postponement of the depositions was some sort of "last minute" event, Plaintiff had been aware of these concerns well before receiving the June 4th letter.

17. Indeed, as early as June 1, 2015, Plaintiff was on notice of the fact that its refusal to agree to a court order limiting use of the deposition videos or to have any such media retained by Defendants unless and until release of the same was ordered by the Court, and its refusal to explain why it would not so stipulate, was likely to result in the depositions not going forward as scheduled.

18. Plaintiff acknowledges this fact in its Motion to Compel Compliance, etc. ("Motion to Compel") (Doc. #150-7), in which it submits an

4

email from the undersigned dated June 1, 2015, advising Plaintiff's counsel that absent an agreement to limit the use of video from the deposition, Defendants would seek the protective order that Plaintiff had initially agreed to and then, without explanation, withdrawn, as set forth in that exhibit.

19. As explained below, the issue of a protective order was for all practical purposes mooted by Plaintiff's own filing of a motion to compel and the Court's deferring a ruling until both sides were heard.

20. As the Court can also see in that email, after we provided that advice, Plaintiff's counsel requested a legal basis for our objection to the videotaping without restriction.

21. We provided, on short notice, a representative case in my email sent the following afternoon (Doc. # 143-6 at 2.) More extensive legal argument is set forth in the accompanying Points and Authorities.

22. We also used that email to again ask Plaintiff's counsel to at least specify what non-litigation use of the videos Plaintiff might intend.

23. In response, Plaintiff refused to explain the legal or practical basis of its refusal to enter into a protective order, and ignored the case cited while providing no legal authority for its own position.

24. Plaintiff went on, as the emails show, to merely offer to have the videographer hold the tapes in escrow.

25. We initially agreed to this as a compromise, but, as noted in the June 4th letter postponing the depositions, it became clear that the proposed use of a videographer as escrow agent was an unacceptable alternative to our original suggestion that the tape be retained by Defendants pending a ruling.

5

26. Defendants noted, in the June 4, 2015 letter, that Plaintiff had not even identified the proposed videographer / escrow agent; that the videographer would not, presumably, be an attorney admitted to this Court on any basis and would not be subject to the Court's supervision and discipline; and that no escrow agreement had been prepared for our review or, to our knowledge, even tendered to the videographer which might mitigate any of these concerns.

27. Plaintiff is well aware that once any depositions were recorded and control of the recordings was lost, no remedy this or any Court could impose would prevent their unauthorized use if they were at any point copied and published on the Internet.

28. In light of Plaintiff's steady refusal to limit its use of this material or even to specify what use it insisted on retaining the right to put it to, Defendants could not agree to Plaintiff's suggestion that Defendants rely on the fiduciary sophistication and fidelity of an unidentified videographer engaged by Plaintiff and not even subject to a written agreement concerning control of the recordings. We so advised Plaintiff in our June 4th letter.

**The Skype Issue**

29. Plaintiff's evasiveness concerning the use of videotapes of the depositions became more troubling when Plaintiff announced, several days prior to the deposition, its intention to have a number of third parties "attend" the depositions by live-streaming the proceedings to unknown remote locations via the Skype Internet videoconferencing service.

6

30. As set forth in the June 4th letter, separate and apart from the issue of what persons, including prospective witnesses in a case, may attend a deposition in that case – which we addressed by way of legal citation in the letter – the entire issue of using Skype to "broadcast" the depositions made any discussion of what would be done with videotapes of the proceedings nothing but window-dressing.

31. Once the depositions would be live-streamed on the Internet via Skype, there would be no limit to how such a "broadcast" could be used, including by recordation on a remote computer.

32. We asked Plaintiff, as set forth in the June 4th letter, for legal authority authorizing such a practice, but received no response.

**Separate scheduling dates for 30(b)(1) and 30(b)(6) depositions**

33. Plaintiff's motion also addresses another issue raised in the June 4, 2015 letter, specifically Plaintiff's insistence that separate sessions be scheduled for 30(b)(1) and 30(b)(6) witnesses despite the fact that they are the same people.

34. Defendants address the legal standards governing this issue in the Points and Authorities submitted herewith, but for purposes of this Declaration the undersigned states that Defendants would, indeed, produce the same individuals – Mr. Podolsky and Mr. Syrov – as 30(b)(6) witnesses who have also been noticed as 30(b)(1) witnesses.

35. It is also true, however, that it would be a burden for both witnesses, who have other employment, to attend two separate depositions each on two separate days solely for purposes of "segregating" the 30(b)(1) and 30(b)(6) questioning.

7

36. Defendants do not seek to reduce the total amount of time available Plaintiff to question either witness under the Rules – merely to require Plaintiff to make an effort to question them efficiently so that if two separate sessions are not necessary, they can be avoided.

**Plaintiff's motion to compel and consequent futility of seeking a protective order**

37. As stated above, on the morning of June 5, 2015, Plaintiff included all the above-cited correspondence among counsel for the parties concerning the disputes that are the subject of its own motion for an order compelling Defendants to attend the depositions scheduled for the next day, and the following three days, as scheduled. (Doc. No 143.)

38. Plaintiff made its motion without conferring as required by Local Rule 3.01(g). While the Certificate of Good Faith included in Document 143 at first states that Plaintiff did confer with Defendants prior to filing its motion, it then acknowledges that it made an attempt, as Plaintiff characterizes it, to confer but failed to do so as a result of Defendants' non-cooperation.

39. This is not a full and accurate account of events.

40. What Plaintiff omits to include in its Certificate is that, at the end of a deposition in the evening hours of June 4, 2015, Plaintiff's counsel instructed the undersigned that (a) a Rule 3.01(g) conference would take place immediately following that deposition, despite the fact that my co-counsel, Mr. Randazza, was not present, had not received notice of such a conference or been consulted as to his availability.

41. Moreover, Plaintiff's counsel advised the undersigned that the Rule 3.01(g) conference would be "on the record," – i.e., that the meet and

8

confer would be transcribed by the court reporter who had been secured for the deposition which had just finished.

42. There is no authority in the Local Rules for the transcription of such conferences and no order from this Court directing that Rule 3.01(g) conferences be transcribed. Moreover, it appeared to the undersigned that such a practice would run counter to the informal and cooperative nature of such conferences contemplated by the Rule. For this reason we refused to participate at the exact moment dictated by Plaintiff and under any circumstances while being transcribed absent an order from this Court requiring the same.

43. Between the time we declined Plaintiff's invitation to participate in a Rule 3.01(g) conference pursuant to Plaintiff's unilaterally-imposed timing and procedures and the time Plaintiff filed its motion, Plaintiff made no further attempt – not by email and not by telephone – to schedule such a conference.

44. On that same day, the Court promptly issued an order deferring ruling on the substance of the dispute and directing Defendants to respond by June 12, 2015. (Doc. No 144.) The Court did not issue an order compelling the depositions on the dates scheduled, all of which were prior to June 12th, Defendant's deadline to respond.

45. In light of Plaintiff's motion placing the matter before the Court and the Court's direction that complete briefing be submitted today, there seemed no reason for Defendants to multiply the proceedings and seek a protective order. The exact dispute in question had already been placed

9

before the Court on June 5th and the Court had already directed that it be briefed by today, not earlier.

46. Plaintiff acknowledges, in its Motion to Compel, that its counsel was aware since June 4, 2015 that Defendants would not produce witnesses on the scheduled dates until the issues in dispute were resolved.

47. Plaintiff also acknowledges in its submission that on June 5, 2015 it sought an order from the Court directing that the originally-scheduled dates be maintained, that no such order was issued, and that the Court ordered that the matter be briefed by Defendants no later than seven days later, i.e., after the scheduled deposition dates.

48. Notwithstanding all this, Plaintiff avers that its counsel nonetheless traveled to New York and "attended" a series of depositions over four days that it was well aware would not take place as scheduled and which required judicial resolution, which would not occur for at least a week hence, before being rescheduled. (Doc. #150 ¶¶ 15-21).

49. Indeed, on that Friday night, and on Saturday and Sunday – i.e., on June 6th, 7th and 8th – Plaintiff's counsel continued to send emails pretending not to be aware that the depositions had been postponed and that its request for relief from the Court had not been granted, addressing such minutiae as which door to the court reporter's office would be open over the weekend. These emails, partially redacted to remove non-public contact information of counsel, are attached as Exhibit 2 to Defendants' Opposition.

50. Plaintiff did this despite repeated responses from the undersigned that the depositions had been postponed per the letter of June

10

4, 2015 and that no witnesses would be produced until such time as the Court ruled on the questions that are the subject of the pending motion.

### Extension of the discovery deadline

51. The record is clear that Plaintiff did not seek to schedule any of the depositions at issue on this motion nor otherwise seek discovery from Defendants until the very end of the discovery period.

I declare under penalty of perjury that the foregoing is true and correct.

*[signature]*
Ronald D. Coleman

Executed on June 12, 2015 in Hackensack, New Jersey

RANDAZZA | LEGAL GROUP

11