## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ROCA LABS, INC.,

       Plaintiff,                          Case No: 8:14-cv-2096-T-33EAJ

Vs.

CONSUMER OPINION CORP. and
OPINION CORP. d/b/a
PISSEDCONSUMER.COM

       Defendants.

_____

## PLAINTIFF'S RESPONSE TO DEFENDANT, CONSUMER OPINION CORP.'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

COMES NOW Plaintiff, ROCA LABS, INC. ("Roca"), by and through its undersigned attorney, and hereby files this Response to Defendant Consumer Opinion Corp.'s ("Defendant") Motion for Summary Judgment (Dkt. 148)[1]. The record affirmatively establishes that are genuine issues of material fact, Defendant is not entitled to a judgment as a matter of law and Plaintiff respectfully requests that Defendant's Motion should be DENIED. The record establishes that the Plaintiff has met its burden to proceed to trial with its claims against Defendant and Defendant is not entitled to immunity under the Communications Decency Act (CDA). The substantial matters of law and fact to be argued are as follows:

---

[1] Plaintiff asserts Defendant's Motion should be denied for failure to comply with U.S. District Court for the Middle District of Florida local Rule 1.05(a) and 3.01(a). Defendant used less than double line spacing to condense its Motion to meet with the 25 pages requirement (if double line spacing was used, Defendant's motion would be approximately 29 pages in length). Defendant sought leave from the Court to increase the size of its Motion and this request was denied [Dkt. No.140].

**Cross Summary Judgment Motion**

Plaintiff has filed a Motion for Summary Judgment. [Dkt. No. 172] and asserts that it can meet its burden for its Motion, while Defendant has misrepresented the factual record to this Court in its Motion which should be denied. "Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." (*See Perez-Santiago v. Volusia Cnty.*, No. 6:08-cv-1868-Orl-28KRS, 2010 WL 917872, (M.D. Fla. Mar. 11, 2010). When considering cross-motions for summary judgment, the Court must "consider and rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard." *Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

**DEFENDANT'S PURPORTED MATERIAL FACTS**

Defendant did not include a statement of undisputed facts upon which it is relying in its Motion for Summary Judgment (Local Rule 3.01(a) requires a precise basis for relief). The factual record does not support Defendant's position and it cannot meet its burden. Defendant has no actual evidence to support its position, but merely conclusory allegations that are not supported by any facts. The undisputed facts support a denial of Defendant's Motion and granting Plaintiff's Motion for Summary Judgment [Dkt. No. 172].

Despite the lack of a clear statement of undisputed material facts, Plaintiff gleaned the following to be the material facts Defendant claims are not in dispute and is relying upon for its Motion. However, all of these purported facts are disputed by Plaintiff, are not supported by the record, and as detailed below are a material misrepresentation to this Court of the factual record.

2

a.   Defendant Consumer Opinion Corp. has no involvement with the operation of the Website. (Dkt. No. 148, section 3.0).

b.   The Website is an "interactive computer service" where people "may read review [sic], post their own review, or comment on other people's reviews."(Dkt. No. 148, Section 4.2.1; Podolsky Decl. ¶ 8).

c.   Tweets posted on Defendant's Twitter account are "automatically-broadcasted third-party statements, not written by Opinion (or any defendant)." (Dkt. No. 148, Section 4.2.1; Podolsky Decl. ¶ 11-14) and are "[a] random sampling of reviews from pissedconsumer.com." (Podolsky Decl. ¶ 11).

d.   "The Tweet links back to the review, as posted on" pissedconsumer.com. (Podolsky Decl. ¶ 13).

e.   The Tweets on the Website's Twitter account "are simply the first few characters of the title of reviews written by third parties on" pissedconsumer.com. (Podolsky Decl. ¶ 14).

f.   Roca's damages "are generated by third party input." (Dkt. No. 148, Section 4.2.1).

g.   Defendant does not author "the reviews featured on the Website" and Defendant did not author any of the statements about Plaintiff that are at issue in the case. (Dkt. No. 148, Section 4.2.3).[2]

h.   The Website's submission form is "neutral" and "merely" provides options for individuals to make a selection in order to post a review. (Dkt. No. 148, Section 4.2.3).

---

[2] Defendant cites Podolsky Declaration ¶ 10 for the allegedly undisputed fact Consumer Opinion Corp. does not write the reviews on the Website- "*Opinion Corp.* does not author or edit the reviews posted on Opinion Corp.'s website. They are all written by individual, third party customers." (emphasis added).

3

i.   The "interactive form" used by Defendant on the Website is merely a "methodology of facilitating user posts." (Dkt. No. 148, Section 4.2.4).

j.   Plaintiff is "world-renowned company pioneering the diet product market for gastric bypass alternatives." (Dkt. No. 148, Section 4.3.1).

k.   Roca has been the subject of "at least seventy-three complaints to the Better Business Bureau." (*Id.*; Dkt. No. 148-3; Dkt. No. 148-4).

l.   No reasonable person would see any of the statements at issue as a statement of fact. (Dkt. No. 148, Section 4.3.2.1; Dkt. No. 148-5).

m.   Roca's product "may be harmful." (Dkt. No. 148, Section 4.3.2.4; Dkt. No. 13-1, Declaration of Dr. Parisi).

n.   "The Company is full of lies and deceit."[3] (Dkt. No. 148, Section 4.3.2.6).

o.   Plaintiff is not a consumer of either Defendant's services.

p.    The Website does "nothing to consumer's detriment" and "provides a valuable tool for consumers to share their experiences in order to protect them from unscrupulous businesses." (Dkt No. 148)

q.   Plaintiff has no proof of damages and has not identified any lost business opportunities.

r.   Plaintiff's product has "negative health consequences."

**PLAINTIFF'S UNDISPUTED MATERIAL FACTS**

---

[3] In the midst of its attempt to make the legal argument that this statement, which was published on the Website, "is protected opinion," Defendant simultaneously claims that the statement is a fact that is "supported by the record." (Dkt. No. 148, Section 4.3.2.6). Defendant also makes the simultaneous, yet diametrically opposed, assertions that the at-issue statements referring to Roca as "crooks," a "scam," "junk," and "fraud," are somehow both opinion and factual statements. (Dkt. No. 148, Sections 4.3.2.2 through 4.3.2.8).

The undisputed facts supporting Plaintiff's position are as follows:

a.    Defendant states it is a provider of interactive computer services as defined in 47 U.S.C. § 230(f)(2). *See* First Affirmative Defense [Dkt. No. 117 page 30 ¶ 1]

b.    Defendant characterizes its business as "website building and management serviced" in its 2012 and 2013 tax returns. (*See* Composite Exhibit 1 attached).

c.    In Plaintiff's Request for Admissions (*See* Exhibit 2 attached), Defendant admits it operates pissedconsumer.com and other business services[4]. The following facts were admitted: (1) Defendant creates conten that is displayed on pissedconsumer.com (Request 123); (2) the content Defendant creates is displayed on roca-labs.pissedconsumer.com (Request 124); (3) Defendant controls the Terms and Conditions on pissedconsumer.com. (Request 125); and Defendant sells reputation management services to businesses that receive complaints on pissedconsumer.com (Request 112). (*See* Exhibit 2 attached, Requests 123, 124, 125 and 112).

d.    It is not disputed Defendant requires users to enter **complaints** about businesses through a **seven step** process including answering questions, drop down menus, radio buttons, etc. Defendant admitted Plaintiff's allegations  44, 46, 47, 49, 50, 52, 53 (Dkt. 117 ¶ 44, 46, 47, 49, 50, 52, 53.) This process is content creation and results in a pissed complaint being generated. It is not disputed that in step 4 of this process a poster has an option to elect if she is "pissed" or "pleased" with a company. No matter what selection the poster makes, the review

---

[4] Defendant was served with two sets of Requests for Admissions. Defendant responded to Plaintiff's Second Request for Admissions, but did not respond to Plaintiff's First Request for Admissions (*See* Declaration of Plaintiff's Counsel Paul Berger [Dkt 172.-1] stating Defendants did not respond to First Request for Admissions). As Defendant elected not to respond to the Admissions after being served they are deemed admitted. *See* Fed. Rule of Civ. Pro 36(a)(3) "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney". Plaintiff attaches as composite Exhibit the First Set of Admissions to Consumer Opinion Corp. as admitted facts.

will still be posted as a complaint. This is content generation. There is no mechanism for a poster to make a positive or neutral review.   In comparison, it is not disputed that only paying business service companies of Defendant can post positive testimonials on pissedconsumer.com ("testimonials are placed by the companies' not visitors to the site") (See Exhibit 3, Opinion Corp. 30(b)(6) Deposition, pp. 184 and 370.)

e.   In the Amended Complaint Plaintiff alleges Defendant "deliberately publishes false, defamatory, misleading, false, and inaccurate content on PissedConsumer.com that is created by Defendants. PissedConsumer.com published, "Roca Labs has been on the market since 1988," that ROCA's average customer has suffered $2,100 in losses, and that total customer losses exceed $110,000." [Dkt. 114 ¶ 85] There is no dispute Defendant creates and publishes this information. (See Exhibit 3, Opinion Corp. 30(b)(6) Deposition, pp. 199 - 216).

f.   Defendant has a nearly ten year history of creating and publishing false content. Defendant admits it created a fictional Marketing Manager Joanna Simpson and for nearly ten years posted press releases and other content was attributed to Joanna Simpson. In his declaration Michael Podolsky takes responsibility for all content created by Joanna Simpson. Thus, there is no dispute this is content created by Defendant. Joanna Simpson posted more than 140,000 Twitter messages, including Tweets about Roca Labs. (Dkt. No. 172-3).

g.   Defendant puts comments on the website about Roca Labs. These comments are content created by Defendant (See Exhibit 3, Opinion Corp. 30(b)(6) Deposition, pp. 100-101 Q· Did Jane or anyone who works for Jane[5] make any postings on PissedConsumer.com? A· From

---

[5] Jane is the term used in the deposition for Jane Grinchenko (Exhibit 3 page 28 line 1).

time to time we are putting comments under the reviews such as in this case notifying our users that Roca Labs is using their customers and I believe such postings have been made).

     h.   Defendant created content about Roca Labs on the website pisseddconsumer.com. (See Exhibit 3, Opinion Corp. 30(b)(6) Deposition, pp. 25-26).

     i.   Defendant published Tweets about Roca Labs from the Twitter handle @pissedconsumer. (See Exhibit 3, Opinion Corp. 30(b)(6) Deposition, 282:23-25). This is original content is owned by Defendant and published on a third party website is not affiliated with Defendant. In the Requests for Admissions Defendant admits (1) Defendant made the Tweets authored from the handle @PissedConsumer (Request for Admissions 6 and 59); (2) Defendant is the author, publisher and marketer of its Tweets. (Request for Admission 88); and (3) each original tweet is unique (Request for Admission 6).

**I.**   <u>**Summary Judgment Standard**</u>

     The Court may grant summary judgment when the movant can show there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Defendant has not met this burden. If the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

**II.**   Arguments and Authorities

    A.  <u>**Defendant Consumer Opinion Corp. is involved in the operation of pissedconsumer.com**</u>

Defendant moves for summary judgment on the basis it is an improper party to this action as it exists solely for the purpose of holding the PissedConsumer trademark and has no involvement in the operation of pissedconsumer.com; however, the record clearly supports the contention Defendant is in fact heavily involved in the operation of the Website.

Florida case law demonstrates the application of the rule that separate identities of two or more corporations will be disregarded on a showing that one corporation is a "mere instrumentality" of the other, *Aztec Motel v. State ex rel. Faircloth*, 251 So.2d 849 (Fla.1971). Sufficient evidence may be established to show two defendant corporations are intertwined and related to a degree overcoming the corporate fiction of a separate identity. *See Plumbers Loc. UN 519, Miami, Fla. v. Service Plbg. Co., Inc.*, 401 F. Supp. 1008 (S.D. Fla., 1975).

The following factors may be used in the determination of whether related corporate entities are distinct from each other:

> 1) are the formal legal requirements observed; (2) is the "subsidiary" adequately financed or does the "parent" furnish the capitalization, (3) by whom are salaries and expenses paid; (4) do the directors of the "subsidiary" act in the independent and primary interest of the "parent"; (5) are the two operations so integrated through the commingling of funds, interactivities and common direction and supervision that they should be considered as one enterprise; and (6) generally, is one corporation so organized and controlled and its business conducted in such a manner as to make it merely an agency, instrumentality, adjunct, or alter ego of the other.

*Markow v. Alcock*, 356 F.2d 194, 197-98 (5th Cir. 1966); *Fisher v. East*, 114 F.2d 177 (10th Cir. 1940).

In this case, the actions and activities of each corporate defendant are so integrated the entire PissedConsumer operation can only be considered as one enterprise. Michael Podolsky and Alex Syrov own 50% of each corporation, they are the only employees of Defendants, the

only executive officers of Defendants and they manipulate their companies in such a manner as to make them merely agencies, instrumentalities, adjuncts and alter egos of each other. (See Exhibit 3, Opinion Corp. 30(b)(6) Deposition, 44:10 - 48:25 and Exhibit 4, Consumer Opinion Corp. 30(b)(6) Deposition pp 30-32). Any distinction between the two entities is a legal fiction and was created in a thinly veiled attempt to shield the trademark asset Pissed Consumer.

Even if this Court were to believe Consumer Opinion Corp. was merely a holding company, an agency relationship exists between Defendants. Opinion Corp. is an agent for Consumer Opinion Corp. and as such Defendant Consumer Opinion Corp. is liable for the actions of its agent. An agency relationship exists where the following are demonstrated: "1) acknowledgment by the principal that the agent will act for it; 2) the agent's acceptance of the undertaking; and 3) control by the principal over the action of the agent." *Enic, PLC v. F.F. S. & Co.*, 870 So. 2d 888, 891 (Fla. 5th DCA 2004). All of these elements clearly exist in this situation, and thus Opinion Corp. was acting as an agent for Consumer Opinion Corp.

Defendant never raised the issue of it being a holding company in its Answer or Affirmative Defenses. [Dkt. No. 117]. Most significantly, it has not only failed to produce any evidence it is solely a holding company, as stated above, the record substantiates Plaintiff's claim Defendant is jointly responsible for the Website and the content created therein. Based on the foregoing, Defendant's Motion for Summary Judgment should not be granted on this basis.

B.  **Consumer Opinion Corp. in not entitled to immunity under the Communications Decency Act ("CDA"), 47 U.S.C. § 230.**

Defendant also asserts it is entitled to Summary Judgment on all counts as it is immune under the Communications Decency Act ("CDA") as it is merely an Internet service provider. The issue of content creation is a material question of fact that is not properly decided on

summary judgment and the facts in this case demonstrate Consumer Opinion Corp. is far more than an Internet service provider, it is a content creator.

> Section 230 of the CDA immunizes providers of interactive computer services against liability arising from content created by third parties: "No provider ... of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c). This grant of immunity applies only if the interactive computer service provider is not also an "information content provider," which is defined as someone who is "responsible, in whole or in part, for the creation or development of the offending content. Id. § 230(f)(3).

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008). See also, *Federal Trade Commission v. LeanSpa, LLC*, No. 3:11-CV-1715 (D. Conn. Mar. 5, 2015).

"A 'provider' of an interactive computer service includes websites that host third-party generated content." *Regions Bank v. Kaplan, 2013 U.S. Dist. LEXIS 40805*, *47 (M.D. Fla. Mar. 22, 2013); citing *Doe v. Friendfinder Network, Inc*., 540 F. Supp. 2d 288, 293 (D.N.H. 2008). As explained in *Roommates*, supra, an interactive service provider is immune under the CDA so long as it merely publishes information provided by others, but is not immune under the CDA when it is responsible in whole or in part for the creation of information. The Ninth Circuit found Roommates.com's creation of online questionnaires and use of drop down menus, forms, and answer choices was creating content and thus Roommates.com did not qualify for CDA immunity. *Roommates.com, LLC*, supra.. In *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 2008 U.S. Dist. LEXIS 11632, *26 (M.D. Fla. Feb. 15, 2008) the court found Xcentric Ventures, LLC was not a content provider because posters were given multiple categories and "could have chosen another category to describe their reports." *Xcentric* at 28.

10

In the present case, the record establishes Consumer Opinion Corp. is not merely an Internet service provider, but is also a content creator/provider and thus is not entitled to CDA immunity. The record establishes Defendant created original content about Roca, authored complaints and comments about Roca, co-authored complaints about Roca and authored Tweets sent via Twitter.[6]

### Undisputed Record of Content Creation

As previously discussed, Defendant admits it creates content on pissedconsumer.com and roca-labs.pissedconsumer.com (Exhibit 2 Request for Admissions 123 and 124).

Defendant requires users to enter "**complaints**" about businesses through a **seven step** process including answering questions, drop down menus, radio buttons, etc. (See Dkt. 117, Defendant's Answer to Plaintiff's Amended Complaint, allegations 44, 46, 47, 49, 50, 52, 53). In step 4 of Defendant's posting process (Dkt. 114 ¶ 50 and image below paragraph), a poster is given an option to select if they are "pissed" or "pleased" about about a company when making a posting.   Regardless of whether the poster selects "pissed" or "pleased," the post is always treated and displayed by Defendant as a "complaint." The combined number of pissed or pleased reviews about a particular company, including Roca, are displayed in a counter format on pissedconsumer.com, but they are labeled as "complaints," regardless of whether the poster selected "pissed" or "pleased." (See Exhibit 3, Opinion Corp. 30(b)(6) Deposition, 200:7-22.). Accordingly, Step 4 is content creation as there is no mechanism for a poster to make a positive review.  No matter what category the poster selects, the review is treated as a complaint.

---

[6] Twitter is an information network made up of 140-character messages called Tweets. Tweeting is sending a message on Twitter that is accessible to Twitter's 270 million users. (*See* https://support.twitter.com/articles/215585)

Despite the false appearance of options, Defendant purposely treats all postings as a complaints so that it may sell its business services to business who pay thousands of dollars a year to have these complaints removed and have testimonials posted in their place. Only paying customers of Defendant can have these complaints altered. (See Exhibit 3, Opinion Corp. 30(b)(6) Deposition, 226:13-21). Given this set of undisputed facts, Defendant is not entitled to immunity under the CDA as it is a content provider. Additionally, paying business service companies of Defendant can post positive testimonials for their own companies on pissedconsumer.com (See Exhibit 3, Opinion Corp. 30(b)(6) Deposition, pp. 184 and 370, "testimonials are placed by the companies' not visitors to the site").

As detailed in the undisputed facts sections e-h, there are numerous examples of content being created by the Defendant.  The CDA is clear, that there is no immunity for a content provider.  The undisputed record establish that Defendant is a content creator and not entitled to CDA immunity.  47 U.S.C. § 230(f)(3).

Moreover, it is well established fact that Defendant is the author of its Tweets on Twitter (Plaintiff's Undisputed Facts section 1 above). Defendant incorrectly asserts, "dissemination of reviews posted on the Website via Twitter does not make the Website's operators "publishers" under the CDA or otherwise compromise defendants' Section 230 immunity because third parties (consumers) authored them and an entirely content-blind process publishes them both on the Website and via Twitter." Even if one were to assume the Tweets posted by Defendant were "content-blind", CDA immunity would be afforded to Twitter, not to Defendant.

Defendant asserts "it is established law that Section 230 immunity includes services used by an exempt entity to disseminate its content. "A 'provider' of an interactive computer service

12

includes websites that host third-party generated content." *Regions Bank v. Kaplan, 2013 U.S. Dist. LEXIS 40805*, *47 (M.D. Fla. Mar. 22, 2013); citing *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 293 (D.N.H. 2008). (Dkt. 148, Section 4.2.3) Once again Defendant is misapplying the law and misstating a ruling.  Amazon is the host of Defendant's website (See Exhibit 3, Opinion Corp. 30(b)(6) Deposition, 39:1-10). Under this ruling, CDA immunity might apply to Amazon for hosting the site pissedconsumer.com. This holding does not stand for the proposition that the original Tweets that are posted by Defendant on Twitter are immune under the CDA.

Defendant further asserts that the CDA confers immunity since it created a program/computer code that automatically generates Tweets. Nothing in the CDA affords such immunity. When a post is made by Defendant on Twitter (whether or not is generated because of a computer code), Defendant is the author and is not entitled to immunity. Essentially Defendant is arguing that because it automated the process of posting a Tweet with custom programming it created (See Exhibit 3, Opinion Corp. 30(b)(6) Deposition, 262:2-13), it is granted immunity under the CDA. Twitter does not differentiate between an "automated" Tweet versus a Tweet manually entered and nothing in the CDA would recognize any distinction. Moreover Defendant admits it is the author of its Tweets which are unique.

The Tweets made by Defendant were different from the posts made by posters on pissedconsumer.com. A Tweet is a 140 character message. This is different from the minimum 100 word complaint required by Defendant. In one of the Tweets complained about the poster Defendant added @rocalabs to the message, in another Tweet Defendant bolded a term. Defendant had no explanation for how this was done by its computer code (See Exhibit 3,

Opinion Corp. 30(b)(6) Deposition, pp. 288 - 290.) There can be no dispute that there is a dramatic difference between a post made on pissedconsumer.com and a 140 character Twitter message. Based on the foregoing, no CDA immunity should not be afforded to Defendant.

**DEFAMATION**

Thirdly, Defendant argues Plaintiff cannot meet the standards for a defamation. As discussed below, Plaintiff can meet its burden and the facts demonstrate it has been defamed by Defendant.

Defendant takes the position that Plaintiff is a public figure and thus is held to a higher standard and must show actual malice. While Plaintiff believes it can show actual malice, this is not the appropriate standard as Plaintiff is not a public figure. Whether or not Roca is a public figure or public official is a question of law for the Court to decide. *Rosenblatt v. Baer,* 383 U.S. 75, 85, 88, 86 S.Ct. 669, 675-76, 677, 15 L.Ed.2d 597 (1966). The facts fail to support finding Plaintiff is a public figure.

The Eleventh Circuit has adopted the three-part analysis for establishing limited public figure status set forth in *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1297 (D.C.Cir.1980). See *Silvester v. American Broadcasting Companies, Inc.,* 839 F.2d 1491 (C.A.11 (Fla.), 1988). In order to determine the limited public figure status of an individual or corporation, a court must (1) isolate the public controversy, (2) examine the plaintiffs' involvement in the controversy, and (3) determine whether "the alleged defamation [was] germane to the plaintiffs' participation in the controversy." *Waldbaum*, 627 F.2d at 1297. There are no facts in the record to establish Plaintiff is a public figure under this test.

Even if the Court determines Roca is a public figure, it can meet the standard for actual malice. Defendant made the statement to promote their business at the intent of harming Roca. The name Defendant chose for its website, "pissed consumer," is designed to indicate someone is angry at a business.

Defendant further takes the position that no reasonable person would see these statements as a matter of fact. In support of its position Defendant relies on Nevada professor Dr. Edwin Nagelhout ("Nagelhout"). Nagelhout's report constitutes impermissible legal conclusions that should be excluded. Expert testimony is admissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. Nagelhout's opinion does not meet this standard, and it is essentially a statement prepared by Defendant to provide it as a basis for summary judgment, as such the opinion of Nagelhout should be excluded.

Nagelhout testified he first reviewed the pissedconsumer.com website while writing his report,

> "Not before I wrote the report… I mean, I didn't read and analyze and then write, it was all part of the same process… I took a cursory look at the -- at the Web site, but that was not part of the primary… what I felt was my primary task… I just went to the site and surfed around a little bit.

(Exhibit 5, Nagelhout Depo., 79:14, 20-22, 23-25, 80:5-6)

Not viewing the statements in context and surfing on the website pissedconsumer.com a bit does not qualify Nagelhout to opine on this matter. Moreover it further supports the position his report was written solely to provide a basis for summary judgment.

Nagelhout testified:

> "I was only -- I analyzed -- as you can see, as I said, on page 11 and page 12 and two-thirds of page 13, all I did was copy the highlighted sentences, pasted them into Evernote, and then just looked at them individually in isolation… I only analyze these sentences in isolation. I look at each sentence… I was only asked to analyze the sentences in isolation for particular rhetorical appeals… There

weren't any. I mean, I didn't gather -- I didn't gather any other materials, but I did think about whether I should get other materials or not, but I didn't -- analyzing the sentence as -- in isolation as they were, I didn't feel like I needed any other."
(Exhibit 5, Nagelhout Depo., 62:23-25, 63:1-3, 67:23-24, 91:19-20, 105:24-25, 106:1-4).

All of the sentences are clearly opinions and would not be inferred as factual by a reasonable reader.

"You know, I don't see anything in this that provides any kind of factual support for these statements… I didn't say any person… A reasonable person… A reasonable person in terms of like, for example, with state standards who has had the education in reading and looking closely and understanding statements of fact, opinion, and inference."
(Exhibit 5, Nagelhout Depo., 168:9-11, 16-17, 21-25)

Nagelhout further testified he had no idea who the speakers of the statements were, but it was their intention that the person who posted the complaint wanted the reader to believe the statement was true, not to buy Roca products and did not know if the poster intended the statements to be factual.

Q.·   And so the individuals who posted the Statements A through K on the Pissed Consumer site those statements about Roca, they posted those wanting the readers to believe that they had posted a true statement of fact, correct? A.·  I mean, it's hard -- I don't know. Q.· You don't know? A.· I don't know.").
(Exhibit 5 Nagelhout Depo., 149:8 - 150: 20)

Finally, Defendant attempts to improperly put forth irrelevant evidence from individuals that could not be admitted under the Federal Rules of Evidence and should be excluded. Defendant claims that the posts were made by third parties, but it could not identify one person (out of 60), who posted a complaint on pissedconsumer.com. Rather Defendant is relying upon third parties in an attempt to prove the facts of Defendant's defamatory statements. Evidence from these individuals should not be admitted. In addition, it cannot be disputed that Defendant claims it does not the truth or falsity of any of the statements and has no documents to

16

substantiate any of the statements are true. (Exhibit 6 Consumer Opinion Corp. 30(b)(6) Deposition, 106:17-123:25).

Also, Plaintiff alleged the defamation was defamatory *per se* (Dkt. 114 ¶ 274, 275, 305 and 306). Defendant did not address these allegations in its Motion for Summary Judgment. As the statements made by Defendant are defamatory per se the motion for Summary Judgment should be denied. The statements accusing Roca of committing a crime are defamatory *per se* and thus malice is presumed by making the statements. Unprivileged written communication is actionable per se if, when considered alone without innuendo, it (1) charges a person has committed an infamous crime or (2) tends to injure one in his trade or profession. See *Richard v. Gray*, 62 So.2d 597, 598 (Fla.1953). In addition, proof of actual damages is not necessary to prove a cause of action for defamation per se because general damages are presumed. *Bobenhausen v. Cassat Ave. Mobile Homes, Inc.*, 344 So. 2d 279, 281 (Fla. 1st DCA 1977)(Words which are actionable in themselves, or per se, necessarily import general damages and need not be pleaded nor proved but are conclusively presumed to result). Defendants have accused Roca of committing fraud, stealing money and being crooks. Defendant admits its Tweets accuse Plaintiff of committing a crime and stealing money (Exhibit 2 Request for Admissions 69 & 70).

Finally, Defendant does not address Plaintiff's allegation that it was defamed by the false statistics and other content that Defendant creates and publishes [Amended Complaint Dkt. 114 ¶ 87]. Plaintiff alleges "the number of complaints, claimed losses and average loss are defamatory, false and misleading statistics created and published by Defendants." For the

foregoing reasons, Defendant is not entitled to summary judgment on Plaintiff's defamation claims.

**FDUPTA**

Defendant argues it is entitled to judgment as a matter of law on Roca's Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") arguing that cannot be used to circumvent 230 immunity, FDUPTA does not apply to the parties in the instant case because Roca is not a "consumer,", and Roca cannot prove damages. As Plaintiff argued *supra*, section 230 immunity does not apply to Defendant.

Under FDUTPA, the Florida Legislature has declared deceptive or unfair methods of competition and practices in trade and commerce are unlawful. See §§ 501.201 et. seq., Fla. Stat. (2014). The express legislative purpose of FDUTPA is to protect individual consumers and businesses from deceptive, unfair, or unconscionable methods of business competition and trade practice. See § 501.202; see also § 501.203(7), Fla. Stat. (2014) ("'Consumer' means an individual; … business; firm; association;...corporation; any commercial entity, however denominated; or any other group or combination."). The Legislature articulated the provisions of FDUTPA are to be construed liberally with this legislative purpose. See *Id*. § 501.202

This District has previously held,"business entities may sue for damages pursuant to Fla. Stat. 501.211(2)." *Arbitron Inc. v. Renda Broad. Corp.* Case No. 3:13-cv-716-J-34JRK, (M.D. Fla., March 27, 2014) citing *True Title, Inc. v. Blanchard,* No. 6:06-cv-1871, 2007 WL 430659, at *4 (M.D.Fla. Feb. 5, 2007). The plain language of FDUTPA states that "anyone aggrieved" by violations of FDUTPA, including business entities, can sue for damages resulting from outlawed acts (i.e. unfair competition and deceptive acts) in ordinary business transactions, even where

there is no consumer transaction. § 501.211(1), Fla. Stat. (2014); B*eacon Property Mgmt., Inc. v. PNR, Inc.*, 890 So. 2d 274, 277-79 (Fla. 4th DCA 2004). See also *Laboratorios Roldan v. Tex Int'l Inc*., 902 F. Supp. 1555, 1570 (11th Cir. 1984).

As the *Beacon* court held, the plain text of FDUTPA permits suits between purely commercial interests, in fact, the court noted the general proscription of FDUTPA does not and did not originally contain any indication it was intended to be limited to consumer transactions. *Beacon Property Mgmt., Inc.*, 890 So. 2d at 277. The *Beacon* court concluded FDUPTA is not limited to purely consumer transactions and applies to "any act or practice occurring 'in the conduct of any trade or commerce' even as between purely commercial interests." *Id.* at 278.

As to Plaintiff's damages, as detailed in Plaintiff's Motion for Summary Judgment [Dkt. No. 172], consumers have refused to buy Roca Labs products because of reviews posted on pissedconsumer.com. Defendants were aware they had caused Roca more than $40 million in damages *(See* Amended Complaint in the matter of *Opinion Corp. v. Roca Labs*, Case 1:14-cv-06396-LGS Dkt. 15 paragraphs 37 and 38).

**Tortious Interference**

Defendant states "Roca claims, again, that allegedly defamatory posts on the pissedconsumer.com website caused it to lose unspecified business opportunities. [Doc. # 114 at ¶230]. Not one such opportunity has been documented, or even identified, in discovery…" Defendant has not conducted any discovery regarding this issue. Defendant has not taken any depositions in this case, has not requested Plaintiff produce any documents, and has not issued requests for admissions on this subject matter. In the Amended Complaint, Plaintiff identified and named specific individuals with whom Roca's potential business relationships were

interfered by Defendant. (Dkt. 114 ¶ 263). There is a genuine issue of material fact if Defendant interfered with Plaintiff and Defendant has not introduced any evidence to show that it is entitled to summary judgment.

Defendant further insists that Roca's contract with its customers is unenforceable. Defendant lacks standing to challenge the contract between Roca and its customers. It is not disputed that no contractual relationship exists between Roca and Defendant. Under Florida law, only parties to a contract and third-party beneficiaries of a contract have standing to sue under the contract. *Sun Commodities, Inc. v. C.H. Robinson Worldwide, Inc.*, No. 11-62738-CIV, 2012 WL 602616, at *2 (S.D. Fla. Feb. 23, 2012) ("Under Florida law, a plaintiff who is neither a party to nor a third-party beneficiary of a contract may not sue for breach of that contract, even if the plaintiff receives some incidental or consequential benefit from the contract.").

Should the Court should find Defendant had standing, Roca's contract is by no standards is an unlawful restraint of trade under Fla. Stat. § 542.18, and Defendant has put forth no evidence or authority that would stand for the proposition Plaintiff has unlawfully engaged in the restraint of trade as none exists.

Defendant has not met its burden for summary judgment and its motion should be denied.

WHEREFORE Plaintiff, Roca Labs, Inc. respectfully requests this Court deny Defendant's Motion for Summary Judgment as there are genuine issues of material fact and the law supports Plaintiff's position.

Dated August 5, 2015.

Respectfully submitted,

Paul Berger

/s/ Paul Berger

Paul Berger
FL Bar No. 4413
Roca Labs, Inc.
legal5@rocalabs.com
P.O. Box 7898
Delray Beach, FL 33482-7898
Tel. 305-998-6150

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 5, 2015, I filed a true and accurate copy of the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to Defense Counsel.

/s/ Paul Berger
Paul Berger
FL Bar No. 4413
Roca Labs, Inc.
P.O. Box 7898
Delray Beach, FL 33482-7898
Tel. 305-998-6150
Legal5@rocalabs.com

Counsel for Plaintiff