# EXHIBIT 7

Draft Answer and Affirmative Defenses

Roca Labs, Inc. v. Cyntha Koroll
*15-CA-006540*

**IN THE CIRCUIT COURT THIRTEENTH JUDICIAL CIRCUIT HILLSBOROUGH COUNTY, FLORIDA**

**ROCA LABS, INC.**
**PLAINTIFF**

vs.                                                                                   **CASE NO.**

**CYNTHIA KOROLL,**
**an Individual**

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES**

NOW COMES the Defendant and for her Answer and Affirmative Defenses states as follows:

1. Admit that this purports to be as stated.

2. Denied as Plaintiff has failed to plead damages, has no damages whatsoever and there is no provision or precedent for attorney's fees and costs   Further that the Plaintiff was unjustly enriched by his own breach of contract and failure to pay attorney's fees due to the Defendant and has forced Defendant to pay out of her own pocket expenses for airfare, hotel, cabs and other expenses incurred in attending depositions for Roca Labs due to Roca Labs Inc and Don Juravin's tenuous financial status and inability to pay his bills.

3. Denied. Defendant has never once set foot in Hillsborough County Florida despite Juravin's numerous invites to pool parties and other social events declined by Defendant. Further Defendant did not work on any case venued in Hillsborough County Florida and Roca Labs has no damages other than those incurred on its' own due to marketing of a defective and harmful product.

4. Denied in part as to the location of where Plaintiff does business. Plaintiff is a company selling a silica (sand) product to vulnerable individuals residing all over

the United States and other countries and doing business in Illinois by selling the defective and harmful silica substance in Illinois.

5. Admit that Defendant maintains an office in Illinois and that Plaintiff's contract does not specify any such location to provide legal services but Defendant successfully litigated and got dismissed a court action in Cook County Illinois and entered her appearance in a matter in the Middle District of Illinois ( Roca v Pissed Consumer, 8:14 cv-02096) and did not appear on any other cases in any other venue.

6. Neither admit nor deny but demands strict proof thereof as there is no silica product produced by Roca or any maunfacturer that could aspire to replace gastric Bypass Surgery as such surgery permanently modifies the anatomy of the stomach and intestines and no reasonable person should believe ingestion of a sand silica substance could possibly achieve the same result.

7. Neither admit or deny as Roca has had a host of lawyers hired and fired and has breached numerous contracts and failed to pay independent contractors and as such cannot retain traditional corporate counsel.

8. Denied. Don Juravin a non-lawyer directs the attorneys working for Roca and creates constant discord among the lawyers and urges such discord to take place. Juravin calls Paul Berger "The Joker" and repeatedly advised Defendant of Berger's lack of legal skills and lack of writing ability among other disparaging comments stated to create discord. Rachel Hyman, another Roca lawyer complained to Defendant's office staff that Berger was "a doorknob". Multiple issues occurred where Juravin asked the lawyers to "one up" and correct each other. Any such "team" run by Juravin works in chaos, inefficiency and NO attorney works independently at any time as Juravin urges the attorney to edit

and to "destroy" others documents and pleadings so that Juravin can avoid paying for any rough drafts or other incomplete work.

9. Admit that Roca lawyers Paul Berger, April Goodwin and Rachel Hyman (and Brett Hyman in consult) did all work in groups and that at no time did Defendant independently write any pleading, any email, any document or any other item for Roca without the express revisions and approvals by Berger, Goodwin and Rachel Hyman. Further, admit Defendant was required to maintain constant contact with Roca during every deposition taken by having either Juravin, Berger, Goodwin and/or Hyman on Skype at all times during every deposition to: suggest questions, provide objections, critique Defendant's demeanor and presentation, and to praise, reinforce and send "love notes" in response to excellent work of the Defendant such as the communication from Rachel Hyman proposing marriage to the Defendant during a deposition. Deny specifically whether Roca's methods "create collective success"- they waste time, resources, create mistakes and the method is inefficient and stagnant.

10. Denied. Roca's culture is one of bullying by Don Juravin, frequent threats to quit by team members, fear of Juravin's wrath and a constant ethical battle between serving a client who has a product that Paul Berger believes is "junk" and "dangerous" and asserts "we all are going to jail". Further no team members share a common purpose other than the limited purpose of possibly collecting fees and not sustaining any professional damage as a result of Juravin's litigious nature and unreasonable demands.

11. Admit, Defendant was the only member of the Roca "team" who has Federal Court Trial experience, success in achieving settlements in excess of 1 million dollars in Federal Court, is a current member of the Federal Trial Bar in the Northern District of Illinois and is a member in good standing of the Illinois Bar.

On information and belief and as stated by Berger he has never taken any deposition other than in his own divorce case, has never picked a jury, has never chaired a trial and has little or no litigation experience and lacks knowledge and good sense.   Hyman and Goodwin may have chaired a trial as a a States Attorney but never received a dollar verdict for any client to Defendant's knowledge.

12. Admit.

13. Admit that the contract executed was as Exhibit One to this Answer. (See Exhibit One) .

14. Neither admit or deny but refer to Exhibit One as the best evidence of the agreement of the parties.

15. Deny that Defendant was ever involved in Case 9:15-cv-80051 as the case was TERMINATED on April 2, 2015 prior to Defendant's involvement with Roca. Admit that before and up to the time of Plaintiff's filing of this Complaint on July 17, 2015 Plaintiff had refused to terminate Defendant's Contract and had refused to allow Defendant to withdraw from United States Middle District of Florida 8:14 cv-02096 because of Plaintiff's upset that anytime Roca Labs attorneys withdraw the information is "shared on Twitter." Further, despite threatening Defendant that Defendant's request to get paid for the services rendered to Roca was in fact "extortion" and Don Juravin was going to "call the police". Admit that Ron Coleman and Marc Randazza were counsel in that matter.  Denied. Defendant was not retained for any one case, see Exhibit One, Contract.

16. Admit.

17. Denied.

18. Admit that along with numerous other cases filed by and against Roca labs Inc. and Dona Juravin, Roca was attempting to litigate Case No. 8:14-cv-02096.

19. Admit, Paul Berger attested to Defendant's character and competence.
20. Denied. Defendant sought and was denied any examples of how to submit an invoice.
21. Admit that Defendant worked over 200 hours in May and that detailed invoices were provided including every phone number called and details for times of calls as well as details on the "Hubstaff" program that provides screen shots every 15 minutes to document the lawyers work for Don Juravin to review.
22. Admit in part and denied in part. Juravin was required to pay the May invoice by June 5, 2015. Because of his travel to Israel to attend a custody battle for his daughter and to attend court required parenting classes Juravin refused to pay on June 5, 2015. Multiple efforts were expended to collect monies and were rebuffed by Juravin who appeared to be out of capital and asserted his destitute status. Ultimately because Defendant indicated she would not attend the depositions scheduled in Las Vegas ( to which Berger was barred by Juravin and Goodwin because Berger engaged in witness intimidation by threats of violence to witness Dr. Parisi which were a subject of a pending motion) and because no other lawyer could attend the Vegas depositions Juravin ultimately paid the entire May bill without question and without need for any further clarification of any hour expended.
23. Denied that any such communications occurred until after the June bill was submitted and further assert that prior to July 1 and on many occasions Defendant attempted to advise Juravin of daily "non Hubstaff" hours and by email and that Juravin rebuffed the effort and directed Defendant to only submit a bill monthly on the first of each month. Further affirmatively assert that Goodwin and Berger advised Defendant on multiple occasions NOT to utilize the Hubstaff computer program while traveling or while conducting any deposition for Roca.

Further state that Berger did not use the Hub staff program while in New York and that Berger worked with Defendant daily and observed performance of the majority of the hours at that deposition location.

24. Admit that Defendant submitted an invoice prior to July 1 to warn Juravin of the need to pay timely as he had shirked his obligation to pay timely in May. Admit that the invoice initially submitted was later modified and approved by Goodwin. Deny that the invoice lacked detail as it was formulated similar to the prior month which had been paid after protest from Juravin.

25. Deny that Plaintiff spoke to or emailed Defendant. Admit that Goodwin emailed and spoke with Defendant repeatedly assuring Defendant that she would be paid, and that further Goodwin along with Defendant's Legal Assistant Lisa Petsch revised and developed an invoice acceptable to Goodwin for which she repeatedly stated that Juravin would pay.

26. Denied, see Item 25. Further, Rachel Hyman at the request of Defendant specifically sought and obtained an inquiry of industry standards regarding billing from Attorney Brett Hyman on behalf of Roca and billing was then submitted in compliance with Attorney Brett Hyman's recommendations.

27. Denied. Further, Goodwin accepted the invoice and stated that Defendant would be paid but on July 11, 2015 Goodwin sent an email stating: " We love you. We love working with you." Further Goodwin stated the offer to pay: " two thirds for the first month and one third for the second month". This offer would have required Defendant to pay back to Roca $16.67 of every hour paid in May and to accept in payment the sum of $25.00 an hour for all times in depositions or traveling in New York and Las Vegas for Roca instead of the $50.00 an hour two month trial rate ( that was set for increase on July 11 to a rate consistent with the industry). Defendant refused to "bargain" and in compliance with the Federal

   Rules of Civil Procedure sought compliance with contract terms. Juravin refused to comply, refused to terminate the contract, refused to allow Defendant to withdraw but threatened extortion charges, police involvement and to "place you in the PC  Pissed Consumer) category and fight you like I do them."  As to any knowledge of the scheduled depositions, Defendant denies that she was scheduled to attend as Defendant had expressed her concern about Berger being assigned to conduct the depositions due to his  absolute lack of knowledge of Federal Civil Procedure. Further Defendant was tasked with the process of "instructing" Berger how to conduct a deposition but Berger refused to attend teaching sessions and summarily Juravin labeled him as "The Joker" and Goodwin, Defendant and Juravin concluded Berger was unteachable. Defendant asked to be reassigned to a task where she would not be embarrassed by Berger's ineptitude and sought release from the case as Defendant feared malpractice claims and liability for Berger's ignorance. Goodwin replied in writing ensuring Defendant she would not have to try the case to a jury but refusing to release her from the case.

28. Denied.
29. This statement requires no response.
30. Denied as Juravin and Roca have no damages and no malpractice occurred.
31. Denied.
32. Denied as "with respect to the whole litigation process" is ambiguous and every action of Defendant for Roca had to be approved, endorsed or directed by Goodwin, Berger and Hyman.
33. Admit that Defendant performed all expert witness depositions with the constant assistance of Berger, Goodwin and/or Hyman at every minute in every deposition by Skype and text and calls and that Defendant performed said duties in such an

excellent and fantastic manner that she was highly praised for all, that Rachel Hyman proposed marriage by text, that all Roca attorneys were awed and amazed, that Hyman referenced her pride to be associated with Defendant and to be her "wingman" and that Don Juravin rewarded Defendant with a massage at Trump Towers which ultimately he refused to pay for.

34. Denied.

35. Admit that a pleading was filed to this respect and that when Defendant wanted to file a responsive pleading that Juravin refused to allow the drafted pleading to be filed stating that it was 'excellent public relations" and that Defendant should "get many more clients when they see what you can do to destroy a witness".

36. Neither admit nor deny but demand strict proof thereof. Further, Berger's disorganized state resulted in a lack of transmission of records to the court reporter who was required to print out and provide said records and failed to do so but records were brought by the Defendant and were marked and Berger had some records delivered but no lack of any record affected the content of the deposition and no document was ignored or not examined as Defendant was not permitted to conclude the deposition until Berger and Hyman exhausted all their phrased questions and suggestions.

37. Neither admit nor deny what "Roca" saw but demand strict proof thereof.

38. Neither admit nor deny what "Roca" saw but demand strict proof thereof. Further, Roca lawyers saw multiple drafts and created multiple drafts of deposition questions and all were shared on the Roca drive, Plaintiff is fabricating this allegation.

39. Denied. See item 33.

40. Admit that Defendant represented her legal knowledge and was instructed by Juravin to " not be so smart" follow "Roca Joker Paul Berger", and that one one

occasion a draft written at 2 or 3 am did need revision and addition of legal citations which were to be added by the Roca paralegal or the lawyer assigned to jointly complete the project.

41. Denied.

42. Denied.

43. Denied.

44. Denied.

45. Denied.

46. Denied, further all such invoices were revised by and approved by Goodwin and set for payment.

47. Denied. The Schaive case was voluntarily dismissed by Plaintiff Schaive in Cook County without a pleading, without notice to Roca or the Defendant and with the Court ordering costs to be paid upon refiling. There was no basis for any sanctions and even if such basis presented Defendant's access to the Roca drive and email's were cut off by Roca despite repeated text assertions by Juravin that she was not fired and was still working for Roca. Further, Plaintiff took no independent actions to file said frivolous sanctions motion which would have been denied if attempted to be filed in a case which had been closed. Nothing prevented Roca through Berger, Hyman or Goodwin from filing any such frivolous pleading of their own in an effort to mitigate but they did not so so.

48. Denied. Further, Roca was not entitled to any fees. The Court ended the litigation on Plaintiff Schaive's motion and ordered costs to be paid upon refiling. Roca has no loss and was well aware of their own actions of ending the attorney client relationship with Defendant due to Juravin in threatening police involvement and cutting off access to the Schaive files on the drive and to the email with any and

all relevant information that might have allowed Defendant to file said frivolous pleading had she been so inclined.

49. Denied that Defendant did or did not know any specific element of Illinois law and denied as to what information may have been provided to Berger and demands strict proof thereof.

50. Denied. This allegation is inartfully phrased and cannot be understood, as to any allegations that any such act was "malicious", "harmful;" "incompetent", and "oppressive" denies and demands strict proof thereof. As to any invocation of "privilege" or "breach" this allegation is nonsensical and inartfully worded and incomprehensible and denied and further Roca via Goodwin represented by email :"We love you. We love working with you."

51. Denied and demands strict proof thereof of any such "error" and such efforts to "undo" or to "correct" and the exact amount of Roca attorney's fees spent on any such action and as such provides a basis for third party complaint against Goodwin, Berger and Hyman who at all times were the overseer and final approval of any document filed and any question asked in any deposition or any representation of Roca.

52. Denied and as to such damages there are none.

53. Denied and demands strict proof thereof.

54. This statement does not require a response.

55. Admit that these are some of the terms stated in the contract.

56. Denied. Plaintiff has failed to pay expenses including all out of pocket expenses for travel, airfare, hotel, cabs, copies, meals and other expenses incurred for taking Roca depositions in Las Vegas and attending in New York, and Plaintiff has failed to pay the hourly wage instead attempting to "bargain" "barter" and "deal" for a lessor amount than the contracted rate, further Defendant was

threatened with police action and has had to withdraw from the only case that Defendant was currently representing Roca in and has had to file suit to obtain fees and costs. Juravin will not even pay his expenses.

57. Denied.

58. Denied and demands strict proof thereof including an itemization of Rachel Hyman's fees at her hourly rate of $28.00 and hour as well as all attorney's fees and all incidental damages.

59. Denied as April Goodwin revised and approved all final billing and forwarded it to Juravin after assuring it was in the required format and provided reassurance of payment of $3000.00 forthcoming and then of a check in an unknown amount, none of which has been received.  Denied that Defendant made any other demand to resolve the case other than that required to withdraw under the Federal Rules of Civil Procedure to compel compliance with contract and that Defendant has asked Juravin to make good on his contract and to pay the expenses advanced by Defendant without any such barter or discount and request was refused. All demands have been withdrawn and Defendant seeks a jury trial.

60. Denied. Demands strict proof thereof of the amount of damages claimed and the specific source as this information is required prior to trial.

61. This statement requires no response.

62. Denied.

63. Denied.

64. Denied as to subpart A, B, C, D, E, F.  As to B no such conflict or fiduciary duty has been asserted in this pleading or otherwise and the Defendant demands strict proof thereof, as to C no such abandonment occurred as Defendant had to withdraw after being faced with allegations of extortion and threats to call the

police when Defendant merely asked to have her bill paid, as to D the sum of $50 an hour for out of state depositions in a complex case complicated by ineffective prior counsel and the dead weight of Paul Berger as trial counsel can hardly be described as exorbitant as Don Juravin indicated said sum would be at least doubled after the 60 day trial period and Juravin pays his other attorneys between $28 and $53 an hour. E, no such request has been forthcoming and despite numerous efforts by Defendant to return Roca property "sand mixture" and exhibits, no response has been received to any offer of shipping or courier.

65. Denied as speculative.
66. Denied and demand strict proof thereof.
67. Denied as no such damage occurred and is only speculative and imaginary.
68. No response is required to this statement.
69. Denied as no such duty existed and Roca terminated any relationship and breached the contract.
70. Denied. Don Juravin cannot be protected from himself and his unwise choices and litigious and unreasonable demands.
71. Denied.
72. Denied as no such breach has been described above.
73. Denied.
74. No response is required to this statement.
75. This statement is incomplete and fails to allege any fact and as such is denied.
76. Denied as this statement is incompatible with the pleading and the assertions above.
77. Denied as this statement is inartfully phrased, incomprehensible and fails to state any allegation or fact.

Wherefore the Defendant seeks this Court to deny the action in its entirety, to deem the pleading frivolous, to sanction the lawyers who filed and signed for their fraud upon this court, to permit the Third party complaint and to award costs and fees for defense of this litigation and for costs and travel.

>Cynthia Koroll
>Pro Se
>630 North Church Street
>Suite 102
>Rockford, Il 61103
>815-316-7554
>Cindi@klg-law.net

Affirmative Defenses

1. Plaintiff has failed to mitigate any alleged damages.

2. Plaintiff has failed to state a cause of action in any count.

3. Plaintiff has breached the contract by failing to pay costs and fees.

4. Plaintiff was negligent and relied on in error the advice and counsel of Attorney Brett Hyman as to industry standards and billing practices.

5. Plaintiff is the proximate cause of any and all damages and has caused its own legal negligence by contracting with "The Joker",Paul Berger a failed entertainment

law /Hurricane law attorney who had no knowledge of federal law or procedure and who was placed in charge of the cases and consistently erred in application of law and procedure thus causing any and all damages to Roca.

6. Plaintiff is the proximate cause of any and all damages and has caused its own negligence by contracting with April Goodwin as the "Roca Coordinator' as she was wholly unqualified for the position and had never litigated any federal case to fruition.

7. Plaintiff is the proximate cause of any and all damages and has caused its own negligence by contracting with Rachel Hyman who in June of 2015 was preoccupied with the signs and symptoms of a "hysterical pregnancy" and was unable to perform her job duties as she was distracted, nauseated, suffered from severe acne and was too preoccupied with her condition to adequately represent Roca.

8. Plaintiff is the proximate cause of any and all damages and has caused its own negligence by contracting with Paul Berger who could not fully attend to his job duties as he was preoccupied with litigation in his divorce proceeding, was unable to work after asserting he had been "punched in the mouth" at the courthouse by his ex-wife's attorney who he accused of a sexual relationship with the lawyer and fraud and as such was engaged in protracted litigation and was unable to attend to the litigation needs of Roca.

9. Plaintiff by and through Don Juravin created an environment of fear and oppression where lawyers were encouraged to "rat each other out" and to "oneup each other" to gain favor with Juravin and were dissuaded by threats of non payment and bar complaints to indulge the litigious appetite of Juravin at all costs.

Plaintiff by and through its attorney Berger, Hyman and Goodwin have been negligent in the prosecution of the case 8:14 cv-02096 and have caused their own damages by:

1. Supervising and endorsing all actions of the Defendant at any time.
2. Attempting to force the defendant to take certain actions that were refused.
3. Failing to file the Daubert Motion drafted by Defendant to disqualify Dr Nagelhout.
4. Failing to file the Request to Deem Facts admitted by the deadline required and Berger missing the deadline by 20 minutes due to walking his dog and ignoring the timeline.
5. Failing to have an experienced trial lawyer present to conduct any depositions of Rule 30 (b) 6 witnesses.
6. Failing to obtain the correct documents to conduct the deposition of Nagelhout.
7. Failing to file a Request to Deem Facts admitted.
8. The actions of Paul Berger in threatening Dr. Parisi with harm and with legal action that caused Parisi to attend the deposition in an agitated and upset mood and to have to defend the actions of Berger by wasting time asking questions to "clea"' Berger in the deposition so that Berger could avoid a bar complaint for witness tampering.
9. The consistent rotation of attorneys through the case due to the hiring and firing by Juravin after his refusals to pay or efforts to bargain and reduce monies earned.