## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ROCA LABS, INC.,                                    Case No:  8:14-cv-02096-VMC-EAJ

Plaintiff,

v.

CONSUMER OPINION CORP. and

OPINION CORP.,

Defendants.

_____/

## PLAINTIFF'S MOTION REQUESTING ORDER TO SHOW CAUSE AS TO WHY DEFENDANT CONSUMER OPINION CORP.SHOULD NOT BE HELD IN CONTEMPT

Pursuant to Federal Rules of Civil Procedure 30, 37, and 45, Plaintiff, Roca Labs, Inc. ("Roca"), respectfully moves this Court to enter an order directing Defendant Consumer Opinion Corp., ("Consumer" or "Defendant") to show cause why it should not be held in civil contempt of court for its failure to comply with Magistrate Jenkins' July 2, 2015 Order (Dkt. 169) and Judge Covington's July 8, 2015 Order affirming Magistrate Jenkins' Order (Dkt. 176)(hereinafter collectively the "Orders"). Plaintiff seeks relief from substantial prejudice occasioned by Defendant's failure to comply with said Orders, an Order imposing sanctions, including default and/or striking Defendant's pleadings, and all other relief this Court deems necessary and proper.

## BACKGROUND

On July 2, 2015, the Honorable Magistrate Judge Jenkins entered an Order on various outstanding discovery issues. (Dkt. 169). This Court ruled, "Defendants shall comply fully and completely with the requests for production included in the subpoenas

at issue (Dkt. 143-3 at 2-53) and produce all requested documents at the scheduled depositions of Defendants' corporate representatives." *Id.* at 5. Defendants objected and moved for a protective order (Dkt. 174), which was was denied. (Dkt. 176).

Plaintiff believed it would derive the relevant evidence (testimony and documents) needed to effectively prosecute this case through the Rule 30(b)(6) deposition at issue (Dkt. 143-3 at 2-53). Plaintiff made a strategic decision that the most effective means of obtaining evidence was via this deposition as Defendant has repeatedly tried to hamper discovery; therefore, Defendant's compliance with this Court's Orders (Dkt. 169 and Dkt. 176) was critical to the effective prosecution of this action.

On Sunday, July 12, 2015, Alex Syrov appeared for deposition as Defendant Consumer Opinion Corp.'s Rule 30(b)(6) designee.[1] Syrov is Consumer's Chief Executive Officer ("CEO"), Defendant Opinion Corp.'s ("Opinion") President, and owns 50% of each entity. (*See* July 12, 2015 Deposition of Consumer Opinion Corp. Rule 30(b)(6) Corporate Representative attached hereto as Exhibit A, 14:20; 45:12-13, hereinafter cited "1CO page:line(s)"). Syrov and Michael Podolsky are the only two employees of Defendant. (1CO 46:18-19).

At the outset of the deposition Syrov was asked the following:

Q Do you understand what it means, to be the corporate representative, 30B6 witness, of Consumer Opinion Corporation?

A Yes, I do.

---

[1] The topics for deposition and document requests on the subpoena *duces tecum* were identical to those listed on the prior subpoena *duces tecum* originally served on defense counsel, only date and location were amended.

Q And, are you prepared to provide complete, knowledgeable, and binding answers on behalf of the corporation today?

A Yes, I do.

(1CO 6:24-25 7:1-6)

Despite his representations to the contrary, Syrov either lacked sufficient knowledge or preparation to testify to the topics noticed for deposition or he feigned a lack of knowledge to intentionally avoid answering questions. As the deposition began, Syrov's lack of knowledge and/or preparation, actual or feigned, became apparent and despite the Orders  made it impossible to take Consumer's deposition as noticed.

Based on Syrov's lack of preparation, the undersigned counsel rightly stopped the deposition to inquire if a more appropriate Rule 30(b)(6) witness was available, reminding defense counsel "that [if] it becomes obvious that the deposition representative designated by the corporation is deficient. The corporation is then obligated to provide a substitute."[2] Syrov was then asked "[d]o you have a substitute here, that has more documents, and is more fully prepared to answer the questions today?" (1CO 74:7-13). The parties then agreed rather than deem the initial deposition of the Rule 30(b)(6) witness as a non-appearance, Mr. Syrov would spend the next two days preparing for the Rule 30(b)(6) deposition and would come prepared to answer all questions and produce documents two days later on Tuesday, July 14, 2015, the date on which the deposition of Alex Syrov in his individual capacity as a corporate officer of both Defendant corporations had been noticed by Plaintiff. (1CO 10:4-5, 21-23).

---

[2] *Poole v. Textron, Inc*, 192 F.R.D. 494, 2000 U.S. Dist. 4189, 46 Fed. R. Serv. 3d (Callaghan) 572 was cited during deposition.

3

On the morning of Tuesday, July 14, 2015, Alex Syrov again appeared as Consumer Opinion Corp.'s Rule 30(b)(6) designee, but remained either dreadfully unprepared or unwilling to testify to the topics of deposition listed in the subpoena. It was apparent from Syrov's testimony that other than producing tax and minimal bank documents from Chase Bank, Defendant spent little time preparing Syrov to be its corporate designee or locating additional documents responsive to the *duces tecum*.

> Q So how much time did you spend in preparation the second time since the last deposition was put on hold to today, how much time did you spend further preparing yourself for the deposition today?
>
> A I spent some time. I didn't track time. I spent some time actually trying to find out if Chase provides the functionality that you requested; and I spent some time during the online search which is publicly available to locate the trademarks that are available for that corporation.
>
> Q Is that all you did?  Nothing other than looking at Chase and the trademarks?
>
> A The only other thing that we did, we actually placed a call to the accountant to see if she can locate our taxes for year 2013 and 2012 and she didn't know initially, but then she got back to us sending those documents.

(July 14, 2015 Deposition of Consumer Opinion Corp. 30(b)(6) Corporate Representative attached hereto as Exhibit B, 6:4-21, hereinafter cited "2CO page:line(s)").

Thus, despite stopping and delaying the originally scheduled deposition by two additional days to allow time for Defendant to prepare its witness for the deposition, Defendant did almost no additional work to ensure that it produced a knowledgeable Rule 30(b)(6) witness.

Moreover, in spite of his ownership and executive positions with both Defendants, Syrov repeatedly claimed little or no memory or knowledge of the operations of both corporations, from the mundane such as not knowing the corporate office address

(1CO17:14 - 18:3) to repeatedly lacking knowledge of how Defendant operates. Syrov answered that he either did not know or did not remember to multiple questions directly related to the noticed topics. Syrov's lack of knowledge, either genuine or feigned, was so great that it amounts to a non-appearance for deposition by Consumer.

Consumer also failed to produce all relevant and responsive documents as ordered and produced documents responsive to **only 10%** of the *duces tecum* request (*See* Exhibit C attached, a true and accurate copy of Consumer's *duces tecum* responses, providing documents to 16 of 162 Requests). Syrov repeatedly testified that responsive documents did in fact exist, yet were not produced. Defendant's intentional defiance of this Court's Orders for it to provide responsive documents to the *duces tecum* requests and to designate a prepared witness for deposition significantly prejudices Roca and impair its ability to prosecute this case and for the finder of fact to determine the truth.

Throughout this litigation, Consumer has acted as if the Rules of Civil Procedure and the Rules of this Court do not apply. It has publicly mocked these legal proceedings, Plaintiff, Plaintiff's counsel, and the discovery process. Defense attorney Ron Coleman promoted a tweet stating "Roca Labs is seeking discovery into my emails, 'instant messages,' and 'social media communications.' Here's One. GFY.[3]" Consumer Opinion has taken Coleman's GFY attitude and intentionally ignored this Court's Order.

Throughout his deposition as Consumer Opinion Corp.'s Rule 30(b)(6) designee, Syrov tenaciously held fast to the calculated artifice that Consumer is solely a "holding

---

[3] GFY is an abbreviation for Go Fuck Yourself. Defense Counsel retweeted the quoted originally tweeted by Adam Steinbaugh on May 21, 2015.

company" of the PissedConsumer trademark, with no role in the operation of the website and therefore no knowledge of same.

> Q    Who is operating the website PissedConsumer.com today?

> A    We don't operate that website.

> Q    That's not my question. Under your license --

> A    I don't know.

> Q    Under your license, who is operating the website PissedConsumer.com?

(2CO 78:16-23).

> A    From documents that you provided to me over here, it says that it's Consumer Opinion, LLC, but I'm not sure if everything is actually transferred to that company *and I'm not testifying here on behalf of Opinion Corp or Consumer Opinion, LLC, so I don't know the state of events between those two.*

(2CO 79:14-20).

Syrov was clearly trying to prevent this Court from discovering the true facts in this case. As Plaintiff argues in its Response in Opposition to Consumer's Motion for Summary Judgment (Dkt.186), the actions and activities of each corporate Defendant are so intertwined the entire PissedConsumer operation can only be considered as one enterprise. Michael Podolsky and Alex Syrov own 50% of each corporation, they are the only employees of Defendants, the only executive officers of Defendants, and they manipulate their companies in such a manner as to make them merely agencies, instrumentalities, adjuncts and alter egos of each other. (1CO 30:1-10, 18-25; 31:1-4)(*See also*, Dkt. 187-1 at 44:10 - 48:25). Any distinction between the two entities is a legal fiction and was created in a thinly veiled attempt to shield the trademark asset Pissed Consumer. Yet Syrov has the audacity to insist under oath that he does not know who

operates the website pissedconsumer.com, which in multiple court documents Defendant claims Opinion operates and which he is 50% owner and President of Opinion. Plaintiff believes that this feigned ignorance is perjury.

Defendant has intentionally thwarted discovery and defied the Orders of this Court. Plaintiff respectfully requests the Court enter an order imposing sanctions under F.R.C.P. 37(b)(2) and appropriate case law striking Defendant's pleadings, awarding Plaintiff the costs and attorneys' fees for its attendance at Consumer's deposition and the preparation of this Motion, and all other relief this Court deems proper.

## MEMORANDUM OF LAW AND ARGUMENT

### I. Failure to Designate Proper Rule 30(b)(6) witness

Defendant failed to provide a properly prepared Rule 30(b)(6) designee as Syrov could not provide testimony to the majority of the noticed topics. "If the designated deponent cannot answer questions regarding the subject matter as to which he is designated, then 'the corporation has failed to comply with its Rule 30(b)(6) obligations and may be subject to sanctions.'" *Continental Cas. Co. v. First Financial Employee Leasing, Inc.*, 716 F. Supp.2d 1176, 1189 (M.D.Fla. 2010).

> The Defendant corporations are required to prepare their respective designees "to the extent matters are reasonably available, whether from documents, past employees, or other sources. The organization must prepare the designees so that they may give complete, knowledgeable and binding answers on behalf of the corporation. A corporate party does not satisfy its obligations under Rule 30(b)(6) by merely producing a designee and [then] seeing what he has to say or what he can cover… If the designated deponent cannot answer questions regarding the subject matter as to which he is designated, then the corporation has failed to comply with its Rule 30(b)(6) obligations and may be subject to sanctions. Fed.R.Civ.P. 37(d)(1)(A)(i) authorizes sanctions if [corporation] produc[ed] an unprepared Rule 30(b)(6) witness, may be sanctionable as a non-appearance under the Rule. *Id.*

7

"[A] corporation has 'a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and noninvasively answer questions about the designated subject matter.'" *Great American Ins. Co. v. Vegas Constr. Co., Inc.*, 251 F.R.D. 534, 538 (D.Nev. 2008). This effort was clearly not made by Defendant despite an opportunity to cure the defects of its Syrov and produce a proper Rule 30(b)(6) witness.

Plaintiff noticed fifteen (15) topics for Consumer's Rule 30(b)(6) depositions. (Dkt. 143-3). As stated above, the deposition was to take place on Sunday, July 12, 2015, but the parties agreed to continue it to Tuesday, July 14, 2015 after it was clear Syrov was unprepared to testify and defense counsel agreed to prepare the witness and produce him two days later rather than have the June 12 deposition declared a non-appearance. (1CO 77:18-25) On both dates, Syrov was unprepared to answer, or feigned a lack of knowledge, about basic general operations of the business.[4] He was unable to answer simple questions such as the addresses of the corporate offices (1CO 17:14-20) and to Defendant's total revenue (1CO 10:4-5, 21-23). Despite Syrov's testimony that he saw and reviewed the deposition notice and subpoena duces tecum, it was soon evident he was either unwilling or unable to testify to the topics noticed for deposition.

On Sunday, July 12, 2015, after a few preliminary questions regarding deposition procedures, the first substantive question asked of Syrov was his position with Consumer,

---

[4] **Topic 1:** The current ownership of Consumer Opinion Corp, including shareholder information and information on the operations of Consumer Opinion Corp., including but not limited to the operations of the business, revenue streams, assets and liabilities of the company.

to which he replied "CEO." (1CO 8:18). Syrov's evasiveness and lack of preparedness

began to show on the second question and continued from there:

> Q     And, how long have you served in capacity as CEO, of Consumer Opinion
> Corporation?
>
> A     All the time.
>
> Q     Okay. And, when was Consumer Opinion Corporation formed?
>
> A     It was formed in either 2009 or 2013.
>
> Q     Okay. There's a wide gap between 2009 and 2013; is there a reason for
> that gap?
>
> A     I said, "or."
>
> Q     I know it's a wide gap; is there a reason for that wide gap?
>
> A     That's my recollection.

(1CO 8:19-25, 9:1-6).

When pressed further as to the year the corporation was formed, Syrov continued

to be unable or unwilling to answer that question. (1CO 11:12-14; 13-4-7). He could not,

or would not, testify to any details of Consumer Opinion's articles of incorporation. (1CO

55:12-22; 56:2-20). Syrov could not, or would not, provide a specific answer as to the

amount of revenue for the corporation in 2014, providing only the extremely vague "over

a half million dollars." (1CO 15:23-24; 16:2; 58:15-25, 59:1-2, 18-24; 61:2-9). He was

not able to testify as to any specifics regarding the amount of the company's expenses

(1CO 61:10-11).

He could not, or would not, even identify the individual who would have the exact

number, other than the "IRS." (1CO 16:18-23). He did not review the tax records for the

company prior to the deposition on Sunday. (1CO 56:21-25). Syrov did not know if the

company maintains its tax documents (1CO 17:2-5), where its corporate offices are

located (1CO 17:6-24) (2CO 49:3-10), and whose idea it was to form Consumer Opinion

Corp. (1CO 18:22-24).

Syrov was also not prepared to testify to the following topics:


**Topic 2**
The relationship between Consumer Opinion Corp. and Opinion Corp., including all
licensing and marketing agreements, management agreements,

**Topic 3**
The Trademark Pissed Consumer (Reg. 3679454), and all licensing agreements, quality
control agreements, and other agreements related to the trademark.

Consumer's position has been that it's sole purpose for being is as a holding

company for the trademark of PissedConsumer for Opinion Corp. (Dkt. 148). Syrov

could not even testify to details regarding this sole purpose. He could not testify as to the

details of the oral agreement between the two Defendant corporations regarding the

trademark. (1CO 24:19-22; 27:11-13).

Additionally, Syrov was unable or unwilling to testify to matters relating to Topic

4, which requested information relating to "the ownership and operation of the website

www.pissedconsumer.com, including but not limited to operation and maintenance of the

website." Syrov could not, or would not, provide the name or company who operates the

website pissedconsumer.com, despite the fact that Consumer is the entity who licenses

the rights to operate the website. (2CO 78:9-21).

Finally, Syrov was unable or unwilling to testify to Topic 14, which states, "all

fundraising effortes promoted on www.pissedconsumer.com to Defendant to help fight

this lawsuit by Roca Labs, including statements about litigation posted on the website and donations recieved." Syrov testified Consumer received funds from Opinion Corp.'s plea for funds to assist in its litigation against Roca, he was unable to testify as to the amounts of these funds. (2CO 164:7-19; 165:5-15).

Such evasiveness prevailed throughout the deposition. Defendant intentionally thwarted discovery as Syrov avoided numerous questions by providing non-responsive answers. For example, despite being the CEO of a corporation that alleges it exists solely as a "holding company" for the intellectual property rights surrounding the name and mark PissedConsumer, Syrov feigned ignorance as to the meaning of the word "copyright."

A     I don't know the term copyright. Would you explain it to me.

Q     It's not for me to answer questions for you, sir.

A     I think the copyright is a legal term that I'm not very familiar with, so I would prefer to be explained.

(2CO 72:6-12).

Defendant clearly believed it did not need to comply with the Orders. Plaintiff has been considerably prejudiced by Defendant's actions, or rather its lack thereof, and as a result significant sanctions are appropriate. Defendant's primary defense and the basis for its Motion for Summary Judgment (Dkt. 148) is that its sole purpose and point of existence is to hold the intellectual property for Pissed Consumer, and yet its CEO makes the unbelievable claim that he does not have a basic understanding of the plain meaning of the word "copyright." Defendant's intentional evasiveness and attempts to thwart discovery should not go unpunished by this Court.

11

One purpose of a Rule 30(b)(6) deposition is "to curb any temptation by the corporation to shunt a discovering party from "pillar to post" by presenting deponents who each disclaim knowledge of facts known to someone in the corporation." *QBE Ins. Corp. v. Jorda Enter., Inc.*, 277 F.R.D. 676, 690 (S.D. Fla. Jan. 30, 2012) citing *Great Am.*, 251 F.R.D. at 539. *Cf. Ierardi v. Lorillard, Inc.*, No. 90–7049, 1991 WL 66799, *2 (E.D. Pa. Apr. 15, 1991), at *2 (without the rule, a corporation could "hide behind the alleged 'failed' memories of its employees"). Defendant's two founders are the company's only employees and yet they would like this Court to believe Syrov has minimal knowledge as to the operations of the company.

## II.   Failure to Comply with Court Order to Produce Documents

The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts. *See United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 986–87, 2 L.Ed.2d 1077 (1958). Here, Defendant willfully violated the Orders in an attempt to thwart this Court's understanding of the truth. Consumer produced ***only 10%*** (16 of 162) of the requested documents. (*See* Exhibit C). It claimed it was not in "possession" of documents responsive to 144 of the Requests. Id. The term "document(s)" was specifically and clearly defined on Schedule B. (Dkt. 143-3).

Where a party asserts that it does not have responsive documents, it must come forward with an explanation of the search conducted "with sufficient specificity to allow the court to determine whether the party made a reasonable inquiry and exercised due

diligence." *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012). Information regarding the search conducted should be provided through declarations under oath detailing the nature of the efforts to locate responsive documents. *See Meeks v. Parsons* , 2009 U.S. Dist. LEXIS 90283, 2009 WL 3003718, *4 (citing *A. Farber & Partners*, 234 F.R.D. at 190). If responsive documents do exist but the responsive party claims lack of possession, control, or custody, the party must so state with sufficient specificity to allow the Court (1) to conclude that the responses were made after a case-specific evaluation and (2) to evaluate the merit of that response. *Ochotorena v. Adams*, No. 1:05-cv-01525-LJO-DLB (PC), 2010 WL 1035774, at *3-4 (E.D. Cal. Mar. 19, 2010). Moreover, boilerplate objections as made by Defendant do not suffice. Fed. R. Civ. P. 34(b)(2)(B), (C); *Burlington N. & Santa Fe Ry. Co.*, 408 F.3d at 1149.

Based upon the testimony of Syrov, it is clear numerous relevant responsive documents exist and that Consumer knowingly failed to produce those documents. On multiple occasions Consumer testified he viewed requested documents on a computer, yet he did not produce those documents. As detailed below, Consumer repeatedly claimed requested documents were were not in the literal "possession" of Consumer and thus did not need to be produced.

The lack of production defies all common logic and the list of even basic documents not produced is staggering. For example, (1) no documentation of any kind from Defendants two employees (Podolsky and Syrov) were produced; (Request No. 2); (2) no documents indicating any type of revenue received by Defendant was produced; (Request No 1) (3) no invoices between Defendant and Opinion Corp. were produced;

(Request No. 2) and, (6) Defendant produced no documents in response to Requests for communications about Roca. "An earmark of a recipient's inadequate inquiry is the obvious absence of documents and other written materials that the recipient reasonably would be expected to have been retained in the ordinary course of its business." *Meeks v. Parsons*, 2009 U.S. Dist. LEXIS 90283, 2009 WL 3003718, *4 (E.D. Cal. Sept. 18, 2009) (citing A. *Farber & Partners*, 234 F.R.D. at 189).

"Under Fed.R.Civ.P. 34, control is the test with regard to the production of documents. Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand." *Searock v. Stripling*, 736 F.2d 650, 653 (C.A.11 1984). To obtain the documents, Consumer has "an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control." *Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992). A contractual relationship between a litigant and the entity in physical possession of the requested documents confers control of those documents on the litigant. *Flagg v. City of Detroit,* 252 F.R.D.346 (E.D. Mich. 2008).

Consumer has an affirmative obligation to obtain documents and information from Opinion Corp. This should be a simple exercise for Defendant, as its two owners and employees are also the sole owners and employees of Opinion Corp. Rather than make an attempt to obtain information and documents, let alone exercise the diligence the Rules require of it, Defendant used its dual corporate structure as a means to evade discovery, claiming no knowledge or information as to the operations of the corporation

with which it is inexorably entwined, co-Defendant Opinion Corp., and failing to produce documents within its possession, custody, and control.

Two days prior to the deposition, Consumer provided its responses to the *duces tecum* Requests. (*See* Exhibit C). Defendant responded it did not possess documents responsive to 143 of the 162 Requests. Moreover, in complete disregard of this Court's Order finding that Defendant waived all objections it may have had to the document requests, Opinion objected to Request No. 127 on the basis of attorney-client privilege. Request No. 127 relates to "all correspondence," which includes correspondence from those who donated to the campaign and between Defendant. A privilege log was not provided by Defendant for the allegedly privileged document.

Syrov did not bring any additional documents with him to the deposition on Sunday, July 12, 2015. (1CO 57:9-12). It became clear during the deposition that most of those documents do exist, but that Syrov either did not conduct a diligent search for the documents or failed to obtain them from others over whom he had control. For example, when asked about documents relating to revenue streams, including tax documents, that had not been provided, Syrov testified that the documents were "at the IRS servers." (1CO 17:1) and that no bank statements exist  for the corporation (1CO 35:14-24). Therefore, the deposition was ended in order to allow him additional time to prepare and gather documents responsive to the Requests.

On Tuesday, July 14, 2015, he produced Consumer's 2012 and 2013 tax *returns* (but no supporting tax documents) and "printouts" of transactions for two Chase Bank

accounts held by Consumer. When questioned as to why Consumer did not produce additional documents, Syrov was unable or unwilling to provide any meaningful answers.

Q      Other than the bank transactions and tax documents has every other document been shredded?

MR. MACMULL: Objection.

A      I cannot answer that question. I don't know.

Q      Other than the document that's you've --

A      I don't have any other documents in my hand.

Q      And when you say you, you're speaking on before of the corporation?

A      Yes.

Q      So the corporation, other than your tax documents and a printout from a bank that was produced to us, there is nothing else, correct?

A      We also have online whatever we actually need; so, for example, the trademark records are there; so if you need to look them up you're welcome to do so.

(2CO 24:5-24)

Regarding Request No. 1, "[a]ll documents relating to the corporate formation of Consumer Opinion Corp, and ownership of Consumer Opinion Corp.," Defendant provided only the certificate of corporation from the State of New York and insisted no other documents could be found or existed. (1CO 48:10-23; 1CO 49:2-14; 1CO 50:4-17; 1CO 51:22-25; 1CO 52:1-3, 16-17; 1CO 53:12-21; 2CO 31:1-25).

He testified that some documents had been shredded, but could not, or would not, testify as to what those documents were.

Q      Other than the bank transactions and tax documents has every other document been shredded?

MR. MACMULL: Objection.

A       I cannot answer that question. I don't know.

(2CO 24:5-10).

Moreover, Syrov was deliberately evasive and attempted to manufacture any type of excuse for not producing documents. For example, he repeatedly stated that he liked the environment and did not want to waste paper, but yet Defendant produced all documents via electronic means and did not "waste" any paper. An example of Syrov's position is as follows:

Q       So all this information that you read about, where is copies of all this information?

A       It is all available online.

Q       And did you print out any of this information?

MR. MACMULL:       Objection.

A       No, I did not.

Q       And why did you not bring this documentation with you today, sir?

·       MR. MACMULL:       He just testified he didn't print it out.

·       Q       I asked a simple question. Why didn't he bring it with him today.

A       I like the environment so I don't waste paper. I don't print everything that I read online.

Q       And you're aware that you are under a court order to produce these documents today, correct?

A       I am aware I am under a court order to produce documents.

Q       But your like of the environment trumps the court order; is that what you're saying. Once again. I'm asking you a very simple question. Do you believe that your like of the environment trumps the court order?

A        Of course not.

Q        So you could have printed out these documents, correct?

MR. MACMULL:        Objection.

·        A        I can't print out everything that I surf on line.

(2CO 128:19 through 130:8)

After this sequence defense counsel took the position that Defendant was not under any

order to produce documents: "Mr. Berger … There is a court order that requires these

documents to be here today. MR. MACMULL:· There is no court order that commands

that he manufacture or produce documents. He's testified that he didn't print them out.

End of story." (2CO 131: 4-9). Plaintiff is not asking that Defendant manufacture or

create documents that do not exist.   Rather Plaintiff wants Defendant to produce

documents that exist in printed or electronic form.  The Orders were clear and documents

needed to be produced. Defendants should be held in contempt for their failure to comply

with the Orders.

## III.    PREJUDICE

Plaintiff has been prejudiced by Defendant's blatant efforts to thwart discovery

and corrupt the integrity of the discovery process. Information to support Plaintiff's

allegations and overcome Consumer's affirmative defenses has been intentionally hidden

(or not produced) in discovery. ""The most obvious and important type of prejudice

arises when a party blocks its opponent's access to evidence that the opponent needs to

fairly litigate a consequential issue, claim, or defense."" *St. Cyr v. Flying J Inc.*, 2007

U.S. Dist. LEXIS 42502, *14 (M.D. Fla. June 12, 2007)(quoting 7 Moore's Federal

Practice § 37.50[1][a] (3d ed. 2002)). There can be no disputing Defendant has tried to thwart the prosecution of this case and has ignored the Orders by failing to produce relevant documents that will assist Plaintiff in establishing its case.  The deficient testimony by Syrov, either due to lack of knowledge or feigned memory loss, has hampered and prejudiced Plaintiff.

Defendant has had numerous opportunities to comply with Plaintiff's repeated requests for discovery. Defendant was given every opportunity to produce a proper Rule 30(b)(6) witness, and was allowed an additional two days to prepare its witness and correct discovery defects. This is clear evidence of bad faith as Defendant deliberately ignored this Court's Orders in an attempt to thwart discovery and hamper Plaintiff's case. As a result, Plaintiff has been prejudiced.

## IV.   SANCTIONS

Rule 37(b)(2) provides a range of sanctions a district court may impose upon parties and their attorneys for failure to comply with the court's discovery orders. The Court has broad discretion to sanction Defendant for its failure to comply with the Orders, which has caused unfair prejudice to Plaintiff and undermined the integrity of the discovery process. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court may impose sanctions F.R.C.P. 37.

A court will not normally impose severe sanctions unless it finds, (1) the party exhibited a willful or bad faith failure to obey a discovery order, (2) the moving party

was prejudiced by that violation, and (3) a lesser sanction would fail to punish the violation adequately and would not ensure future compliance with court orders. *Broadcast Music, Inc. v. Bourbon Street Station, Inc.*, No. 3:09-cv-468-J-25MCR, 2010 WL 11411584 at *2 (M.D. Fla. Mar. 23, 2010)(citing *Inmuno Vital, Inc. v. Telemundo Group, Inc.*, 203 F.R.D. 561, 571 (S.D. Fla. 2001)). The action of Defendant clearly meets all three elements: (1) Defendant ignored the Orders, (2) Plaintiff is prejudiced by the lack of disclosure, and (3) given the current posture of the proceedings a lesser sanction will not cure the violations. Defendant's history of game playing in this case demonstrates monetary sanctions alone are insufficient.

If the movant meets their burden, to avoid penalty the party facing sanctions must establish that the failure to disclose was "substantially justified" or "harmless." *See Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009). There can be no justification for Defendant's action in this matter.

## CONCLUSION

As the discovery period has ended, Defendant's blatant disregard of this Court's Order to provide deposition testimony and all requested documents severely prejudices Plaintiff as it prepares for trial. Plaintiff submits that given Defendant's pattern of obstruction and delay, disregard for this Court's rules, orders, instructions of its counsel, and discovery requests of Plaintiff, default is the only appropriate sanction. With the expiration of the discovery period, any other relief would reward Defendant's misbehavior. The striking of Defendant's pleadings is the most appropriate sanction.

WHEREFORE, Plaintiff moves this Court to find Defendant's lack of preparedness at deposition amounts to a non-appearance and enter an Order directing Defendant to show cause why it failed to attend the deposition, why it failed to produce all documents responsive to the subpoena *duces tecum* and why it should not be held in contempt of this Court for same, striking Defendant's pleadings, including its Affirmative Defenses and Motion for Summary Judgment, entering a default against Defendant, and awarding sanctions in the form of attorneys' fees and costs incurred by Plaintiff in connection with its attendance at the New York depositions, court reporter fees, transcripts costs, and videographer fees, and this motion, and any further relief as the Court deems appropriate.

### <u>CERTIFICATE OF GOOD FAITH COMPLIANCE WITH LOCAL RULE 3.01(g)</u>

In accordance with Local Rule 3.01(g), counsel for Plaintiff conferred with defense counsel regarding the substance of the instant Motion and counsel for Defendant advised Defendant objects to this Motion.

Date: September 9, 2015

Respectfully Submitted,

/s/ *Paul Berger*
Paul Berger
Counsel for Plaintiff
FL Bar No. 4413
Roca Labs, Inc.
P.O. Box 7898
Delray Beach, FL 33482-7898
Tel. 305-998-6150
Legal5@rocalabs.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on September 9, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document is being served upon: Marc Randazza, Esq. and Ronald Coleman, Esq., counsel for Defendants, via transmission of Notices of Electronic Filing generated by CM/ECF.

<div align="center" style="margin-left:40%">

/s/ Paul Berger
Paul Berger
Counsel for Plaintiff
FL Bar No. 4413
Roca Labs, Inc.
P.O. Box 7898
Delray Beach, FL 33482-7898
Tel. 305-998-6150
Legal5@rocalabs.com

</div>