# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ROCA LABS, INC.,                                   Case No:  8:14-cv-02096-VMC-EAJ

       Plaintiff,

v.

CONSUMER OPINON CORP. and
OPINION CORP. d/b/a
PISSEDCONSUMER.COM,

       Defendants.

_____/

## DEFENDANT'S OPPOSITION TO MOTION
## REQUESTING ORDER TO SHOW CAUSE

Defendant Opinion Corp. ("Defendant") hereby opposes Plaintiff's Motion Requesting Order to Show Cause as to Why Defendant Opinion Corp. Should Not be Held in Contempt (Dkt. No. 197, hereinafter "Pltf's Br.").

## INTRODUCTION

Plaintiff Roca Labs, Inc.'s ("Roca") baseless attempt at portraying Defendant's Rule 30(b)(6) witness, Michael Podolsky, as inadequately prepared to testify on the topics for which he was proffered is a contrivance designed to concoct a discovery dispute where none exists. Misplaced too is Roca's contention that Defendant has improperly withheld documents.

Indeed, the meritless nature of Roca's claims in this case have only grown clearer in recent days when, on September 24, 2015, the Federal Trade Commission sued Roca in *FTC v. Roca Labs, Inc., et al.*, United States District Court for the Middle District of Florida, Case No. 15-cv-02231 for precisely the same conduct Roca seeks judicial support for here. (Declaration of Joel G. MacMull dated September 30, 2015 ("MacMull Decl."), Ex. A.)

Roca's application additionally remains fatally flawed for several independent reasons. First, Mr. Poldolsky prepared to the best of his abilities based on the vaguest of topic descriptions, but nevertheless provided adequate and appropriate responses on Defendant's behalf. Because counsel for Roca chose not to notice sufficiently tailored topics about which it now belatedly complains does not somehow render him an unqualified, unprepared witness.

Second, while Roca continues to claim wrongfully that Defendant is improperly withholding information and documents, in reality, Roca's latest missive seeks information and documents that have either already been produced or that the Federal Rules of Civil Procedure do not obligate Defendant to produce.

Lastly, but no less importantly, even assuming *arguendo* the Court finds some deficiency with Mr. Poldolsky's testimony as a corporate designee or Defendant's document production, Roca offers no explanation for why it waited **40 days after discovery closed** to file its motion! Accordingly, Roca's motion is untimely and should be denied on this basis alone.[1]

For these reasons and for those that follow, Roca's motion to compel and for sanctions should be denied in its entirety, and Defendant should be awarded attorneys' fees and costs it incurred in responding to this frivolous motion pursuant to Fed. R. Civ. 37(a) and the Court's inherent powers pursuant to 28 U.S.C. § 1927.

## FACTUAL BACKGROUND

On July 7, 2015, one day before the Court issued the discovery order about which Roca complains (Dkt. No. 176), Plaintiff filed a motion for summary judgment as to, *inter alia*, Count II of its Amended Complaint against Defendant (Deceptive and Unfair Trade Practices) and all of Defendant's Affirmative Defenses, including those defenses of truth, substantial truth, qualified privilege, immunity under the Communications Decency Act, 47 U.S.C. § 230, and, perhaps most tellingly, failure to state a claim. (Dkt. No. 172.) In doing so, Roca pleaded that

---

[1] Related to the issue of timing, Roca moved for summary judgment on Count II of its Amended Complaint against Defendant (Deceptive and Unfair Trade Practices) and all of Defendant's affirmative defenses prior to the close of

"the matters of record affirmatively establish that there is no genuine issue of material fact." (*Id.* at p. 1.)  Defendant agrees and cross-moved for summary judgment (Dkt. No. 173.)

Co-defendant Consumer Opinion Corp. had previously moved for summary judgment. (Dkt. No. 148.)  When Consumer Opinion Corp. filed its motion, Roca moved the very next day to strike the motion claiming that additional discovery was warranted.   (Dkt. No. 151.)[2] Subsequently, Roca explicitly sought relief under Rule 56(d) to respond to Consumer Opinion Corp.'s Motion for Summary Judgment. (Dkt. No. 168.) That motion was denied as moot and the motion's response deadline was extended to August 5, 2015.  (Dkt. No. 169 and 170.)

Plaintiff responded to the summary judgment motions on August 5 and 6, 2015, claiming there were genuine issues of material fact in dispute, while failing to identify such issues with any specificity. (*See* Dkt Nos. 186 and 189.) Roca, on August 20, 2015, thereafter reaffirmed the lack of any material fact, in its reply memorandum relating to its own motion for partial summary judgment.  (Dkt. No. 194.) Neither in making its motion for partial summary judgment on July 7, 2015, nor at any time thereafter, did Plaintiff argue that additional discovery was needed in order for it to file or respond to Defendants' summary judgment motions.   No motions under Rule 56(d) were filed and no applications to further extend the discovery schedule were filed before the July 20, 2015 deadline or afterwards. Surprisingly, then, ten days after its reply submission on summary judgment (Dkt. No. 194), Roca filed its motion for order to show cause claiming "substantial prejudice" by virtue of Defendant's purported failure to comply with discovery, despite the timeline clearly establishing the contrary.  (*See* Pltf's Br.)

---

[2] Although the Court did not explicitly reference Fed. R. Civ. P. 56(d) in denying Plaintiff's motion to strike (Dkt. No. 153), it referred to *Snook v. Trust Co. of Ga. Bank*, 859 F.2d 865, 870 (11th Cir. 1988), which itself quoted *WSB-TV v. Lee*, 842 F.2d 1266, 1269 (11th Cir. 1988).  The Court in *WSB-TV* was interpreting whether summary judgment could be decided in light of the opportunity for discovery under then-Fed. R. Civ. P. 56(f), the precursor to present day Rule 56(d).  842 F.2d at 1269.

As for any alleged failure to produce responsive documents, Defendant produced what it could on July 10, 2015. It further supplemented its production on July 11 and 13, 2015. (MacMull Decl., ¶¶ 4-5.) In any event, Defendant did not disobey any such order.

Despite the above, Plaintiff claims violations of the Magistrate's Order of July 2, 2015 (Dkt. No. 169) as affirmed by this Court on July 8, 2015 (Dkt. No. 176).[3] The Magistrate's Order, in particular, required defendants to produce their Rule 30(b)(6) corporate representatives for deposition per the parties' stipulation (Dkt. No. 165) and to produce the documents Roca subpoenaed. (Dkt. Nos. 143-3; 169 at 6-7.) Defendant responded and produced documents requested in the subpoena on July 10, 2015 prior to the deposition. It appeared for its deposition via its corporate representative, Michael Podolsky, on July 11, 2015. (Dkt. No. 197-1; 197-2.) Defendant supplemented its document production on July 11, 2015.  (MacMull Decl., ¶ 4.)

## LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 37(b)(2), the Court **may** impose discovery sanctions when the party "fails to obey an order to provide or permit discovery." *See Omega Patents, LLC v. Fortin Auto Radio, Inc.*, 2006 U.S. Dist. LEXIS 49650, at *9 (M.D. Fla. July 19, 2006).

A "Rule 30(b)(6) deponent must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought and to prepare those persons so they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters." *SEC v. Kramer*, 778 F. Supp. 2d 1320, 1327 (M.D. Fla. 2011). While a designee must be prepared to the extent that matters are reasonable available, whether from documents, past employees, or other sources, a Rule 30(b)(6) deposition is not designed to be a memory test. *See QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 689 (S.D. Fla. 2012). Thus, even if a witness is unable to answer several specific questions posed during his or deposition, that does not render the testimony

---

[3] Because Dkt. No. 176 fully adopts Dkt. No. 169, the discussion concerning these orders and their alleged violation are directed toward Dkt. No. 169, though  they are  equally applicable to Dkt. No. 176.

inadequate when the "questions that the witnesses could not answer could not reasonably have been anticipated given the breadth of the matters noticed." *Tailored Lighting, Inc. v. Osram Sylvania Prods.*, 255 F.R.D. 340, 349 (W.D.N.Y. 2009). A Rule 30(b)(6) witness' testimony is inadequate under the Rule only when it is apparent that the witness was "woefully unprepared" for his or deposition. *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 383 (E.D. Pa. 2006). Thus, a witness' inability to testify or answer certain questions does not necessarily mean the witness is inadequately prepared, particularly when the questions "were pitched at such a level of generality as to make it likely that the witness would not have a specific answer or called for a legal conclusion or were so poorly phrased as to be virtually incomprehensible." *Briese Lichttechnik Vertriebs GmbH v. Langton*, 272 F.R.D. 369, 375 (S.D.N.Y. 2011) ("The failure of defendants' counsel to focus on specific purely factual details does not demonstrate that the witnesses failed to fulfill their required roles under Rule 30(b)(6).")

## ARGUMENT

Defendant appeared for the Rule 30(b)(6) deposition and produced documents on July 10 and 11, 2015.  (Dkt. Nos. 197-1; 197-2.)  Moreover, this Court has never issued any order as to the sufficiency of Defendant's responses and Defendant could not have violated any such order. Instead, Roca seeks to cast a motion otherwise within the scope of Rule 37(a) as a motion for sanctions under Rule 37(b) because it cannot possibly hope to win on the merits.

Roca complains that Mr. Podolsky allegedly did not answer 125 questions to its satisfaction and that Defendant was unable to produce all of the requested documents.  (Dkt. No. 197 at p. 3.)  The Court need not engage in a point by point assessment of Roca's arguments, as its motion is clearly untimely.

## I.   ROCA'S MOTION IS UNTIMELY AS A MATTER OF LAW

District courts have broad discretion when managing their cases in order to ensure that the cases move to a timely and orderly conclusion. *See Chrysler Int'l Corp. v. Chemaly, 280 F.3d*

*1358, 1360* (11th Cir. 2002). The Case Management and Scheduling Order controls the course of the proceedings and the parties are required to comply with the Order. (Dkt. No. 169, at p. 6.) (extending the discovery deadline for limited purposes until July 20, 2015.) Accordingly, all discovery was to be completed by that date. *See* Middle District Discovery, A Handbook on Civil Discovery Practice in the United States District Court for the Middle District of Florida § I(F)(1) (stating that the parties "should not expect the Court to resolve discovery disputes arising **after** the discovery completion date.") (emphasis added.) "The Court's deadlines are not suggestions that can be ignored." *Perez v. Garrow*, 2014 U.S. Dist. LEXIS 124489, n. 3 (M.D. Fla. 2014).

Here, Roca moved **49 days** after Defendants' deposition and **40 days** after the close of fact discovery. (*Compare* Pltf's Br. *with* Dkt. No. 197-1.) Moreover, at no time did Roca make an application to the Court to extend discovery, despite announcing during the deposition that it would seek to compel. (Dep. Tr. at 191:8-11.) As this Court just last month wrote:

> It is irrelevant whether the motion is filed three days or three weeks after the deadline. The motion is untimely. At least one court has denied a motion to compel as untimely when it was filed **one** day after the close of discovery. If a request is made after the deadline expires, the party must show excusable neglect. Fed. R. Civ. P. 6(b)(1)(B).

*ELI Research, LLC v. Must Have Info, Inc.*, 2015 U.S. Dist. LEXIS 103194, at *5 (M.D. Fla. Aug. 6, 2015) (citations omitted) (declining to reopen discovery following a near two month delay between the time the dispute arose and the filing of plaintiff's motion.) Because Roca offers no explanation for its failure to move in a timely manner, let alone an "excusable" one pursuant to Rule 6(b)(1), its motion should be denied in its entirety.

## II.   DEFENDANT'S RULE 30(B)(6) WITNESS WAS SUFFICIENT

Even if this Court were to consider Roca's motion as timely, its arguments still fail. Michael Podolsky was designated by Opinion Corp., pursuant to Fed. R. Civ. P. 30(b)(6) to testify to the topics set forth in Roca's Rule 30(b)(6) deposition notice. (Dkt. No. 143-3; Dkt. No.

197-1.)  Moreover, "the corporation's obligation under Rule 30(b)(6) does not mean that the witness can never answer that the corporation lacks knowledge of a certain fact." *Fraser Yachts Fla., Inc. v. Milne*, 2007 U.S. Dist. LEXIS 27546, at *5 (S.D. Fla. Apr. 13, 2007).  In addition,

> if a Rule 30(b)(6) witness is asked a question concerning a subject that was not noticed for deposition or that seeks information not reasonably available to the corporation, the witness need not answer the question. Moreover, certain questions may seek details so minute that a witness could not reasonably be expected to answer them.

*State Farm Mut. Auto. Ins. Co. v. New Horizon, Inc.,* 250 F.R.D. 203, 216 (E.D. Pa. 2008). Further, where a party's "inability to provide adequate 30(b)(6) testimony resulted from its lack of knowledge and related inability — despite asking — to obtain information and knowledge from an uncooperative third-party source," then "its obligations are extinguished."  *QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 699 (S.D. Fla. 2012).

Defendant addresses below the balance of Roca's claims of deficiency and why these its arguments are meritless:

- The corporate address.  (Pltf's Br. at p. 6.)  None of the topics noticed sought this information. Further, Mr. Podolsky provided most of the address, including the suite number, and offered to draw a physical map highlighting where it was. (Dep. Tr. 17:14-20.)

**Topic 1:**

- Defendant's total revenue in 2013 & 2014. (Pltf's Br. at p. 6 & 9). Topic 1 was focused on "operations…including…revenue streams." (MacMull Decl., Ex. C.) Roca's general objections regarding answers to Topic 1 is that Mr. Podolsky, as a 30(b)(6) witness, was not testifying as an accountant. Precise amounts of annual revenue is not encompassed within "revenue streams" as it relates to "operations." Specific numbers were not reasonably anticipated and are too detailed to find failure with Mr. Podolsky's response. In any event, Mr. Podolsky testified that Opinion Corp. generated somewhere "around a million dollars" in 2014

and roughly "30 percent less" in 2013. (Dep. Tr. at 33:22-34:13.) He further testified to the sources of Opinion Corp. revenues. (*Id.*, at 132:7-133:2.)

- Exactly how much Google paid Defendant for advertising in 2014. (Pltf's Br. at p. 9 (4).) Precise amounts were not encompassed within Topic 1 and specific amounts are too minute. (MacMull Decl., Ex. C.)  Mr. Podolsky otherwise testified that Opinion Corp. is paid by Google. (Dep. Tr. at 31:4-18; 132:22-133:3.)

- Exactly how much Defendant earned from paying customers. (Pltf's Br. at p.9 (5).) Precise amounts were not encompassed within Topic 1 and specific figures are too minute. (MacMull Decl., Ex. C.)  Mr. Podolsky otherwise testified as to the various payment programs Defendant offers.  (Dep. Tr. at 145:26-147:2.)

- Revenue from advertising. (Pltf's Br. at 9(6).) Mr. Podolsky properly answered the questions asked of him. (Dep. Tr. at 31:2-20.)

- Taxes paid in 2014. (Pltf's Br. at 9(6).) Precise amounts were not encompassed within Topic 1 and specific figures are too minute. (MacMull Decl., Ex. C.) He otherwise testified that taxes were paid. (Dep. Tr. at 133:16-22.)

- Exact salary amounts. (Pltf's Br. at p. 9(7).) Precise amounts were not encompassed within Topic 1 and specific figures are too minute. (MacMull Decl., Ex. C.) He otherwise testified as to the official salaries and the approximate amounts paid. (Dep. Tr. at 134:11-25.)

- Funds transferred between defendants in 2014. (Pltf's Br. at p. 9(8).[4]) Precise amounts were not encompassed within Topic 1 and specific figures are too minute. (MacMull Decl., Ex. C.) Mr. Podolsky otherwise testified as to payments between defendants. (Dep. Tr. at 46:7-19.)

- Exact amounts paid to Evgeniva "Jane" Grinchenko. (Pltf's Br. at 9(9).) Precise amounts were not encompassed within Topic 1 and specific figures are too minute. (MacMull

---

[4] The record citation, Podolsky Dep. Tr. at 46:20-22, inquires of Consumer Opinion Corp.'s profits; Mr. Podolsky was not testifying on behalf of that entity.

Decl., Ex. C.) Mr. Podolsky otherwise testified as to the manner in which she was paid. (Dep. Tr. at 160:23-161:13.)

- Exact numbers of clients of Defendant. (Pltf's Br. at p. 9 (10).) Precise amounts were not encompassed within Topic 1 and specific numbers are too minute in detail. (MacMull Decl., Ex. C.) Mr. Podolsky otherwise testified as to the approximate number of Defendant's clients. (Dep. Tr. at 129:23-25; 145:2-4.)

- Exact asset totals on specific dates. (Pltf's Br. at p. 9 (11) & (12).) Precise amounts were not encompassed within Topic 1 and specific figures are too minute in detail. (MacMull Decl., Ex. C.) Mr. Podolsky otherwise testified as to approximate present assets belong to Defendant. (Dep. Tr. at 35:2-7; 35:17-22.)

### Topics 2 & 3:

- Exact amounts paid by Opinion Corp. to Consumer Opinion Corp. to license trademarks.  (Pltf's Br. at 9-10.) The precise amounts Roca seeks are not encompassed within Topics 2 or 3 and the specific figures it sought are too minute in detail as to reasonably fall within the topics as noticed. Mr. Podolsky otherwise testified as to how payments are calculated. (Dep. Tr. at 46:7-19; 47:22-49:4.)

### Topics 4 & 8:

- The Name of the Subcontractor's Employee who Drafted a Press Release. (Pltf's Br. at p. 10(1).) Evidently, Roca objects that Defendant's subcontractor, Ms. Grinchenko, possesses this information. (*Id.*) Roca concedes, as it must, that Ms. Grinchencko was identified in Defendants' Rule 26(a) initial disclosures in May. (Dkt. No. 197-3.). It chose not to depose her. In any event, this question was not encompassed within Topic 4 as noticed (MacMull Decl., Ex. C), such that it must be said that Defendant should be compelled to provide this information. Mr. Podolsky nevertheless testified as to how the press release was generated.  (Dep. Tr. at 76:2-77:13.)

9

- Review process for consumer posts made on PissedConsumer.com. (Pltf's Br. at p. 10(2).) Mr. Podolsky properly testified to the process of how user posts are reviewed. (Dep. Tr. at 96:11-19.)

- Removal process involving posts made on PissedConsumer.com. (Pltf's Br. at p. 10(3).) Mr. Podolsky testified as to how user posts may be removed. (Dep. Tr. at 114:13-115:18; 328:11-329:6.)

- The exact number of posts removed by Defendant in 2014 for violations of its terms and conditions. (Pltf's Br. at p. 10(4).) This question was not encompassed within Topic 4 and specific numbers are too minute in detail. (MacMull Decl., Ex. C.) Mr. Podolsky was not testifying as a forensic expert and he otherwise testified that Defendant had not calculated that precise number, but could. (Dep. Tr. at 116:17-24.)

- The average number of monthly visitors to PissedConsumer.com. (Dkt. No. 197 at p. 10(5).) This question was not encompassed within Topic 4 and specific numbers are too minute in detail. Again, Mr. Podolsky was not testifying as a forensic expert and he otherwise provided an approximate figure and that Defendant had not calculated that precise figure, but could. (Dep. Tr. at 120:8-21.)

- Social media. (Pltf's Br. at p. 10(6).) Mr. Podolsky testified to Defendant's use of social media. (Dep. Tr. at 122:10-25, 268:11-15, 271:19-272:11, 274:17-22, 279:24-280:2.) The name of the individual in the Defendant's subcontractor's organization who drafted a few lines of computer code was not encompassed within Topic 4 and the individual's name, in addition to being irrelevant, is not properly encompassed by the deposition notice. (Dep. Tr. at 272:12-14.)

- Calculation of average losses identified on PissedConsumer.com. (Pltf's Br. at p. 10(7).) Mr. Podolsky testified as to how loss figures appearing on the PissedConsumer.com were

calculated. (Dep. Tr. at 201:7-13.) Details about specific lines of computer code were not encompassed within Topic 4 and are too detailed.[5]

•   The exact number of visitors who entered the specific search term "Roca Labs" on the PissedConsumer.com website. (Dkt. No. 197 at p. 10(8).)  This question was not encompassed within Topic 4 and specific details as to the number are too minute in detail.  Nevertheless, the witness testified on the subject on behalf of the Defendant. (Dep. Tr. at 322:8-10.)

•   Name of the person who authored a document describing the steps involved in posting a user review on PissedConsumer.com (Pltf's Br. at p. 10.) Mr. Podolsky testified as to his familiarity with the document at issue. (Dep. Tr. at 182:9-183:2.) The exact name of the person who drafted one particular document was not encompassed within Topics 4 or 8 and Roca's demand that the Defendant possess such knowledge concerning the name of the individual is unreasonable given the breadth of the topics noticed.

•   Formulas utilized to calculate losses appearing on PissedConsumer.com.  (Pltf's Br. at pp. 10-11.) As with the information concerning the calculation of average losses, *supra*, Mr. Podolsky testified generally as to how this information was calculated. (Dep. Tr. at 201:7-13.) Again, the specificity of the question asked was not reasonably encompassed within Topic 4 and knowledge of the specific functions requested is unreasonably detailed.

**Topic 5:**

•   Exact number of visitors who entered a specific search term.  (Dep. Tr. at 197 at p. 11.) This question was not encompassed within Topic 5 and the specific numbers inquired about are too minute. Mr. Podolsky was not testifying as a forensic expert when he responded to the question. (Dep. Tr. at 319:13-17.) In any event, search results obtained within the website is unrelated to external search engine optimization about which the topic relates.

---

[5] As evidenced by the record (Dkt. No. 197-2), Defendant's code comprises dozens of pages. The question put to the witness was seeking information about perhaps one or two lines. (Dep. Tr. at  201:14-16; 206:23-207:1.)

- Methods of search engine optimization in 2007 or 2008. (Dkt. No. 197 at p. 11.) These questions were not reasonably encompassed within Topic 5, especially considering the time period associated with the questions is entirely irrelevant to this litigation. (Dep. Tr. at 332:15-25.) Mr. Podolsky was not testifying as a forensic expert. Moreover, Mr. Podolsky testified that Google never informed Defendant of the "deindexing," such that Defendant could not know precisely why Google chose to temporarily deindex the site.  (*Id.* at 333:1-13.)

**Topic 6:**

- Exact date and numbers of posts removed. (Pltf's Br. at p. 11.) Such details are not properly encompassed within Topic 6 regarding the specificity of information sought. Mr. Podolsky was not testifying as a forensic expert and he otherwise testified that the Defendant had not calculated that precise numbers, but could. (Dep. Tr. at 116:17-24.)

- Definition of "abusive" with Defendants' Terms of Service. (Pltf's Br. at p. 12.) Within seconds, Mr. Podolsky provided a definition. (Dep. Tr. at 117:17-22.) Mr. Podolsky further testified as to how Defendant might interpret whether a post violates its prohibition on "abusive" material. (Dep. Tr. at 118:1-119:2.)

**Topic 7:**

- Alleged testimonial inconsistency. (Dkt No. 197 at p. 12.) Contrary to Roca's assertion, Mr. Podolsky's differentiation between a non-entity "Pissedconsumer" which cannot, by definition, use Twitter, and Defendant, who does, is not inconsistent.  (Dep. Tr. at 122:8-13.)

- Use of the Twitter handle "@RocaLabs." (Pltf's Br. at p.12(1).) Mr. Podolsky testified that it was an automated process executed via Defendant's computer code. (Dep. Tr. at 270:1-271:9, 278:1-5.) Roca's continued inquiry on the subject was beyond Topic 7 and specific functions it seeks information on are too detailed based on the topics noticed. Nevertheless, Mr. Podolsky testified that the Defendant could provide that information with sufficient notice and opportunity. (Dep. Tr. at 279:8-15.)

- The name of the user whose complaint on PissedConsumer.com generated a single tweet. (Pltf's Br. at p. 12(2).) Such an inquiry is beyond the scope of Topic 7 and otherwise seeks information that is far too detailed.

- The name of the person working for Defendant's subcontractor who wrote Defendant's Twitter algorithm.  (Pltf's Br. at p. 12(3).)  Such an inquiry is beyond the scope of Topic 7 and otherwise seeks information far too detailed. Mr. Podolsky nevertheless identified the individual as someone within Ms. Grinchenko's organization. (Dep. Tr. at 272:9-14.)

- What goes into determining who Defendant "follows" on Twitter. (Dep. Tr. at 197 at p.12(4).)  The information sought is beyond the scope of Topic 7 as noticed. (MacMull Decl., Ex. C.)  Mr. Podolsky testified that Defendant did not know how the decision was made because it does not manage its own Twitter account.  (Dep. Tr. at 268:12-14; 274:17-22; 275:19-24.)

- General understanding of how Twitter works.  (Pltf's Br. at p. 12(5).)  Contrary to Roca's assertion, Mr. Podolsky provided Defendant's best testimony of how it understands its Twitter account operates.  However, as Mr. Podolsky testified, Defendant does not actually operate the account itself.  (Dep. Tr. at 268:12-14; 274:17-22.) Accordingly, Defendant cannot reasonably be expected to testify to something it does not actually do; particularly, where, as here, it long ago identified Ms. Grinchenko as someone with knowledge and "information regarding business operations and the moderating of postings." (Pltf's Br.-3.)

    **Topic 12:**

- Violation of Nondisclosure Agreements. (Pltf's Br. at pp. 12-13.)  In its Order (Dkt. No. 176), the Court did not rule out the potential for the entry of a protective order, only that one was not warranted at the time.  (*Id.,* at p.6.)  The parties had not previously reached a confidentiality agreement.  (Dkt. No. 48, at p. 6.)  The Court expressly contemplated such a potential agreement.  (Dkt. No. 49, at p.4.)  Prior to Defendant's deposition, it was unclear that Roca would be making inquiry into specific names and terms of agreements under the ambit of

Topic 12.  (MacMull Decl., Ex. C.) Once Roca made such inquiry, and Defendant identified the existence of nondisclosure agreements with its clients, Roca flatly refused to enter into a hold harmless or other form of confidentiality agreement. (Dep. Tr. at 187:12-188:4.) To require Defendant to violate a nondisclosure agreement is generally oppressive within the meaning of Fed. R. Civ. P. 30(d)(3)(A). Mr. Podolsky testified to the existence of Defendant's nondisclosure agreements and its preference not to breach them. (Dep. Tr. at 189:24-191:11; 340:18-341:8.) However, Roca abandoned the questioning once Defendant requested to enter into an agreement, and thus there was no need at that time to move under Rule 30(d)(3)(A).  Defendant cannot be penalized where it did not have the opportunity to seek relief.

- Number of business solution clients.  (Pltf's Br. at p. 13.)  The precise number of clients Defendant has was not encompassed within Topic 12; nevertheless, and contrary to Roca's statement, Mr. Podolsky testified to this number. (Dep. Tr. at 189:24-190:2.) He further testified about Defendant's business services. (Dep. Tr. at  144:19-147:14.)

**Topic 14:**

- Responses to fundraising efforts.  (Pltf's Br. at p. 14.)  Contrary to Roca's argument, the responses received are not within the scope of Topic 14, which only covered Defendant's own statements/promotions and the donations received.

- Monetary amounts received from donations.  (*Id.*)  Mr. Podolsky testified that money was raised. (Dep. Tr. at 295:8-14.)  Precise amounts were not encompassed within Topic 14 and specific figures are too minute in detail.  Moreover, as Mr. Poldolsky testified, the donations generally went to Consumer Opinion Corp. to fund the defense of Defendant, so Defendant would not be expected to know these amounts. (Podolsky Dep. Tr. at 295:22-296:4.)

Because Mr. Podolsky properly answered the questions put to him there was no violation of the Court's prior orders. Moreover, to the extent any shortcomings in his testimony can be

said to exist, they lie with Roca's failure to properly draft its deposition notice or otherwise ask the right questions of the appropriate witness. (MacMull Decl., Ex. C;  Dkt. No. 197-3.)

### III.    OPINION CORP. PRODUCED DOCUMENTS ITS WAS REQUIRED TO PRODUCE

Although Roca is unhappy with the volume of Defendant's document production, it is not unusual for broad requests to be unanswerable.  Defendant is a two-person company that outsources the bulk of its technical operations.  The Eleventh Circuit has determined that, with respect to a responding party's duties, "the primary dispositive issue is whether [the responding party] made a good faith effort to obtain the documents over which [it] may have indicated [it] had 'control' in whatever sense, and whether after making such a good faith effort [it] was unable to obtain and thus produce them." *Searock v. Stripling*, 736 F.2d 650, 654 (11th Cir. 1984).

In advancing its argument that "Defendant willfully violated the Orders in an attempt to thwart this Court's understanding of the truth" (Pltf's Br. at 14), plaintiff ignores that Defendant: **(1)** supplemented its production on July 11, 2015 with bank records showing account credits and debits (MacMull Decl., ¶ 4); **(2)** supplemented it production on July 11 and 13, 2015 with documents concerning Roca's document request No. 57 (MacMull Decl., ¶¶ 4-5); **(3)** spent approximately 20 hours to locate responsive documents. (Dep. Tr. at 27:5-10); and **(4)** made multiple inquiries and had several conversations with Ms. Grinchenko for responsive documents (*Id.* at 155:22-156:6; 172:22-173:8, 175:12-23; 181:16-22).

In addition to the above omissions, Roca ignores that many of its requests in its subpoena to Defendant are defective. Roca's requests often seek documents from Consumer Opinion Corp., not Defendant. (MacMull Decl. Ex. C.) For example, Request No. 159 reads:

> Any and all documents relating to website traffic, for Defendant, Consumer Opinion Corp.'s site/domain- pissedconsumer.com and all subdomains relating to Roca Labs, including but not limited to roca-labs.pissedconsumer.com.

(*Id.*) Here, as in many cases, PissedConsumer.com is not owned by Consumer Opinion Corp. and so documents relating to a non-existent domain are not in Defendant's possession. Other requests directed toward Defendant were also sloppily drafted.

As shown below, Defendant made a good faith effort to collect and produce what it could. Accordingly, it cannot be sanctioned for not producing what it is was unable to obtain or what it does not possess.

### A.      Documents Related to Hosting, Management and Operation

Moving past Roca's broad generalizations, Roca fails to demonstrate any actual failure. Roca complains that Amazon and Google contracts were not produced in response to Request No. 7.  (Pltf's Br., at pp. 15-16.)  However, as explained above, Request No. 7 inquires into Consumer Opinion Corp.'s webhosting, not Opinion Corp.'s (MacMull Decl., Ex. C.) A similar misidentification by Roca also appears in Requests Nos. 4 and 6.  (*Id.*)

Roca never defined the term "Webmaster" until Defendant's deposition. (Dep. Tr. at 153:1-7.) Nevertheless, Defendant produced the 2014 contract with Ms. Grinchenko in its possession; it did not possess the others, despite asking her for them. (Dep. Tr. at 154:17-156:9.) To the extent applicable, then, Defendant adequately responded to Request No. 3.

With respect to "review and posting information" (Pltf's Br. at p. 16), it is unclear to what request such documents might relate.  Moreover, that Ms. Grinchenko did not provide certain information does necessarily lead to any fault on the part of Defendant. Roca does not specify what, if any, documents were not provided that might otherwise respond to Requests Nos. 9-11.  (Pltf's Br. at p.17.)

As to Requests Nos. 12 and 13, again, there is no indication from the record which documents are unresponsive.  (Pltf's Br. at p. 17.) Roca appears to complain that certain documents are in Ukrainian; however, a translation is the creation of a new document for which Defendant has no obligation to produce.  *See In re Puerto Rico Elec. Power Auth.*, 687 F.2d 501, 509

(1st Cir. 1982) (Rule 34 does not allow requesting party to impose cost of translating documents that exist in foreign language on producing party); *Contretas v. Isuzu Motors, Ltd. of Japan*, *Contreras v. Isuzu Motors, Ltd.*, 1999 U.S. Dist. LEXIS 23615, *4, (W.D. Tex. Apr. 2, 1999) ("there is no authority for compelling the defendants to translate discovery documents"); *Cook v. Volkswagen of Am., Inc.*, 101 F.R.D. 92 (S.D.W.Va. 1984) (same).

Roca never defined "schema" previously or used the word "database." Thus the documents Defendant produced, i.e., the source code, are sufficient. Moreover, that which Defendant provided is "readily usable;" Roca need only open it in a web browser. Thus, Defendant fulfilled these requests as required.

**B.    Advertisers**

Contrary to Roca's argument, none of its requests embodied in Nos. 24-27 seek the AdSense data it now claims should have been produced in response. (Dkt No. 197 at 17-18.) Request No. 24 is about contracts; the Terms and Conditions universally used were provided. Request No. 25 is about correspondence; Defendant has none from Google.  Request Nos. 26 and 27 are about payments to and from Consumer Opinion Corp., not Defendant. (MacMull Decl., Ex. C.) Thus, Defendant cannot be sanctioned for not having responsive documents.

**C.    Visitor Traffic**

Roca mischaracterizes the testimony about visitor traffic as it relates to Requests Nos. 28 and 29.  (Pltf's Br. at 18-19.)  Defendant did not previously define "visitor traffic" until it began asking about "unique visitors" During the deposition.  (Dep. Tr. at 126:1-127:4.)  Defendant does not keep such information. (*Id.* at 127:7-12.)  Defendant did not specifically know whether Google analytics might show total unique visitors. (*Id.* at 137:23-25.) In short, Defendant did not know Roca desired "unique visitor" information from Google when it asked for "visitor traffic." In any event, Defendant's record keeper is Ms. Grinchenko, who, as noted above, was requested to provide all the information she had. No sanction therefore is warranted under *Searock*.

**D.     Comments, Posts & Reviews about Roca**

Once more, Requests No. 32, 33, 34 and 35 requested documents relating to Consumer Opinion Corp., not Defendant.[6]   (Pltf's Br. at 19; MacMull Decl., Ex. C.)   Moreover, Roca has not identified any documents that Defendant otherwise withheld.   As to Request No. 42, Roca does not identify any reason why Consumer Opinion Corp. and Opinion Corp. would have corresponded with one another other about Roca. (Dkt. No. 197, at pp. 19-20.)

**E.     Social Media**

As explained above, Defendant does not manage its own social media accounts. (Dep. Tr. at 122:10-25.)   Ms. Grinchenko was requested to produce all responsive documents, including those responsive to Requests Nos. 49, 50, 52-58, and 60-65.[7]   Thus, Defendant made a good faith effort to produce the documents pursuant to *Searock*. Moreover, as Mr. Podolsky noted during the deposition, the information requested is generally available to the public. (Dep. Tr. at 258:13-24). Therefore Roca was not prejudiced by Defendant's inability to produce publically available information. As with the other requests, of course, should Defendant come into possession of these documents, it will abide its duty to supplement its production.

**F.     Search Engine Optimization**

Mr. Podolsky did not testify on the subject of "SEO" before he inquired as to what Roca meant by the term. (Pltf's Br. at p. 20.) He testified that Defendant had **not** been accused of "black hat SEO techniques" and that Google took action, without knowing whether it was due to SEO techniques specifically. (Dep. Tr. at 331:1-333:13.)   Moreover, Requests Nos. 66, 68, 69 & 70 are directed to Consumer Opinion Corp., not Defendant. (MacMull Decl., Ex. C.) As for Request No. 67, such documents would be in the possession of Ms. Grinchenko.

---

[6]     The requests specify in some instances "Consumer Opinion Corp." in others "Opinion Corp." and in other cases neither entity.

[7]     Again, Requests Nos. 56, 60, 61 and 64 relate to Consumer Opinion Corp., not Defendant. (MacMull Decl., Ex. C).

### G.   Business Services

Defendant is not in the business of reputation management as the term is used by Roca; rather, it helps businesses resolve disputes with consumers. (Dep. Tr. at 138:25-139:5; 142:17-144:11.) Thus, as to Requests Nos. 71-82, 112 and 115, which deal with Online Reputation Management, there would be no responsive documents. Similarly, Requests Nos. 83-94, 113 and 115 relate to Reputation Management Services, which, again, is a concept not immediately understood by Defendant.  Requests Nos. 71-100, 102, 105-108, 111 and 114 further relate to Consumer Opinion Corp., not Defendant.

Nothing contained in the record reveals Defendant improperly stated that it did not have documents responsive to Requests Nos. 101, 103, 104 or 115.  Defendant provided documents responsive to Request Nos. 109 and 110.  As a result, no violation occurred.

### H.   Fundraising

Defendant produced fundraising documents requested that were within its possession, as sought by Requests No. 116-128 & 160.  (Pltf's Br., at 21-22.)  It provided documents regarding fundraising activities and campaigns per Requests No. 116 and 120. There is no evidence from the record that Defendant possessed any other documents, even though donations were received.  Thus, Defendant would not have financial records relating to Requests No. 123, 124 or 128.  Requests No. 117-119, 121, 122, 126 and 160 were directed to documents belonging to Consumer Opinion Corp., not Defendant. Defendant has not raised funds "against" Roca, but rather to defend itself in this litigation. Thus, there are no documents that are responsive to Request No. 125.

With respect to Request No. 127, Defendant does not object to the request itself. However, Defendant is otherwise permitted to claim a privilege pursuant to Fed. R. Civ .P. 26(b)(5).  Although this District does not have an express rule, it is not expected that a party create a privilege log for communications between a party and its counsel after the

commencement of litigation.  *See Teledyne Instruments, Inc. v. Cairns*, 2013 U.S. Dist. LEXIS 153497, *52, (M.D. Fla. Oct. 25, 2013). Thus, to the extent documents were withheld, doing so was permissible without the need for a privilege log.

I.    **IP Addresses**

A slew of document requests seek IP addresses from multiple entities. Many of these requests are directed to Consumer Opinion Corp., not Defendant.  *See, e.g.*, Requests Nos. 4, 5, 33, 35, 60, 73, 85, 95, 118, 119, 130, 135, 136 and 140. (MacMull Decl., Ex C.)  Requests Nos. 3, 9-11, 14-15, 20-21, 55, 57, 62, and 67 relate to Ms. Grinchenko and her employees for which Defendant requested responsive information and does not possess it. Similarly, Requests Nos. 129 and 133 ask about everyone who uses PissedConsumer.com. (MacMull Decl., Ex. C.) To the extent such records exist, this information would be within the possession of Ms. Grinchenko who was asked to provide all information.  Nothing contained in Mr. Podolsky's testimony suggests that Defendant is in possession of the IP information Roca seeks. Accordingly, this information should have been requested of Ms. Grinchenko. Therefore, Defendant cannot be sanctioned for failing to provide what it does not have.

## CONCLUSION

Defendant, via the testimony of Michael Podolsky, testified to the best of its ability and produced documents consistent with its obligations under the Rules. If there was any appreciable failures with Defendant's discovery obligations to speak of they are innocent and easily cured, such that the extraordinary sanctions Roca looks to impose here are improper. For the foregoing reasons, this Court should deny Roca's motion for order to show cause to compel and for sanctions in its entirety and award Defendant further relief it deems appropriate, including an award of fees and costs for having to respond to this frivolous motion, pursuant to Fed. R. Civ. 37(a) and the Court's inherent powers pursuant to 28 U.S.C. § 1927.

Dated: September 30, 2015            Respectfully Submitted,

           *s/ Marc J. Randazza*
           Marc J. Randazza
           FL Bar No. 625566
           RANDAZZA LEGAL GROUP
           3625 S. Town Center Drive
           Las Vegas, Nevada 89135
           Tele:  702-420-2001
           Fax: 305-437-7662
           Email: ecf@randazza.com

           Ronald D. Coleman, Esq.
           *Pro Hac Vice*
           Joel G. MacMull, Esq.
           *Pro Hac Vice*
           ARCHER & GREINER, P.C.
           Court Plaza South
           21 Main Street – Suite 353
           Hackensack, New Jersey 07601
           Tele:  201-342-6000
           Fax: 201-342-6611
           Email: rcoleman@archerlaw.com
                     jmacmull@archerlaw.com

                CASE NO.: 8:14-cv-02096-VMC-EAJ

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on September 30, 2015, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that a true and correct

copy of the foregoing document is being served upon counsel for Plaintiff, via transmission of

Notices of Electronic Filing generated by CM/ECF.

                               _____
                               An employee / agent of
                               RANDAZZA LEGAL GROUP