UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROCA LABS, INC.,

       Plaintiff,

v.                     Case No. 8:14-cv-2096-T-33EAJ

CONSUMER OPINION CORP. and
OPINION CORP.,

       Defendants.
_____/

**ORDER**

This cause comes before the Court on cross-motions for summary judgment. Plaintiff Roca Labs, Inc. moves for partial summary judgment as to Counts I and II of the Amended Complaint, as well as to all eight affirmative defenses pled by Defendants Consumer Opinion and Opinion Corp. (Doc. # 172). Consumer Opinion and Opinion Corp. filed a joint response in opposition (Doc. # 187), and Roca filed a reply (Doc. # 194). Consumer Opinion and Opinion Corp. move for summary judgment on all claims brought against them by Roca. (Doc. ## 148, 173). Roca filed a response to both (Doc. ## 186, 189). Consumer Opinion and Opinion Corp. each filed a reply (Doc. ## 192, 193). All cross-motions for summary judgment are now ripe for this Court's review.

1

I.   **Background**

This action was originally filed by Roca in the Circuit Court of the 12th Judicial Circuit, in and for Sarasota County, Florida on August 8, 2014. (Doc. # 1-1). Consumer Opinion Corp. and Opinion Corp. timely removed to this Court on August 26, 2014, on the basis of diversity jurisdiction. (Doc. # 1).

The Amended Complaint contains 11 counts. (Doc. # 114). The counts are listed below:

> Count I: violation of FDUPTA against Consumer Opinion;
> Count II: violation of FDUPTA against Opinion Corp.;
> Count III: tortious interference with a contractual relationship against Consumer Opinion;
> Count IV: tortious interference with a contractual relationship against Opinion Corp.;
> Count V: tortious interference with prospective economic relationship against Consumer Opinion;
> Count VI: tortious interference with prospective economic relationship against Opinion Corp.;
> Count VII: defamation for statements on pissedconsumer.com against Consumer Opinion;
> Count VIII: defamation for statements on pissedconsumer.com against Opinion Corp.;
> Count IX: defamation for statements on Twitter against Consumer Opinion;
> Count X: defamation for statements on Twitter against Opinion Corp.; and
> Count XII:[1] declaratory relief against Consumer Opinion and Opinion Corp.

(Doc. # 114).

--------

[1] The Amended Complaint skips from Count X to Count XII.

Consumer Opinion[2] and Opinion Corp. operate pissedconsumer.com. (Doc. ## 148 at 3; 186 at 9). Pissedconsumer.com is a website where third parties can make posts, i.e., comments, concerning their experiences with a product or service, as well as read others' posts. (Doc. ## 114 at ¶ 28; 148-2 at ¶ 8). Pissedconsumer.com has a webpage just for Roca, which is found at www.roca-labs.pissedconsumer.com. See (Doc. # 114 at ¶ 164). In addition to displaying the posts concerning Roca, the information contained from those posts is summarized into statistics. (Doc. ## 148-2 at ¶ 10; 189-2 at 208:1-209:18).

Based on the Amended Complaint and Consumer Opinion and Opinion Corp.'s Answer, it is undisputed that a third party must go through a multistep process to post on pissedconsumer.com. (Doc. ## 114 at ¶ 44; 117 at ¶ 44). In Step 1 the third party accesses pissedconsumer.com. (Doc. ## 114 at ¶ 46; 117 at ¶ 46). In Step 2 the third party selects the "Submit Complaint" button. (Doc. ## 114 at ¶ 47; 117 at ¶ 47). In Step 3 the third party writes the post's title and

---

[2] Consumer Opinion also advances the argument it is an incorrect party to this action. However, the Court need not address that argument because, even under Roca's theory—i.e., Consumer Opinion is merely a holding company and agent of Opinion Corp.—summary judgment in favor of Consumer Opinion is appropriate, as explained below.

body. (Doc. ## 114 at ¶ 49; 117 at ¶ 49). In Step 4 the third party fills out additional information, such as contact information, whether she or he is "pissed" or "pleased," the reason for being "pissed" or "pleased," and the dollar amount of the loss suffered. (Doc. ## 114 at ¶ 50; 117 at ¶ 50). The third party is free to pick "None of the above" when describing the reason for being "pissed" or "pleased" and may then describe the problem in her or his own words. (Doc. # 114 at ¶ 50) (screenshots); (Doc. # 117 at ¶ 50). The final steps are all optional. (Doc. # 114 at ¶¶ 51–53) (screenshots); (Doc. # 117 at ¶¶ 51–53).

Furthermore, posts from pissedconsumer.com were posted to Twitter. (Doc. ## 148-2 at ¶¶ 11-13; 186-3 at 262, 282, 288-290; 189-2 at 262, 282, 288-290). Randomly selected posts from pissedconsumer.com were tweeted from a related Twitter page; the tweets contained a link to the related post on pissedconsumer.com. See (Doc. # 148-2 at ¶¶ 10-14); see also (Doc. # 186-3 at 288-290). Other than trimming the posts from pissedconsumer.com in length to fit within Twitter's 140 character limit, no substantive alterations were made to the posts-turned-tweet. (Doc. # 148-2 at ¶ 14).

To provide a sample of the complained of posts, such posts include: "This product sucks. It's expensive, horrible

to drink & doesn't do nothing"; "This business is a total fraud. BEWARE!"; "Roca Labs - Got scammed and sick from this JUNK"; "The Company is full of lies and deceit"; and "Roca Labs - Don't buy anything from Roca Lab they just sell a regular shake they are stealing your money." (Doc. # 114 at ¶ 147). Some of the complained of tweets include: "@RocaLabs Don't buy anything from Roca Labs they just sell a regular shake"; "Doesn't Work!!! I can't believe I really thought this would work! Save your money"; and "WILL NOT PROCESS PROMISED REFUND, LIED TO BY CUSTOMER SERVICE AGENTS REGARDING PROMISED REFUND." (Doc. # 114 at ¶ 154); see also (Doc. # 114-1 at 39-75) (providing full list of complained of posts and tweets).

## II. <u>Legal Standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a

reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact

finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing <u>Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. <u>Analysis</u>

### A. <u>Admission-By-Default Argument</u>

The Court finds Roca's admission-by-default argument (Doc. # 172 at 2-7), unpersuasive. Federal Rule of Civil Procedure 36 provides, in part, that matters set forth in a request for admission are deemed admitted unless, "within 30 days after service of the request, the party to whom the request is directed serves . . . a written answer or objection . . . . A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court."

In <u>Laborer's Pension Fund v. Blackmore Sewer Construction, Inc.</u>, 298 F.3d 600, 605 (7th Cir. 2002), the

district court set a discovery deadline of November 30. Id.
The defendant served the plaintiff with a request for
admission pursuant to Rule 36(a) on November 25. Id. The
plaintiff failed to respond in any manner and, yet, filed a
motion for summary judgment. Id. The district court found the
request for admission was untimely served and granted summary
judgment in plaintiff's favor without considering plaintiff's
failure to respond to the request for admission. Id.

On appeal, the Seventh Circuit affirmed. Id.
Specifically, the court rejected the defendant's admission-
by-default argument because the Federal Rules of Civil
Procedure provide that a district court may set a discovery
deadline. Id. By serving the request for admission on such a
date that would not allow a response before the discovery
deadline lapsed, the defendant failed to comply with the
court's order. Id. at 605-06. Thus, the district court was
free to disregard the plaintiff's failure to respond when
ruling on the motion for summary judgment. Id. at 606.

Similarly, this Court set a discovery deadline of June
15, 2015, and ordered discovery requests be served "so that
the Rules allow for a response prior to the discovery
deadline." (Doc. # 49 at 1, 3). Despite approximately 6
months' notice the discovery deadline would lapse on June 15,

2015, Roca nevertheless served its First Request for Admissions on May 16, 2015. (Doc. # 172-1 at ¶¶ 4-5). Consumer Opinion and Opinion Corp. were entitled to 33 days to respond. Fed. R. Civ. P. 5(b)(2)(C), 6(d), 36(a)(3); U.S. Dist. Court, Middle Dist. of Fla., ADMINISTRATIVE PROCEDURES FOR ELECTRONIC FILING IN CIVIL AND CRIMINAL CASES, II(B)(4) (Revised ed. Mar. 15, 2007) (stating "For purposes of computation of time pursuant to the applicable rules, electronic service is service by mail"); Smith v. Wal-Mart Stores, Inc., No. 1:11-cv-226-MP-GRJ, 2012 WL 1155667, at *1 (N.D. Fla. Apr. 4, 2012) (recognizing that 3 day extension period under Rule 6 applies to request for admission served by mail). Consumer Opinion and Opinion Corp.'s response would have been due on June 18, 2015, which was past the deadline set by this Court. Thus, Roca's First Request for Admission was untimely. See also Jinks-Umstead v. England, 227 F.R.D. 143, 153 (D.D.C. 2005) (finding, but for new extension of time, requests for admission served 20 days before the modified discovery deadline untimely).

Furthermore, as the proponent of its First Request for Admission, the duty to comply with, or seek modification of, this Court's Case Management and Scheduling Order fell on Roca. In other words, it was Roca's responsibility to ensure its First Request for Admission was timely served or to seek

some form of relief from the discovery deadline set by this Court. Although Roca sought an extension of time, it was only "for the limited purposes of completing the depositions at issue." (Doc. # 169 at 6); see also (Doc. # 165 at ¶ 5). Moreover, this limited extension was sought after the untimely service of Roca's First Request for Admission. Compare (Doc. ## 143, 165), with (Doc. # 172-1 at ¶¶ 4-5). Roca also did not move to shorten the time period for Consumer Opinion and Opinion Corp. to serve their responses to the First Request for Admission, or compel responses.[3]

District courts have broad discretion to enforce their scheduling orders and manage their dockets. Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1366 (11th Cir. 1997); Chrysler Int'l Corp. v. Chemaly, 280 F.3d 1358, 1360 (11th Cir. 2002). Accordingly, as the court in Laborers' Pension

---

[3] The parties were twice placed on notice that advocacy does not include game playing. (Doc. # 162 at 3) (reminding counsel "that [a]dvocacy does not include 'game playing'" (quoting Pesaplastic, C.A. v. Cincinnati Milacron Co., 799 F.2d 1510, 1522-23 (11th Cir. 1986))); (Doc. # 184 at 5) (stating "The Court admonishes the parties and counsel that 'game playing' will not be tolerated"). "When a party . . . uses [Rule 36] . . . with the wild-eyed hope that the other side will fail to answer and therefore admit essential elements . . . , the rule's time-saving function ceases . . . ." Perez v. Miami-Dade Cty., 297 F.3d 1255, 1268 (11th Cir. 2002). Thus, the Court resolves the issue of timeliness by adhering to the Federal Rules of Civil Procedure and the Case Management and Scheduling Order.

Fund did not deem untimely requests for admission admitted, this Court will not deem Roca's First Request for Admission admitted by default.

Roca also asserts Consumer Opinion and Opinion Corp. admit they authored the complained of reviews because they pled the affirmative defense of qualified privilege. (Doc. # 172 at 13). A review of Rule 8 shows this argument to be specious. Rule 8(d)(3) provides "A party may state as many separate claims or defenses as it has, regardless of consistency." Thus, Consumer Opinion and Opinion Corp.'s pleading of qualified privilege does not affect the pleading of immunity under Section 230 of the CDA.

As such, the bases asserted in Roca's Motion for Partial Summary Judgment as to Consumer Opinion and Opinion Corp.'s First Affirmative Defense, i.e. Section 230 immunity, (Doc. # 172 at 12–13), are obviated. Therefore, the Court denies Roca's Motion for Partial Summary Judgment as to Consumer Opinion and Opinion Corp.'s First Affirmative Defense.

**B.  <u>Immunity Under the Communications Decency Act</u>**

The Communications Decency Act (CDA) grants immunity to providers and users of an interactive computer service. 47 U.S.C. § 230(c) (2014). Section 230(c) provides:

    (c)  Protection  for  "Good  Samaritan"  blocking  and
       screening of offensive material
      (1) Treatment of publisher or speaker
          No provider or user of an interactive computer
          service shall be treated as the publisher or
          speaker  of  any  information  provided  by
          another information content provider.
      (2) Civil liability
          No provider or user of an interactive computer
          service shall be held liable on account of—
            (A) any action voluntarily taken in good
            faith  to  restrict  access  to  or
            availability of material that the provider
            or user considers to be obscene, lewd,
            lascivious, filthy, excessively violent,
            harassing,  or  otherwise  objectionable,
            whether  or  not  such  material  is
            constitutionally protected; or
            (B) any action taken to enable or make
            available to information content providers
            or others the technical means to restrict
            access to material described in paragraph
            (1).

Id.

    "Interactive  computer  service"  is  defined  as  "any
information service, system, or access software provider that
provides or enables computer access by multiple users to a
computer server . . . ." Id. at § 230(f)(2). In contrast, an
"information content provider" is "any person or entity that
is responsible, in whole or in part, for the creation or

development of information provided through the Internet or
any other interactive computer service." Id. at § 230(f)(3).
An interactive computer service provider or user may claim
immunity only with respect to information provided by another
information content provider. Carafano v. Metrosplash.com,
Inc., 339 F.3d 1119, 1123 (9th Cir. 2003). But an entity can
be both a service provider or user and an information content
provider. Fair Housing Council of San Fernando Valley v.
Roommates.com, LLC, 521 F.3d 1157, 1162 (9th Cir. 2008) (en
banc). The "critical issue is whether . . . [the service
provider or user] acts as an information content provider
with respect to the information" at issue. Carafano, 339 F.3d
at 1125 (citation and quotation marks omitted).

Websites that allow third parties to make posts
regarding a product or service, regardless of whether the
post is made anonymously or under a pseudonym, have been held
to be interactive computer services. Regions Bank v. Kaplan,
No. 8:12-cv-1837-T-17MAP, 2013 WL 1193831, at *18 (M.D. Fla.
Mar. 22, 2013) (stating "A 'provider' of an interactive
computer service includes websites that host third-party
generated content . . ."); Directory Assistants Inc. v.
Supermedia, LCC, 884 F. Supp. 2d 446, 451 (E.D. Va. 2012)
(citing Global Royalties, Ltd. v. Xcentric Ventures, LLC, 544

F. Supp. 2d 929, 932 (D. Ariz. 2008); <u>Whitney Info. Network, Inc. v. Xcentric Ventures, LLC</u>, No. 2:04-cv-47-FtM-34SPC, 2008 WL 450095 (M.D. Fla. Feb. 15, 2008)) (internal parentheticals omitted).

Furthermore, the CDA preempts any inconsistent state or local law. 47 U.S.C. § 230(e)(3). "The majority of 'federal circuits have interpreted the CDA to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" <u>Almeida v. Amazon.com, Inc.</u>, 456 F.3d 1316, 1321 (11th Cir. 2006) (quoting <u>Zeran v. Am. Online, Inc.</u>, 129 F.3d 327 (4th Cir. 1997)). The Supreme Court of Florida has also recognized the broad preemptive effect of the CDA. <u>Doe v. Am. Online, Inc.</u>, 783 So. 2d 1010, 1018 (Fla. 2001) (stating "We specifically concur that section 230 expressly bars 'any actions' . . .").

Claims for tortious interference with a business relationship and defamation have been held to be preempted by Section 230 of the CDA. <u>See, e.g.</u>, <u>Ben Ezra, Weinstein, and Co., Inc. v. Am. Online Inc.</u>, 206 F.3d 980, 986 (10th Cir. 2000) (holding AOL immune from defamation claim); <u>Directory Assistants</u>, 884 F. Supp. 2d at 450 (recognizing the "CDA precludes liability for defamation, [and] tortious

14

interference with business expectancy"); Whitney Info. Network, Inc. v. Verio, Inc., No. 2:04-cv-462-FtM-29-SPC, 2006 WL 66724, at *3 (M.D. Fla. Jan. 11, 2006) (holding tortious interference with business relationship and defamation claims preempted). Section 230 also provides immunity from injunctive and declaratory relief. Ben Ezra, Weinstein, and Co., 206 F.3d at 983-86; Medytox Solutions, Inc. v. Investorshub.com, Inc., 152 So. 3d 727, 731 (Fla. 4th DCA 2014).

To enjoy immunity under Section 230, the following are required: "(1) defendant be a service provider or user of an interactive computer service; (2) the cause of action treats a defendant as a publisher or speaker of information; and (3) a different information content provider provided the information." Verio, 2006 WL 66724, at *2.

### i. **Service provider or user**

The Court first addresses whether Consumer Opinion and Opinion Corp. are service providers or users of an interactive computer service. Roca argues that Consumer Opinion and Opinion Corp. are information content providers because they (a) tweeted portions of posts on pissedconsumer.com via Twitter; and (b) created content by summarizing data submitted to pissedconsumer.com into statistical form. (Doc.

15

## 186 at 9-14; 189 at 9-14). The Court addresses each argument in turn.

### a.  Tweeting of certain posts

Roca argues that because (I) posts on pissedconsumer.com must be shortened in length to fit within Twitter's 140 character limit and (II) a handle[4] is added to the tweet, Consumer Opinion and Opinion Corp. are information content providers. (Doc. ## 186 at 13-14; 189 at 13-14).

### (I)  Trimming of posts' length

However, "[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional functions——such as deciding whether to publish, withdraw, postpone or alter content——are barred." Dowbenko v. Google Inc., 582 Fed. Appx. 801, 805 (11th Cir. 2014) (quoting Zeran, 129 F.3d at 330) (alterations original). Furthermore, "A website operator who edits user-created content——such as by . . . trimming for length——retains his immunity . . . provided that the edits are unrelated to the illegality." Roommates.com, 521 F.3d at 1169; see also Zeran, 129 F.3d at

---

[4] A "handle" is used to identify a particular user on Twitter and is formed by placing the @ symbol next to a username. A handle can be used to mention another user, send another user a message, or link the tweet to another user's profile. Twitter, The Twitter Glossary, https://support.twitter.com (last visited September 30, 2015).

330. Section 230 also "precludes liability for exercising the usual prerogative of publishers to choose among proffered material . . . ." Batzel v. Smith, 333 F.3d 1018, 1031 (9th Cir. 2003).

Additionally, reposting allegedly defamatory comments authored by third parties does not preclude Section 230 immunity. In Doe v. Friendfinder Network, Inc., 540 F. Supp. 2d 288, 295-96 (D.N.H. 2008), the plaintiff sued a defendant because a forged profile was created on its website. Id. at 292. The defendant also reposted a portion of the profile, known as "teaser," to unaffiliated websites. Id. at 291. The plaintiff sued for defamation and the defendant asserted Section 230 immunity. Id. at 293-94. The court reasoned Section 230 "immunity depends on the source of the information in the allegedly tortious statement, not on the source of the statement itself." Id. at 295 (emphasis original). Thus, because a third party provided the information from which the profile and teaser were derived, the defendant was immune notwithstanding the reposting of alleged defamatory material. See id. at 295-96.

Here, as in Friendfinder Network where a defendant reposted portions of alleged defamatory comments authored by third parties, Consumer Opinion and Opinion Corp. reposted

17

portions of posts made on pissedconsumer.com via Twitter. Consumer Opinion and Opinion Corp. have shown through record evidence that the posts were authored by third parties and trimmed in length to turn them into tweets. (Doc. ## 148-2 at ¶¶ 10-14). For example, one post reads, "Roca Labs – Don't buy anything from Roca Lab they just sell a regular shake they are stealing your money" and the tweet reads, "@RocaLabs Don't buy anything from Roca Labs they just sell a regular shake." (Doc. ## 114 at ¶¶ 147, 154; 114-1 at 41, 52). Another post, authored by username "PERCEPTION IS IN THE EYES OF THE CONSUMER !" has a title that reads "Roca Labs deceptive and unethical." (Doc. # 114-1 at 61). The related tweet reads "Roca Labs deceptive and Unethical comments – Written by: > PERCEPTION IS IN THE EYES OF THE CONSUMER ! show comment tinyurl.com/bg8dbku." (Id. at 46).

Trimming the posts in length to fit within Twitter's character limit and tweeting a "teaser" or preview of posts do not preclude Consumer Opinion and Opinion Corp. from asserting Section 230 immunity, because the underlying information was provided by a third party. Dowbenko, 582 Fed. Appx. at 805; Roommates, 521 F.3d at 1169. Further, Roca's arguments to the contrary (Doc. ## 186 at 12-14; 189 at 12-14), do not convince the Court that Consumer Opinion and

Opinion Corp. are information content providers. Therefore, as in <u>Friendfinder Network</u>, Section 230 immunity applies.

### (II) <u>Addition of handles and links</u>

Roca argues the addition of a handle, which reads "@rocalabs" or "@pissedconsumer," and the bolding of a word preclude Section 230 immunity. (Doc. ## 186 at 13-14; 189 at 13-14). Roca further asserts linking tweets to the respective posts on pissedconsumer.com precludes Section 230 immunity. <u>See</u> (Doc. # 114 at ¶ 76).

On these points, the Court finds instructive <u>Roommates.com</u>, 521 F.3d at 1169. Although the court in <u>Roommates.com</u> determined the website at issue to be an information content provider, the court provided an example of when a website would not be an information content provider. <u>Id.</u> The court stated:

> A website operator who edits user-created content—such as by correcting spelling, removing obscenity or trimming for length—retains his immunity for any illegality in the user-created content, provided that the edits are unrelated to the illegality. However, a website operator who edits in a manner that contributes to the alleged illegality—such as by removing the word "not" from a user's message reading "[Name] did <u>not</u> steal the artwork" in order to transform an innocent message into a libelous one—is directly involved in the alleged illegality and thus not immune.

Id. In other words, a service provider loses immunity when it substantively alters third-party content or becomes directly involved in the alleged illegality.

Here, the addition of a handle that reads "@rocalabs" or "@pissedconsumer" and a link to the tweets is a far cry from the example provided in Roommates.com where the statement was altered from "[Name] did not steal the artwork" to "[Name] did steal the artwork." Similarly, bolding a word does not, in this case, substantively alter the content of the tweet so as to constitute content creation. See Dowbenko, 582 Fed. Appx. at 805.

With respect to the addition of links to the tweets, providing links to negative costumer-review posts does not preclude Section 230 immunity. For example, in Directory Assistants, several defamatory posts about the plaintiff were placed on a consumer-review website. 884 F. Supp. 2d at 447. The defendant then forwarded links to those allegedly defamatory comments via email to a prospective client of the plaintiff. Id. at 447, 452. The plaintiff sued for tortious interference with a business expectancy and the defendant asserted Section 230 immunity. Id. at 450. The court found forwarding links to negative posts did not constitute content

creation and therefore the defendant was immune under Section 230. Id. at 452.

Similarly, here, the record evidence shows links were added to the tweets in question. (Doc. ## 148-2 at ¶ 13; 186-3 at 282:23-25). Just as in Directory Assistants, where the defendant forwarded links to alleged defamatory comments, Consumer Opinion and Opinion Corp. provided links to the complained of posts. (Doc. # 148-2 at ¶ 13). Distributing a link via Twitter is materially indistinguishable from forwarding a link via email in that both methods do not substantively alter the content of the posts. Thus, as in Directory Assistants, Section 230 immunity applies.

### b.   Data manipulation and summarization

Roca further argues that by utilizing search engine optimization and providing statistics of the information contained in the third parties' posts, Consumer Opinion and Opinion Corp. created data. (Doc. ## 186 at 6; 189 at 6-7). These arguments are unavailing.

Search engine optimization does not vitiate immunity under Section 230 of the CDA. In Dowbenko, the plaintiff alleged Google published a defamatory article about the plaintiff on a website. Id. at 803. Google allegedly used algorithms to manipulate its search results causing the

article to appear directly below the plaintiff's own website in Google searches. Id. The district court granted Google immunity and the Dowbenko court affirmed, holding that search engine optimization does not preclude Section 230 immunity. Id. at 805. The court also held that a service provider's or user's refusal or failure to remove defamatory comments does not preclude Section 230 immunity. Id.

In addition, "Section 230 immunity depends on the source of the information in the allegedly tortious statement, not the source of the statement itself." Friendfinder Network, 540 F. Supp. 2d at 295 (emphasis original); see also Almeida, 456 F.3d at 1321 (noting Section 230 precludes liability for information originating from third parties). In determining whether a service provider or user is, in fact, an information content provider, courts have adopted a material contribution test. Jones v. Dirty World Entm't Recordings LLC, 755 F.3d 398, 410 (6th Cir. 2014). Under the material contribution test, a service provider or user becomes an information content provider when it is "responsible for what makes the displayed content allegedly unlawful." Id.

Gentry v. eBay, Inc., 121 Cal. Rptr. 2d 703 (Cal. Ct. App. 4th Dist. 2002), provides an apt analog. In that case,

plaintiffs sued eBay for failing to provide certificates of authenticity for goods auctioned on eBay. Id. at 707-09. The plaintiffs further pled that eBay was not entitled to immunity under Section 230 because eBay purportedly created content by using a color-coded star system. Id. at 717. The star system worked as follows: a user who received a specified number of reviews would have a star placed next to their user name and the star itself was color coded to indicate the amount of positive feedback received by that user. Id. The Gentry court found that the color-coded stars were simply a representation of information submitted by third parties and therefore found eBay immune under Section 230. Id. at 717-18.

As in Gentry, where a service provider summarized information submitted by third parties by way of a color-coded star system, here data on pissedconsumer.com was "modified by Opinion [Corp.]" to present the statistics of the data in numerical form. (Doc. ## 186-3 at 213:22-24; 189-2 at 213:22-24). Further similar to Gentry, where the underlying information was submitted by third parties, here the underlying information was submitted by third parties. (Doc. ## 148-2 at ¶¶ 10; 189-2 at 208:1-209:22). Thus, Consumer Opinion and Opinion Corp.'s manipulation of the data

so as to display it in statistical form does not preclude Section 230 immunity.

In sum, Roca's arguments on the issue of whether Consumer Opinion and Opinion Corp. are information content providers are unpersuasive. Accordingly, the Court determines that Consumer Opinion and Opinion Corp. are service providers or users of an interactive computer service. The Court now addresses the remaining two elements of establishing immunity under Section 230 of the CDA.

### ii. The causes of action treat the defendants as a publisher or speaker of information

In addition, to claim immunity under Section 230 of the CDA, the causes of action asserted by Roca must treat Consumer Opinion and Opinion Corp. as the publishers or speakers of the complained of information. <u>Verio</u>, 2006 WL 66724, at *2. In its Amended Complaint, Roca brings claims for tortious interference and defamation. (Doc. # 114 at 47-69). Roca also seeks declaratory relief. (<u>Id.</u> at 69-73).

In <u>Directory Assistants</u>, the court addressed the very issue of whether tortious interference and defamation are claims preempted by Section 230 of the CDA. To be sure, the court stated that when a "consumer review website is found to be a service provider and not an information content provider,

the CDA precludes liability for defamation [and] tortious inference with business expectancy . . . because the owner of the site did not contribute to the allegedly fraudulent nature of the comments at issue." Directory Assistants, 884 F. Supp. 2d at 450; see also Verio, 2006 WL 66724, at * 3 (holding tortious interference with business relationship preempted). These types of claims are preempted because they treat the defendant as the publisher or speaker, which is proscribed by Section 230. Ben Ezra, Weinstein, and Co., 206 F.3d at 986. Furthermore, Section 230 provides immunity from declaratory relief. Id. at 983-86; Medytox Solutions, 152 So. 3d at 731. Therefore, because the causes of action brought by Roca—namely, defamation, tortious interference, and declaratory relief—seek to hold Consumer Opinion and Opinion Corp. liable as the publisher or speaker of the complained of information, the second element is satisfied.

### iii. A different information content provider provided the information

Finally, to enjoy immunity under Section 230 of the CDA, a different information content provider must have provided the complained of information. Verio, 2006 WL 66724, at *2. On this point, Roca argues Consumer Opinion and Opinion Corp. created the complained of content because of Steps 3 and 4 of

the posting process utilized by pissedconsumer.com. The Court finds Roca's argument unpersuasive. First, it is notable that another court has determined pissedconsumer.com not to be an information content provider. _Ascentive, LLC v. Opinion Corp._, 842 F. Supp. 2d 450, 476 (E.D.N.Y. 2011).

Second, Roca's argument that pissedconsumer.com materially contributed to the complained of posts is unavailing. Roca argues that Consumer Opinion and Opinion Corp. are information content providers because pissedconsumer.com's posting process uses drop down menus and radio buttons (Doc. ## 186 at 11; 189 at 11). Roca continues by stating that regardless of whether a third party is "pissed" or "pleased," the post shows up as a complaint. (Doc. ## 186 at 11–12; 189 at 11-12). Roca also argues Consumer Opinion and Opinion Corp. are information content providers because companies can pay to have testimonials placed on pissedconsumer.com. (Doc. ## 186 at 12; 189 at 12).

Courts, however, have held such processes do not turn a service provider into an information content provider. For example, in _Xcentric Ventures_ the complaint brought a defamation claim arising from comments left on a consumer-complaint website. 2008 WL 450095, at *9. The plaintiff argued that because the website provided categorical descriptions

26

from which a third party could select, the website was an information content provider. Id. The court rejected that argument reasoning the website provided multiple descriptions and the website's operators did not participate in the selection of descriptions. Id. at *10. Rather, the third parties selected the descriptions. Id. Accordingly, the court found that Section 230 immunity applied to the website. Id. at *12.

As in Xcentric Ventures, where third parties could select from a range of options, posters to pissedconsumer.com are offered a range of options in Steps 3 and 4. (Doc. ## 114 at 49-53; 117 at 49-53). Pissedconsumer.com even allows third parties to describe the problem in their own words. (Doc. ## 114 at 50; 117 at 50). Furthermore, as in Xcentric Ventures, the record establishes the posts on pissedconsumer.com are authored by third parties. (Doc. 148-3 at ¶ 10).

The Court also summarily rejects Roca's argument that Consumer Opinion and Opinion Corp. are information content providers because companies can pay to have testimonials placed on pissedconsumer.com. Dowbenko, 582 Fed. Appx. at 805 (stating "[L]awsuits seeking to hold a service provider liable for . . . deciding whether to publish . . . content . . . are barred"); Batzel, 333 F.3d at 1031 (stating Section

27

230 immunity "precludes liability for exercising the usual prerogative of publishers to choose among proffered material . . .")。 Accordingly, the third element is satisfied.

Therefore, the Court grants summary judgment in favor of Consumer Opinion as to Counts III, V, VII, and IX. Likewise, the Court grants summary judgment in favor of Opinion Corp. as to Counts IV, VI, VIII, and X. The Court also grants summary judgment in favor of Consumer Opinion and Opinion Corp. as to Count XII.

### C.   FDUTPA

In Counts I and II of the Amended Complaint, Roca brings FDUTPA claims against Consumer Opinion and Opinion Corp., respectively. (Doc. # 114 at 33, 40). There is a split in authority on whether a FDUTPA claim may be brought in the absence of a consumer relationship between a plaintiff and a defendant. See Kertesz v. Net Transactions, Ltd., 635 F. Supp. 2d 1339, 1350 (S.D. Fla. 2009) (noting split in authority). However, the Court need not weigh-in on this issue to resolve the pending cross-motions for summary judgment.

To prevail on its FDUTPA claims, Roca must show (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. Virgilio v. Ryland Grp., Inc., 680 F.3d 1329, 1338 n.25 (11th Cir. 2012) (quoting Rollins, Inc. v. Butland,

951 So. 2d 860, 869 (Fla. 2d DCA 2006)). Roca's chosen theory of causation is that consumers have allegedly refused to buy Roca's products because of the reviews posted on pissedconsumer.com, and Consumer Opinion and Opinion Corp. would not remove those reviews. (Doc. ## 172 at 10; 186 at 19; 189 at 19). In other words, Roca seeks to impose liability under FDUTPA because of (1) the effect of third parties' posts on pissedconsumer.com and (2) Consumer Opinion and Opinion Corp.'s refusal or failure to remove those posts. Yet, that is exactly the type of liability the CDA precludes.

As noted by the Eleventh Circuit in Dowbenko, an operator of a website "enjoys complete immunity [under the CDA] from any action brought against it as a result of the postings of third party users of its website." 582 Fed. Appx. at 805 (quoting Giordano v. Romeo, 76 So. 3d 1100, 1102 (Fla. 3d DCA 2011)). In addition, "[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish [or] withdraw . . . content—are barred." Id. (quoting Zeran, 129 F.3d at 330) (first alteration original); see also Doe, 783 So. 2d at 1018. Thus, to hold Consumer Opinion and Opinion Corp. liable for their refusal or failure to remove third-party content or the effect of third parties' posts would run

afoul of Section 230 of the CDA. Therefore, the Court grants summary judgment in favor of Consumer Opinion and Opinion Corp. as to Counts I and II, respectively.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Consumer Opinion Corp.'s Motion for Summary Judgment, (Doc. # 148), is **GRANTED.**

(2)   Roca Lab, Inc.'s <u>Daubert</u> Motion (Doc. # 171) is **DENIED AS MOOT.**

(3)   Roca Lab, Inc.'s Motion for Partial Summary Judgment (Doc. # 172) is **DENIED.**

(4)   Opinion Corp.'s Motion for Summary Judgment (Doc. # 173) is **GRANTED.**

(5)   Consumer Opinion Corp. and Opinion Corp.'s Motion in Limine (Doc. # 190) is **DENIED AS MOOT.**

(6)   Roca Lab, Inc.'s Motion in Limine (Doc. # 191) is **DENIED AS MOOT.**

(7)   Consumer Opinion Corp. and Opinion Corp.'s Motion to Supplement the Record (Doc. # 207) is **DENIED AS MOOT.**

(8)   Consumer Opinion Corp. and Opinion Corp.'s Motion to Stay Case in Light of FTC Prosecution of Plaintiff (Doc. # 208) is **DENIED AS MOOT.**

(9)   The parties' Joint Motion to Adjourn Deadlines Related to Final Pretrial Obligations (Doc. # 218) is **DENIED AS MOOT.**

(10) The Clerk is directed to enter judgment in favor of Consumer Opinion Corp. and Opinion Corp., and close this case.

   **DONE** and **ORDERED** in Chambers in Tampa, Florida, this 21st day of October, 2015.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record