Exhibit 1



Paul Berger Esq. <legal5@rocalabs.com>

---

# Draft Motion for Sanctions under Rule 11 and Fla Stat § 57.105

1 message

---

**Randazza Marc John** <mjr@randazza.com>                    Fri, Oct 9, 2015 at 8:04 PM
To: "Paul Berger Esq." <legal5@rocalabs.com>
Cc: RLG Las Vegas <rlglv@randazza.com>, "J. Marshall Wolman" <jmw@randazza.com>, "Ronald D. Coleman"
<rcoleman@archerlaw.com>, "MacMull, Joel G." <jmacmull@archerlaw.com>, Tanner James
<jrt@jimtannerlaw.com>, Cynthia Koroll <cindi@klg-law.net>, James.Hetz@dot.state.fl.us,
wmason@foxrothschild.com

Dear Mr. Berger,

Please see the attached draft motion for sanctions. We will file this in 21 days unless you have withdrawn Roca
Labs' complaint against my clients.

It is our position that this litigation was frivolous from the outset, but the recent FTC prosecution removes even
the shadow of a doubt. We are copying the prior attorneys on the file, to the extent we can remember them all,
to ensure that they are not deprived of due process should the court determine that they must be held
responsible along with you and your client.

It would be prudent, I believe, for all attorneys noticed to put their carriers on notice.

_____

Marc John Randazza, JD, MAMC, LLM* | Randazza Legal Group
3625 South Town Center Drive | Las Vegas, NV 89135
Tel: 702-420-2001 | Email: mjr@randazza.com
Firm Offices - Las Vegas | Philadelphia | San Francisco | Miami
_____


* Licensed to practice law in Arizona, California, Florida, Massachusetts, and Nevada.

---

📄 **PC adv. Roca - DRAFT Motion for Santions.pdf**
324K

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ROCA LABS, INC.,

       Plaintiff,

   v.

CONSUMER OPINION CORP. and
OPINION CORP.,

       Defendants.

Case No: 8:14-cv-02096-VMC-EAJ

## DEFENDANTS' MOTION FOR FEES AND SANCTIONS

Defendants Opinion Corp. and Consumer Opinion Corp. (collectively, "Defendants"), pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, Fla. Stat. § 57.105, and this Court's inherent powers, hereby requests an award of their attorneys' fees and costs as sanctions against Plaintiff Roca Labs, Inc. ("Roca") and Roca's counsel for filing and maintaining a frivolous lawsuit, void of any legal basis, and for an improper purpose.

As Defendants have now prevailed on their motions for summary judgment (*see* Doc. #s 220 & 221), they further request an award of fees pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat., § 501.2105, which provides a strict fee-shifting regime.

To support their Rule 11 and Fla. Stat. §57.105 fees, Defendants complied with the statutory safe harbor periods. On October 9, 2015, Defendants served a safe harbor letter under Fed. R. Civ. P. 11 and Fla. Stat.

§ 57.105 and a version of this motion on Roca's attorneys.[1]  Further, Defendants' counsel provided notice to all of Roca's prior counsel, who could possibly be held liable under Rule 11 and Fla. Stat. § 57.105.  *See* **Exhibit 1**, Safe Harbor Letter dated October 9, 2015.  More than twenty-one days have expired since the service of the safe harbor letter and Motion.  As Roca did not correct its sanctionable conduct, and Defendants prevailed, Defendants request an award of attorneys' fees and costs incurred in defending this frivolous action.

Furthermore, prior to filing this motion, Defendants engaged in a good faith attempt to resolve the fee dispute, but Roca's counsel declined to communicate in good faith about the relief, forcing Roca to communicate with Defendants directly (albeit, with the advice of separate counsel).  *See* **Exhibit 9**, email from Don Juravin, CEO of Roca Labs, to Michael Podolsky.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

### 1.0 INTRODUCTION AND BACKGROUND

Since its inception, this lawsuit has been a prime example of a Strategic Lawsuit Against Public Participation ("SLAPP" suit).  Defendant Opinion Corp. ("OC") owns and operates an online consumer review forum where individuals can learn about businesses and inform other consumers about their experiences with businesses.  *See* Doc. # 220 at p. 3.  Roca sells a product it markets as an alternative to gastric bypass surgery.  *See* Doc. # 207-19.  Many of Roca's dissatisfied customers complained about Roca to entities such as the Federal Trade Commission ("FTC"), the Food and Drug

---

[1] The motion did not include a request for fees pursuant to the Florida Deceptive and Unfair Trade Practices Act, as the Court had not yet awarded Defendants summary judgment.  The instant motion includes substantively all of the draft motion sent to Plaintiff's counsel, and adds a claim for fees under FDUTPA in the interest of judicial economy, rather than by separate motion.

Case 8:14-cv-02096-VMC-EAJ   Document 222   Filed 11/05/15   Page 5 of 26 PageID 9989

Administration ("FDA"), and the Better Business Bureau ("BBB"). *See* Doc. # 13-2; *see also* Doc. # 148-5; *and see* Doc. # 207-10. Some went to websites, including pissedconsumer.com, to share their experiences.

After in-depth conversations with Roca's counsel, Paul Berger, wherein he was educated on the legal issues, Roca still sued Defendants for merely **allowing** third parties to speak ill of Roca.[2] *See* Doc. # 1-1.

Despite Defendants' obvious protection under the Communications Decency Act ("CDA"), 47 U.S.C. § 230, Roca unsuccessfully sought an unconstitutional preliminary injunction to silence protected speech. *See* Doc. # 56. This motion itself was wildly frivolous, for the reasons set forth in the opposition, which is incorporated by reference. Doc. # 13. The order denying that motion made it clear that Roca's claims were highly suspect. *See* Doc. # 56. Even after receiving a clear indication of the frivolity of its claims in the order on the motion for preliminary injunction (Doc. #s 43 & 56) Roca persisted in this litigation.

Defendants sought to resolve this matter efficiently – filing an early motion for summary judgment. *See* Doc. # 57. After it was fully briefed, Roca sought an eleventh-hour amendment to its Complaint for the sole purpose of staving off an impending ruling on Defendants' then-pending summary judgment motion. *See* Doc. # 82. The amended complaint changed nothing, except adding in invective and irrelevant allegations. But, it hit "reset" on this litigation, causing even more waste. Roca's counsel further engaged in bad faith tactics by threatening fact witnesses, in an effort to

---

[2] It went on to threaten to sue and actually sue numerous former customers, including those who offered testimony on behalf of Defendants in the course of their defense, as well online commentators discussing this lawsuit. *See, e.g.,* Doc. # 52-3 & 66-1. The suits against Roca's customers were largely based on its attempts to enforce its unlawful "gag clause," which forbid anyone to say anything negative about Roca.

intimidate them.  *See* Doc. # 15.  Undeterred, he then sought to intimidate expert witnesses as well.  *See* Doc. # 131.

After Roca failed to serve discovery until responses would be due after the Court's imposed discovery cutoff, and Roca engaged in multiple additional discovery abuses, Defendants again filed for summary judgment in Doc. # 148 and Doc. # 173.  Legally, these motions for summary judgment were on the same basis as the first motion for summary judgment, updated and adapted for the new factual record – which only *strengthened* Defendants' position.  It is worth noting that Defendants neither sought nor received any discovery in this case at all.  That is how strong the defense was from day one.

Ultimately, the Court found that § 230 afforded Defendants complete immunity from the suit.  Doc. # 220 – which was an obvious foregone conclusion on the day that the suit was filed, and which never was any less obvious at every subsequent juncture.

After summary judgment was fully briefed for the second time, on September 24, 2015 the Federal Trade Commission filed a complaint against Roca alleging numerous violations of the FTC Act based on its deceptive business practices and attempts to enforce its gag clause, seeking a temporary restraining order against Roca (hereinafter the "FTC Action").[3] *See* Doc. # 207-2 & -3.  Less than 24 hours after the FTC filed its action, Roca capitulated to the FTC's claims by stipulating to entry of a temporary restraining order that effectively shut down many of its business activities completely – including prohibiting retaliatory lawsuits against third parties that share negative information.  *See* Doc. # 207-21.  The Court subsequently

---

[3] The specifics of these claims are discussed in greater detail in Defendants' Motion to Supplement the Record (Doc. # 207).

issued a preliminary injunction against Roca, finding that the FTC was likely to succeed on the merits of its claims.   *See* **Exhibit 3**, Preliminary Injunction Against Roca.   This was not a "fair question" when filed, nor was it when amended, nor has it ever been.

One of the many media outlets watching this case reported in the following clear and succinct manner:

> What's surprising isn't that Roca Labs lost, but that the company thought for even a moment that it could have prevailed, when judge after judge has ruled that Web platforms aren't liable for users' posts.

Wendy Davis, *Roca Labs Suffers Defeats In Battle Over 'Gag Clauses'*, MEDIA POST POLICY BLOG, 23 Oct. 2015, attached as **Exhibit 4**.[4]  Of course, Ms. Davis, a journalist, does not make that statement without support.  Even this layperson knew to link to *Shiamili v Real Estate Group of N.Y., Inc.*, 17 N.Y.3d 281, 952 N.E.2d 1011 (N.Y. 2011), *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398 (6th Cir. 2014), and most appropriately *Wong v. Jing*, 189 Cal. App. 4th 1354, 117 Cal. Rptr. 3d 747 (Cal. App. 6th Dist. 2010).  In that case, a dentist sued the online platform Yelp! under similar theories as in this case.  Not only did Mr. Wong lose the case, but the court awarded $81,000 in fees to Yelp! as a result of the unsupportable nature of the case.  *See* **Exhibit 5**.[5]

The court is reminded that *Wong* was in 2011.  This is not a new or undeveloped area of law.  In fact, it is quite well-developed, even in Florida. *See Giordano v. Romeo*, 76 So. 3d 1100 (Fla. 3d DCA 2011); *Medytox Solutions, Inc. v. Investorshub.com, Inc.*, 152 So. 3d 727 (Fla. 4th DCA 2014).  It is specifically well-developed with respect to the PissedConsumer.com website.

---

[4] Found at http://www.mediapost.com/publications/article/261153/roca-labs-losing-its-battle-over-gag-clauses.html (last visited 27 Oct. 2015).

[5] Found at http://www.mediapost.com/publications/article/150711/dentist-who-sued-yelp-must-pay-legal-fees.html (last visited 27 Oct. 27 2015).

RANDAZZA | LEGAL GROUP

*See*, *e.g.*, *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450 (E.D.N.Y. 2011) (finding that this very defendant was protected under 47 U.S.C. § 230). No reasonable party would have filed, much less persisted, in this case. Roca Labs was well aware of the frivolous nature of its claims, or it should have been so advised by counsel. Nevertheless, Roca filed this vexatious and unsupportable case, and no matter how much the evidence and case law made it clear that this case was destined to fail, Roca persisted in multiplying the proceedings. Defendants call upon this Honorable Court to send a message that this is not tolerable under its watch, and to apportion sanctions against Roca and its counsel in an equitable manner. Roca has claimed in discussions since the Order on Summary Judgment (Doc. # 220) that it was operating fully on the advice of counsel and not on any desire by Roca to press the case if it had no merit. To the extent that this court finds this credible, the court should make it clear that counsel is indeed responsible for the consequences of their actions.

## 2.0 Sanctions are Appropriate

### 2.1 This Court Has the Inherent Power to Impose Sanctions and Assess Fees and Costs for This Frivolous Case

This Court has the inherent power to assess sanctions, including an award of attorneys' fees and costs, on Plaintiff and Plaintiff's counsel because they have "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Cox Enterprises, Inc. v. News-Journal Corp.*, 2012 U.S. Dist. LEXIS 97998 at *12 (M.D. Fla. June 16, 2012). Courts in the Eleventh Circuit may exercise their inherent power to grant sanctions for "bad faith acts preceding and during litigation." *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir. 1985); *see also Rodriguez v. Marble Care Int'l, Inc.*, No. 10-23223, 2012 WL 1949360 at *9 (S.D. Fla. Mar. 5, 2012).

The pursuit of a claim '"without reasonable inquiry into the underlying facts' can constitute the bad faith necessary to support a fees sanction." *Rodriguez*, 2012 WL 1949360 at *9 (citing *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (affirming fees award against plaintiffs' counsel under court's inherent powers for bad faith pursuit of frivolous employment discrimination claim); *see also Dent v. Giaimo, D.O., P.A.*, 665 F. Supp. 2d 1295, 1305 (S.D. Fla. 2009) (awarding sanctions against plaintiff's counsel in FLSA case for not making adequate inquiry into facts before filing the lawsuit because "such inaction is tantamount to bad faith"); *and see Ortiz v. D & W Foods, Inc.*, 657 F. Supp. 2d 1328, 1330-31 (S.D. Fla. 2009) (awarding fees against plaintiff's counsel).   Under its inherent powers, "a court can sanction an attorney and the attorney's law firm for bad faith litigation conduct."  *Rodriguez*, 2012 WL 1949360 at *9 (citing *Spolter v. Suntrust Bank*, 403 Fed. Appx. 387, 2010 WL 4608772 (11th Cir. 2010) (affirming award of fees against individual lawyer and his law firm pursuant to the court's inherent powers)).  As set forth below, the Court thus has grounds to sanction Plaintiff and its counsel.

### 2.2    Rule 11 Authorizes This Court to Make an Award of Sanctions

In addition to this Court's inherent power, it may award sanctions pursuant to Federal Rule of Civil Procedure 11.  This Rule permits a Court to award sanctions on a showing that:

> (1) a pleading or motion is being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation or
> (2) the claims, defenses, and other legal contentions are not warranted by existing law or by frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Fed. R. Civ. P. 11(b)(1)-(2).  This two-step inquiry has also been articulated in this Circuit as "(1) whether the party's claims are objectively frivolous in view

of the facts or law; and (2) whether the person who signed the pleadings should have been aware that they were frivolous, in other words, whether he would have been aware had he made a reasonable inquiry." *Byrne v. Nezhat*, 261 F.3d 1075, 1105 (11th Cir. 2001); *see also Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996); *Jones v. Int'l Riding Helmets, Ltd*. 49 F.3d 692, 695 (11th Cir. 1995).

As to the first element, a claim is frivolous if it obviously lacks merit. *See* 2 Moore's Federal Practice § 11.11 (3d ed. 2009). In determining the second element, awareness, the Court should "test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987). Whether an inquiry is reasonable depends on several factors, such as: (1) how much time for investigation was available to the signer; (2) whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; (3) whether the pleading, motion, or other paper was based on a plausible view of the law; or (4) whether he depended on forwarding counsel or another member of the bar. *Id*. at 1556.

The Eleventh Circuit has held that "[t]he purpose of Rule 11 sanctions is to reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers." *NCM of Collier County, Inc. v. Durkin Group, LLC*, 2012 U.S. Dist. LEXIS 94362 at *2 (M.D. Fla. July 9, 2012) (citing *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001). "Sanctions may be imposed on the attorney, law firm, or party if Rule 11 is violated, the offending party is provided with an opportunity to withdraw the objectionable pleading and fails to do so, and a motion for sanctions is filed with the court." *Lee v. Mid-State Land & Timber Co., Inc.*, 285 F.Appx. 601, 608 (11th Cir. 2008) (citing Rule 11(c)). As set forth

below, counsel was or should have been aware that this lawsuit was frivolous *ab initio*.

### 2.3    Florida Statutes § 57.105 Authorizes Sanctions

In addition to Rule 11, this Court may also impose sanctions on Plaintiff and Plaintiff's counsel pursuant to Florida Statutes § 57.105(2).  Section 57.105 exists "to discourage 'baseless claims, stonewall defenses and sham appeals in civil litigation.'"  *Muckenfuss v. Deltona Corp.*, 508 So. 2d 340, 341 (Fla. 1987) (quoting *Whitten v. Progressive Casualty Insurance Co.*, 410 So. 2d 501, 505 (Fla. 1982)); *see also Sachs v. Hoglund*, 397 So. 2d 447 (Fla. 3d DCA 1981) (stating that the purpose of Section 57.105 is to discourage baseless claims "by placing a price tag through attorneys' fees awards on losing parties" who bring them).  The statute states:

> (2) At any time in ay civil proceeding or action in which the moving party proves by a preponderance of the evidence that any action taken by the opposing party, including, but not limited to, the filing of any pleading or part thereof, the assertion of or response to any discovery demand, the assertion of any claim or defense, or the response to any request by any other party, was taken primarily for the purpose of unreasonable delay, the court shall award damages to the moving party for its reasonable expenses incurred in obtaining the order, which may including attorney's fees, and other loss resulting from the improper delay.

Fla. Stat. § 57.105(2).

Because Fla. Stat. § 57.105 is substantive in nature, a federal court may use it to support a fee award.  *See Eugene v. 3Don & Partner Estate Group, LLC*, 2009 WL 996016 at *3 (S.D. Fla. April 14, 2009) (citing *McMahon v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001)) ("Statutes allowing for recovery of attorney's fees are usually deemed substantive for purposes of *Erie*") (internal citations omitted); *see also Bionetics Corp. v. Kenniasty*, 69 So.3d 943, 948 (Fla.

2011) (discussing Section 57.105 and stating "[w]e have previously held that a statutory right to attorney's fees constitutes a substantive right") (internal citations omitted).  Sanctions are warranted for the prosecution of this baseless claim.

Accordingly, this Court has the authority to impose sanctions on Roca and its counsel under its inherent power, Federal Rule of Civil Procedure 11, and Florida Statutes § 57.105.  It should use that power to do so here.

## 2.4   Sanctions are Appropriate Under 28 U.S.C. § 1927

Defendants also request that this Court impose sanctions against all attorneys for Plaintiff,[6] for unreasonably and vexatiously multiplying the proceedings.  While an attorney is expected to be a zealous advocate for his client, he also has an obligation to the Court not to abuse the process.  The original pleading raising section 230 immunity appeared at Doc. # 9; by the time this motion is filed, more than two hundred more docket entries have appeared.  Plaintiff moved for a preliminary injunction and lost.  Doc. #s 43 & 56.  Defendants moved for summary judgment early (Doc. # 57), but on the heels thereof, Plaintiff amended the Complaint in a procedural move to delay the inevitable.  Doc. #s 82 & 101.  They then sought to impermissibly file a second amended complaint.  *See* Doc. # 108.  Plaintiff served overbroad discovery requests and even sought to serve requests beyond the discovery deadline, and then had the audacity to claim that the failure to answer untimely discovery requests warranted judgment in their favor.  *See* Doc. # 220.  They filed multiple unnecessary discovery motions, even after summary

---

[6] Although attorneys have withdrawn, former counsel remain subject to sanction. As the 11th Circuit has held, Section 1927 "plainly applies to 'any attorney . . . admitted to conduct cases,' and is not limited to the current attorney of record at the time a sanction is made." *Jallali v. USA Funds*, 578 Fed. Appx. 965, 966, 2014 U.S. App. LEXIS 16593, *3 (11th Cir. Fla. 2014) (upholding sanction against a withdrawn attorney).

judgment was fully briefed.  *See* Doc. # 219.  Their counsel abused Defendants' experts, threatening criminal prosecution against one if he did not bend to his will.  *See* Doc. # 164.  They appeared for cancelled depositions and sought to sanction Defendants for their misconduct.  *See* Doc. # 184.  And, they forced litigation over cross-motions for summary judgment and evidence.  They even refused to assent to a brief stay of pretrial deadlines pending disposition of summary judgment (Doc. # 211), requiring Defendants to spend time reviewing all potential exhibits.

Plaintiff's attorneys indulged their clients' desire to draw out this litigation for as long as possible – if they did not simply drive it themselves.  Their continued willingness to comply with their clients' abusive litigation strategy means that seeking sanctions against Plaintiff's attorneys is a necessary recourse for Defendants. 28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Sanctions imposed under Section 1927 are "penal in nature." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1395 (11th Cir. 1997).  Under the plain language of the statute, sanctions are warranted where the effect of an attorney's unreasonable and vexatious conduct is to multiply the proceedings.  *See id*. at 1396.  The purpose of the statute is to "sanction attorneys who 'willfully abuse the judicial process by conduct tantamount to bad faith.'"  *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) (quoting *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1544 (11th Cir. 1993)).  Knowingly or recklessly pursuing a frivolous claim amounts to "bad

faith" under this analysis.  *See Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180, 1193 (11th Cir. 2006).

Plaintiff's attorneys pursued the litigation in bad faith.  Nothing alleged or discovered ever abrogated immunity under 47 U.S.C. § 230.  In fact, because the litigation itself violated the FTC Act, Plaintiff violated FDUTPA and N.Y. Gen Bus. Law § 349.  *See Samuels v. King Motor Co.*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) ("great weight should be given to federal cases interpreting the federal counterpart of this Act") (citing Fla. Stat. § 501.204(2) stating "[i]t is the intent of the Legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2015."); *New York v. Applied Card Systems, Inc., et al.*, 2006 N.Y. Misc. LEXIS 9527, *6 (N.Y. Sup. Ct. Jan. 19, 2006); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26, 647 N.E.2d 741, 623 N.Y.S.2d 529 (1995). Rather than terminate the proceedings for violating Federal and state laws, counsel continued to prosecute this matter.  They continued on, despite the clearly frivolous nature of the claims.  Their actions served only to inflict additional fees on Defendants and continuously burden this Court.  Such conduct has been unreasonable and vexatious; sanctions against counsel are appropriate.  Thus, counsel for Plaintiff should be held responsible for all fees and expenses incurred.

### 2.5    Plaintiff and its Counsel Committed Sanctionable Conduct

Plaintiff, in its original and Amended Complaint (Doc. #s 1-1 & 114), asserts causes of action against Defendants for: (1) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204(1) (Counts I &

2); (2) tortious interference with contractual relationships (Counts III & IV); (3) tortious interference with a prospective economic relationship (Counts V & VI); (4) defamation (Counts VII-X); and (5) declaratory relief (Count XII).[7]  All of these causes of action were frivolous, baseless, and meritless, and both Roca and its attorneys should be sanctioned having brought and maintained these claims.

### 2.5.1  The Defamation Claims Were Objectively Meritless

The majority of Roca's causes of action premise liability on the alleged falsity of allegedly factual statements made by third parties on Opinion Corp.'s website, pissedconsumer.com.   The tort of defamation has five elements: "(1) publicity; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory."  *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).   The allegedly false statements identified by Roca all relate to the efficacy of Roca's products, the conditions in which they are manufactured and distributed, Roca's trustworthiness as a business, and its deceptive business practices.  *See* Doc. # 114 at ¶¶147, 154.

While these claims have always been meritless, the FTC Action makes it undeniably clear that all the statements in question are unactionable as to any defendant.  The causes of action in the FTC Action are almost point-for-point affirmations of the allegedly defamatory statements identified in Roca's Amended Complaint.  The FTC has provided expert testimony establishing these facts.  *See* Doc. # 207-19.

---

[7] Because all of Roca's other causes of action were meritless, Roca's claim for declaratory relief also failed.

Roca has known all along that none of the statements at issue are false, and yet it brought its indefensible defamation claims in bad faith anyway. Roca has never conducted a scientific, double-blind, study. *See Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1404 (9th Cir. 1993) ("The double-blind study can establish that the drug is more effective than a placebo (since some patients with some conditions will improve without treatment, or with the psychological boost provided by a placebo)."). Roca and its counsel should have taken guidance from the FTC's enforcement action against SlimAmerica, where the Southern District of Florida found:

> [T]he materials relied on by the [Produce Manufacturer] for support of their product efficacy claims involve single ingredients of Super-Formula. Scientific validation of the defendants' product claims requires a double blind study of the combination of ingredients used in Super-Formula. This is so because ingredients taken in combination may interact in ways which negate the benefits of the same ingredients taken alone.

*FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263, 1274 (S.D. Fla. 1999).[8] This is substantively identical with the opinion of the FTC's medical expert in its case against Roca. *See* Doc. # 207-19. Roca should have known it could not meet its burden to prove falsity absent the required scientific findings. Moreover, it knew or should have known that the claims against Defendants were fully precluded by section 230 of the CDA, as Defendants were not the authors of those statements.

Roca filed this suit with the express intention of censoring information valuable to other current and potential consumers of its products, squashing negative reviews because it knew it lacked scientific evidence. Roca should

---

[8] It is especially troubling that Roca and its counsel worked to ensure litigation with Defendants did not occur in the Southern District of Florida, the forum of the *SlimAmerica* case. *See Opinion Corp. et al. v. Roca Labs, Inc.*, Case No. 9:15-cv-80051 (S.D. Fla. Apr. 3, 2015) (transferring case to Middle District of Florida on Roca's motion).

be sanctioned for bringing and maintaining these meritless causes of action. As it knew from the outset that its claims were legally and factually indefensible, it should be required to pay all of Defendants' attorneys' fees and costs incurred in defending themselves against these claims.

Roca's attorneys should not be excused for their roles in Roca's scheme. Any competent attorney would have conducted a reasonable investigation into whether the statements at issue were actionable. This investigation would have revealed that none of the statements at issue were authored by Defendants, let alone false. While most of Roca's revolving roster of attorneys have withdrawn from this case, this should not excuse their conduct. At the very least, attorney Paul Berger should be liable for all of Defendants' attorneys' fees and costs incurred in their defense of these claims, as he has been Roca's counsel since day one. Thus, for bringing the baseless, frivolous, and meritless defamation claims, Roca and its counsel should be sanctioned under Federal Rule of Civil Procedure 11, Fla. Stat. § 57.105, and this Court's inherent powers.

### 2.5.2  The Tortious Interference Claims Were Objectively Meritless

Roca's tortious interference claims were based on Roca's alleged reasonable expectation of business arising from its unenforceable gag clause, seeking to impose a cone of silence on any of its customers who would dare share their negative experiences with Roca's products. The Court found that the claim was also barred by section 230 of the CDA. *See* Doc. # 220. This provision has always been unenforceable, but, with the FTC's involvement, it is now apparent that the gag clause was **unlawful**. Allegedly interfering with an unlawful enterprise could never have given rise to a tortious interference claim. To state a claim for tortious interference, a plaintiff must show: "(1) the

existence of a business relationship . . .; (2) knowledge of the relationship on the part of the defendant; (3) an intentional **and unjustified interference with the relationship** by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985) (emphasis added). "Liability cannot be predicated on actions which are 'justified' or 'privileged.'" *Local 472 of United Ass'n of Journeymen v. Ga. Power Co.*, 684 F.2d 721, 727 (11th Cir. 1982).

Defendants could not have tortiously interfered with a contractual provision that violates the FTC Act by imposing "onerous restrictions" on consumers. *See* Doc. # 207-3 at 3; *see also* **Exhibit 3**, Preliminary Injunction against Roca. Since the gag clause was unlawful, there is no valid "business relationship" under the first element. By insisting on maintaining these causes of action, Roca and its attorneys knowingly pursued legally and factually indefensible claims for the sole purpose of driving up litigation costs for Defendants.

For bringing the baseless, frivolous, and meritless tortious interference claims, Roca and its counsel should be sanctioned under Federal Rule of Civil Procedure 11, Fla. Stat. § 57.105, and this Court's inherent powers.

### 2.5.3  The FDUTPA Claims Were Objectively Meritless

To prevail on a FDUTPA claim, a plaintiff must demonstrate that the defendant committed a deceptive act or unfair practice and that the act or practice was the cause of actual and identifiable damages suffered by the plaintiff. *See Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1338, n.25 (11th Cir. 2012) (quoting *Rollins Inc. v. Butland*, 951, So. 2d 860, 869 (Fla. 2d DCA 2006)). As explained in greater detail in Defendants' motions for summary judgment, none of the conduct asserted by Roca in its Amended Complaint was

relevant to FDUTPA liability.  *See* Doc. # 148 at 18-22; *see also* Doc. # 173 at 20-23.  Most significantly, however, Roca knew since October 28, 2014 that it did not have standing to bring a FDUTPA claim against Defendants.[9]  *See* Doc. # 43 at 8-9.[10]  Additionally, as the Court found, the FDUTPA claim was preempted by section 230 of the CDA.  *See* Doc. # 220 at pp. 28-30.

Roca and its counsel simply ignored case law contrary to its position. Actually, this is a charitable characterization, as Roca gleefully cited *Ascentive* many times, but ignored its clear holding.  *See, e.g.*, Doc. # 114 at ¶¶ 157 & 197.

Roca was clearly warned in the Order denying a preliminary injunction as to the fact that it did not have standing to bring its FDUTPA claims.  But, again, it persisted.  Thus, for bringing the baseless, frivolous, and meritless FDUTPA claims, Roca and its counsel should be sanctioned under Federal Rule of Civil Procedure 11, Fla. Stat. § 57.105, and this Court's inherent powers.

---

[9]  In ironic fashion, however, having frivolously sued Defendants, which violated the FTC Act, Roca thereby violated FDUTPA.  Conduct that constitutes a "deceptive act or practice" or an "unfair act or practice" under the FTC Act is a violation of FDUTPA.  *FTC v. Alcoholism Cure Corp.*, 2011 U.S. Dist. LEXIS 155574, 2011 WL 8190540, at *6-7 (M.D. Fla. Dec. 5, 2011) (citing Fla. Stat. §§ 501.202-204).

[10]  The Magistrate's Report and Recommendations on Roca's motion for temporary injunction clearly stated that "[t]here must be some relationship sufficient to trigger the FDUTPA protection between the parties. Plaintiff does not allege a consumer relationship between Plaintiff and Defendants, or even an employment, business, or competitor relationship." Doc. # 43 at 8-9.  Despite having six opportunities to address this infirmity, Roca still failed even to allege, much less prove, the necessary relationship with Defendants to establish FDUTPA standing.  *See* Doc. # 68, Roca's opposition to Defendants' motion for summary judgment, at 4-6; *see also* Doc. # 114, First Amended Complaint, at ¶¶134-213; Doc. # 172, Roca's motion for summary judgment, at 8-12; Doc. # 185, Roca's opposition to Consumer Opinion Corp.'s motion for summary judgment, at 18-19; Doc. # 189, Roca's opposition to Opinion Corp.'s motion for summary judgment, at 18-19; *and see* Doc. # 194, Roca's reply in support of motion for summary judgment, at 7-8.

In a prime example of the pot calling the kettle black, in its motion for summary judgment Roca accused Defendants of violating the very same FTC endorsement rule that Roca itself violated.  (Compare Doc. # 172 at 11 with Doc. # 207-2 at ¶71.)

RANDAZZA | LEGAL GROUP

In addition, Defendants are the prevailing parties under Plaintiff's FDUTPA claims.   "Under Fla. Stat. 501.2105, a defendant who prevails on FDUPTA claims brought against it **is entitled** to recover fees as a prevailing party." *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 2007 U.S. Dist. LEXIS 97948, *7 (M.D. Fla. Sept. 17, 2007).   The relevant statutory provision states:

> In any civil litigation resulting from an act or practice involving a violation of this part, except as provided in subsection (5), the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party.

Fla. Stat. § 501.2105(1).   In determining whether to award fees, the Court considers factors such as:

(1)  the scope and history of the litigation;
(2)  the ability of the opposing party to satisfy an award of fees;
(3)  whether an award of fees against the opposing party would deter others from acting in similar circumstances;
(4)  the merits of the respective positions—including the degree of the opposing party's culpability or bad faith;
(5)  whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless;
(6)  whether the defense raised a defense mainly to frustrate or stall;
(7)  whether the claim brought was to resolve a significant legal question under FDUTPA law.

*Humane Soc'y of Broward Cnty., Inc. v. Fla. Humane Soc'y*, 951 So. 2d 966, 971-927 (Fla. 4th DCA 2007).   The scope and history show that Defendants early on raised § 230 immunity, which Plaintiff ignored.   Based upon its own claims of losses, Roca's sales suggest it is more than capable of satisfying a fee award.   Plaintiff's claims had no merit *ab initio* and were brought unlawfully, in bad faith.   They were brought to frustrate Defendants, without any significant legal question.   Thus, fees are warranted.

### 3.0    Defendants Seek Reasonable Fees

Pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, Fla. Stat. § 57.105, and this Court's inherent powers, Defendants request an award of their attorneys' fees and costs as sanctions for all amounts spent defending this matter.  As set forth by this court:

> The selection of the type of sanction imposed lies within the district court's exercise of sound discretion.  Monetary sanctions are normally limited to reasonable attorney's fees and expenses.  Accordingly, the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  The plain language of Rule 11 requires that the court independently analyze the reasonableness of the requested fees and expenses.  Using the objective lodestar approach, there must be a determination of a reasonable hourly rate.  In accessing a reasonable hourly rate, there must be a correlation between the fees requested under the sanctions and the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.  The applicant bears the burden of producing satisfactory evidence that the fees requested reflect the prevailing market rate.

*Sussman v. Salem, Saxon & Nielsen, P.A.*, 152 F.R.D. 648, 651 (M.D. Fla. 1994). The hourly rates sought by Defendants' counsel are within the range approved for attorneys of similar experience, skill, and reputation in the Middle District of Florida.  *See* **Exhibit 6**, Declaration of Lawrence G. Walters ["Walters Decl."] at ¶¶ 4 & 5-9; *see also* **Exhibit 2**, Declaration of Marc J. Randazza ["Randazza Decl."] at ¶¶12-16 & 20-21.   Mr. Randazza is an accomplished attorney in the areas of First Amendment and free speech law, having litigated many First Amendment cases and taught First Amendment law in in the United States and abroad, and in various other legal settings.  *See* Walters Decl. at *Exhibit A*; see also Randazza Decl. at ¶¶3-5.  Over his 13 years of First Amendment litigation experience, Mr. Randazza

has developed a special facility in the area of 47 U.S.C. § 230 immunity. *See* Randazza Decl. at ¶5.

During the period that Mr. Randazza worked on this matter, his customary hourly rate was $650.00. *See* Randazza Decl. at ¶11. Although this is Mr. Randazza's customary hourly rate, Mr. Randazza is seeking fees herein using a reduced hourly rate of $600.00 to conform to Mr. Walters's estimation of Mr. Randazza's reasonable rate for work in this district at that lower amount. *See* Walters Decl. at ¶4. Multiple courts have found Mr. Randazza's attorney fees reasonable and have awarded such fees. For example:

a. *Liberty Media Holdings LLC v. FF Magnat Limited et al.*, 2012 WL 3834744 at *5 (D. Nev. Sept. 4, 2012) (approving a 2012 hourly rate of $500);

b. *Liberty Media Holdings, LLC v. Albert*, Civil Case No. 11-cv-00573-BEN-MDD (S.D. Cal. Jan. 3, 2012) (approving a 2011 hourly rate of $450);

c. *Liberty Media Holdings, LLC v. Vinigay.com*, U.S. Dist. LEXIS 153615 (D. Ariz. Dec. 28, 2011) (approving 2011 hourly rates of $450);

Mr. Randazza's rate increases over the past four years are steady and reasonable.

During the period that Mrs. Haar worked on this matter, her customary hourly rate was $325.00. *See* Randazza Decl. ¶14. Mrs. Haar is licensed to practice in both New York and Nevada, and she has five years of experience in both criminal and civil law with a focus on First Amendment litigation, including defamation, false advertising, and Anti-SLAPP motions. *See* Randazza Decl. at ¶14. The average hourly rate for associates in Atlanta,

Georgia (also in the Eleventh Circuit) was $310 in 2012.  *See* Judd, "Hourly Rates In A Time Of Moderation."  Fees of $325.00 are therefore reasonable for an attorney of Mrs. Haar's experience, given the customary rates in and around Florida. *See* Walters Decl. at ¶ 9.

 Similarly, Attorney Alex Shepard, an associate attorney admitted to practice in California and Nevada, who has been practicing for two years, bills at the rate of $325 per hour.  Attorney Jay Wolman, Counsel at Randazza Legal Group, who is admitted to practice is Connecticut, New York, Massachusetts, and the District of Columbia, has been practicing law for fourteen years and bills at the rate of $400 per hour.   New York counsel proved instrumental, especially in light of the litigation over the depositions of Messrs. Podolsky and Syrov in that jurisdiction arising from this case.  *See Roca Labs, Inc. v. Opinion Corp., et al.,* Case No. 1:15-mc-00289-P1 (S.D.N.Y. 2015). Attorney Ronald Coleman, Partner at Archer & Greiner, P.C., who is admitted to practice in New York and New Jersey, has been practicing law for twenty-six years and bills at the rate of $465.00 per hour.  Attorney Joel MacMull, an associate at Archer & Greiner, who is admitted to practice in New York, has been practicing law for ten years and bills at the rate of $395.00 per hour. *See* Randazza Decl. at ¶¶12-16 & 20-21.

The requested rates for Defendants are within the norm for attorneys in both Florida and New York.  This case required a litigator and law firm with exceptional experience in defamation to address many novel aspects not found in typical defamation cases.

Defendants' counsel spent 1,145.8 hours litigating this case and have carefully documented all of their time in a detailed spreadsheet.[11] *See* **Exhibit 8**, timekeeping spreadsheet.   To maximize cost efficiency, Mr. Randazza had other attorneys take primary responsibility for investigation, research, and drafting memoranda, while Mr. Randazza provided litigation strategy and made the ultimate decisions as to the motions and pleadings. *See* Randazza Decl. ¶23.  Defendants' counsel made every effort to avoid duplication of work and otherwise minimize the fees and costs incurred.  *See id*.

Defendants' attorneys' time is well documented.  In comparison, the Supreme Court has noted, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."  *Fox v. Vice*, 563 U.S. 826, __, 131 S. Ct. 2205, 2216 (2011).  Defendants' attorneys have provided the Court with thorough documentation, which should give the Court little trouble in calculating reasonable fees within the standard of "rough justice."  This calculation can reasonably lead the court to a lodestar fee amount of $485,534.25, as requested by Defendants.  This amount plus the expenses of  $10,535.23, would total $496,069.48 as and for sanctions against Plaintiff and its counsel.  *See* Randazza Decl. at ¶22 & 24; *see also* Walters Decl. at ¶13; *and see* **Exhibit 8**.

With respect to fees under FDUTPA, Defendant may be awarded for all fees spent "on the case," not limited to just the FDUTPA claims.  *See Smith*

---

[11] The spreadsheet is provided to assist the Court as some tasks relate only to the FDUTPA claim.  The actual corresponding invoices to the client appear at **Composite Exhibit 7**.  Time entries related to other litigation have been redacted.

v. *Bilgin*, 534 So. 2d 852, 854  (Fla. 1st DCA 1988); *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 2007 U.S. Dist. LEXIS 97948, *7 (M.D. Fla. Sept. 17, 2007) ("The fees sought may reflect the time spent '"on the case' rather than allocation to a particular FDUPTA count."").  However, to the extent services clearly were addressed to matters not under FDUTPA, such are not compensable.  *Bilgin* at 854.  Thus, Defendants have pored over their billing records to determine that 1,106.6 hours of the total 1,145.8 may be awarded under FDUTPA.  See **Exhibit 8**.  Once more, the lodestar method is appropriate to determine reasonable fees.  *Am. Honda Motor Co.* at *9.  Therefore, total fees in the amount of $480,806.98 ($470,271.75 fees + $10,535.23 costs = $480,806.98) should be awarded to Defendants as prevailing parties.  *See* Walters Decl. at ¶ 16; *see also* Randazza Decl. at ¶¶ 22 & 24-25; *and see* **Exhibit 8**.

## 4.0    CONCLUSION

Roca and its attorneys have known since filing this case that their claims are meritless, and initiated this SLAPP suit for the sole purpose of keeping the truth of its deceptive and unlawful business practices from getting out.  This is an egregious abuse of the litigation process – and that litigation process was abusive and vexatiously multiplied at every juncture by Plaintiff.[12]  The Court should severely and punitively sanction Roca and its attorneys for this misconduct.

To date, Defendants have incurred $485,534.25 in legal fees and costs since the inception of this case.  *See* Randazza Decl. at ¶22.  For the

---

[12]  In sharp contrast, Defendants elected to take absolutely no discovery in this case, despite the fact that doing so might have inflicted financial burdens and temporal burdens on Plaintiff.  Defendants sought to end this case with an early summary judgment (Doc. # 57). Plaintiff chose to amend its complaint, changing absolutely nothing pertaining to the ultimate issues in this case.  Doc. # 82.  Accordingly, anything that was arguably a "fair question" before November 16, 2014, most certainly was not one thereafter.

foregoing reasons, Defendants request that the Court sanction Roca and its attorneys who signed the complaint, the amended complaint, and who maintained this action for all of Defendants' attorneys fees and costs incurred throughout the entire case in connection with defending themselves against Roca's preempted claims. While Roca should be responsible for all of the fees incurred, its counsel cannot be released without responsibility. The Court should impose costs and fees on all attorneys jointly and severally, along with Roca, unless particular attorneys respond and provide compelling arguments that they should be excused from responsibility.[13]

In addition, Defendants may be awarded all attorneys' fees and costs incurred in connection with defending themselves against Roca's FDUTPA claims in the amount of $480,806.98. *See* **Exhibit 2**; *see also* **Exhibit 6**; *and see* **Exhibit 8**.

## LOCAL RULE 3.01(g) CERTIFICATION

On October 9, 2015, Defendants served a safe harbor letter under Fed. R. Civ. P. 11 and Fla. Stat. § 57.105 and a copy of this Motion on Roca's attorney, Paul Berger. The letter invited Mr. Berger to contact defense counsel to discuss withdrawing some, or all, of Roca's claims in order to avoid filing this motion. On November 3, 2015, the undersigned spoke to Mr. Berger, who informed the undersigned that he had more important things to do that day than address this issue, but that he would address it with his client on

---

[13] Defendants do not wish to unjustly burden attorneys who may have withdrawn because Roca declined to follow their advice to end the case. Defendants are not privy to all the details of prior counsels' withdrawal, but (for example) Attorney Jeffrey Young withdrew from representation prior to the preliminary injunction hearing. Doc. #s 39 & 40. Accordingly, it would be unlikely that he or his firm should be held responsible for the misdeeds taking place thereafter unless Roca is in some way able to prove that he should shoulder some of the burden. Similarly, Attorney W. Mason only appeared at the Preliminary Injunction hearing, and then withdrew quickly thereafter. Doc. # 42 & 44. Accordingly, Defendants do not believe that fees are correctly imposed upon him or his firm. Attorneys appearing thereafter, however, should be held accountable for their actions.

RANDAZZA | LEGAL GROUP

November 4 and get back to the undersigned. Berger did not do so, but his client directly contacted Defendants, informing the Defendants that Berger refused to continue to meet and confer on this matter. *See* **Exhibit 9.** However, Roca Labs (copying its other counsel) consented to the filing of this motion, while reserving the right to object to the relief sought herein.

More than twenty-one days have expired since the service of the safe harbor letter and Motion, and thus all prerequisites to filing this motion have been met under FRCP 11, Fla. Stat. § 57.105, and LR 3.01(g).

Dated November 5, 2015.                         Respectfully Submitted,

                                                */s/ Marc J. Randazza*
                                                Marc J. Randazza, Esq.
                                                Florida Bar No. 625566
                                                RANDAZZA LEGAL GROUP, PLLC
                                                3625 S. Town Center Drive
                                                Las Vegas, Nevada 89135
                                                Tele: 702-420-2001
                                                Fax: 305-437-7662
                                                Email: ecf@randazza.com


                                                Ronald D. Coleman, Esq.
                                                *Pro Hac Vice*
                                                Joel G. MacMull, Esq.
                                                *Pro Hac Vice*
                                                ARCHER & GREINER, P.C.
                                                Court Plaza South
                                                21 Main Street – Suite 353
                                                Hackensack, New Jersey 07601
                                                Tele: 201-342-6000
                                                Fax: 201-342-6611
                                                Email: rcoleman@archerlaw.com

RANDAZZA | LEGAL GROUP

CASE NO.: 8:14-cv-02096-VMC-EAJ

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 5, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a true and correct copy of the foregoing document is being served upon counsel for Plaintiff, via transmission of Notices of Electronic Filing generated by CM/ECF.  Notice has also been sent via electronic mail and regular US Mail to the following parties:

James Tanner
5700 Memorial Hwy Ste 102
Tampa, FL 33615-5200
jrt@jimtannerlaw.com

Cynthia Koroll
630 N Church St
Rockford, IL 61103
indi@klg-law.net

James Hetz
Florida's Turnpike Enterprise-MS 98
PO Box 613069
Ocoee, FL 34761-3069
James.Hetz@dot.state.fl.us

W. Scott Mason
Fox Rothschild LLP
222 Lakeview Ave
West Palm Beach, FL 33401-6145
wmason@foxrothschild.com

Respectfully Submitted,

_____
Employee,
Randazza Legal Group, PLLC